**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STATES OF ARKANSAS, INDIANA, MICHIGAN, MISSOURI, NORTH CAROLINA, OHIO, and TEXAS,<br><br>    Plaintiffs,<br><br>    v.<br><br>RISING EAGLE CAPITAL GROUP LLC; JSQUARED TELECOM LLC; JOHN C. SPILLER, II, Individually; and JAKOB A. MEARS, Individually,<br><br>    Defendants. | Case No. 4:20-cv-2021 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas file this Complaint pursuant to statutes as set forth below against RISING EAGLE CAPITAL GROUP LLC, JSQUARED TELECOM LLC, JOHN C. SPILLER, II, Individually, and JAKOB A. MEARS, Individually, and allege:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2); and has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), and 47 U.S.C. § 227(g)(4). A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

3.     The Plaintiffs notified the Federal Communications Commission of this civil action.

## PLAINTIFFS

4.     Plaintiff State of Arkansas, by and through its Attorney General Leslie Rutledge, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Arkansas, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Arkansas, by and though its Attorney General Leslie Rutledge, is authorized by Ark. Code Ann. § 4-88-104 and Ark. Code Ann. §§ 4-99-111 to bring enforcement actions to enjoin violations of and enforce compliance with the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann §§ 4-88-101 *et seq.* and the Regulation of Telephonic Sellers (RTS), Ark. Code Ann. §§ 4-99-101 *et seq.*, and to obtain civil penalties of up to ten thousand dollars ($10,000) per violation of the ADTPA and up to ten thousand dollars ($10,000) per violation of the RTS, to seek restitution for consumers who have suffered any ascertainable loss, to recover all expenses reasonably incurred in the investigation and prosecution of this matter, as well as attorney's fees and costs.

5.     Plaintiff State of Indiana, by and through its Attorney General, by its undersigned counsel, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Indiana, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Indiana, by and through its

Attorney General, by its undersigned counsel, is also authorized by Ind. Code § 4-6-3-2 to bring enforcement actions to enjoin violations of and enforce compliance with the Indiana Telephone Solicitation of Consumers Act, Ind. Code 24-4.7, the Indiana Regulation of Automatic Machines Dialing Act, Ind. Code 24-5-14, the Telephone Solicitation Registration of Sellers law, Ind. Code § 24-5- 12-10, the Indiana Business Organizations Code, Ind. Code § 23-0.5-5-2, the False or Misleading Caller Identification law, Ind. Code § 24-5-14.5-9, and seek orders for civil penalties, reimbursement of costs, and other relief as allowed by law.

6.   Plaintiff State of Michigan, by and through its Attorney General Dana Nessel, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Michigan, and to obtain actual damages or damages off five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Michigan, by and through its Attorney General Dana Nessel, is also authorized by MCL 445.905(1) to bring enforcement actions to enjoin violations of and enforce compliance with the Michigan Consumer Protection Act, MCL 445.901, *et seq.* ("MCPA") and to obtain civil penalties of up to twenty-five thousand dollars ($25,000) per persistent and knowing violation of Section 3 of the MCPA, investigative and other costs, and reasonable attorneys' fees.

7.   Plaintiff State of Missouri, by and through its Attorney General Eric Schmitt, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Missouri, and to obtain actual damages or damages of five hundred dollars ($500) for

3

each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Missouri, by and through its Attorney General Eric Schmitt, is also authorized to bring enforcement actions to enjoin violations and seek orders for civil penalties for each violation and other relief for violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, specifically the Missouri Do-Not-Call Law and the Missouri Telemarketing Practices Act.

8. Plaintiff State of North Carolina, by and through its Attorney General Joshua H. Stein, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of North Carolina, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of North Carolina, by and through its Attorney General Joshua H. Stein, is also authorized by N.C. Gen. Stat. § 75-105 to bring enforcement actions to enjoin violations of and enforce compliance with the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. §§ 75-100 *et seq.* and to obtain civil penalties of up to five hundred dollars ($500) for the first violation of that Act, one thousand dollars ($1,000) for the second violation, five thousand dollars ($5,000) for the third and any other violations of the Act, and reasonable attorneys' fees for willful violations.

9. Plaintiff, State of Ohio, by and through its Attorney General Dave Yost, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Ohio, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and

4

up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Ohio, by and through its Attorney General Dave Yost, is also authorized to bring enforcement actions to obtain declaratory judgments, enjoin violations, and seek orders for consumer damages, civil penalties of twenty-five thousand dollars ($25,000) for violations of the Ohio Consumer Sales Practice Act ("Ohio CSPA"), Ohio Revised Code ("O.R.C.") §§ 1345.01 *et seq.* and its substantive rules, Ohio Administrative Code ("O.A.C"), §§ 109:4-3-01 *et seq.*, civil penalties of not less than one thousand ($1,000) nor more than twenty-five thousand dollars ($25,000) for each violation of the Ohio Telephone Solicitation Sales Act ("Ohio TSSA"), O.R.C. §§ 4719.01 *et seq.*, investigative costs, reasonable attorneys' fees and any other appropriate relief.

10. Plaintiff State of Texas, by and through its Attorney General Ken Paxton, is authorized by 47 U.S.C. § 227(f)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Texas, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Texas, by and through its Attorney General Ken Paxton, is also authorized to bring enforcement actions to enjoin violations of and enforce compliance with the Texas Telemarketing Disclosure and Privacy Act, Tex. Bus. & Com. Code § 304.001 *et seq*. and to obtain civil penalties of up to one thousand dollars ($1,000) for each violation of the Act, and up to treble that amount for each violation committed knowingly or willfully, and reasonable attorneys' fees.

## **DEFENDANTS**

11. Defendant Rising Eagle Capital Group LLC ("Rising Eagle") is a limited liability company

which was formed in April of 2014 under the laws of the State of Texas, with its principal

place of business at 9022 N Ferndale Place Dr, Houston, TX 77604.

12.     Defendant Rising Eagle transacts business in the Southern District of Texas.

13.     Defendant JSquared Telecom LLC ("JSquared") is a limited liability company which was

formed in January of 2019, under the laws of the State of Texas, with its principal place of

business at 9022 N Ferndale Place Dr, Houston, TX 77604.

14.     Defendant JSquared transacts business in the Southern District of Texas.

15.     Defendant John C. Spiller, II, ("Spiller") is an individual residing in the Southern District of

Texas.

16.     Defendant Jakob A. Mears ("Mears") is an individual residing in the Southern District of

Texas.

## THE TELEPHONE CONSUMER PROTECTION ACT

17.     The TCPA, enacted in 1991, amended the Communications Act of 1934 by adding 47

U.S.C. § 227, which requires the Federal Communications Commission ("FCC") to

> … initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. . . . The regulations required by [the TCPA] may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and part thereof available for purchase. If the Commission determines to require such a database, such regulations shall- ... (F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database . . . .

