## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

STATE OF TEXAS et al.,

     Plaintiffs,

     v.

RISING EAGLE CAPITAL GROUP LLC et al.,

     Defendants.

CASE NO. 4:20-cv-02021

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas file this Complaint pursuant to statutes as set forth below against RISING EAGLE CAPITAL GROUP LLC, JSQUARED TELECOM LLC, RISING EAGLE CAPITAL GROUP-CAYMAN,  JOHN C. SPILLER, II, Individually, and JAKOB A. MEARS, Individually; and Plaintiffs the States of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas file this Complaint pursuant to statutes as set forth below against HEALTH ADVISORS OF AMERICA, INC., MICHAEL THERON SMITH, JR., individually, and SCOTT SHAPIRO, individually, allege:

## <u>JURISDICTION AND VENUE</u>

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

1

§§ 1331, 1337(a), 1355, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2), the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(e), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § Part 310; and the Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), 47 U.S.C. § 227(g)(4), and 15 U.S.C § 6103(e). A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

3. The Plaintiffs notified the Federal Communications Commission of this civil action.

4. The Plaintiffs are notifying the Federal Trade Commission of this civil action immediately upon instituting such action, pursuant to 15 U.S.C. § 6103(b).

## PLAINTIFFS

5. Plaintiff State of Arkansas, by and through its Attorney General Leslie Rutledge, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Arkansas, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Arkansas, by and through its Attorney General Leslie Rutledge, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce

compliance with the TSR on behalf of the residents of the State of Arkansas, and to obtain damages, restitution, or other compensation. Plaintiff State of Arkansas, by and though its Attorney General Leslie Rutledge, is authorized by Ark. Code Ann. § 4-88-104 and Ark. Code Ann. § 4-99-111 to bring enforcement actions to enjoin violations of and enforce compliance with the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann §§ 4-88-101 *et seq.* and the Regulation of Telephonic Sellers (RTS), Ark. Code Ann. §§ 4-99-101 *et seq.*, and to obtain civil penalties of up to ten thousand dollars ($10,000) per violation of the ADTPA and up to ten thousand dollars ($10,000) per violation of the RTS, to seek restitution for consumers who have suffered any ascertainable loss, to recover all expenses reasonably incurred in the investigation and prosecution of this matter, as well as attorney's fees and costs.

6.   Plaintiff State of Indiana, by and through its Attorney General Curtis T. Hill, Jr., by its undersigned counsel, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Indiana, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Indiana, by and through its Attorney General Curtis T. Hill, Jr., is authorized by 15 U.S.C. § 6103(a) to file actions in federal

district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of Indiana, and to obtain damages, restitution, or other compensation.  Plaintiff State of Indiana, by and through its Attorney General, by its undersigned counsel, is also authorized by Ind. Code § 4-6-3-2 to bring enforcement actions to enjoin violations of and enforce compliance with the Indiana Telephone Solicitation of Consumers Act, Ind. Code 24-4.7, the Indiana Regulation of Automatic Machines Dialing Act, Ind. Code 24-5-14, the Telephone Solicitation Registration of Sellers law, Ind. Code § 24-5-12-10, the Indiana Business Organizations Code, Ind. Code § 23-0.5-5-2, and seek orders for civil penalties, reimbursement of costs, and other relief as allowed by law.

7.      Plaintiff State of Michigan, by and through its Attorney General Dana Nessel, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Michigan, and to obtain actual damages or damages off five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Michigan, by and through its Attorney General Dana Nessel, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of Michigan, and to obtain damages, restitution, or other compensation. Plaintiff State of Michigan, by and

through its Attorney General Dana Nessel, is also authorized by MCL 445.905(1) to bring enforcement actions to enjoin violations of and enforce compliance with the Michigan Consumer Protection Act, MCL 445.901, *et seq.* ("MCPA") and to obtain civil penalties of up to twenty-five thousand dollars ($25,000) per persistent and knowing violation of Section 3 of the MCPA, investigative and other costs, and reasonable attorneys' fees.

8. Plaintiff State of Missouri, by and through its Attorney General Eric Schmitt, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Missouri, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Missouri, by and through its Attorney General Eric Schmitt, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of Missouri, and to obtain damages, restitution, or other compensation. Plaintiff State of Missouri, by and through its Attorney General Eric Schmitt, is also authorized to bring enforcement actions to enjoin violations and seek orders for civil penalties for each violation and other relief for violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, specifically the Missouri Do-Not-Call Law and the Missouri Telemarketing Practices Act.

5

9.      Plaintiff State of North Carolina, by and through its Attorney General Joshua H. Stein, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of North Carolina, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of North Carolina, by and through its Attorney General Joshua H. Stein, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of North Carolina, and to obtain damages, restitution, or other compensation. Plaintiff State of North Carolina, by and through its Attorney General Joshua H. Stein, is also authorized by N.C. Gen. Stat. § 75-105 to bring enforcement actions to enjoin violations of and enforce compliance with the North Carolina Telephone Solicitations Act, N.C. Gen. Stat. §§ 75-100 *et seq.* and to obtain civil penalties of up to five hundred dollars ($500) for the first violation of that Act, one thousand dollars ($1,000) for the second violation, five thousand dollars ($5,000) for the third and any other violations of the Act, and reasonable attorneys' fees for willful violations.

10.     Plaintiff State of North Dakota, by and through its Attorney General Wayne Stenehjem, is authorized by 47 U.S.C. § 227(f)(1) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of

residents of the State of North Dakota, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of North Dakota, by and through its Attorney General Wayne Stenehjem, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of North Dakota, and to obtain damages, restitution, or other compensation. Plaintiff State of North Dakota, by and through its Attorney General Wayne Stenehjem, is also authorized by North Dakota Century Code ("N.D.C.C.") § 51-28-13 to enjoin violations of and enforce compliance with the North Dakota Telephone Solicitations Act, N.D.C.C. ch. 51-28, and has all the powers provided by N.D.C.C. ch. 51-15 and may seek, nonexclusively, all remedies provided by N.D.C.C. chs. 51-15 and 51-28, including injunctive relief, pursuant to N.D.C.C. § 51-15-07; costs and expenses, pursuant to N.D.C.C. §§ 51-15-10 and 51-28-18; and civil penalties, pursuant to N.D.C.C. §§ 51-15-11 and 51-28-17, of up to five thousand dollars ($5,000) and two thousand dollars ($2,000), respectively. Under N.D.C.C. §51-28-17, a violation of N.D.C.C. ch. 51-28 constitutes a violation of N.D.C.C. ch. 51-15.

11.    Plaintiff, State of Ohio, by and through its Attorney General Dave Yost, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the

State of Ohio, and to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Ohio, by and through its Attorney General Dave Yost, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of Ohio, and to obtain damages, restitution, or other compensation. Plaintiff State of Ohio, by and through its Attorney General Dave Yost, is also authorized to bring enforcement actions to obtain declaratory judgments, enjoin violations, and seek orders for consumer damages, civil penalties of twenty-five thousand dollars ($25,000) for violations of the Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Revised Code ("O.R.C.") §§ 1345.01 *et seq.* and its substantive rules, Ohio Administrative Code ("O.A.C"), §§ 109:4-3-01 *et seq.*, civil penalties of not less than one thousand ($1,000) nor more than twenty-five thousand dollars ($25,000) for each violation of the Ohio Telephone Solicitation Sales Act ("Ohio TSSA"), O.R.C. §§ 4719.01 *et seq.*, investigative costs, reasonable attorneys' fees and any other appropriate relief.

12. Plaintiff State of Texas, by and through its Attorney General Ken Paxton, is authorized by 47 U.S.C. § 227(g)(l) to file actions in federal district court to enjoin violations of and enforce compliance with the TCPA on behalf of residents of the State of Texas, and to obtain actual damages or damages of five hundred dollars

($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff State of Texas, by and through its Attorney General Ken Paxton, is authorized by 15 U.S.C. § 6103(a) to file actions in federal district court to enjoin violations of and enforce compliance with the TSR on behalf of the residents of the State of Texas, and to obtain damages, restitution, or other compensation. Plaintiff State of Texas, by and through its Attorney General Ken Paxton, is also authorized to bring enforcement actions to enjoin violations of and enforce compliance with the Texas Telemarketing Disclosure and Privacy Act, Tex. Bus. & Com. Code § 304.001 *et seq.* and to obtain civil penalties of up to one thousand dollars ($1,000) for each violation of the Act, and up to treble that amount for each violation committed knowingly or willfully, and reasonable attorneys' fees.

## DEFENDANTS

13. Defendant Rising Eagle Capital Group LLC ("Rising Eagle") is a limited liability company which was formed in April of 2014 under the laws of the State of Texas, with its principal place of business at 9022 N. Ferndale Place Dr., Houston, TX 77604.

14. Defendant Rising Eagle transacts business in the Southern District of Texas.

15. Defendant JSquared Telecom LLC ("JSquared") is a limited liability company which was formed in January of 2019, under the laws of the State of Texas, with its principal place of business at 9022 N. Ferndale Place Dr., Houston, TX 77604.

16. Defendant JSquared transacts business in the Southern District of Texas.

17.   Defendant Rising Eagle Capital Group – Cayman ("Rising Cayman") is a legal entity which was formed on October 16, 2019 in the Cayman Islands, with its registered office at:

> P.O. Box 2775
> 1st fl. Artemis House
> 67 Fort Street
> George Town
> Grand Cayman KY1-1111
> Cayman Islands

18.   Defendant Rising Cayman transacts business in the Southern District of Texas.

19.   Defendant John C. Spiller, II, ("Spiller") is an individual residing in the Southern District of Texas.

20.   Defendant Jakob A. Mears ("Mears") is an individual residing in the Southern District of Texas.

21.   Defendant Health Advisors of America, Inc. ("Health Advisors") is a Florida corporation, which was formed on April 10, 2017, with a principal place of business at 8140 NW 51st Place, Coral Springs, FL 33067.

22.   On June 14, 2019, Defendant Health Advisors was voluntarily dissolved.

23.   Defendant Health Advisors has transacted business in the Southern District of Texas.

24.   Defendant Michael Theron Smith, Jr. ("Smith") is an individual residing in Florida.

25.   Defendant Smith has transacted business in the Southern District of Texas.

26.   Defendant Scott Shapiro ("Shapiro") is an individual residing in Florida.

27.   Defendant Shapiro has transacted business in the Southern District of Texas.

## SUMMARY OF ALLEGATIONS

28.     All Plaintiff States allege violations of the TCPA against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears for calls made regarding health care coverage or insurance, auto warranty coverage or extension, and other calls offering goods or services.

29.     The Plaintiff States of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas[1] allege violations of the TCPA against Defendants Health Advisors, Shapiro, and Smith calls made regarding health care coverage or insurance.

30.     In the alternative, all Plaintiff States allege violations of the TSR against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears for calls excluding those made regarding health care coverage or insurance.

31.     In previous filings, Defendants Rising Eagle, JSquared, Spiller, and Mears have signaled their intention to challenge the constitutionality of the TCPA. While the Plaintiffs believe the challenge to be without merit, if the Court finds the TCPA unconstitutional for the time periods in question, all Plaintiff States seek alternative relief under the TSR.

32.     All Plaintiff States allege various state claims against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears.

33.     The Plaintiff States of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas allege violations of various state law against Defendants Health

---

[1] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. The matter was resolved by a consent judgment. Plaintiff State of Missouri, therefore, is not seeking any relief from these Defendants.

Advisors, Shapiro, and Smith.

## THE TELEPHONE CONSUMER PROTECTION ACT

34.     The TCPA, enacted in 1991, amended the Communications Act of 1934 by adding

47 U.S.C. § 227, which requires the Federal Communications Commission

("FCC") to

> … initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. . . . The regulations required by [the TCPA] may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and part thereof available for purchase. If the Commission determines to require such a database, such regulations shall- ... (F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database . . . .