47 U.S.C. § 227(c)(l) and (c)(3).

6

18.   In 1992, the FCC promulgated rules pursuant to the TCPA.

19.   On June 26, 2003, the FCC revised its rules and promulgated new rules pursuant to the
      TCPA. These new rules established a "do not call" registry (the "National Do Not Call
      Registry" or "Registry") of consumers who do not wish to receive certain types of
      telemarketing calls. Consumers can register their telephone numbers on the Registry
      without charge either through a toll-free telephone call or over the Internet at
      www.donotcall.gov.

20.   Sellers, telemarketers, and other permitted organizations can access the Registry over the
      Internet at telemarketing.donotcall.gov to download the registered numbers.

21.   A relevant FCC Do-Not-Call Rule, 47 C.F.R. § 64.1200(c), provides in part: "(c) No
      person or entity shall initiate any telephone solicitation [as defined in paragraph (f)(14) of
      this section] to ... (2) A residential telephone subscriber who has registered his or her
      telephone number on the national do-not-call registry of persons who do not wish to
      receive telephone solicitations that is maintained by the Federal Government."

22.   The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(a)(4) and 47 C.F.R. §
      64.1200(f)(14), respectively, provide in part: "The term telephone solicitation means the
      initiation of a telephone call or message for the purpose of encouraging the purchase or
      rental of, or investment in, property, goods, or services, which is transmitted to any
      person ..."

23.   The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(b)(l)(B) and 47 C.F.R.§
      64.1200(a)(3), respectively, provide that it is unlawful for a person to: "Initiate any
      telephone call to any residential telephone line using an artificial or prerecorded voice
      to deliver a message without the prior express consent of the called party unless the call

...

[is specifically exempted by rule or order]."

24.     The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful for any person to: "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using… an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone service…" Relevant FCC Rule 47 C.F.R. § 64.1200(a)(1)(iii) similarly prohibits persons from initiating calls to a cellular telephone using an artificial or prerecorded voice without the prior express consent of the called party. Relevant FCC Rule C.F.R. § 64.1200(a)(2) further prohibits persons from initiating or causing to be initiated calls that include or introduce an advertisement or constitute telemarketing to cellular telephones using an artificial or prerecorded voice without the prior express written consent of the called party.

25.     The TCPA, 47 U.S.C. § 227(d)(3)(A) and FCC Rule, 47 C.F.R. § 64.1200(b)(1), provide in part that "all artificial or prerecorded voice telephone messages shall… at the beginning of the message, state clearly, the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."

26.     The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), respectively, provide that it is unlawful for a person "with the intent to defraud, cause harm, or wrongfully obtain anything of value" to cause any caller identification service to transmit or display "misleading or inaccurate caller identification information."

27.     The TCPA further provides in part:

8

> Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence.

47 U.S.C. § 227(g)(1).

28.     This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injuries caused by Defendants' violations of the TCPA.

## DEFENDANTS' BUSINESS PRACTICES

29.     Defendants Spiller, Mears, Rising Eagle and JSquared (collectively, "Defendants") are in the business of generating and selling sales leads (i.e. prospective customers).

30.     In an effort to generate sales leads, Defendants initiate millions of outbound telephone calls that deliver artificial or prerecorded voice messages ("robocalls") to residential and/or cellular telephone numbers of residents in the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, Texas and other states throughout the United States.

31.     Defendants initiate calls to residential and/or cellular lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties.

32.     Defendants' robocall campaigns advertise various goods and services including healthcare products and automobile extended warranties.

33.     From at least June of 2018 through early 2020, Defendants Spiller and Mears

9

conducted their robocall business through Defendant Rising Eagle. From January 1, 2018, to January 13, 2020, Defendants Spiller and Mears were the sole members of Rising Eagle and they directly participated in and controlled the day-to-day operations of Defendant Rising Eagle, through which they placed billions of robocalls.

34. On January 30, 2019, Defendants Spiller and Mears formed a new entity, Defendant JSquared, with Defendant Rising Eagle as the sole member. Defendants Spiller and Mears, who control the day-to-day operations of Defendant JSquared, began conducting their robocall business through JSquared, while also continuing to operate through Defendant Rising Eagle.

35. On January 13, 2020, Defendant Mears filed two certificates of amendment with the Texas Secretary of State, one for Defendant Rising Eagle and the other for Defendant JSquared. In each certificate of amendment, Defendants replaced the then-current members with Rising Eagle Capital Group Cayman, an entity formed in the Cayman Islands.

36. Defendant JSquared Telecom, LLC. is registered with the Federal Communications Commission as a provider of interconnected voice-over-internet-protocol ("VoIP") telecommunications services.  As an interconnected VoIP service provider, JSquared provides information services pursuant 47 U.S.C. § 153 of the Communications Act of 1934, as amended.

37. JSquared provides VoIP services to Defendants Rising Eagle, Spiller, and Mears through which Defendants initiate illegal robocalls described in this Complaint.

38. Defendants, in generating leads for their clients, have placed billions of abusive

10

robocalls to the residential and/or cellular telephone numbers of consumers nationwide, including in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas.

39.   Although Defendants are aware of the various federal and state telemarketing laws intended to protect the privacy of consumers from unwanted and harassing phone calls, Defendants willfully initiate calls to consumers in disregard for such laws.

40.   Between January 1, 2019, and May 14, 2019, for example, Defendants initiated at least 136 million robocalls calls to the residential and/or cellular telephones of Texas residents. Similarly, during that same time period, Defendants initiated more than 11 million robocalls to residents of Arkansas, 25 million robocalls to residents of Indiana, 42 million robocalls to residents of Michigan, 14 million robocalls to residents of Missouri, 44 million robocalls to residents of North Carolina, and 56 million robocalls to residents of Ohio.

41.   Defendants initiate telephone calls using artificial or prerecorded voices to deliver messages that fail to clearly identify, at the beginning of the message, the business, individual, or other entity responsible for initiating the call.

42.   In many instances, consumers who answer calls initiated by Defendants are greeted by automated, prerecorded voice messages. For example, many of the calls Defendants initiate are related to health insurance or other health-related products. Although Defendants use many different prerecorded messages, one message used by Defendants states,

> Hi, this is Ann. I am calling to let you know we have been granted a limited health enrollment period for a few weeks, so you and your family can get a great insurance

> plan at the price you can afford. And we make it hassle
> free to sign up. We have pre-approvals ready in your area
> including Cigna, Blue Cross, Aetna, United and many
> more. Press 1 to get a hassle-free assessment or press 2
> to be placed on our do not call list. Thanks for your time
> and be healthy and blessed.

43.     In many instances, Defendants initiate calls to consumers which delivered robocalls

related to extended service warranties for automobiles. One such message delivered

by Defendants states,

> We've been trying to reach you concerning your cars
> extended warranty. You should have received something
> in the mail about your cars extended warranty since we
> have not gotten a response. We are giving you a final
> courtesy call before we close out your file. Press two to
> be removed and put on our do not call list press one to
> speak with someone about possibly extending or
> reinstating your cars warranty. Again, press one to speak
> with a warranty specialist.