47 U.S.C. § 227(c)(l) and (c)(3).

35.     In 1992, the FCC promulgated rules pursuant to the TCPA.

36.     On June 26, 2003, the FCC revised its rules and promulgated new rules pursuant

to the TCPA. These new rules established a "do not call" registry (the "National

Do Not Call Registry" or "Registry") of consumers who do not wish to receive

certain types of telemarketing calls. Consumers can register their telephone

numbers on the Registry without charge either through a toll-free telephone call

or over the Internet at www.donotcall.gov.

37.     Sellers, telemarketers, and other permitted organizations can access the Registry over the Internet at telemarketing.donotcall.gov to download the registered numbers.

38.     A relevant FCC Do-Not-Call Rule, 47 C.F.R. § 64.1200(c), provides in part: "(c) No person or entity shall initiate any telephone solicitation [as defined in paragraph (f)(14) of this section] to ... (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

39.     The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), respectively, provide in part: "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person ..."

40.     The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(b)(l)(B) and 47 C.F.R. § 64.1200(a)(3), respectively, provide that it is unlawful for a person to: "Initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call ... [is specifically exempted by rule or order]."

41.     The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful for any person to: "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using… an artificial or prerecorded voice… to any

telephone number assigned to a… cellular telephone service…" Relevant FCC Rule 47 C.F.R. § 64.1200(a)(1)(iii) similarly prohibits persons from initiating calls to a cellular telephone using an artificial or prerecorded voice without the prior express consent of the called party. Relevant FCC Rule C.F.R. § 64.1200(a)(2) further prohibits persons from initiating or causing to be initiated calls that include or introduce an advertisement or constitute telemarketing to cellular telephones using an artificial or prerecorded voice without the prior express written consent of the called party.

42.     The TCPA, 47 U.S.C. § 227(d)(3)(A) and FCC Rule, 47 C.F.R. § 64.1200(b)(1), provide in part that "all artificial or prerecorded voice telephone messages shall… at the beginning of the message, state clearly, the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."

43.     The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), respectively, provide that it is unlawful for a person "with the intent to defraud, cause harm, or wrongfully obtain anything of value" to cause any caller identification service to transmit or display "misleading or inaccurate caller identification information."

44.     The TCPA further provides in part:

14

> Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence.

47 U.S.C. § 227(g)(1).

45. This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injuries caused by Defendants' violations of the TCPA.

## The Telemarketing Sales Rule

46. The Telemarketing Act was enacted in 1994, and as part of the enactment, Congress found that "[c]onsumers and others are estimated to lose $40 billion a year in telemarketing fraud" and "[c]onsumers are victimized by other forms of telemarketing deception and abuse." 15 U.S.C. § 6101(3) and (4).

47. The act requires the Federal Trade Commission ("FTC") to

> include in such rules respecting deceptive telemarketing acts or practices a definition of deceptive telemarketing acts or practices which shall include fraudulent charitable solicitations, and which may include acts or practices of entities or individuals that assist or facilitate deceptive telemarketing…. (3) The Commission shall include in such rules respecting other abusive telemarketing acts or practices-- (A) a requirement that telemarketers may not undertake a pattern of unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to

15

privacy.

15 U.S.C. § 6102(a)(2) and (a)(3)(A).

48. In 1995, the FTC promulgated rules pursuant to the Telemarketing Act, naming it the Telemarketing Sales Rule ("TSR").

49. On December of 2015, the FTC amended its rules and promulgated new rules pursuant to the Telemarketing Act.

50. Pursuant to 15 U.S.C. § 6103(a), the Plaintiff States are able to enforce the TSR.

51. Defendants Spiller, Mears, Rising Eagle, Rising Cayman, and JSquared are all "sellers" or "telemarketers" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg). For purposes of the TSR, a "seller" is any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd). A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

52. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

53. The 2003 amendments to the TSR established the National Do Not Call Registry, maintained by the FTC, of consumers who do not wish to receive certain types of

telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

54.    The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at www.telemarketing.donotcall.gov, to pay any required fee(s), and to download the numbers not to call.

55.    The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

56.    The TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. 16 C.F.R. § 310.4(b)(1)(v)(A).

57.    The TSR requires telemarketers in an outbound telephone call to induce the purchase of services to disclose the identity of the seller truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call. 16 C.F.R. § 310.4(d)(1).

58.    The TSR provides that it is a deceptive telemarketing act or practice when "[m]isrepresenting, directly or by implication, in the sale of goods or services any of the following material information:" "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).

17

59.     The TSR makes it a deceptive telemarketing act or practice when "[m]aking a false or misleading statement to induce any person to pay for goods or services…" 16 C.F.R. § 310.3(a)(4).

60.     The TSR makes it an abusive telemarketing act or practice to "fail to honor" a call receiver's request to be placed on a do not call list. 16 C.F.R. § 310.4(b)(1)(ii).

61.     "It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule." 16 C.F.R. § 310.3(a)(4).

62.     The Telemarketing Act further provides, in part:

> Whenever an attorney general of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title, the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution, or other compensation on behalf of residents of such State, or to obtain such further and other relief as the court may deem appropriate.

15 U.S.C. § 6103(a).

63.     This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injuries caused by some of the Defendants' violations of the TSR.

## RISING EAGLE DEFENDANTS' BUSINESS PRACTICES

64. Defendants Spiller, Mears, Rising Eagle, Rising Cayman, and JSquared (collectively, "Rising Eagle Defendants") are in the business of generating and selling sales leads (i.e. prospective customers).

65. In an effort to generate sales leads, Rising Eagle Defendants collectively initiate millions of outbound telephone calls that deliver artificial or prerecorded voice messages ("robocalls") to residential and/or cellular telephone numbers of residents in the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, Texas and other states throughout the United States.

66. Rising Eagle Defendants initiate calls to residential and/or cellular lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties.

67. Rising Eagle Defendants' robocall campaigns advertise various goods and services including healthcare products and automobile extended warranties.

68. All of the Rising Eagle Defendants actively participate in the initiation of the illegal robocalls and are thus all jointly and severally liable for the illegal conduct.

## RISING EAGLE

69. On April 9, 2014, Defendant Spiller formed Rising Eagle Capital Group LLC as a Texas Limited Liability Company.

70. On March 17, 2017, Defendant Spiller filed for an Assumed Name Certificate

with the Texas Secretary of State, on behalf of Rising Eagle, to create the assumed name "Rpg Leads."

71.   On June 1, 2018, Defendant Spiller filed an amendment with the Texas Secretary of State making Jakob Mears the registered agent and a governing Member of Rising Eagle.

72.   From at least June of 2018 through January 30, 2019, Defendants Spiller and Mears conducted their robocall business primarily through Defendant Rising Eagle. During this time, Defendants Spiller, Mears, and Rising Eagle initiated abusive robocalls on behalf of their clients to the residential and/or cellular telephone numbers of consumers nationwide, including in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas. In turn, their clients paid Rising Eagle millions of dollars.

73.   From January 30, 2019, through the filing of this lawsuit, Defendants Spiller and Mears continued to conduct their robocalls through Defendant Rising Eagle, but starting in February 2019, they also started utilizing the entity JSquared Telecom as detailed below.

**JSQUARED TELECOM LLC**

74.   On January 30, 2019, Defendant Spiller formed JSquared Telecom LLC in Texas. Defendant Spiller named himself as the registered agent and Rising Eagle Capital Group LLC as the sole managing member.

75.   Defendant JSquared Telecom, LLC. is registered with the Federal Communications

20

Commission as a provider of interconnected voice-over-internet-protocol ("VoIP") telecommunications services. As an interconnected VoIP service provider, JSquared provides information services pursuant 47 U.S.C. § 153 of the Communications Act of 1934, as amended.

76.    In Defendant JSquared's capacity as a provider of interconnected VoIP, JSquared received traceback requests from and communicated with the USTelecom-led Industry Traceback Group ("Traceback Group").

77.    The Traceback Group is a consortium coordinating industry-led efforts to trace back the origin of suspected unlawful robocalls. A traceback is the process of tracing a suspected illegal robocall through multiple provider networks until the originating provider or the calling party is identified. The Traceback Group operates under the Communications Act (Section 222(d)(2)) which permits telecommunications carriers to disclose and/or permit access to Customer Proprietary Network Information ("CPNI") if suspected fraud, abuse, or unlawful use of services exist. The Traceback Group coordinates with federal and state law enforcement agencies.

78.    Although Defendant JSquared purports to be merely a VoIP service provider that provides VoIP service to Defendant Rising Eagle, Defendant JSquared's responses to traceback requests illustrate its direction and participation in the initiation of illegal robocalls as described in this Complaint and as such, it is jointly and severally liable for the illegal conduct. For example:

   a.    In responding to requests for information about calls made by the Rising

Eagle Defendants submitted by the Traceback Group, Defendant Spiller often responds on behalf of JSquared. Such communications often demonstrate that JSquared is responsible for making the calls. For example, in one such email exchange, Spiller represented to the Traceback Group that Rising Eagle Defendants obtained consent from the consumer before making the calls. In an attempt to explain why the duration of the calls was so short if consumers consented to the calls, he wrote:

> They optedin at some point in the past and they either got insurance from another company that also received their lead after they optedin and they got the sale and by the time *we* called them they were already set with the health insurance hence the reason for the short calls they must have opted out of the call when they received it because many of *our calls* when the client opts out that means on *our system* they go to a black box area and *we* automatically scrub them out of any future calls and if *we* load another list in and their number is in that list *we* automatically scrub them out. Once a person opts out on *our system* they are scrubbed out no matter what.
> …
> Thank you for your email…I appreciate you saying that you've seen a huge impact on *me* taking steps to make *my calls* better that means a lot…(Emphasis Added)

Defendant Spiller signed the email, "John Spiller, JSquared Telecom, LLC."

Defendant Spiller copied Defendant Mears on the email.

b.    In response to another traceback request, Defendant JSquared's "compliance and regulatory" counsel admitted that JSquared controlled the content of the robocall that was delivered, "Jsquared now includes the code UST 239 RPG at the end of all auto warranty messages confirming compliance."

79.     Alternatively, as detailed below, JSquared and Rising Eagle operate as a common business enterprise and/or the veil between JSquared and Rising Eagle should be pierced.

## SPILLER AND MEARS

80.     Defendants Spiller and Mears directly participate in, control, and authorize the illegal telemarketing operation of Defendants Rising Eagle and JSquared. They were the central figures and acted as the guiding spirit of the entire operation.

81.     From April 9, 2014, until January 12, 2020, Defendant Spiller served as founder, managing member, and director of Rising Eagle.

82.     From June 1, 2018, to January 12, 2020, Defendant Mears served as director, managing member, and agent for service of legal process for Rising Eagle.

83.     On January 12, 2020, Defendant Mears filed an amendment with the Texas Secretary of State replacing Defendant Mears and Defendant Spiller as members of Rising Eagle with Rising Eagle Capital Group Cayman, a new entity they had formed in the Cayman Islands.

84.     On January 30, 2019, Defendant Spiller formed JSquared Telecom LLC, appointing himself as its registered agent and Rising Eagle as its sole member.

85.     On January 13, 2020, Defendant Mears amended JSquared's LLC formation to make Rising Eagle Capital Group Cayman as the sole managing member, replacing Rising Eagle Capital Group LLC.

86.     On April 9, 2019, Spiller signed a contract with Talkie Communications ("Talkie")

for Defendant Rising Eagle to purchase for resale VoIP service. Spiller signed the contract as the President and Founder of Rising Eagle. On May 16, 2019, Spiller contacted Talkie and inquired, "Can you kindly update my company name to Jsquared Telecom LLC, the form 499 is being applied to this company not my other one." On June 26, 2019, Spiller signed a Certification of Company Status form with Talkie for JSquared. Spiller signed the document as the Manager and President of JSquared and listed his email address as rpgleads@gmail.com.

87.   On April 16, 2019, Rising Eagle began paying Talkie for Talkie's services from Rising Eagle's corporate bank account. Rising Eagle continued paying Talkie until the status was changed to JSquared. After the status was changed to JSquared, Spiller began paying for Talkie's services through his PayPal account, using money from the Rising Eagle corporate bank account. When Talkie terminated JSquared's service, Defendant Spiller attempted to convince Talkie to reconnect its service.