44.     In many instances, Defendants initiate outbound telephone solicitations to telephone

numbers registered on the National Do Not Call Registry or to telephone numbers

registered on state-specific do-not-call registries, including those for the States of

Indiana, Missouri, and Texas.

45.     In 2019, Defendants initiated a little over 66 million robocalls to residential and/or

cellular telephone numbers associated with North Carolina area codes, and more

than 32 million of those calls were placed to telephone numbers on the National Do

Not Call Registry. And in the first three months of 2020, Defendants initiated a little

over 9 million robocalls to residential and/or cellular telephone numbers associated

with North Carolina area codes, more than 2 million of which were on the Registry.

46.     Between January and May of 2019, Defendants initiated over 56 million robocalls

to residential and/or cellular telephone numbers associated with Ohio area codes. Of those 56 million robocalls, over 30 million were placed to telephone numbers on the National Do Not Call Registry. In March of 2020, Defendants initiated over 3 million robocalls to residential and/or cellular telephone numbers associated with Ohio area codes. Of those calls, over 1 million were placed to numbers on the Registry.

47.     Between January and May of 2019, Defendants initiated over 42 million robocalls to residential and/or cellular telephone numbers associated with Michigan area codes. Of those 42 million robocalls, over 19 million were placed to telephone numbers on the National Do Not Call Registry.

48.     Similarly, of the more than 25 million robocalls Defendants initiated to telephone numbers associated with Indiana area codes between January 1, 2019, and May 14, 2019, over 13.5 million were to numbers on the National Do Not Call Registry, and more than 5 million were to numbers on the Indiana Do Not Call Registry. Likewise, between January and April of 2019, Defendants initiated more than 5 million robocalls to telephone numbers on the Missouri Do Not Call Registry. And of the more than 136 million robocalls Defendants initiated to residential and/or cellular telephone numbers associated with Texas area codes, more than 57 million of them were to numbers on the National Do Not Call Registry. During a seven-day period in March of this year, Defendants initiated a little over 5 million robocalls to residential and/or cellular telephone numbers associated with Texas area codes, nearly one million of which were to numbers on the National Do Not Call Registry.

49.     In order to continue to perpetuate their illegal conduct, Defendants take and/or took steps to avoid being identified, including failing to transmit accurate caller

identification information. For example, Defendants often engaged in the practice of "spoofing," whereby they knowingly transmitted misleading or inaccurate telephone numbers through the caller identification service.

50.   Defendants often replaced their actual number with a number with the same area code and prefix of the call recipient to mislead the recipient into believing the call is coming from someone local and known to the recipient. This practice is typically referred to as neighborhood spoofing.

51.   Defendants further attempt to conceal their identities by delivering robocalls that fail to identify Defendants or their clients.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### COUNT I
### (By all Plaintiffs - Violating the National Do Not Call Registry)

52.   Defendants violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas whose telephone numbers were listed on the National Do Not Call Registry.

53.   Defendants' violations are willful and knowing.

### COUNT II
### (By all Plaintiffs – Violating the Prohibition against the Use of
### Artificial or Prerecorded Voice to Residential Telephone Lines)

54.   Defendants violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(l)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines, including lines in Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas, using artificial or prerecorded voices to deliver a message without the prior express written consent of the

called party and where the call was not initiated for emergency purposes or exempted by rule

or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

55.    Defendants' violations are willful and knowing.

### COUNT III
**(By all Plaintiffs – Violating the Prohibition against the Use of
Artificial or Prerecorded Voices to Cellular Telephone Lines)**

56.    Defendants violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by

engaging in a pattern or practice of initiating telephone calls to cellular telephone lines,

including lines in Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas,

using artificial or prerecorded voices to deliver a message without the prior express consent

of the called party and where the call was not initiated for emergency purposes or exempted

by rule or order of the Federal Communications Commission under 47 U.S.C. §

227(b)(2)(B).

57.    Defendants violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of

initiating telephone solicitations to cellular telephone lines, including lines in Arkansas,

Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas, using artificial or prerecorded

voices to deliver a message relating to health care without the prior express written consent

of the called party.

58.    Defendants' violations are willful and knowing.

### COUNT IV
**(By all Plaintiffs – Violating the Prohibition against Misleading or Inaccurate Caller
Identification Information)**

59.    Defendants violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating

telephone calls to residential lines using artificial or prerecorded voices to deliver messages

to residents in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio,

and Texas that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

60.    Defendants' violations are willful and knowing.

## COUNT V
### (By all Plaintiffs – Violating the Prohibition against Misleading or Inaccurate Caller Identification Information)

61.    Defendants violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information to residents in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and Texas.

62.    Defendants' violations are willful and knowing.

## <u>VIOLATIONS OF STATE TELEMARKETING LAWS</u>

## COUNT VI
### (By the State of Arkansas – Violating the ADTPA, Ark. Code Ann. §§ 4-88-101 *et seq.*)

63.    At all times relevant herein, Defendants are "persons" who engaged in the practices alleged herein which constitute the sale of "goods" or "services" as defined by Ark. Code Ann. § 4-88-102. Additionally, Defendants' practices constitute business, commerce, or trade under Ark. Code Ann. § 4-88-107.

64.    Ark. Code Ann. §§ 4-88-107(a)(11)(A), 108(a)(3), and 107(a)(10) prohibit a person from engaging in any unconscionable, false, or deceptive acts or practices in business, commerce, or trade, including displaying or causing to be displayed a fictitious or misleading name or telephone number on an Arkansas resident's telephone caller identification service.

65.    Defendants, and/or third parties acting on Defendants' behalf and at Defendants' direction,

16

violated Ark. Code Ann. §§ 4-88-107(a)(11)(A), 108(a)(3), and 107(a)(10) by making telephone calls to Arkansas residents for the purpose of soliciting, advertising, and selling goods or services and for each such call, displayed, or caused to be displayed, a fictitious or misleading name or telephone number on those residents' telephone caller identification services.

### COUNT VII
**(By the State of Arkansas – Violating the Regulation of Telephonic Sellers (RTS), Ark. Code Ann. § 4-99-101 *et seq.*)**

66.   Defendants are "persons" and "telephonic sellers," as defined by Ark. Code Ann. § 4-99-103(3) and (9)(A), as they have been at all times relevant herein, who engaged in initiating telephone solicitations of goods or services to Arkansas residents.

67.   Ark. Code Ann. § 4-99-104 provides that before doing business in the state, a telephonic seller must register with the Secretary of State each year.

68.   Ark. Code Ann. § 4-99-201(a)(1) requires that any person who, on behalf of any business, calls a residential phone number for the purpose of soliciting or to offer goods or services shall immediately disclose to the person contacted the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purpose of the telephone call, including a brief description of the goods or services to be offered. This statute further requires that the person calling shall not continue to provide information if the person receiving the telephone call indicates that he or she does not want to hear about the goods or services.