88.   Between June 1, 2019, and the filing of this lawsuit, Defendants Spiller and Mears had dozens if not hundreds of communications with the Traceback Group regarding illegal robocalls placed by Rising Eagle Defendants. In many of those communications Defendant Spiller described the steps he and the Rising Eagle Defendants were taking to remedy the issues pointed out by the Traceback Group.

89.   Defendant Spiller admitted to the Traceback Group in June 2019 that he was making millions of calls per day and was purposefully calling consumers on the do-not-call

registries as a way to boost sales. He also admitted that he was calling mobile phones even though his message did not identify his business name and engaged in spoofing (displaying numbers on CallerID that did not belong to him). He assured the Traceback Group that he was in the process of obtaining 100,000 of his own numbers to use, his message would include his business name, and he would stop calling mobile numbers.

90. Defendant Spiller similarly admitted to the Traceback Group in September 2019 that Rising Eagle Defendants did not leave messages and did not provide a call back number where consumers could contact Rising Eagle Defendants and request not to be called.

91. Defendant Mears also routinely communicated with the Traceback Group, often providing fraudulent information purporting to establish that consumers had supposedly consented to receiving Rising Eagle Defendants' calls.

92. Moreover, from late November 2018 through early March 2019, while Defendant Spiller was incarcerated in Travis County, Texas, Defendant Mears continued Rising Eagle Defendants' illegal robocall operations.

93. While Defendant Spiller was incarcerated, Defendant Mears had control and access to Defendant Rising Eagle's bank account.

94. During this period, Defendant Mears would process transactions at Defendant Spiller's behest.

95. While Defendant Spiller was incarcerated, he continued to manage the business with

Defendant Mears over the jailhouse phone.

96.     In a call with Defendant Mears, Defendant Spiller stated: "We need sixteen more

sales, then yeah. If you can put two more campaigns on some clusters that we're not

using right now. You should put two more campaigns up for Scott [Shapiro] and Mike

[Smith]. . . . If you can keep it under ten people waiting for a call, you might be able

to get beyond forty-two sales today."

97.     Later in the call, Defendant Mears stated: "I have those set up. Forty-eight for me,

and it should all be good to load."

98.     In another call, when discussing a client who had not paid Defendant Rising Eagle,

Defendant Spiller told Defendant Mears to "not turn him on today. If he does not

make a payment today, do not turn him on."

99.     Later in the call, Defendants Spiller and Mears had this back-and-forth:

Spiller: You ready to give me back the controls and help you?

Mears: Yep. . . .

Mears: So what part are you taking over?

Spiller: Loading the leads and talking to the clients. Making sure everyone is

staying on track. Making sure payments are coming in day of and not

the day after. Making sure business flow is back running smoothly

again to where I can expect Scott [Shapiro] and Mike [Smith] to pay

me the day that they finish their numbers. . . . Going to help you

manage the accounts. Then I'm going to bring three more people on.

And then manage their accounts.

Mears: So my role would just be the dialer itself?

Spiller: The dialer itself.

Mears: I am going to get the company back up to making thirty-thousand dollars a week again.

100. In another call, Defendant Spiller discussed having Defendant Mears tell Defendant Shapiro that Defendant Rising Eagle was going to charge Defendant Health Advisors more money.

101. In the call, Defendant Spiller stated: "Look, we gave him dedicated servers. We've given him a dedicated space. We've given him dedicated everything. We've cloned his name outside. So when he registered for Ryan for Rsquared, we cloned another name under his name, so that he's hidden from the FTC."

102. In another call, Defendants Spiller and Mears discussed Defendant Smith and Shapiro, in this exchange:

Spiller: Are they still giving you leads every week?

Mears: Yeah. They send me a couple of million leads a week.

Spiller: So have you recycled the leads you used six weeks ago? . . .

Mears: Currently, I am on the leads from six weeks ago.

Spiller: Okay. What about the leads from eight to ten to twelve weeks ago?

Mears: Those were probably used last month.

103. Further, between February 28, 2020, and April 7, 2020, Rising Eagle's corporate

charter was forfeited and its authority to transact business in Texas was revoked for failing to file a franchise tax return and/or pay state franchise tax. During that period, Defendants Spiller and Mears were personally liable for any debts or other liabilities incurred by Rising Eagle.

104. Similarly, between January 26, 2018, and June 1, 2018, Rising Eagle's corporate charter was forfeited and its authority to transact business in Texas was revoked. During that period, Defendant Spiller was personally liable for any debts or other liabilities incurred by Rising Eagle.

**RISING EAGLE DEFENDANTS'**
**ILLEGAL TELEMARKETING PRACTICES**

105. Rising Eagle Defendants, in generating leads for their clients, have placed billions of abusive robocalls to the residential and/or cellular telephone numbers of consumers nationwide, including in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

106. Rising Eagle Defendants are aware of the various federal and state telemarketing laws intended to protect the privacy of consumers from unwanted and harassing phone calls. Rising Eagle Defendants are aware that their clients have been sued in connection with illegal calls made by Rising Eagle Defendants. In one such case, Rising Eagle received a subpoena and Defendant Spiller submitted a sworn affidavit detailing Rising Eagle's response to the subpoena and describing Rising Eagle Defendants' calling practices from as early as April of 2018.

107.    Despite Rising Eagle Defendants' knowledge of the state and federal telemarketing laws, Rising Eagle Defendants willfully initiated calls to consumers in disregard for such laws.

108.    During the timeframe relevant to the calls referenced herein, the Rising Eagle Defendants were not registered to download the National Do Not Call Registry.

109.    Between January 1, 2019, and May 14, 2019, Defendants Rising Eagle and JSquared, under the direction and control of Defendants Spiller and Mears, initiated at least 136 million robocalls to the residential and/or cellular telephones of Texas residents. Similarly, during that same time period, Rising Eagle Defendants initiated more than 11 million robocalls to residents of Arkansas, 25 million robocalls to residents of Indiana, 42 million robocalls to residents of Michigan, 14 million robocalls to residents of Missouri, 44 million robocalls to residents of North Carolina, at least 2.5 million robocalls to residents of North Dakota, and 56 million robocalls to residents of Ohio.

110.    Despite the astronomical numbers of robocalls initiated by the Rising Eagle Defendants, the Rising Eagle Defendants have falsely claimed on numerous occasions, including to regulators and the Traceback Group, the call recipients consented to receive such calls.

111.    As Defendant Spiller admitted to the Traceback Group, Defendants Rising Eagle and JSquared initiate telephone calls using artificial or prerecorded voices to deliver

messages that fail to clearly identify, at the beginning of the message, the business, individual, or other entity responsible for initiating the call.

112.    In many instances, consumers who answer calls initiated by Rising Eagle Defendants are greeted by automated, prerecorded voice messages. For example, many of the calls Rising Eagle Defendants initiate are related to health insurance or other health-related products. Although Rising Eagle Defendants use many different prerecorded messages, one message used by Rising Eagle Defendants states:

> Hi, this is Ann. I am calling to let you know we have been granted a limited health enrollment period for a few weeks, so you and your family can get a great insurance plan at the price you can afford. And we make it hassle free to sign up. We have pre-approvals ready in your area including Cigna, Blue Cross, Aetna, United and many more. Press 1 to get a hassle-free assessment or press 2 to be placed on our do not call list. Thanks for your time and be healthy and blessed.

113.    Contrary to Rising Eagle Defendants' representations, Rising Eagle Defendants did not have a relationship with the insurance companies. In fact, at least one of the listed companies does not even sell the type of products Rising Eagle Defendants purport to offer.

114.    In other instances, Rising Eagle Defendants initiate calls to consumers which delivered robocalls related to extended service warranties for automobiles. One such message delivered by Rising Eagle Defendants states:

> We've been trying to reach you concerning your
> cars extended warranty. You should have received
> something in the mail about your cars extended
> warranty since we have not gotten a response. We
> are giving you a final courtesy call before we close
> out your file. Press two to be removed and put on
> our do not call list press one to speak with someone
> about possibly extending or reinstating your cars
> warranty. Again, press one to speak with a warranty
> specialist.

115. For some of the auto warranty calls, Rising Eagle Defendants called
consumers on the National Do Not Call List.

116. For some of the auto warranty calls, Rising Eagle Defendants initiated a call
that delivered a prerecorded message to induce the purchase of a service,
without valid, express written consent from the consumer.

117. For some of the auto warranty calls, Rising Eagle Defendants did not include
the identity of the seller in the initial outbound call.

118. Rising Eagle Defendants' "extended warranty" robocalls imply that the caller
has specific knowledge of a warranty on the consumer's automobile, a
relationship with the auto manufacturer and that the purpose of the call is to
extend or reinstate that particular warranty.

119. In fact, Rising Eagle Defendants have no connection with any car
manufacturer and the true purpose of the call is to solicit the sale of a vehicle
service contract. Moreover, the "extended warranty" service the Rising Eagle
Defendants and/or their clients are selling is not a warranty backed by the
manufacturer, but a vehicle service contract which does not have the same

legal characteristics and protections of a warranty.

120. Rising Eagle Defendants, directly or indirectly, misrepresented the material aspect of the service, as they were not selling a warranty backed by the manufacturer.

121. Rising Eagle Defendants made false or misleading statements to induce the call receiver to pay for an extended warranty service, as the automated recording stated the consumer had been sent mail and this was their last chance.

122. Further, some of the consumers either did not have a car or currently had an auto warranty.

123. Further, when some consumers pressed the number "to be removed and put on our do not call list," they continued to receive the same prerecorded voice message through additional telephone calls.

124. Rising Eagle Defendants further initiate outbound telephone solicitations to telephone numbers registered on the Registry or to telephone numbers registered on state-specific do-not-call registries, including those for the States of Indiana, Missouri, and Texas. Defendant Spiller admitted to the Traceback Group that, at least at times, such calls were made intentionally.

125. In 2019, Rising Eagle Defendants initiated a little over 66 million robocalls to residential and/or cellular telephone numbers associated with North Carolina area codes, and more than 32 million of those calls were placed to telephone

numbers on the National Do Not Call Registry. And in the first three months of 2020, Rising Eagle Defendants initiated a little over 9 million robocalls to residential and/or cellular telephone numbers associated with North Carolina area codes, more than 2 million of which were on the Registry.

126. Between January and April of 2019, Rising Eagle Defendants initiated at least 2.5 million robocalls to residential and/or cellular telephone numbers associated with North Dakota area codes, and these calls included calls placed to telephone numbers on the National Do Not Call Registry. Between January 1 and March 25, 2020 Rising Eagle Defendants initiated over 550,000 robocalls to residential and/or cellular telephone numbers associated with North Dakota area codes, and these calls included calls placed to telephone numbers on the National Do Not Call Registry.

127. Between January and May of 2019, Rising Eagle Defendants initiated at least 11 million robocalls to residential and/or cellular telephone numbers associated with Arkansas area codes, and these calls included calls placed to telephone numbers on the National Do Not Call Registry. Beyond this period, Rising Eagle Defendants continue to initiate robocalls in similar magnitude to residential and/or cellular telephone numbers associated with Arkansas area codes, and these calls included calls placed to telephone numbers on the National Do Not Call Registry.

128. Between January and May of 2019, Rising Eagle Defendants initiated over 56

million robocalls to residential and/or cellular telephone numbers associated with Ohio area codes. Of those 56 million robocalls, over 30 million were placed to telephone numbers on the National Do Not Call Registry. Between January and March of 2020, Rising Eagle Defendants initiated over 10 million robocalls to residential and/or cellular telephone numbers associated with Ohio area codes. Of those calls, over 2.3 million were placed to numbers on the Registry.

129.   Between January and May of 2019, Rising Eagle Defendants initiated over 42 million robocalls to residential and/or cellular telephone numbers associated with Michigan area codes. Of those 42 million robocalls, over 19 million were placed to telephone numbers on the National Do Not Call Registry.