69.   Ark. Code Ann. §§ 4-99-201(c)(3)(A) and 4-99-302(b)(1) provide that no person who makes a telephone solicitation shall display or cause to be displayed a fictitious or

misleading name or telephone number on an Arkansas resident's telephone caller identification service.

70.     Defendants, and/or third parties acting on Defendants' behalf and at Defendants' direction, made telephone calls to Arkansas residents for the purpose of soliciting, advertising, and selling goods or services and for each such call, 1) failed to register as a telephonic seller with the Secretary of State as required by Ark. Code Ann. § 4-99-104; 2) failed to provide the disclosures required by Ark. Code Ann. § 4-99-201(a)(1); 3) failed to discontinue the call as required by Ark. Code Ann. § 4-99-201(a)(2); and 4) displayed, or caused to be displayed, a fictitious or misleading name or telephone number on those residents' telephone caller identification services in violation of Ark. Code Ann. §§ 4-99-201(c)(3)(A) and 4-99-302(b)(1).

71.     Pursuant to Ark. Code Ann. §§ 4-99-111, 4-99-201(c) and (e), and §4-99-303, a violation of the RTS constitutes a deceptive act or practice as defined by the ADTPA and may be enforced by the Attorney General. Further, the remedies and penalties available for RTS violations are cumulative and in addition to the remedies and penalties provided for ADTPA violations.

### COUNT VIII
**(By the State of Indiana – Violating the Telephone Solicitation of Consumers Act (the "TSCA"), Ind. Code 24-4.7-4)**

72.     Pursuant to Ind. Code § 24-4.7-3-1, the Office of the Attorney General quarterly publishes a no telephone sales solicitation listing ("Indiana's Do Not Call List"). Consumers place their telephone numbers on Indiana's Do Not Call List when they do not want to receive telephone calls soliciting the sale of a consumer good or service, as defined in Ind. Code § 24-4.7-2-3. The telephone calls described above were "telephone sales calls" because they were made to

18

solicit the sale of a consumer good or service or to obtain information to be used to solicit the sale of a consumer good or service including, without limitation, insurance or auto warranties.

73.   By making or causing to be made telephone sales calls to consumers residing in Indiana, Defendants are "doing business in Indiana," as defined by Ind. Code § 24-4.7-2-5(a), regardless of where the telephone calls originate or where Defendants are located. By controlling, directly or indirectly, one or more persons who made or caused others to make telephone calls to consumers located in Indiana, the persons are "doing business in Indiana," as defined by Ind. Code § 24-4.7-2-5(b), regardless of where the persons are located.

74.   By contacting or attempting to contact subscribers in Indiana by telephone, Defendants are "callers," as defined by Ind. Code § 24-4.7-2-1.7 and § 24-5-14-2. By "doing business in Indiana," Defendants are "telephone solicitors," as defined by Ind. Code § 24-4.7-2-10.

75.   By regularly engaging in or soliciting consumer transactions, whether or not Defendants deal directly with consumers, Defendants are "suppliers" as defined by Ind. Code § 24-4.7-2-7.7 and § 24-5-0.5-2.

76.   Many of the telephone sales calls were made to telephone numbers included on Indiana's Do Not Call List at the time of the calls. By making or causing others to make telephone sales calls to telephone numbers on Indiana's Do Not Call List at the time of the calls, Defendants committed many violations of the TSCA, Ind. Code § 24-4.7-4-1.

77.   As telephone solicitors, suppliers, and callers, Defendants may not sell, transfer, or make available to another person for solicitation purposes a consumer's telephone number if Defendants know that the telephone number is included in the most current version of Indiana's Do Not Call List. Ind. Code § 24-4.7-4-7(b). Defendants knew or should have

19

known that these telephone numbers were included in the applicable version of Indiana's Do Not Call List. Upon information and belief, Defendants may have sold, transferred, or made available to another person for solicitation purposes one or more consumers' telephone numbers that Defendants knew or should have known was included in the current version of Indiana's Do Not Call List.

78. As telephone solicitors, suppliers, and callers, Defendants may not transfer a live call to one or more persons if the call has been placed to a consumer in violation of the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(c). Upon information and belief, Defendants may have transferred live calls to people where the calls had been placed in violation of the TSCA and/or the Auto-Dialer Act.

79. As telephone solicitors, suppliers, and callers, Defendants may not provide substantial assistance or support to another person if Defendants know or consciously avoid knowing that the person has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(d). Upon information and belief, Defendants may have provided substantial assistance or support to other people whom Defendants knew or consciously avoided knowing were engaging in acts or practices that violated the TSCA and/or the Auto-Dialer Act.

80. Defendants may not provide substantial assistance or support to any other telephone solicitor, supplier, or caller if Defendants know or consciously avoid knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(e). Upon information and belief, Defendants may have provided substantial assistance or support to other telephone solicitors, suppliers, or callers even though Defendants knew or consciously

avoided knowing they were engaging in acts or practices that violated the TSCA and/or the Auto-Dialer Act.

81.     Each of the telephone calls made to telephone numbers on Indiana's Do Not Call List is a violation of Ind. Code § 24-4.7-4-1 and constitutes a deceptive act, as defined by Ind. Code § 24-4.7-5-1. It is believed and averred that Defendants made and/or participated in additional calls made to telephone numbers on Indiana's Do Not Call List; the numbers, dates, and times of said calls are known to Defendants, but are not known to Plaintiff at this time. Plaintiff asserts that Defendants may have committed additional violations of the TSCA arising from their participation in these additional calls.

### COUNT IX
**(By the State of Indiana – Violating the Regulation of Automatic Machines Dialing Act (the "Auto-Dialer Act"), Ind. Code 24-5-14)**

82.     The recipients of the telephone calls described above were "subscribers," as defined in Ind. Code § 24-5-14-4. By contacting or attempting to contact subscribers in Indiana by telephone, Defendants are "callers," as defined by Ind. Code § 24-5-14-2. The telephone calls described above were reported as "robocalls," meaning they were made by an automated dialing-announcing device, as defined by Ind. Code § 24-5-14-1, and disseminated a prerecorded voice message.

83.     The recipients of the prerecorded messages did not knowingly or voluntarily request, consent, permit, or authorize receipt of the message. The prerecorded messages were not preceded by a live operator who could have obtained each recipient's consent before the message was delivered.

84.     By using or connecting an automatic dialing-announcing device to telephone lines in Indiana and disseminating prerecorded voice messages without the required consent or authorization,

Defendants committed many violations of the Auto-Dialer Act, Ind. Code § 24-5-14-5(b). Each of the robocalls is a violation of the Auto-Dialer Act and constitutes a deceptive act that is actionable by the Indiana Attorney General under Ind. Code § 24-5-14-13.

85. It is believed and averred that Defendants made and/or participated in additional robocalls to Indiana telephone numbers; the numbers, dates, and times of said calls are known to Defendants, but are not known to Plaintiff at this time. Plaintiff asserts that Defendants may have committed additional violations of the Auto-Dialer Act and/or the TSCA arising from its participation in these additional robocalls.