130.   Similarly, of the more than 25 million robocalls Defendants Rising Eagle and JSquared initiated to telephone numbers associated with Indiana area codes between January 1, 2019, and May 14, 2019, over 13.5 million were to numbers on the National Do Not Call Registry, and more than 5 million were to numbers on the Indiana Do Not Call Registry. Likewise, between January and April of 2019, Rising Eagle Defendants initiated more than 5 million robocalls to telephone numbers on the Missouri Do Not Call Registry. And of the more than 136 million robocalls Rising Eagle Defendants initiated to residential and/or cellular telephone numbers associated with Texas area codes, more than 57 million of them were to numbers on the National Do Not

Call Registry. During a seven-day period in March of this year, Rising Eagle Defendants initiated a little over 5 million robocalls to residential and/or cellular telephone numbers associated with Texas area codes, nearly one million of which were to numbers on the National Do Not Call Registry.

131.   At least prior to September 10, 2019, Rising Eagle Defendants took steps to avoid being identified as originators of illegal robocalls, including transmitting misleading and inaccurate caller identification information. For example, in June 2019, after first questioning how they got his information, Defendant Spiller admitted to the Traceback Group that Rising Eagle Defendants engaged in the practice of "spoofing," whereby they knowingly transmitted misleading or inaccurate telephone numbers through the caller identification service. Rising Eagle Defendants engaged in spoofing in order to continue to perpetuate their illegal conduct, and with the intent to defraud, cause harm, or obtain something of value.

132.   Rising Eagle Defendants continued to engage in spoofing for months after assuring the Traceback Group in June 2019 that they would stop. Defendant Spiller subsequently admitted to the Traceback Group on September 10, 2019, "we just started the new process of not using spoofed numbers on September 10th at 11am EST…So yes on the 9th we were still using the old way of using spoofed numbers."

133.   Even after Rising Eagle Defendants purportedly stopped using telephone

numbers to which they had absolutely no connection, Rising Eagle Defendants continued to replace their actual number with numbers with the same area codes and prefixes of call recipients to mislead the recipients into believing the calls were coming from the local area and presumably from callers known to the recipients. This practice is typically referred to as "neighborhood spoofing."

134. Rising Eagle Defendants further attempt to conceal their identities by delivering robocalls that fail to identify Rising Eagle Defendants or their clients.

135. Since initiating this proceeding, Rising Eagle Defendants have continued to initiate robocalls regarding the auto warranty inducement.

### COMMON ENTERPRISE

136. Defendants Rising Eagle and JSquared operate as a common enterprise under the direction and control of Defendants Spiller and Mears. As such, Rising Eagle Defendants are jointly and severally liable for the illegal telemarketing practices described herein.

137. By way of example, Rising Eagle and JSquared share corporate officers: Spiller and Mears.

138. Rising Eagle and JSquared use the same corporate address in Houston, Texas. That property is owned by Margarita (Casanova) Lemus, a signatory on one of Rising Eagle's corporate bank accounts.

139.	JSquared's debts are routinely paid through Rising Eagle's bank account or through Spiller's PayPal account from Rising Eagle funds.

140.	Further, Spiller and Mears communicate to vendors and other third parties using Rpg Leads' email addresses, whether they are communicating on behalf of Rising Eagle or JSquared.

### PIERCING THE CORPORATE VEIL

141.	In the alternative, the Court should pierce the corporate veil between Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears.

142.	Rising Eagle Defendants demonstrated a complete lack of respect to the separate identities of each entity and comingled corporate and personal assets.

143.	Defendants Spiller and Mears served as the only two directors and officers of Rising Eagle and JSquared.

144.	Upon information and belief, Defendants Spiller and Mears serve as directors of Rising Cayman.

145.	Defendants Spiller and Mears controlled Defendant Rising Eagle's corporate bank account with Bank of America. This account comingled money for Defendants Rising Eagle, JSquared, and Spiller's and Mears' personal business.

146.	Defendant Rising Eagle's bank account was connected with Defendant Spiller's personal PayPal account, which was used for Rising Eagle, JSquared, and personal transactions. The PayPal account was funded by Rising Eagle's bank account.

147.	Defendants Spiller and Mears used Rising Eagle's corporate bank account to make

personal expenditures. This spending included:

- Tens of thousands of dollars for civil settlements and criminal defense fees;

- A $100,000 check to Margarita Casanova, signed by Defendant Spiller;

- Thousands more to Margarita Casanova;

- Thousands of payments to Mears for "good work;"

- Thousands in gifts to Defendants Spiller's and Mears' family and friends;

- Tens of thousands to Michael Hubacek, the owner of Sober Living Houston, the sober living facility Defendant Spiller entered as a condition of his release. Some of the payments, however, noted that they were for "Ms. Gayle";

- Rent or mortgage payments for Margarita Casanova's home;

- Thousands to Brian Failla and Fatima Melgar, who owned a defunct Florida LLC with Defendant Spiller;

- Thousands on electronic cigarettes, tobacco, and/or vaping products; and

- Watches, jewelry, car accessories, bed sheets, furniture, and 900 comic books.

148.   Between May 20, 2019, and August 19, 2019, Rising Eagle sent eleven payments of $100 to H. L.,[2] each with the memo notation of: "[H.L.] For when you Graduate."

149.   Defendants Spiller's and Mears' use of corporate funds for personal expenses not only illustrates their lack of respect for the separateness of each entity, but it also diverted

---

[2] To protect the identity of a possible minor, Plaintiffs have used initials.

assets from the corporations to fund substantial personal expenses, limiting the corporations' abilities to satisfy remedial obligations.

150.    Defendants Spiller and Mears further have a history of opening and shutting down companies. They have collectively formed at least a dozen companies and used at least 26 business names.

151.    Treating Rising Eagle, JSquared, Rising Cayman, Spiller and Mears as separate entities would further sanction a fraud, promote injustice, or lead to an evasion of legal obligations.

## HEALTH ADVISORS DEFENDANTS' BUSINESS PRACTICES

152.    Defendants Health Advisors, Shapiro, and Smith (hereafter referred to as "Health Advisors Defendants") have sold health insurance to the residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas, including through unsolicited Robocalls.

153.    Defendant Smith is the President of Defendant Health Advisors. At all times material to this Petition, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Petition.

154.    Upon information and belief, Defendant Shapiro is a co-owner of Defendant Health Advisors. At all times material to this Petition, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Petition.

155.   Health Advisors Defendants—directly, through Rising Eagle Defendants, or through another intermediary—initiated telephone calls to the residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas to induce sales of Health Advisors Defendants' health insurance plans.

156.   In many instances, consumers who answer calls initiated by Health Advisors Defendants are greeted by automated, prerecorded voice messages. For example, many of the calls Health Advisors Defendants initiate are related to health insurance or other health-related products. Although Health Advisors Defendants use many different prerecorded messages, one message used by Rising Eagle Defendants states:

> Hi, this is Ann. I am calling to let you know we have been granted a limited health enrollment period for a few weeks, so you and your family can get a great insurance plan at the price you can afford. And we make it hassle free to sign up. We have pre-approvals ready in your area including Cigna, Blue Cross, Aetna, United and many more. Press 1 to get a hassle-free assessment or press 2 to be placed on our do not call list. Thanks for your time and be healthy and blessed.

157.   From May 1, 2018 until July 31, 2019, Defendant Health Advisor paid Defendant Rising Eagle over 2.5 million dollars.

158.   In numerous instances, Health Advisors Defendants initiated telephone calls—directly, through Rising Eagle Defendants, or through another intermediary—to the residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio,

and Texas on the Federal Do Not Call registry.

159.   Health Advisors Defendants initiated these automated telephone calls—directly, through Rising Eagle Defendants, or through another intermediary—to millions of residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas.

160.   From January to May of 2019, Health Advisors Defendants accounted for over 500 million calls nationwide, including to the residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas.

161.   Sometime in 2018 through December of 2019, Health Advisors Defendants contracted with Rising Eagle Defendants for Rising Eagle Defendants to supply Health Advisors with leads.

162.   In some instances, Health Advisors Defendants directed Rising Eagle Defendants to initiate the calls.

163.   In some instances, Health Advisors Defendants supplied the consumer telephone numbers to Rising Eagle Defendants.

164.   Rising Eagle Defendants main contact at Defendant Health Advisor was Defendant Smith and Defendant Shapiro.

165.   As part of their agreement, Health Advisors Defendants compensated Rising Eagle Defendants for sales made as a result of the robocall leads.

166.   From May 1, 2018, until July 31, 2019, Defendant Health Advisor paid Defendant Rising Eagle over 2.5 Million dollars.

167.   From May 1, 2018, until July 31, 2019, Defendant Smith paid Defendant Rising Eagle over $350,000.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### COUNT I
### (By all Plaintiffs - Violating the Prohibition against Calling Numbers Listed on the National Do Not Call Registry)

168.   Rising Eagle Defendants violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas whose telephone numbers were listed on the National Do Not Call Registry.

169.   Rising Eagle Defendants' violations are willful and knowing.

### COUNT II
### (By all Plaintiffs – Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Residential Telephone Lines)

170.   Rising Eagle Defendants violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(l)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines, including lines in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas, using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

171.   Rising Eagle Defendants' violations are willful and knowing.

## COUNT III
### (By all Plaintiffs – Violating the Prohibition against the Use of
### Artificial or Prerecorded Voice Messages to Cellular Telephone Lines)

172.   Rising Eagle Defendants violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. §
       227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to
       cellular telephone lines, including lines in Arkansas, Indiana, Michigan, Missouri,
       North Carolina, North Dakota, Ohio, and Texas, using artificial or prerecorded voices
       to deliver a message without the prior express consent of the called party and where
       the call was not initiated for emergency purposes or exempted by rule or order of the
       Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

173.   Rising Eagle Defendants violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern
       or practice of initiating telephone solicitations to cellular telephone lines, including
       lines in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio,
       and Texas, using artificial or prerecorded voices to deliver a message relating to health
       care without the prior express written consent of the called party.

174.   Rising Eagle Defendants' violations are willful and knowing.

## COUNT IV
### (By all Plaintiffs – Violating the Prohibition against Use of Artificial or
### Prerecorded Voice Messages Without Clear Disclosure of Caller Identity)

175.   Rising Eagle Defendants violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. §
       227(d)(3)(A) by initiating telephone calls to residential lines using artificial or
       prerecorded voices to deliver messages to residents in the states of Arkansas, Indiana,
       Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas that failed to

clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

176.    Rising Eagle Defendants' violations are willful and knowing.

## COUNT V
**(By all Plaintiffs – Violating the Prohibition against Misleading or Inaccurate Caller Identification Information)**

177.    Prior to January 2, 2019, and after May 14, 2019,[3] Rising Eagle Defendants violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information to residents in the states of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

178.    Rising Eagle Defendants' violations are willful and knowing.

## COUNT VI
**(By Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas - Violating the Prohibition against Calling Numbers Listed on the National Do Not Call Registry)**

179.    Health Advisors Defendants violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers in Arkansas, Indiana,

---

[3] The Federal Communications Commission has issued a Notice of Apparent Liability For Forfeiture to the Defendants proposing the "largest proposed fine in the FCC's 86-year history," based on the more than 1 billion spoofed robocalls Defendants made between January 2, 2019, and May 14, 2019. Plaintiffs, therefore, are not seeking any relief pursuant to 47 C.F.R. § 64.1604(a) or 47 U.S.C. § 227(e)(1) for calls made between January 2, 2019, and May 14, 2019.

Michigan, North Carolina, North Dakota, Ohio, and Texas whose telephone numbers were listed on the National Do Not Call Registry.

180.   Health Advisors Defendants' violations are willful and knowing.

## COUNT VII
**(By Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas – Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Residential Telephone Lines)**

181.   Health Advisors Defendants violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(l)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines, including lines in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas, using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

182.   Health Advisors Defendants violations are willful and knowing.

## COUNT VIII
**(By Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas – Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Cellular Telephone Lines)**

183.   Health Advisors Defendants violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to cellular telephone lines, including lines in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party and where the

call was not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission under 47 U.S.C. § 227(b)(2)(B).

184. Health Advisors Defendants violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of initiating telephone solicitations to cellular telephone lines, including lines in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas, using artificial or prerecorded voices to deliver a message relating to health care without the prior express written consent of the called party.