**COUNT X**
**(By the State of Indiana – Violating the Telephone**
**Solicitation Registration of Sellers law, Ind. Code § 24-5-12-10)**

86. The telephone calls described above were "solicitations," as defined by Ind. Code § 24-5-12-9. By making a "solicitation," whether made personally, through salespersons, or by using robocalls, Defendants are "sellers." Ind. Code § 24-5-12-8.

87. By making solicitations either in Indiana or directed to prospects located in Indiana, sellers are "doing business in Indiana." Ind. Code § 24-5-12-10(b). Indiana law requires that "[b]efore doing business in Indiana, a seller must register with the division." Ind. Code § 24-5-12-10(a). In order to register, a person or company must file a registration statement disclosing certain required information and pay a registration fee. Ind. Code § 24-5-12-11.

88. To date, Defendants never registered as sellers as required. By failing to register as required, Defendants committed deceptive acts which are actionable by the Indiana Attorney General. Ind. Code § 24-5-12-23. Plaintiff may seek an injunction against Defendants prohibiting additional violations under Ind. Code § 24-5-12-21, and civil penalties under Ind. Code § 24-5-0.5-4(g) or Ind. Code § 24-5-0.5-8.

## COUNT XI
### (By the State of Indiana – Violating the Indiana
### Business Organizations Code, Ind. Code § 23-0.5-5-2)

89.    By contacting or attempting to contact Indiana telephone numbers to offer consumer goods or services, Defendants were doing or transacting business in Indiana.

90.    Rising Eagle Capital Group, LLC, is a limited liability company organized under the laws of Texas, therefore, Rising Eagle is a foreign filing entity as defined by Ind. Code §§ 23-0.5-1.5-8, 11, & 12. JSquared Telecom, LLC, is a limited liability company organized under the laws of Texas, therefore, JSquared Telecom, LLC is a foreign filing entity as defined by Ind. Code §§ 23-0.5-1.5-8, 11, & 12.

91.    Ind. Code § 23-0.5-5-2 provides that a foreign filing entity may not do business in Indiana until it registers with the Indiana Secretary of State. To date, neither Rising Eagle Capital Group, LLC, nor JSquared Telecom, LLC has registered with the Indiana Secretary of State.

92.    By transacting business in Indiana without registering as required, Rising Eagle Capital Group, LLC, and JSquared Telecom, LLC, violated Ind. Code § 23-0.5-5-2(a), and are each liable for a civil penalty of not more than ten thousand dollars ($10,000) under Ind. Code § 23-0.5-5-2(f). The attorney general may collect all penalties due under this subsection.

## COUNT XII
### (By the State of Indiana – Violating the Indiana law Prohibiting
### False or Misleading Caller Identification, Ind. Code § 24-5-14.5-9)

93.    Ind. Code § 24-5-14.5-9 prohibits knowingly causing the transmission of misleading or inaccurate caller identification information with intent to defraud, or cause harm to another person, or to wrongfully obtain anything of value. Caller identification information means information provided by a caller identification service regarding the origination of a telephone call, including the telephone number or name identification. Ind. Code § 24-5-

14.5-2.

94.   For the telephone calls described above, Defendants knowingly caused the transmission of misleading or inaccurate caller identification information. The names that were transmitted for the telephone calls included, without limitation, "Health Hotline," "We Care Health," and others. This name identification information is misleading or inaccurate because no Defendants have the names shown in the caller identification displays nor are they officially authorized to do business under these names.

95.   Defendants caused the misleading or inaccurate caller identification information to be transmitted with the intent to defraud one or more recipients of the calls, cause harm to one or more recipients of the calls, or to wrongfully obtain something of value from one or more of the recipients of the calls.

96.   By attempting to sell insurance or obtain information to be used for the sale of insurance to Indiana residents, Defendants were attempting to defraud recipients of the calls, and to wrongfully obtain something of value from the call recipients.

97.   By causing transmissions of misleading or inaccurate caller information with the requisite intent, Defendants committed many violations of Ind. Code § 24-5-14.5-9.

98.   Plaintiff asserts a general allegation regarding additional violations of Ind. Code § 24-5-14.5-9 by Defendants with respect to as yet unidentified Indiana consumers who may be identified during the course of this litigation and incorporates all associated legitimate claims herein by reference.

99.   Plaintiff, through the Office of the Attorney General, has authority to seek remedies, including injunctive relief and remedies under Ind. Code 24-5-0.5, for violations of Ind. Code § 24-5-14.5-9, pursuant to Ind. Code § 24-5-14.5-12(a) & (b).

## COUNT XIII
### (By the State of Michigan - Violating Michigan Consumer Protection Act, § 445.903(1)(gg))

100.    MCL 445.903(1)(gg) of the MCPA provides that it is a violation of the MCPA to violate the Michigan Home Solicitation Sale Act, MCL 445.111, *et seq.*, in connection with a telephone solicitation.

101.    MCL 445.111a(5) provides that no telephone solicitor shall make a telephone solicitation to a Michigan telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(5) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

102.    MCL 445.111a(1) prohibits any person from making a telephone solicitation using a prerecorded message, in whole or in part. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(1) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers using a prerecorded message, in whole or in part. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

103.    MCL 445.111b(3) makes it unlawful for telephone solicitors to interfere with the caller ID function on the telephone of Michigan telephone subscribers during the course of a telephone solicitation so that the telephone number of the caller is not displayed. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111b(3) and, thus, MCL

445.903(1)(gg) of the MCPA by interfering with the caller ID function on the telephone of Michigan telephone subscribers during the course of telephone solicitations so that the true and correct telephone number of the caller was not displayed. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

104. MCL 445.111b(1) requires any person making a telephone solicitation to state his or her name at the beginning of the telephone solicitation, to state the full name of the organization or other person on whose behalf the call was initiated at the beginning of the telephone solicitation, and to provide a telephone number of such organization or other person on request. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111b(1) and, thus, MCL 445.903(1)(gg) of the MCPA by failing to state his or her name at the beginning of the telephone solicitation, to state the full name of the organization or other person on whose behalf the call was initiated at the beginning of the telephone solicitation, and to provide a telephone number of such organization or other person on request. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

## COUNT XIV
### (By the State of Missouri - Violating the Missouri Do-Not-Call Law, § 407.1070, *et seq.*)

105. The Missouri Do-Not-Call Law makes it unlawful for a person to make a telephone solicitation to the telephone line of a residential subscriber who is on the Missouri no-call list. Mo. Rev. Stat. § 407.1098. Defendants violated the Missouri Do-Not-Call Law by making "telephone solicitations," as defined by Mo. Rev. State. § 407.1095(3), to "residential subscribers," as defined by Mo. Rev. State. § 407.1095(2), that were on the Missouri no-call list at the time the telephone solicitations were made.