185. Health Advisors Defendants' violations are willful and knowing.

**COUNT IX**
**(By Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas – Violating the Prohibition against Use of Artificial or Prerecorded Voice Messages Without Clear Disclosure of Caller Identity)**

186. Health Advisors Defendants violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating telephone calls to residential lines using artificial or prerecorded voices to deliver messages to residents in the states of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

187. Health Advisors Defendants' violations are willful and knowing.

**COUNT X**
**(By Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas – Violating the Prohibition against Misleading or Inaccurate Caller Identification Information)**

188. Health Advisors Defendants violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. §

227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information to residents in the states of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas.

189. Health Advisors Defendants' violations are willful and knowing.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT XI
**(By all Plaintiffs – Violating the Prohibition against Deceptive Telemarketing Acts or Practices)**

190. Rising Eagle Defendants violated 16 C.F.R. § 310.3 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

191. Rising Eagle Defendants, through their auto warranty calls, misrepresented the central character of the service they were offering, in violation of 16 C.F.R. § 310.3(a)(2)(iii).

192. In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.3(a)(2)(iii) by providing substantial assistance or support to other telemarketers. 16 C.F.R. § 310.3(b).

193. Rising Eagle Defendants' violations are willful and knowing.

### COUNT XII
**(By all Plaintiffs – Violating the Prohibition against Deceptive Telemarketing Acts or Practices)**

194. Rising Eagle Defendants violated 16 C.F.R. § 310.3 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

195. Rising Eagle Defendants made false or misleading statements to induce the Plaintiffs' residents to purchase an extended auto warranty, in violation of 16 C.F.R. § 310.3(a)(4).

196. In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.3(a)(4) by providing substantial assistance or support to other telemarketers. 16 C.F.R. § 310.3(b).

197. Rising Eagle Defendants' violations are willful and knowing.

## COUNT XIII
### (By all Plaintiffs – Violating the Prohibition against Abusive Telemarketing Acts or Practices)

198. Rising Eagle Defendants violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of abusive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

199. Rising Eagle Defendants, in their auto warranty calls, did not promptly disclose the identity of the seller in their outbound calls, in violation of 16 C.F.R. § 310.4(d)(1).

200. In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.4(d)(1) by providing substantial assistance or support to other telemarketers. 16 C.F.R. §

310.3(b).

201.  Rising Eagle Defendants' violations are willful and knowing.

**COUNT XIV**
**(By all Plaintiffs – Violating the Prohibition against Abusive Telemarketing Acts or Practices)**

202.  Rising Eagle Defendants violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of abusive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

203.  Rising Eagle Defendants also failed to honor some Plaintiff States' residents request to be placed on a do not call list, in violation of 16 C.F.R. § 310.4(b)(1)(ii).

204.  In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.4(b)(1)(ii) by providing substantial assistance or support to other telemarketers. 16 C.F.R. § 310.3(b).

205.  Rising Eagle Defendants' violations are willful and knowing.

**COUNT XV**
**(By all Plaintiffs – Violating the Prohibition against Abusive Telemarketing Acts or Practices)**

206.  Rising Eagle Defendants violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of abusive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

207.  Rising Eagle Defendants, during their auto warranty calls, initiated outbound

telephone calls to telephone numbers on the National Do Not Call Registry, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B).

208.   In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.4(b)(1)(iii)(B) by providing substantial assistance or support to other telemarketers. 16 C.F.R. § 310.3(b).

209.   Rising Eagle Defendants' violations are willful and knowing.

### COUNT XVI
### (By all Plaintiffs – Violating the Prohibition against Abusive Telemarketing Acts or Practices)

210.   Rising Eagle Defendants violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of abusive telemarketing to residential telephone subscribers, including subscribers in Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas.

211.   Rising Eagle Defendants, during their auto warranty calls, initiated outbound telephone call that delivered a prerecorded message to induce the purchase of any good or service, without the valid express consent, in writing, from the consumer receiving the call, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B).

212.   In the alternative, Rising Eagle Defendants violated 16 C.F.R. § 310.4(b)(1)(iii)(B) by providing substantial assistance or support to other telemarketers. 16 C.F.R. § 310.3(b).

213.   Rising Eagle Defendants' violations are willful and knowing.

### **<u>VIOLATIONS OF STATE TELEMARKETING LAWS</u>**

## COUNT XVII
## (By the State of Arkansas – Violating the ADTPA, Ark. Code Ann. §§ 4-88-101 *et seq.*)

214.    The State of Arkansas re-alleges the facts above and incorporates them herein by reference.

215.    At all times relevant herein, Defendants are "persons" who engaged in the practices alleged herein which constitute the sale of "goods" or "services" as defined by Ark. Code Ann. § 4-88-102. Additionally, Defendants' practices constitute business, commerce, or trade under Ark. Code Ann. § 4-88-107.

216.    At all times relevant herein, each Defendant is a person subject to liability under Ark. Code Ann § 4-88-113(d) and knew or reasonably should have known of the facts and violations alleged herein.

217.    Defendants violated Ark. Code Ann. § 4-88-107(a)(10), which prohibits a person from engaging in any unconscionable, false, or deceptive acts or practices in business, commerce, or trade. "An act is unconscionable if it affronts the sense of justice, decency, and reasonableness." *Gulfco of Louisiana, Inc. v. Brantley,* 2013 Ark. 367, 430 S.W.3d 7 (2013). For at least all times relevant to this action, Defendants, or third parties acting on Defendants' behalf and at Defendants' direction, engaged, and continue to engage, in the unconscionable act and practice of initiating a continuous bombardment of millions of pre-recorded telephone calls to Arkansas residents for the purpose of soliciting the sale of purported health insurance and extended automobile warranties.

## COUNT XVIII
**(By the State of Arkansas – Violating the Regulation of Telephonic Sellers (RTS), Ark. Code Ann. § 4-99-101 *et seq.*)**

218.   The State re-alleges the facts stated above and incorporates them herein by reference.

219.   Defendants are "persons" and "telephonic sellers," as defined by Ark. Code Ann. § 4-99-103(3) and (9)(A), as they have been at all times relevant herein, who engaged in initiating telephone solicitations of goods or services to Arkansas residents.

220.   Defendants violated Ark. Code Ann. § 4-99-104, which provides that before doing business in the state, a telephonic seller must register with the Secretary of State each year. The Arkansas Secretary of State has no record of any current or past registration as a telephonic seller for any of the Defendants. Thus, at least for all times relevant to this action, Defendants failed to register as a telephonic seller as required by Ark. Code Ann. § 4-99-104.

221.   Defendants violated Ark. Code Ann. § 4-99-201(a)(1), which requires that any person who, on behalf of any business, calls a residential phone number for the purpose of soliciting or to offer goods or services shall immediately disclose to the person contacted the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purpose of the telephone call, including a brief description of the goods or services to be offered. As alleged in paragraph 65 above, Defendant Spiller admitted that Defendants Rising Eagle and JSquared initiate telephone calls using artificial or prerecorded voices to deliver messages that fail to clearly identify, at the beginning of the message, the business, individual, or other

entity responsible for initiating the call. Additionally, this statute requires that the person calling shall discontinue the call if the recipient of the telephone call indicates that he or she does not want to hear about the goods or services. Arkansas consumers reported receiving multiple calls with pre-recorded messages as alleged above to be associated with the Defendants that provided a number for the recipient to call. Consumers who called the number informed the person answering the call that their number was on the Registry, and requested that the solicitor stop calling. However, Defendants ignored the consumers' requests, and the calls continued in violation of Ark. Code Ann. § 4-99-201(a)(1).

222.  Defendants violated Ark. Code Ann. § 4-99-405(1), which provides that it is a violation for any person to make or transmit a telephone solicitation to the telephone number of any Arkansas consumer whose telephone number is included in the then-current database maintained by the Attorney General.  The Attorney General currently utilizes the National Do Not Call Registry as the statewide database to maintain the list of telephone numbers of Arkansas consumers who object to receiving telephone solicitations. Defendants initiated at least 11 million robocalls between January and May of 2019 to residential and/or cellular telephone numbers associated with Arkansas area codes, which included calls placed to telephone numbers on the National Do Not Call Registry, and beyond this period, Defendants have continued to initiate robocalls in similar magnitude to residential and/or cellular telephone numbers associated with Arkansas area codes, including

calls placed to telephone numbers on the National Do Not Call Registry.

223.    Pursuant to Ark. Code Ann. § 4-99-111, § 4-99-201(c)(1) – (2) and (e), and § 4-99-407, a violation of the RTS constitutes a separate deceptive act or practice as defined by the ADTPA and may be enforced by the Attorney General. Further, the remedies and penalties available for RTS violations are cumulative and in addition to the remedies and penalties provided for ADTPA violations.

## COUNT XIX
### (By the State of Indiana – Violating the Telephone Solicitation of Consumers Act (the "TSCA"), Ind. Code 24-4.7-4)

224.    Pursuant to Ind. Code § 24-4.7-3-1, the Office of the Attorney General quarterly publishes a no telephone sales solicitation listing ("Indiana's Do Not Call List"). Consumers place their telephone numbers on Indiana's Do Not Call List when they do not want to receive telephone calls soliciting the sale of a consumer good or service, as defined in Ind. Code § 24-4.7-2-3. The telephone calls described above were "telephone sales calls" because they were made to solicit the sale of a consumer good or service or to obtain information to be used to solicit the sale of a consumer good or service including, without limitation, insurance or auto warranties.

225.    By making or causing to be made telephone sales calls to consumers residing in Indiana, Defendants are "doing business in Indiana," as defined by Ind. Code § 24-4.7-2-5(a), regardless of where the telephone calls originate or where Defendants are located. By controlling, directly or indirectly, one or more persons who made or caused others to make telephone calls to consumers located in Indiana, the persons

are "doing business in Indiana," as defined by Ind. Code § 24-4.7-2-5(b), regardless of where the persons are located.

226.   By contacting or attempting to contact subscribers in Indiana by telephone, Defendants are "callers," as defined by Ind. Code § 24-4.7-2-1.7 and § 24-5-14-2. By "doing business in Indiana," Defendants are "telephone solicitors," as defined by Ind. Code § 24-4.7-2-10.

227.   By regularly engaging in or soliciting consumer transactions, whether or not Defendants deal directly with consumers, Defendants are "suppliers" as defined by Ind. Code § 24-4.7-2-7.7 and § 24-5-0.5-2.

228.   Many of the telephone sales calls were made to telephone numbers included on Indiana's Do Not Call List at the time of the calls. By making or causing others to make telephone sales calls to telephone numbers on Indiana's Do Not Call List at the time of the calls, Defendants committed many violations of the TSCA, Ind. Code § 24-4.7-4-1.

229.   As telephone solicitors, suppliers, and callers, Defendants may not sell, transfer, or make available to another person for solicitation purposes a consumer's telephone number if Defendants know that the telephone number is included in the most current version of Indiana's Do Not Call List. Ind. Code § 24-4.7-4-7(b). Defendants knew or should have known that these telephone numbers were included in the applicable version of Indiana's Do Not Call List. Upon information and belief, Defendants may have sold, transferred, or made available to another person for solicitation purposes

one or more consumers' telephone numbers that Defendants knew or should have known was included in the current version of Indiana's Do Not Call List.

230. As telephone solicitors, suppliers, and callers, Defendants may not transfer a live call to one or more persons if the call has been placed to a consumer in violation of the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(c). Upon information and belief, Defendants may have transferred live calls to people where the calls had been placed in violation of the TSCA and/or the Auto-Dialer Act.

231. As telephone solicitors, suppliers, and callers, Defendants may not provide substantial assistance or support to another person if Defendants know or consciously avoid knowing that the person has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(d). Upon information and belief, Defendants may have provided substantial assistance or support to other people whom Defendants knew or consciously avoided knowing were engaging in acts or practices that violated the TSCA and/or the Auto-Dialer Act.

232. Defendants may not provide substantial assistance or support to any other telephone solicitor, supplier, or caller if Defendants know or consciously avoid knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(e). Upon information and belief, Defendants may have provided

substantial assistance or support to other telephone solicitors, suppliers, or callers even though Defendants knew or consciously avoided knowing they were engaging in acts or practices that violated the TSCA and/or the Auto-Dialer Act.