106.   The Missouri Do-Not-Call Law also prohibits a person from knowingly using any method to block or otherwise circumvent any subscriber's use of a caller identification service. Mo. Rev. Stat. § 407.1104. Defendants' failure to transmit their legal business name and legitimate telephone numbers, and Defendants' falsification of telephone numbers violates this section of the Missouri Do-Not-Call Law.

**COUNT XV**

**(By the State of Missouri - Violating the Missouri Telemarketing Practices Act, § 407.1095,** *et seq.***)**

107.   The Missouri Telemarketing Practices Act provides that no telemarketer engaged in telemarketing may use a recorded message without, promptly at the beginning of the telephone call, informing the consumer that the call is being made by a recorded message. Mo. Rev. Stat. § 407.1073.1(5). Defendants have violated Mo. Rev. Stat. § 407.1073.1(5) by being telemarketers, as defined by Mo. Rev. Stat. § 407.1070(12), engaged in telemarketing, as defined by Mo. Rev. Stat. § 407.1070(13), and using recorded messages to make telephone calls to Missouri consumers without first informing the consumer that the call was being made by a recorded message.

108.   The Missouri Telemarketing Practices Act also provides that a telemarketer shall disclose, promptly and in a clear and conspicuous manner, to the consumer receiving the telephone call the telemarketer's identifiable name and the seller on whose behalf the solicitation is being made. Mo. Rev. Stat. § 407.1073.1(2). Defendants have violated Mo. Rev. Stat. § 407.1073.1(2) by being telemarketers, as defined by Mo. Rev. Stat. § 407.1070(12), and failing to identify their identifiable name and the name of the seller on whose behalf they made the telephone solicitation in a clear and conspicuous manner.

## COUNT XVI
### (By State of North Carolina - Violating General Statutes § 75-102)

109.   North Carolina General Statutes § 75-102(a) provides that no telephone solicitor shall make a telephone solicitation to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. N.C. Gen. Stat. § 75-102(d) also requires telephone solicitors to implement systems and procedures to prevent telephone solicitations to telephone subscribers whose numbers appear in the National Do Not Call Registry and to monitor and enforce compliance by its employees and independent contractors in those systems and procedures.

110.   Defendants, and/or third parties acting on Defendants' behalf, have violated N.C. Gen. Stat. § 75-102(a) by making telephone solicitations to the telephone numbers of North Carolina telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry.

111.   Defendants also violated N.C. Gen. Stat. § 75-102(d) by failing to monitor and enforce compliance by their employees, agents, and independent contractors in that, as set forth above, those persons made numerous telephone solicitations to the telephone numbers of North Carolina telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry.

112.   Defendants willfully engaged in the actions and practices described above.

## COUNT XVII
### (By State of North Carolina - Violating General Statutes § 75-104)

113.   North Carolina General Statutes § 75-104 provides that, subject to some exceptions, no person may use an automatic dialing and recorded message player to make an unsolicited

telephone call. One of those exceptions allows a person to make such calls if prior to the playing of the recorded message a live operator, among other things, states the nature and length in minutes of the recorded message, and asks for and receives prior approval to play the recorded message from the person receiving the call.

114.    Defendants, and/or third parties acting on Defendants' behalf, have violated N.C. Gen. Stat. § 75-104 by using automatic dialing and recorded message players to make unsolicited telephone calls to North Carolina telephone subscribers without first having live operators inform the telephone subscribers of the nature and length of the recorded message and asking for and obtaining permission to play the message from the person receiving the call, and otherwise not complying with any of the exceptions set forth in N.C. Gen. Stat. § 75-104.

115.    Defendants willfully engaged in the practices described above.

## COUNT XVIII
### (By State of Ohio - Violating the Ohio Consumer Sales Practices Act)

116.    The Ohio CSPA, O.R.C. § 1345.02 prohibits "suppliers" from engaging in unfair or deceptive consumer sales acts or practices, including deceptive direct solicitations.

117.    Defendants are "suppliers" as defined in O.R.C. § 1345.0l(C), since Defendants engage in the business of effecting "consumer transactions," either directly or indirectly, for purposes that are primarily personal, family, or household within the meaning as specified in O.R.C. § 1345.0l(A) of the CSPA.

118.    Defendants engaged in "direct solicitations" as defined in O.A.C. § 109:4-3-11 since Defendants initiated telephone solicitations to consumers at their residences.

119.    Defendants, either directly or as a result of a third party acting on Defendants' behalf,

violated O.R.C. § 1345.02(A) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers in the State of Ohio, whose telephone numbers were listed on the National Do Not Call Registry in violation of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(2).

120.    Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties and without falling within specified exemptions delineated within the TCPA in violation of the TCPA, 47 U.S.C. § 227(b)(l)(B) and 47 C.F.R. § 64.1200(a)(3).

121.    Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) engaging in a pattern or practice of initiating telephone calls to cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties and without falling within specified exemptions delineated within the TCPA in violation of the TCPA, 47 U.S.C. § 227(b)(l)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

122.    Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) and O.A.C. § 109:4-3-11 by engaging in direct solicitations without clearly, affirmatively, and expressly revealing upon initial contact with consumers or prospective consumers that the purpose of the contact is to effectuate sales and stating the general terms that were being offered.

## COUNT XIX
### (By the State of Ohio – Violating Ohio's Telephone Solicitation Sales Act)

123. Defendants initiated "telephone solicitations" to "purchasers," as they were at all times relevant herein engaged in initiating "communications" as or on behalf of "telephone solicitors" or "salespersons" to induce persons to purchase "goods or services," as those terms are defined in the Ohio TSSA, O.R.C. § 4719.01(A).

124. Defendants are "telephone solicitors" as that term is defined in the Ohio TSSA, O.R.C. § 4719.01(A)(8), as they were at all times relevant herein engaged in initiating telephone solicitations directly or through one or more salespersons either from a location in Ohio or from a location outside Ohio to persons in Ohio.

125. At all times relevant herein, Defendants were not registered as telephone solicitors with the Ohio Attorney General's Office pursuant to the Ohio TSSA, O.R.C. § 4719.02(A).

126. Defendants committed unfair or deceptive acts and practices in violation of Ohio CSPA, O.R.C. § 1345.02(A) and Ohio TSSA, O.R.C. § 4719.02(A) by acting as telephone solicitors without first having obtained certificates of registration from the Ohio Attorney General. These acts or practices have been previously determined by an Ohio court to violate the Ohio CSPA. Defendants committed said violations after such decisions were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

127. At all times relevant herein, Defendants did not have surety bonds as required by the Ohio TSSA, O.R.C. § 4719.04(A) on file with the Ohio Attorney General's Office.

128. Defendants violated Ohio TSSA, O.R.C. § 4719.04(A) by acting as a telephone solicitor without first having obtained and filed with the Ohio Attorney General a surety bond issued by a surety company authorized to do business in the State of Ohio.