233.    Each of the telephone calls made to telephone numbers on Indiana's Do Not Call List is a violation of Ind. Code § 24-4.7-4-1 and constitutes a deceptive act, as defined by Ind. Code § 24-4.7-5-1. It is believed and averred that Defendants made and/or participated in additional calls made to telephone numbers on Indiana's Do Not Call List; the numbers, dates, and times of said calls are known to Defendants, but are not known to Plaintiff at this time. Plaintiff asserts that Defendants may have committed additional violations of the TSCA arising from their participation in these additional calls.

## COUNT XX
### (By the State of Indiana – Violating the Regulation of Automatic Machines Dialing Act (the "Auto-Dialer Act"), Ind. Code 24-5-14)

234.    The recipients of the telephone calls described above were "subscribers," as defined in Ind. Code § 24-5-14-4. By contacting or attempting to contact subscribers in Indiana by telephone, Defendants are "callers," as defined by Ind. Code § 24-5-14-2. The telephone calls described above were reported as "robocalls," meaning they were made by an automated dialing-announcing device, as defined by Ind. Code § 24-5-14-1, and disseminated a prerecorded voice message.

235.    The recipients of the prerecorded messages did not knowingly or voluntarily request, consent, permit, or authorize receipt of the message. The prerecorded messages were

not preceded by a live operator who could have obtained each recipient's consent before the message was delivered.

236. By using or connecting an automatic dialing-announcing device to telephone lines in Indiana and disseminating prerecorded voice messages without the required consent or authorization, Defendants committed many violations of the Auto-Dialer Act, Ind. Code § 24-5-14-5(b). Each of the robocalls is a violation of the Auto-Dialer Act and constitutes a deceptive act that is actionable by the Indiana Attorney General under Ind. Code § 24-5-14-13.

237. It is believed and averred that Defendants made and/or participated in additional robocalls to Indiana telephone numbers; the numbers, dates, and times of said calls are known to Defendants, but are not known to Plaintiff at this time. Plaintiff asserts that Defendants may have committed additional violations of the Auto-Dialer Act and/or the TSCA arising from its participation in these additional robocalls.

**COUNT XXI**
**(By the State of Indiana – Violating the Telephone**
**Solicitation Registration of Sellers law, Ind. Code § 24-5-12-10)**

238. The telephone calls described above were "solicitations," as defined by Ind. Code § 24-5-12-9. By making a "solicitation," whether made personally, through salespersons, or by using robocalls, Defendants are "sellers." Ind. Code § 24-5-12-8.

239. By making solicitations either in Indiana or directed to prospects located in Indiana, sellers are "doing business in Indiana." Ind. Code § 24-5-12-10(b). Indiana law requires that "[b]efore doing business in Indiana, a seller must register with the

division." Ind. Code § 24-5-12-10(a). In order to register, a person or company must file a registration statement disclosing certain required information and pay a registration fee. Ind. Code § 24-5-12-11.

240. To date, Defendants never registered as sellers as required. By failing to register as required, Defendants committed deceptive acts which are actionable by the Indiana Attorney General. Ind. Code § 24-5-12-23. Plaintiff may seek an injunction against Defendants prohibiting additional violations under Ind. Code § 24-5-12-21, and civil penalties under Ind. Code § 24-5-0.5-4(g) or Ind. Code § 24-5-0.5-8.

**COUNT XXII**
**(By the State of Indiana – Violating the Indiana**
**Business Organizations Code, Ind. Code § 23-0.5-5-2)**

241. By contacting or attempting to contact Indiana telephone numbers to offer consumer goods or services, Defendants were doing or transacting business in Indiana.

242. Rising Eagle Capital Group, LLC, is a limited liability company organized under the laws of Texas, therefore, Rising Eagle is a foreign filing entity as defined by Ind. Code §§ 23-0.5-1.5-8, 11, & 12. JSquared Telecom, LLC, is a limited liability company organized under the laws of Texas, therefore, JSquared Telecom, LLC is a foreign filing entity as defined by Ind. Code §§ 23-0.5-1.5-8, 11, & 12.

243. Ind. Code § 23-0.5-5-2 provides that a foreign filing entity may not do business in Indiana until it registers with the Indiana Secretary of State. To date, neither Rising Eagle Capital Group, LLC, nor JSquared Telecom, LLC has registered with the Indiana Secretary of State.

244.    By transacting business in Indiana without registering as required, Rising Eagle Capital Group, LLC, and JSquared Telecom, LLC, violated Ind. Code § 23-0.5-5-2(a), and are each liable for a civil penalty of not more than ten thousand dollars ($10,000) under Ind. Code § 23-0.5-5-2(f). The attorney general may collect all penalties due under this subsection.

### COUNT XXIII
### (By the State of Michigan - Violating Michigan Consumer Protection Act, § 445.903(1)(gg))

245.    MCL 445.903(1)(gg) of the MCPA provides that it is a violation of the MCPA to violate the Michigan Home Solicitation Sale Act, MCL 445.111, *et seq.*, in connection with a telephone solicitation.

246.    MCL 445.111c(1)(f) provides that failure to comply with the requirements of section 1a or 1b of the Michigan Home Solicitation Sale Act, MCL 445.111, *et seq*., is an unfair or deceptive act or practice and a violation of the Michigan Home Solicitation Sale Act.

247.    MCL 445.111a(5) provides that no telephone solicitor shall make a telephone solicitation to a Michigan telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(5) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry. Such

violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

248. MCL 445.111a(1) prohibits any person from making a telephone solicitation using a prerecorded message, in whole or in part. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(1) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers using a prerecorded message, in whole or in part. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

249. MCL 445.111b(1) requires any person making a telephone solicitation to state his or her name at the beginning of the telephone solicitation, to state the full name of the organization or other person on whose behalf the call was initiated at the beginning of the telephone solicitation, and to provide a telephone number of such organization or other person on request. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111b(1) and, thus, MCL 445.903(1)(gg) of the MCPA by failing to state his or her name at the beginning of the telephone solicitation, to state the full name of the organization or other person on whose behalf the call was initiated at the beginning of the telephone solicitation, and to provide a telephone number of such organization or other person on request. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

## COUNT XXIV
**(By the State of Missouri - Violating the Missouri Do-Not-Call Law, § 407.1070, *et seq.*)**

250.   The Missouri Do-Not-Call Law makes it unlawful for a person to make a telephone solicitation to the telephone line of a residential subscriber who is on the Missouri no-call list. Mo. Rev. Stat. § 407.1098. Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears violated the Missouri Do-Not-Call Law by making "telephone solicitations," as defined by Mo. Rev. State. § 407.1095(3), to "residential subscribers," as defined by Mo. Rev. State. § 407.1095(2), that were on the Missouri no-call list at the time the telephone solicitations were made.

## COUNT XXV
**(By the State of Missouri - Violating the Missouri Telemarketing Practices Act, § 407.1095, *et seq.*)**

251.   The Missouri Telemarketing Practices Act provides that no telemarketer engaged in telemarketing may use a recorded message without, promptly at the beginning of the telephone call, informing the consumer that the call is being made by a recorded message. Mo. Rev. Stat. § 407.1073.1(5).   Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears violated Mo. Rev. Stat. § 407.1073.1(5) by being telemarketers, as defined by Mo. Rev. Stat. § 407.1070(12), engaged in telemarketing, as defined by Mo. Rev. Stat. § 407.1070(13), and using recorded messages to make telephone calls to Missouri consumers without first informing the consumer that the call was being made by a recorded message.

252.   The Missouri Telemarketing Practices Act also provides that a telemarketer shall

disclose, promptly and in a clear and conspicuous manner, to the consumer receiving the telephone call the telemarketer's identifiable name and the seller on whose behalf the solicitation is being made. Mo. Rev. Stat. § 407.1073.1(2).  Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears violated Mo. Rev. Stat. § 407.1073.1(2) by being telemarketers, as defined by Mo. Rev. Stat. § 407.1070(12), and failing to identify their identifiable name and the name of the seller on whose behalf they made the telephone solicitation in a clear and conspicuous manner.

## COUNT XXVI
### (By State of North Carolina - Violating North Carolina General Statutes § 75-102)

253.  North Carolina General Statutes § 75-102(a) provides that no telephone solicitor shall make a telephone solicitation to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. N.C. Gen. Stat. § 75-102(d) also requires telephone solicitors to implement systems and procedures to prevent telephone solicitations to telephone subscribers whose numbers appear in the National Do Not Call Registry and to monitor and enforce compliance by its employees and independent contractors in those systems and procedures.

254.  Defendants, and/or third parties acting on Defendants' behalf, have violated N.C. Gen. Stat. § 75-102(a) by making telephone solicitations to the telephone numbers of North Carolina telephone subscribers when those numbers were in the pertinent

edition of the National Do Not Call Registry.

255.   Defendants also violated N.C. Gen. Stat. § 75-102(d) by failing to monitor and enforce compliance by their employees, agents, and independent contractors in that, as set forth above, those persons made numerous telephone solicitations to the telephone numbers of North Carolina telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry.

256.   Defendants willfully engaged in the actions and practices described above.

### COUNT XXVII
### (By State of North Carolina - Violating North Carolina General Statutes § 75-104)

257.   North Carolina General Statutes § 75-104 provides that, subject to some exceptions, no person may use an automatic dialing and recorded message player to make an unsolicited telephone call. One of those exceptions allows a person to make such calls if prior to the playing of the recorded message a live operator, among other things, states the nature and length in minutes of the recorded message, and asks for and receives prior approval to play the recorded message from the person receiving the call.

258.   Defendants, and/or third parties acting on Defendants' behalf, have violated N.C. Gen. Stat. § 75-104 by using automatic dialing and recorded message players to make unsolicited telephone calls to North Carolina telephone subscribers without first having live operators inform the telephone subscribers of the nature and length of the recorded message and asking for and obtaining permission to play

64

the message from the person receiving the call, and otherwise not complying with any of the exceptions set forth in N.C. Gen. Stat. § 75-104.

259.   Defendants willfully engaged in the practices described above.

## COUNT XXVIII
### (By State of North Dakota - Violating the Telephone Solicitations Act, N.D.C.C. ch. 51-28)

260.   Defendants are "callers," as defined by N.D.C.C. § 51-28-01(1), because they are a "person, corporation, firm, partnership, association, or legal or commercial entity" that attempts to contact or contacts subscribers in the State of North Dakota using a telephone or telephone line.

261.   Defendants engaged in "telephone solicitations" because they, over a telephone line and using voice, text, or other electronic communication, solicited the purchase of property, goods, services, or "merchandise," within the meaning of N.D.C.C. § 51-15-01(3).

262.   In violation of N.D.C.C. § 51-28-02, Defendants, or an agent on Defendants' behalf, used or connected to the telephone line of a subscriber in North Dakota using an automatic dialing-announcing device or delivered a prerecorded or synthesized voice message where a subscriber did not knowingly request, consent to, permit, or authorize receipt of the message. Defendants' prerecorded or synthesized voice message was not immediately preceded by a live operator who obtained the consent of the subscriber before they delivered a message.

263.   In violation of N.D.C.C. § 51-28-06, Defendants, or an agent on Defendants' behalf,

65

made or caused to be made telephone solicitations to a subscriber in North Dakota who, for at least thirty-one days before the date of the call, was on the do-not-call list established and maintained or used by the Attorney General of North Dakota, as provided by N.D.C.C. § 51-28-09, or the national do-not-call registry established and maintained by the Federal Trade Commission under 16 C.F.R. Part 310.

264.   In violation of N.D.C.C. § 51-28-07, Defendants, or an agent on Defendant's behalf, made a telephone solicitation to a subscriber in North Dakota without immediately and clearly stating, at the beginning of the call, their true first and last name, their telephone number, their city and state of location, and the name of the business on whose behalf their telephone solicitation was made.

265.   Under N.D.C.C. § 51-28-19, each telephone solicitation or message constitutes a separate violation and, pursuant to N.D.C.C. § 51-28-13, North Dakota is entitled to relief under both N.D.C.C. chs. 51-28 and 51-15 for violations of N.D.C.C. §§ 51-28-02, 51-28-06, and 51-28-07.