129. Defendants committed unfair or deceptive acts and practices in violation of Ohio CSPA, O.R.C. § 1345.02(A) and Ohio TSSA, O.R.C. § 4719.06 by failing to disclose the solicitor's

true name and the name of the company on whose behalf solicitations were made, within the first sixty seconds of the telephone call. These acts or practices have been previously determined by an Ohio court to violate the Ohio CSPA. Defendants committed said violations after such decisions were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

**COUNT XX**
**(By the State of Texas - Violating Texas Telemarketing Disclosure and Privacy Act)**

130.   The Texas Telemarketing Disclosure and Privacy Act makes it unlawful for a telemarketer to make a telemarketing call to a telephone number that has been published on the then-current Texas no-call list for more than sixty days. Tex. Bus. & Com. Code § 304.052. Defendants, by making or causing to be made telemarketing calls, are "telemarketers" as defined by the Texas Telemarketing Disclosure and Privacy Act and have violated the Act by making telephone calls to telephone numbers that were included on the then-current Texas no-call list for longer than sixty days.

131.   The Texas Telemarketing Disclosure and Privacy Act also prohibits telemarketers from (i) blocking the identity of the telephone number from which the call is made to evade a device designed to identify a telephone caller; (ii) interfering with or circumventing the capability of a caller identification service or device to access or provide to the recipient of the telemarketing call any information regarding the call that the service or device is capable of providing; (iii) failing to provide caller identification information in a manner that is accessible by a caller identification service or device, if the telemarketer is capable of providing the information in that manner; or (iv) causing misleading information to be transmitted to a recipient's caller identification service or device or to otherwise

32

misrepresent the origin of a telemarketing call. Tex. Bus. & Com. Code § 304.151. Defendants' failure to transmit their legal business name and legitimate telephone numbers, and Defendants' falsification of telephone numbers violates this section of the Texas Telemarketing Disclosure and Privacy Act.

## CONSUMER INJURY

132.    Consumers in the United States have suffered and will continue to suffer injury as a result of Defendant's violations of the TCPA, Arkansas law, Indiana law, Michigan law, Missouri law, North Carolina law, Ohio law, and Texas law. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

### Prayer by All Plaintiffs

1.    Enter judgment against Defendants and in favor of Plaintiffs for each violation alleged in this complaint.

2.    Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunction.

3.    Assess against Defendants and in favor of the Plaintiffs damages of one thousand five hundred dollars ($1,500) for each violation of the TCPA found by the Court to have been committed by Defendants willfully and knowingly; if the Court finds Defendants have engaged in violations of the TCPA which are not willful and knowing, then assessing against Defendants damages of five hundred dollars ($500) for each violation of the

TCPA, as provided by 47 U.S.C. § 227.

4.      Permanently enjoin Defendants from violating the TCPA, both generally and specifically, by enumerating the acts in which Defendants are permanently enjoined from engaging.

**Prayer by Plaintiff Arkansas**

5.      Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any Defendant pursuant to Ark. Code Ann. §§ 4-88-104, 4-88-113(a)(1), 4-99-111, 4-99-201(c), and 4-99-303 from engaging in any of the prohibited practices described in Counts VI and VII herein.

6.      Impose civil penalties pursuant to Ark. Code Ann. § 4-88-113(b) in the amount of ten thousand dollars ($10,000) per each violation of the ADTPA as alleged in Count VI herein.

7.      Impose civil penalties pursuant to Ark. Code Ann. §§ 4-99-111, 4-99-201(c), 4-99-303 in the amount of ten thousand dollars ($10,000) per each violation of the RTS as alleged in Count VII herein.

8.      Enter an order pursuant to Ark. Code Ann. § 4-88-113(e) requiring Defendants to pay all costs and fees incurred by the State of Arkansas in this investigation and litigation, including, but not limited to, expert witness fees, attorneys' fees and court costs.

9.      Find all Defendants jointly and severally liable pursuant to Ark. Code Ann. § 4-88-113(d) for all relief, civil penalties, attorney's fees and costs imposed by the court herein in favor of the State of Arkansas.

**Prayer by Plaintiff Indiana**

10.     Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any Defendant from engaging in acts prohibited by Indiana law, including specifically:

a. Making or causing to be made telephone sales calls to telephone numbers on the Indiana DNC List in violation of the TSCA, Ind. Code § 24-4.7-4-1;

b. Making or causing to be made telephone calls via an automatic dialing-announcing device, as defined by Ind. Code § 24-5-14-1, and disseminating a prerecorded message in violation of Ind. Code § 24-5-14-5(b), pursuant to Ind. Code § 24-5-0.5-4(c)(1);

c. Failing to register as a seller as required by Ind. Code § 24-5-12-10;

d. Failing to register with the Indiana Secretary of State as a foreign filing entity as required by Ind. Code § 23-0.5-5-2;

e. Transmitting or causing the transmission of misleading or inaccurate caller identification information to Indiana telephone numbers with the intent to defraud someone, cause harm to someone, or to wrongfully obtain something of value from someone in violation of Ind. Code § 24-5-14.5-9.

11. Order Defendants, jointly and severally, to pay to the Office of the Indiana Attorney General:

a. any and all money Defendants obtained through all violations of Ind. Code 24-4.7-4, 24-5-14, or § 24-5-14.5-9;

b. a civil penalty of ten thousand dollars ($10,000) for the first violation and twenty-five thousand dollars ($25,000) for subsequent violations of the TSCA, Ind. Code § 24-4.7-4-1;

c. a civil penalty of five thousand dollars ($5,000) for each violation of the Auto-Dialer Act, Ind. Code § 24-5-14-5(b), occurring before July 1, 2019, and ten thousand dollars ($10,000) for the first violation and twenty-five thousand dollars ($25,000) for each subsequent violation occurring after July 1, 2019, according to the statutory terms in effect on the dates of the calls;

d.   a civil penalty of five thousand dollars ($5,000) for each violation of the Telephone Solicitation Registration law, Ind. Code § 24-5-12-10;

e.   a civil penalty of ten thousand dollars ($10,000) for each violation of the False and Misleading Caller Identification law, Ind. Code § 24-5-14.5-9; and

f.   reimbursement of its reasonable costs incurred in the investigation and prosecution of this matter, pursuant to Ind. Code § 24-4.7-5-2(4) and § 24-5-0.5-4(c)(4).

12.   Order that Defendants Rising Eagle Capital Group, LLC, and JSquared Telecom, LLC, each pay a civil penalty of ten thousand dollars ($10,000) for transacting business in Indiana without first registering with the Indiana Secretary of State in violation of Ind. Code § 23-0.5-5-2.

## Prayer by Plaintiff State of Michigan

13.   Enter an order pursuant to MCL 445.905(1) declaring that the acts and practices in which the Defendants engaged, as described in Count XIII, were both persistent and knowing and in violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq*.

14.   Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in unfair, deceptive or unconscionable acts or practices, including the conduct as specified in Count XIII, that are in violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq*.

15.   Enter an Order requiring Defendant to pay civil penalties to the Michigan Department of Attorney General pursuant to MCL 445.905(1), in the amount of twenty-five thousand dollars ($25,000) for each persistent and knowing violation of the Michigan Consumer Protection Act in addition to investigative and other costs and reasonable attorneys' fees.