## COUNT XXIX
### (By State of North Dakota - Violating the Unlawful Sales or Advertising Act, N.D.C.C. ch. 51-15)

266.   North Dakota incorporates the allegations of Paragraphs 153 through 158 as if fully stated herein.

267.   N.D.C.C. § 51-15-02 prohibits the "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of

any merchandise," regardless if a person has been misled, damaged, or deceived by the deceptive conduct.

268. Defendants were engaged in the "sale" of "merchandise," as those terms are defined by N.D.C.C. § 51-15-01(3) and (5), because Defendants sold, offered to sell, or attempted to sell an object, ware, good, commodity, intangible, real estate, charitable contributions, or services in the State of North Dakota.

269. Under N.D.C.C. § 51-28-17, violations of N.D.C.C. ch. 51-28 constitute violations of N.D.C.C. ch. 51-15. Therefore, Defendants violated N.D.C.C. ch. 51-15 by: (1) using or connecting to the telephone line of a subscriber in North Dakota using an automatic dialing-announcing device or delivered a prerecorded or synthesized voice message without prior request, consent, permission, or authorization from a subscriber in North Dakota; (2) making or causing to be made telephone solicitations to a subscriber in North Dakota who, for at least thirty-one days before the date of the call, was on the do-not-call list established and maintained or used by the Attorney General of North Dakota, as provided by N.D.C.C. § 51-28-09, or the national do-not-call registry established and maintained by the Federal Trade Commission under 16 C.F.R. Part 310; (3) making a telephone solicitation to a subscriber in North Dakota without immediately and clearly stating, at the beginning of the call, their true first and last name, their telephone number, their city and state of location, and the name of the business on whose behalf their telephone solicitation was made; and (4) knowingly causing a telephone caller identification system to transmit misleading or inaccurate

caller identification information, or Defendants used or displayed a telephone number that they did or do not own or had not received consent to use from the owner of the telephone number when they called subscribers in North Dakota.

**COUNT XXX**
**(By State of North Dakota - Violating the Uniform Limited Liability Company Act, N.D.C.C. ch. 10-32.1, and the Unlawful Sales or Advertising Act, N.D.C.C. ch. 51-15)**

270.   North Dakota incorporates the allegations of Paragraphs 153 through 162 as if fully stated herein.

271.   N.D.C.C. § 10-32.1-74 prohibits a foreign limited liability company from transacting business in North Dakota "until it has procured a certificate of authority from the secretary of state."

272.   Under N.D.C.C. § 10-32.1-84(5), a civil penalty of five thousand dollars ($5,000) may be imposed upon Rising Eagle and JSquared for transacting business in North Dakota without a certificate of authority. Additionally, a civil penalty of one thousand dollars ($1,000) may be imposed upon Defendants Spiller and Mears for participating in the transaction of business in North Dakota by Defendants Rising Eagle and JSquared.

273.   In addition to civil penalties, if the Court determines that Defendants conducted business in North Dakota without a certificate of authority as alleged in this Complaint, including by making telephone solicitations to subscribers in North Dakota in violation of N.D.C.C. chs. 51-15 and 51-28, it is mandatory under 10-32.1-84(6) that the Court issue "an injunction restraining the further transaction of the

business" of Rising Eagle and JSquared. The injunction must remain in place until Defendants pay any civil penalties and otherwise comply with N.D.C.C. ch. 10-32.1.

274.   Defendants' failure to procure a certificate of authority prior to transacting business in North Dakota, a violation of N.D.C.C. 10-32.1-74, also constitutes a violation of N.D.C.C. § 51-15-02 because, under consumer protection jurisprudence, it is consumer fraud to engage in or transact business without a certificate of authority where a certificate of authority is required.

## COUNT XXXI
### (By State of Ohio - Violating the Ohio Consumer Sales Practices Act)

275.   The Ohio CSPA, O.R.C. § 1345.02 prohibits "suppliers" from engaging in unfair or deceptive consumer sales acts or practices, including deceptive direct solicitations.

276.   Defendants are "suppliers" as defined in O.R.C. § 1345.0l(C), since Defendants engage in the business of effecting "consumer transactions," either directly or indirectly, for purposes that are primarily personal, family, or household within the meaning as specified in O.R.C. § 1345.0l(A) of the CSPA.

277.   Defendants engaged in "direct solicitations" as defined in O.A.C. § 109:4-3-11 since Defendants initiated telephone solicitations to consumers at their residences.

278.   Defendants, either directly or as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers in the State of Ohio, whose telephone numbers were listed on the National Do Not Call

Registry in violation of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(2).

279. Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties and without falling within specified exemptions delineated within the TCPA in violation of the TCPA, 47 U.S.C. § 227(b)(l)(B) and 47 C.F.R. § 64.1200(a)(3).

280. Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) engaging in a pattern or practice of initiating telephone calls to cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties and without falling within specified exemptions delineated within the TCPA in violation of the TCPA, 47 U.S.C. § 227(b)(l)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii).

281. Defendants, either directly or indirectly as a result of a third party acting on Defendants' behalf, violated O.R.C. § 1345.02(A) and O.A.C. § 109:4-3-11 by engaging in direct solicitations without clearly, affirmatively, and expressly revealing upon initial contact with consumers or prospective consumers that the purpose of the contact is to effectuate sales and stating the general terms that were

70

being offered.

## COUNT XXXII
### (By the State of Ohio – Violating Ohio's Telephone Solicitation Sales Act)

282.   Defendants initiated "telephone solicitations" to "purchasers," as they were at all times relevant herein engaged in initiating "communications" as or on behalf of "telephone solicitors" or "salespersons" to induce persons to purchase "goods or services," as those terms are defined in the Ohio TSSA, O.R.C. § 4719.01(A).

283.   Defendants are "telephone solicitors" as that term is defined in the Ohio TSSA, O.R.C. § 4719.01(A)(8), as they were at all times relevant herein engaged in initiating telephone solicitations directly or through one or more salespersons either from a location in Ohio or from a location outside Ohio to persons in Ohio.

284.   At all times relevant herein, Defendants were not registered as telephone solicitors with the Ohio Attorney General's Office pursuant to the Ohio TSSA, O.R.C. § 4719.02(A).

285.   Defendants committed unfair or deceptive acts and practices in violation of Ohio CSPA, O.R.C. § 1345.02(A) and Ohio TSSA, O.R.C. § 4719.02(A) by acting as telephone solicitors without first having obtained certificates of registration from the Ohio Attorney General. These acts or practices have been previously determined by an Ohio court to violate the Ohio CSPA. Defendants committed said violations after such decisions were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

286.   At all times relevant herein, Defendants did not have surety bonds as required by the Ohio TSSA, O.R.C. § 4719.04(A) on file with the Ohio Attorney General's Office.

287.   Defendants violated Ohio TSSA, O.R.C. § 4719.04(A) by acting as a telephone solicitor without first having obtained and filed with the Ohio Attorney General a surety bond issued by a surety company authorized to do business in the State of Ohio.

288.   Defendants committed unfair or deceptive acts and practices in violation of Ohio CSPA, O.R.C. § 1345.02(A) and Ohio TSSA, O.R.C. § 4719.06 by failing to disclose the solicitor's true name and the name of the company on whose behalf solicitations were made, within the first sixty seconds of the telephone call. These acts or practices have been previously determined by an Ohio court to violate the Ohio CSPA. Defendants committed said violations after such decisions were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

## COUNT XXXIII
### (By the State of Texas - Violating Texas Telemarketing Disclosure and Privacy Act)

289.   The Texas Telemarketing Disclosure and Privacy Act makes it unlawful for a telemarketer to make a telemarketing call to a telephone number that has been published on the then-current Texas no-call list for more than sixty days. Tex. Bus. & Com. Code § 304.052. Defendants, by making or causing to be made telemarketing calls, are "telemarketers" as defined by the Texas Telemarketing Disclosure and Privacy Act and have violated the Act by making telephone calls to telephone numbers that were included on the then-current Texas no-call list for longer than sixty days.

## CONSUMER INJURY

290.   Consumers in the United States have suffered and will continue to suffer injury as a result of Defendants' violations of the TCPA, TSR, Arkansas law, Indiana law, Michigan law, Missouri law, North Carolina law, Ohio law, and Texas law. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

### Prayer by All Plaintiffs

1.   Enter judgment against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears, and in favor of Plaintiffs for each violation alleged in this complaint.

2.   Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunction.

3.   Assess against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears, and in favor of the Plaintiffs damages of one thousand five hundred dollars ($1,500) for each violation of the TCPA found by the Court to have been committed by said Defendants willfully and knowingly; if the Court finds Defendants have engaged in violations of the TCPA which are not willful and knowing, then

assessing against said Defendants damages of five hundred dollars ($500) for each violation of the TCPA, as provided by 47 U.S.C. § 227.

4.    Permanently enjoin Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears from violating the TCPA, both generally and specifically, by enumerating the acts in which Defendants are permanently enjoined from engaging.

5.    In the alternative, enter judgment against Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears and award Plaintiffs such relief as the Court finds necessary to redress injury to consumers resulting from said Defendants' violations of the TSR, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

6.    Enter a permanent injunction to prevent future violations of the TSR by the Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears.

### Prayer by Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas

7.    Enter judgment against Defendants Health Advisors, Smith, and Shapiro and in favor of Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas for each violation alleged in this complaint.

8.    Award Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary

and preliminary injunction.

9.    Assess against Defendants Health Advisors, Smith, and Shapiro and in favor of the Plaintiffs Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas damages of one thousand five hundred dollars ($1,500) for each violation of the TCPA found by the Court to have been committed by said Defendants willfully and knowingly; if the Court finds said Defendants have engaged in violations of the TCPA which are not willful and knowing, then assessing against said Defendants damages of five hundred dollars ($500) for each violation of the TCPA, as provided by 47 U.S.C. § 227.

10.    Permanently enjoin Defendants Health Advisors, Smith, and Shapiro from violating the TCPA, both generally and specifically, by enumerating the acts in which Defendants are permanently enjoined from engaging.

## Prayer by Plaintiff Arkansas

11.    Enter such orders, pursuant to Ark. Code Ann. § 4-88-104, § 4-88-113(a)(1), § 4-99-111, § 4-99-201(c)(1) and (2), and § 4-99-407, as may be necessary to permanently enjoin and prevent the use or employment of the practices described herein which are violations of the ADTPA and RTS by any or all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any Defendant., including:

a.    Engaging in any unconscionable, false, or deceptive acts or practices in business, commerce, or trade in violation of Ark. Code Ann. § 4-88-107(a)(10).

b.  Failing to register as a telephone seller with the Arkansas Secretary of State in violation of Ark. Code Ann. § 4-99-104.

c.  Failing to immediately disclose to the person being contacted for a telephonic solicitation the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purpose of the telephone call, including a brief description of the goods or services to be offered in violation of Ark. Code Ann. § 4-99-201(a)(1).

d.  Failing to discontinue providing information and further calls if the person receiving the telephonic solicitation call indicates that he or she does not want to hear about the goods or services in violation of Ark. Code Ann. § 4-99-201(a)(1).

e.  Making or causing to be made telephone solicitation calls to Arkansas consumers whose telephone numbers are listed on National Do Not Call Registry, which is the current statewide database, in violation of Ark. Code Ann. § 4-99-405(1).

12.  Impose civil penalties pursuant to Ark. Code Ann. § 4-88-113(b) in the amount of ten thousand dollars ($10,000) per each violation of the ADTPA.

13.  Impose additional civil penalties pursuant to Ark. Code Ann. § 4-88-113(b), § 4-99-111, § 4-99-201(c), § 4-99-407 in the amount of ten thousand dollars ($10,000) per each violation of the RTS.

14.  Enter an order pursuant to Ark. Code Ann. § 4-88-113(e) requiring Defendants to pay all costs and fees incurred by the State of Arkansas in this investigation and litigation, including, but not limited to, expert witness fees, attorneys' fees and court costs.