## Prayer by Plaintiff State of Missouri

16.     Enter an order pursuant to Mo. Rev. Stat. §§ 407.100, 407.1107 declaring that the acts and practices in which the Defendants engaged, as described in Counts XIV – XV, were in violation of the Missouri Merchandising Practices Act, § 407.010, *et seq*.

17.     Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in violations of the Missouri Merchandising Practices Act, § 407.010, *et seq.*, specifically the Missouri Telemarketing Practices Act and the Missouri Do-Not-Call Law.

18.     Enter an Order requiring Defendants to pay civil penalties to the Missouri Attorney General in the amount of five thousand dollars ($5,000) for each violation of the Missouri Do-Not-Call Law, pursuant to Mo. Rev. Stat. § 407.1107, and one thousand dollars ($1,000) for each violation of the Missouri Telemarketing Practices Act, pursuant to Mo. Rev. Stat. §§ 407.1082, 407.100.

### Prayer by Plaintiff State of North Carolina

19.     Enter an order pursuant to N.C. Gen. Stat. §§ 75-14 and 75-105(a) permanently enjoining Defendants, their successors, agents, representatives, employees, assigns and all person who act in concert with Defendants from violating N.C. Gen. Stat. §§ 75-102 and 75-104.

20.     Enter an order imposing penalties pursuant to N.C. Gen. Stat. § 75-105(a)(1) for each defendant's violations of N.C. Gen. Stat. § 75-102 and § 75-104, in the amounts of five hundred dollars ($500) for each defendant's first violation, one thousand dollars ($1,000) for a defendant's second violation, and five thousand dollars ($5,000) for each defendant's third and subsequent violations occurring within two years of its first violation.

21.     Enter an order pursuant to N.C. Gen. Stat. § 75-105(d) finding Defendants willfully

engaged in violations of N.C. Gen. Stat. §§ 75-102 and/or 75-104 and award the State of North Carolina reasonable attorneys' fees.

**<u>Prayer by Plaintiff State of Ohio</u>**

22.    Enter an order pursuant to O.R.C. § 1345.07(A)(l) declaring that the Defendants' acts and practices described in Counts XVIII and XIX violated the Ohio CSPA, O.R.C. § 1345.01 *et seq.*; and that the violations occurred after decisions from Ohio courts determining those acts or practices violative of the Ohio CSPA were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

23.    Permanently enjoin Defendants, their agents, partners, representatives, employees, salespersons, successors or assigns, including any person or entity which purchases, acquires, or otherwise receives any interest (whether legal, equitable, contractual or otherwise) in Defendants' business and continues to engage in consumer transactions, from engaging in acts and practices which violate CSPA, O.R.C. § 1345.01 *et seq.*, and TSSA, O.R.C. § 4719.01 *et seq.*, including the conduct as specified in Counts XVIII and XIX.

24.    Enter an Order requiring Defendants to pay civil penalties to the Ohio Attorney General pursuant to O. R.C. § 1345.07, in the amount of twenty-five thousand dollars ($25,000) for each violation of the Ohio CSPA.

25.    Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in acts or practices, including the conduct as specified in Count XIX, that are in violation of the Ohio TSSA.

26.    Enter an Order pursuant to O.R.C. § 4719.12 requiring Defendants to pay civil penalties to the Ohio Attorney General, in the amount of not less than one thousand ($1,000) nor more than twenty-five thousand dollars ($25,000) for each violation of the Ohio TSSA as well as

investigative costs and reasonable attorney's fees.

## **Prayer by Plaintiff State of Texas**

27.  Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in violations of the Texas Telemarketing Disclosure and Privacy Act.

28.  Adjudge against Defendants and in favor of the State of Texas civil penalties of three thousand dollars ($3,000) for each violation of the Texas Telemarketing Disclosure and Privacy Act found by the Court to have been committed by Defendants willfully and knowingly; if the Court finds Defendants have engaged in violations of the Texas Telemarketing Disclosure and Privacy Act which are not willful and knowing, then adjudging against Defendants civil penalties of one thousand dollars ($1,000) for each violation of the Texas Telemarketing Disclosure and Privacy Act, as provided by Tex. Bus. & Com. Code § 304.252; as well as investigative costs and reasonable attorney's fees.

## **Prayer by All Plaintiffs**

29.  Order Defendants to pay the costs of this action, including costs of investigation incurred by Plaintiffs.

30.  Award Plaintiffs such other and additional relief as the Court may determine to be just and proper.


Dated: June 9, 2020                         Respectfully Submitted,

**FOR THE STATE OF ARKANSAS:**

LESLIE RUTLEDGE
Attorney General for the State of Arkansas


/s/  David McCoy_____
DAVID MCCOY (*Pro hac vice motion forthcoming*)
Ark. Bar No. 2006100
David.McCoy@ArkansasAG.gov
SHANNON HALIJAN (*Pro hac vice motion forthcoming*)
Ark. Bar No. 2005136
Shannon.Halijan@ArkansasAG.gov
PEGGY JOHNSON (*Pro hac vice motion forthcoming*)
Ark. Bar No. 92-223
Peggy.Johnson@ArkansasAG.gov
Assistant Attorneys General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)


*Counsel for Plaintiff*
*STATE OF ARKANSAS*

**FOR THE STATE OF INDIANA:**

Office of Indiana Attorney General


/s/  Douglas S. Swetnam_____
DOUGLAS S. SWETNAM (*Pro hac vice motion forthcoming*)
Indiana Bar No. 15860-49
Deputy Attorney General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
p: (317) 232-6294 | f: (317) 232-7979
douglas.swetnam@atg.in.gov

*Counsel for Plaintiff*
*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan


/s/  Wisam E. Naoum
WISAM E. NAOUM (*Pro hac vice motion forthcoming*)
Michigan State Bar No. P83335
NaoumW1@michigan.gov
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OFMICHIGAN*


**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of Missouri


/s/  Michelle L. Hinkl
MICHELLE L. HINKL (*Pro hac vice motion forthcoming*)
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer
TRACY NAYER (*Pro hac vice motion forthcoming*)
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
KRISTINE M. RICKETTS (*Pro hac vice motion forthcoming*)
North Carolina State Bar No. 46914
Pennsylvania Bar ID 89042
kricketts@ncdoj.gov
Assistant Attorneys General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile:  (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

41

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/  Erin B. Leahy
ERIN B. LEAHY (Ohio Bar #69509) (*Pro hac vice motion forthcoming*)
W. TRAVIS GARRISON (Ohio Bar #76757) (*Pro hac vice motion forthcoming*)
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas

/s/  Patrick Abernethy
PATRICK ABERNETHY
Texas State Bar No. 24109556
Patrick.abernethy@oag.texas.gov
C. BRAD SCHUELKE (*Pro hac vice motion forthcoming*)
Texas State Bar No. 24008000
Brad.schuelke@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*