15.     Enter an order pursuant to Ark. Code Ann. § 4-88-113(d) that Defendants are jointly and severally liable for all penalties and money judgments, including without limitation, attorneys' fees and costs, imposed by the court herein in favor of the State of Arkansas.

### Prayer by Plaintiff Indiana

16.     Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any Defendant from engaging in acts prohibited by Indiana law, including specifically:

   a.   Making or causing to be made telephone sales calls to telephone numbers on the Indiana DNC List in violation of the TSCA, Ind. Code § 24-4.7-4-1;

   b.   Making or causing to be made telephone calls via an automatic dialing-announcing device, as defined by Ind. Code § 24-5-14-1, and disseminating a prerecorded message in violation of Ind. Code § 24-5-14-5(b), pursuant to Ind. Code § 24-5-0.5-4(c)(1);

   c.   Failing to register as a seller as required by Ind. Code § 24-5-12-10;

   d.   Failing to register with the Indiana Secretary of State as a foreign filing entity as required by Ind. Code § 23-0.5-5-2.

17.     Order Defendants, jointly and severally, to pay to the Office of the Indiana Attorney General:

   f.   any and all money Defendants obtained through all violations of Ind. Code 24-4.7-4, 24-5-14;

g. a civil penalty of ten thousand dollars ($10,000) for the first violation and twenty-five thousand dollars ($25,000) for subsequent violations of the TSCA, Ind. Code § 24-4.7-4-1;

h. a civil penalty of five thousand dollars ($5,000) for each violation of the Auto-Dialer Act, Ind. Code § 24-5-14-5(b), occurring before July 1, 2019, and ten thousand dollars ($10,000) for the first violation and twenty-five thousand dollars ($25,000) for each subsequent violation occurring after July 1, 2019, according to the statutory terms in effect on the dates of the calls;

i. a civil penalty of five thousand dollars ($5,000) for each violation of the Telephone Solicitation Registration law, Ind. Code § 24-5-12-10; and

j. reimbursement of its reasonable costs incurred in the investigation and prosecution of this matter, pursuant to Ind. Code § 24-4.7-5-2(4) and § 24-5-0.5-4(c)(4).

18. Order that Defendants Rising Eagle Capital Group, LLC, and JSquared Telecom, LLC, each pay a civil penalty of ten thousand dollars ($10,000) for transacting business in Indiana without first registering with the Indiana Secretary of State in violation of Ind. Code § 23-0.5-5-2.

## **Prayer by Plaintiff State of Michigan**

19. Enter an order pursuant to MCL 445.905(1) declaring that the acts and practices in which the Defendants engaged, as described in Count XXIII, were both persistent and knowing and in violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq.*

20.     Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in unfair, deceptive or unconscionable acts or practices, including the conduct as specified in Count XXIII, that are in violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq*.

21.     Enter an Order requiring Defendant to pay civil penalties to the Michigan Department of Attorney General pursuant to MCL 445.905(1), in the amount of twenty-five thousand dollars ($25,000) for each persistent and knowing violation of the Michigan Consumer Protection Act in addition to investigative and other costs and reasonable attorneys' fees.

### Prayer by Plaintiff State of Missouri

22.     Enter an order pursuant to Mo. Rev. Stat. §§ 407.100, 407.1107 declaring that the acts and practices in which the Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears engaged, as described in Counts XXV to XXVI, were in violation of the Missouri Merchandising Practices Act, § 407.010, *et seq*.

23.     Permanently enjoin  Defendants Rising Eagle, JSquared, Rising Cayman, Spiller, and Mears, their successors, agents, representatives, employees, and all person who act in concert with Rising Eagle Defendants from engaging in violations of the Missouri Merchandising Practices Act, § 407.010, *et seq.*, specifically the Missouri Telemarketing Practices Act and the Missouri Do-Not-Call Law.

24.     Enter an Order requiring Defendants Rising Eagle, JSquared, Rising Cayman, Spiller,

and Mears to pay civil penalties to the Missouri Attorney General in the amount of five thousand dollars ($5,000) for each violation of the Missouri Do-Not-Call Law, pursuant to Mo. Rev. Stat. § 407.1107, and one thousand dollars ($1,000) for each violation of the Missouri Telemarketing Practices Act, pursuant to Mo. Rev. Stat. §§ 407.1082, 407.100.

## Prayer by Plaintiff State of North Carolina

25.   Enter an order pursuant to N.C. Gen. Stat. §§ 75-14 and 75-105(a) permanently enjoining Defendants, their successors, agents, representatives, employees, assigns and all person who act in concert with Defendants from violating N.C. Gen. Stat. §§ 75-102 and 75-104.

26.   Enter an order imposing penalties pursuant to N.C. Gen. Stat. § 75-105(a)(1) for each defendant's violations of N.C. Gen. Stat. § 75-102 and § 75-104, in the amounts of five hundred dollars ($500) for each defendant's first violation, one thousand dollars ($1,000) for a defendant's second violation, and five thousand dollars ($5,000) for each defendant's third and subsequent violations occurring within two years of its first violation.

27.   Enter an order pursuant to N.C. Gen. Stat. § 75-105(d) finding Defendants willfully engaged in violations of N.C. Gen. Stat. §§ 75-102 and/or 75-104 and award the State of North Carolina reasonable attorneys' fees.

## Prayer by Plaintiff State of North Dakota

28.   Enter an order pursuant to N.D.C.C. chs. 51-28 and 51-15 declaring that

Defendants' acts and practices described in Counts XXVIII through XXX were in violation of N.D.C.C. §§ 51-15-02, 51-28-02, 51-28-06, and 51-28-07.

29.   Enter an order pursuant to N.D.C.C. § 51-15-07 permanently enjoining and restraining Defendants, and all persons in active concert or participation with them, from engaging in deceptive acts or practices and from directly or indirectly making false statements, false promises, or misrepresentations with the intent that others rely thereon, in violation of N.D.C.C. § 51-15-02, including while engaged in telephone solicitations to subscribers in North Dakota or while engaged in the sale or advertisement of merchandise within the State of North Dakota.

30.   Enter an order pursuant to N.D.C.C. § 51-15-07 permanently enjoining and restraining Defendants, and all persons in active concert or participation with them, from engaging in violations of N.D.C.C. §§ 51-28-02, 51-28-06, and 51-28-07.

31.   Enter an order pursuant to pursuant to N.D.C.C. §§ 51-15-11 and 51-28-17 assessing Defendants, jointly and severally, a civil penalty of up to $5,000 and $2,000 for each violation of N.D.C.C. chs. 51-15 and 51-28.

32.   Enter an order pursuant to N.D.C.C. §§ 51-15-10 and 51-28-18 imposing upon Defendants, jointly and severally, all costs, expenses, and attorney's fees incurred by North Dakota in the investigation and prosecution of this action.

33.   Enter an order pursuant to N.D.C.C. § 10-32.1-84(5) assessing Defendants Rising Eagle and JSquared a civil penalty of $5,000 for transacting business in North Dakota

without a certificate of authority, and assessing Defendants Spiller and Mears, severally, a civil penalty of $1,000 for participating in the transaction of business in North Dakota by Defendants Rising Eagle and JSquared.

34.   Enter an order pursuant to 10-32.1-84(6) restraining the further transaction of the business of Rising Eagle and JSquared in North Dakota, and order that the injunction remain in place until Defendants pay any civil penalties and otherwise comply with N.D.C.C. ch. 10-32.1.

### Prayer by Plaintiff State of Ohio

35.   Enter an order pursuant to O.R.C. § 1345.07(A)(l) declaring that the Defendants' acts and practices described in Counts XXXI and XXXII violated the Ohio CSPA, O.R.C. § 1345.01 *et seq.*; and that the violations occurred after decisions from Ohio courts determining those acts or practices violative of the Ohio CSPA were available for public inspection pursuant to O.R.C. § 1345.05(A)(3).

36.   Permanently enjoin Defendants, their agents, partners, representatives, employees, salespersons, successors or assigns, including any person or entity which purchases, acquires, or otherwise receives any interest (whether legal, equitable, contractual or otherwise) in Defendants' business and continues to engage in consumer transactions, from engaging in acts and practices which violate CSPA, O.R.C. § 1345.01 *et seq.*, and TSSA, O.R.C. § 4719.01 *et seq.*, including the conduct as specified in Counts XXXI and XXII.

37.   Enter an Order requiring Defendants to pay civil penalties to the Ohio Attorney

General pursuant to O. R.C. § 1345.07, in the amount of twenty-five thousand dollars ($25,000) for each violation of the Ohio CSPA.

38. Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in acts or practices, including the conduct as specified in Count XXXII, that are in violation of the Ohio TSSA.

39. Enter an Order pursuant to O.R.C. § 4719.12 requiring Defendants to pay civil penalties to the Ohio Attorney General, in the amount of not less than one thousand ($1,000) nor more than twenty-five thousand dollars ($25,000) for each violation of the Ohio TSSA as well as investigative costs and reasonable attorney's fees.

### Prayer by Plaintiff State of Texas

40. Permanently enjoin Defendants, their successors, agents, representatives, employees, and all person who act in concert with Defendants from engaging in violations of the Texas Telemarketing Disclosure and Privacy Act.

41. Adjudge against Defendants and in favor of the State of Texas civil penalties of three thousand dollars ($3,000) for each violation of the Texas Telemarketing Disclosure and Privacy Act found by the Court to have been committed by Defendants willfully and knowingly; if the Court finds Defendants have engaged in violations of the Texas Telemarketing Disclosure and Privacy Act which are not willful and knowing, then adjudging against Defendants civil penalties of one thousand dollars ($1,000) for each violation of the Texas Telemarketing

Disclosure and Privacy Act, as provided by Tex. Bus. & Com. Code § 304.252; as well as investigative costs and reasonable attorney's fees.

### **Prayer by All Plaintiffs**

42. Order Defendants to pay the costs of this action, including costs of investigation incurred by Plaintiffs.

43. Award Plaintiffs such other and additional relief as the Court may determine to be just and proper.


Dated: October 30, 2020                         Respectfully Submitted,

**FOR THE STATE OF ARKANSAS:**

LESLIE RUTLEDGE
Attorney General for the State of Arkansas


/s/  David McCoy _____
DAVID MCCOY
Ark. Bar No. 2006100
David.McCoy@ArkansasAG.gov
SHANNON HALIJAN
Ark. Bar No. 2005136
Shannon.Halijan@ArkansasAG.gov
PEGGY JOHNSON
Ark. Bar No. 92-223
Peggy.Johnson@ArkansasAG.gov
Assistant Attorneys General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

**FOR THE STATE OF INDIANA:**

CURTIS T. HILL, JR.
Attorney General for the State of Indiana


/s/  Douglas S. Swetnam _____
DOUGLAS S. SWETNAM
Indiana Bar No. 15860-49
douglas.swetnam@atg.in.gov
JOSEPH D. YEOMAN
Indiana Bar No. 35668-29
Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 232-6294 (Swetnam)
(317) 234-1912 (Yeoman)
(317) 232-7979 (Fax)

*Counsel for Plaintiff*
*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan


/s/  Wisam E. Naoum_____
WISAM E. NAOUM
Michigan State Bar No. P83335
NaoumW1@michigan.gov
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OFMICHIGAN*



**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of Missouri


/s/  Michelle L. Hinkl_____
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*


**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer_____
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
KRISTINE M. RICKETTS
North Carolina State Bar No. 46914
Pennsylvania Bar ID 89042
kricketts@ncdoj.gov
Assistant Attorneys General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

**FOR THE STATE OF NORTH DAKOTA:**

WAYNE STENEHJEM
Attorney General for the State of North Dakota


/s/ Brian M. Card
BRIAN M. CARD (*Pro hac vice motion forthcoming*)
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorney General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1050 E. Interstate Ave., Ste. 200
Bismarck, ND 58503

*Counsel for Plaintif*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio


/s/  Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas

/s/  Patrick Abernethy
PATRICK ABERNETHY
Texas State Bar No. 24109556
Patrick.abernethy@oag.texas.gov
C. BRAD SCHUELKE
Texas State Bar No. 24008000
Brad.schuelke@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*