**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STATE OF TEXAS, et al.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **RISING EAGLE CAPITAL GROUP** | § | Civil Action No.: 4:20-cv-02021 |
| **LLC, et al.,** | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

**<u>RISING EAGLE DEFENDANTS' MOTION TO DISMISS COUNTS II AND III</u>**
**<u>OF THE SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ......................................................................................................... 1

II.  PROCEDURAL AND FACTUAL BACKGROUND .................................................. 3

III.  STANDARD OF REVIEW UNDER RULE 12(b)(1) ................................................. 3

IV.  ARGUMENT .............................................................................................................. 6

  1.  The Supreme Court Holds the TCPA Unconstitutional, but Severs the

  Government-Backed Debt Exemption. ............................................................................ 7

  2.  The Court Does Not Reach a Majority on Liability for Pre-Severance Calls. .......... 8

  3.  The TCPA Was Unconstitutional When the Alleged Calls Were Made ................. 11

  4.  The Calls at Issue Occurred When the TCPA Was Unconstitutional. .................... 14

V.  CONCLUSION ......................................................................................................... 15

## STATEMENT OF THE ISSUES

1.     Whether the Court should dismiss Count III of Plaintiffs' Second Amended Complaint for all alleged calls made in violation of 47 U.S.C. § 227(b)(1)(A)(iii) that occurred prior to the Supreme Court's ruling in *Barr v. American Association of Political Consultants* on July 6, 2020 because the Telephone Consumer Protection Act's automated-calling prohibition, upon which these counts are based, was unconstitutional and therefore unenforceable at the time of the alleged violations.

2.     Whether the Court should dismiss Count II of Plaintiffs' Second Amended Complaint for all alleged calls made in violation of 47 U.S.C. § 227(b)(1)(B) in its entirety because the impermissible government-debt exemption severed from 47 U.S.C. § 227(b)(1)(A)(iii) by the Supreme Court in *Barr v. American Association of Political Consultants* currently remains in § 227(b)(1)(B) and this subsection is therefore unenforceable.

Defendants Rising Eagle Capital Group LLC ("Rising Eagle"), Jsquared Telecom LLC ("Jsquared"), John C. Spiller ("Spiller") and Jakob Mears ("Mears") (collectively, "Rising Eagle Defendants") by counsel, and pursuant to Fed. R. Civ. P. 12(b)(1), respectfully submit this Motion to Dismiss Counts II and III of the Second Amended Complaint.

## I.    INTRODUCTION

Plaintiffs' Second Amended Complaint (ECF No. 56) ("Second Am. Compl.") alleges multiple violations of the automated-call provisions of the Telephone Consumer Protection Act.[1]  But on July 6, 2020, in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), the Supreme Court held that the TCPA's automated-calling prohibition—the very statutory provisions upon which Plaintiffs' Count III is based—was an unconstitutional, content-based suppression of speech.  It addressed the law's unconstitutional condition by prospectively severing the exemption that Congress had created for automated calls made for the purpose of collecting a federal debt.   Thus, the TCPA's automated-call prohibition was unconstitutional from the enactment of the government-debt exemption in 2015 until the Supreme Court's severance became operative.  While *AAPC* dealt solely with calls to cellular telephones, the TCPA's prohibition on the use of automatic telephone dialing systems ("ATDS") or prerecorded voice messages to contact residential telephone lines— the provision upon which Count II is based —is substantively identical to that of the

---

[1]   47 U.S.C. § 227(b)(1)(B); 47 U.S.C. § 227(b)(1)(A)(iii), Second Am. Compl. ¶¶ 170-174, ECF No. 56.

TCPA's prohibition on such calls to cellular telephones.  *Compare* 47 U.S.C. § 227(b)(1)(B) with 47 U.S.C. § 227(b)(1)(A)(iii).

The calls at issue in this case allegedly occurred from June of 2018 to the present, Second Am. Compl. ¶¶ 72-73, 126-30, 290, which encompasses a time period well before *AAPC* rendered the ATDS prohibition of the TCPA constitutional again, at least for automated and/or prerecorded-voice calls to cell phones, on July 6, 2020.  Most of the calls that Plaintiff States allege – a form of speech – occurred in part during a time in which the TCPA's autodialed-call prohibition to cell phones was effectively void.  The Plaintiff States are therefore attempting to recover with Count III under a law that the Supreme Court has declared was unconstitutional before July 6, 2020, which the Plaintiff States cannot do.  Furthermore, Count II seeks to recover under a law that *remains* unconstitutional, as the impermissible government-debt-call exemption was not severed from the residential call subsection of the TCPA by the Supreme Court's decision in *AAPC*.  Therefore, Plaintiffs cannot recover for any alleged calls that occurred to the present date under this currently unconstitutional provision.  The provenance of this rule is unassailable.  "An act of congress repugnant to the constitution can not become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803).  Three other federal district courts have analyzed this issue.  All of these courts have dismissed similar TCPA cases for want of subject matter jurisdiction.  This Court should dismiss Count II entirely and Count III for calls that occurred prior to July 6, 2020 for the same reasons:  it simply cannot entertain Plaintiffs' claims under a statute that the Supreme Court has held was unconstitutional when the calls were made.

2

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed their operative Second Amended Complaint on October 30, 2020. Plaintiffs allege that Rising Eagle Defendants placed millions of prerecorded-voice calls to residents of the Plaintiff States without prior express written consent.  *See* Second Am. Compl. ¶¶ 66, 126-30.  Plaintiffs allege that Spiller and Mears are vicariously liable for controlling or directing Rising Eagle's and JSquared's actions.  *Id.* at ¶¶ 68, 79, 136-51.

The Rising Eagle Defendants deny violating the TCPA and any characterization suggesting they are responsible for the alleged unlawful activity described in Plaintiffs' Second Amended Complaint.  *See*, *e.g.*, Mears Answer ¶73, ECF No. 63; Rising Eagle Answer ¶ 73, ECF No. 64; Spiller Answer ¶ 73, ECF No. 65; JSquared Answer ¶ 73, ECF No. 66.  The Rising Eagle Defendants now move to dismiss Count II in its entirety and Count III for all alleged calls that occurred prior to the *AAPC* decision, as this Court does not have jurisdiction over those alleged violation because the TCPA was unconstitutional when most of the alleged calls occurred.

## III.     STANDARD OF REVIEW UNDER RULE 12(b)(1)

Federal courts may not assume "hypothetical jurisdiction" by deciding a case on the merits before determining that the court has jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).   Consequently, a court must consider jurisdiction on its own initiative, and a party can move to dismiss for lack of subject matter jurisdiction at any time.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006).  A court may lack subject matter jurisdiction when a plaintiff fails to bear the burden of

establishing the "irreducible constitutional minimum" of standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (clarifying the contours of constitutional standing); *Lee v. Verizon Commc'ns., Inc.*, 837 F.3d 523, 544 (5th Cir. 2016) ("[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception.") (citation omitted); *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (the constitutional standing doctrine "implicates [a court's] subject matter jurisdiction, and accordingly must be addressed as a threshold matter.").

Article III of the Constitution of the United States "restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016); *see also Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) ("the question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to 'cases' and 'controversies.'"). To establish constitutional standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal quotations and citation omitted).

"Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: 'facial' attacks and 'factual' attacks." *White v. Alkitsa Inv. Ltd.*, CIVIL ACTION NO. H-20-0951, 2020 U.S. Dist. LEXIS 128039, at *4 (S.D. Tex. July 21, 2020) (citing *Paterson*

4

*v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  "A facial attack is a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Id.*  "A factual attack challenges the factual basis for subject matter jurisdiction, and matters outside the pleadings may be considered." *Id.* "Plaintiff, as the party asserting federal jurisdiction, bears the burden of showing that the jurisdictional requirements have been met." *Id.* (citing *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014)).

"A facial attack analysis mirrors the analysis used for a Rule 12(b)(6) motion," and must consider the allegations of the complaint to be true. *In re Moncla Marine, LLC*, CIVIL ACTION 19-164-SDD-EWD, 2019 U.S. Dist. LEXIS 216317, at *5 (M.D. La. Dec. 17, 2019) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 351 (5th Cir. 1989)).  This codifies the long-standing rule that Article III courts are courts of limited jurisdiction, and they must be satisfied of their ongoing subject-matter jurisdiction through the entirety of the action. *See May v. Texas*, No. 5:16-CV-238-BQ, 2017 U.S. Dist. LEXIS 217263, at *13 (N.D. Tex. Nov. 27, 2017) ("The court therefore '[has] the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.'") (quoting *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985)).[2]  Challenges to subject matter jurisdiction

---

[2]  *See also Admiral Ins. Co. v. Heath Holdings USA, Inc.*, No. 3:03-CV-1634-G, 2005 U.S. Dist. LEXIS 39861, at *10 (N.D. Tex. Dec. 21, 2005) ("The court's lack of subject matter jurisdiction may be asserted at any time, either in the answer, or in the form of a suggestion to the court prior to final judgment."); *United States v. Baucum*, 80 F.3d 539,

may be made at any time, and the Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Bank of La. v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019).

## IV.   ARGUMENT

In *AAPC*, the Supreme Court held that the TCPA's auto dialer restriction, as written, was an unconstitutional, content-based suppression on speech.  As a remedy, the Court prospectively severed the government-backed debt exception, but left the remainder of the TCPA intact. That is, the Supreme Court severed the government-backed debt exception from § 227(b)(1)(A)(iii) on a going-forward basis.  And importantly, the unconstitutional government debt provision still remains in § 227(b)(1)(B).  Thus, for all calls alleged under Count II, and for all calls alleged under Count III prior to the *AAPC* ruling on July 6, the TCPA's restriction on automated calls was an unconstitutional, content-based restriction on speech.  Count II in its entirety, and Count III for calls prior to *AAPC*'s severance must therefore be dismissed, as they were filed under a law that violated the First Amendment at the time of the calls at issue. *See generally Creasy v. Charter Commc'ns., Inc.*, No. 20-1199 SECTION "F", 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy, LLC*, CASE NO.1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572, at *6 (N.D. Ohio Oct. 29, 2020);

---

540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, Case No. 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577, at *8 (M.D. Fla. Dec. 11, 2020).[3]

### 1. The Supreme Court Holds the TCPA Unconstitutional, but Severs the Government-Backed Debt Exemption.

In *AAPC*, the Supreme Court held that the TCPA violates the First Amendment, because it discriminates on speech based on its content. *AAPC*, 140 S. Ct. at 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, the Court held that the government-backed debt exception—added in 2015—treated speech to collect a debt issued or guaranteed by the federal government more favorably than other forms of speech. *Id.* at 2347. As a remedy, however, the Court severed the government-backed debt exemption on a prospective basis. *See id*. at 2343 ("[S]even members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.").

---

[3]   The Rising Eagle Defendants recognize that other post-*AAPC* decisions have rejected the holdings in *Creasy*, *Lindenbaum*, and *Hussain*. *See*, *e.g.*, *Trujillo v. Free Energy Sav. Co., LLC*, Case No. 5:19-cv-02072-MCS-SP, 2020 U.S. Dist. LEXIS 239730, at *12 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, CV 20-7419 PA (AGRx), 2020 U.S. Dist. LEXIS 237582, at *12 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, Case No. 8:19-cv-2523-T-60AAS, 2020 U.S. Dist. LEXIS 232937, at *3 (M.D. Fla. Dec. 11, 2020).  However, these decisions either fail to properly analyze the key issue of retroactive application (*Abramson*) or appear to follow appellate precedent not applicable here (*Trujillo* and *Shen*).  The Court should decline to follow the untenable reasoning set forth in this non-binding authority.

### 2. The Court Does Not Reach a Majority on Liability for Pre-Severance Calls.

Significantly, however, the Supreme Court did not reach a majority on the effect of severance for calls that took place before it severed the government-backed debt exemption. Writing for himself and two other justices, Justice Kavanaugh stated in a footnote: "On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355, n.12.

But only three justices joined in that footnote. *Id*. Moreover, Justices Thomas and Gorsuch stated that it was a mere "suggestion," which does not bind other courts. *Id*. at 2363 ("by shield[ing] only government-debt collection callers . . . under an admittedly unconstitutional law," the three justices "wind up endorsing the very same kind of content discrimination" severance is "seeking to eliminate.").

In key decisions addressing this issue post-*AAPC*, the Eastern District of Louisiana, Northern District of Ohio, and the Middle District of Florida have sided with Justices Thomas and Gorsuch, and held that federal courts do not have subject matter jurisdiction over calls that occurred before the Supreme Court's decision in *AAPC* took effect. *See Creasy*, 2020 U.S. Dist. LEXIS 177798, at *9-10; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8.

The Supreme Court has long held that if "the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (finding that a

sentence imposed under an unconstitutional law is void because the state was deprived of authority to impose it); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law,*' because a law repugnant to the Constitution 'is void, and is as no law.'" (citation omitted)); *id*. at 759-60 ("A court does not—in the nature of things it *can* not [sic]—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original).

As relevant here, a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion at the time of the speech.  *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue).  It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)."  *Baucum*, 80 F.3d at 540-41 (per curiam).

In *Grayned*, the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."  408 U.S. at 107

n.2.    In other words, the relevant question is whether the statute at issue was constitutional when the alleged violation occurred, not whether it has subsequently been cured by judicial or legislative action.   Thus, in this case, the automated-call ban must be assessed when Defendants allegedly committed the violations complained of, which was before July 6, 2020, when the automated-call ban was unconstitutional, as the Supreme Court has now declared.   *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in a majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity."); *United States v. Stroke*, No. 14-CR-45S, 2017 U.S. Dist. LEXIS 94776, at *5-6 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident").

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963. *See* 136 S. Ct. at 723. The Supreme Court concluded the answer is "yes": a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees." *Id*. at 731 (citing *United States v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of

10

a rule of complete retroactivity' than when 'the conduct being penalized is constitutionally immune from punishment.'")); *see also Waldron v. United States*, 146 F.2d 145, 147-48 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

### 3. The TCPA Was Unconstitutional When the Alleged Calls Were Made.

As the courts in *Creasy*, *Lindenbaum*, and *Hussain* have held, the TCPA was unconstitutional between the enactment of the government-backed debt exemption in 2015 and when the Supreme Court severed it from § 227(b)(1)(A)(iii) via its *AAPC* opinion, issued on July 6, 2020. *Creasy*, 2020 U.S. Dist. LEXIS 177798, at * 14; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8. The reasoning behind this is simple. A majority of the Supreme Court (six justices) held that the TCPA was unconstitutional as with the inclusion of the government-backed debt exemption. *Creasy,* at *10. The statute only became constitutional after the Supreme Court's severance of the government-backed debt exemption took effect. *Id*. at *12-14. Thus, calls in violation of § 227(b)(1)(A)(iii) placed between 2015 and at least July 6, 2020—and thus including most of the calls at issue in under Count III—were placed when the TCPA's automated-call ban was unconstitutional. *Id*.; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18 ("at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And, a later amendment to a statute cannot be retroactively applied. . . . It would be an odd result to say the least if the judiciary could accomplish by severance that which

11

Congress could not accomplish by way of amendment.") (internal citation omitted); *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8 ("Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction. Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action.") (citation omitted). Furthermore, because *AAPC* only severed the impermissible exemption from § 227(b)(1)(A)(iii), § 227(b)(1)(B) remains unconstitutional and therefore unenforceable as it still contains the government-debt exemption.  Therefore Count II must be dismissed in its entirety.

It is axiomatic that a defendant cannot be held liable under an unconstitutional law, and that federal courts lack jurisdiction to enforce unconstitutional statutes.  *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").  Indeed, as arguably the most significant Supreme Court case in history held, "[a]n act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803).  Thus, as Justices Thomas and Gorsuch observed, it would be highly improper to hold Defendants liable for calls that took place during a period of time in which the TCPA as a whole was unconstitutional. *AAPC*, 140 S. Ct. at 2363.

Footnote 12 of the *AAPC* Plurality opinion does not mandate a different result, and is not binding on this Court.  First, it does not command a majority of the Court.  Second, it is dicta.  In fractured opinions such as *AAPC*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  *Marks v. United States*, 430 U.S. 188, 193 (1977).  Thus, in *AAPC*, only the narrowest grounds critical to the decision bind lower courts. *Id*.; *see also* Ryan C. Williams, Questioning Marks: Plurality Decisions and Precedential Constraint, 69 Stan. L. Rev. 795, 798 n.1 (2017).

The Plurality in *AAPC* spelled out the "narrowest grounds" that commanded majorities: six members agreed that the TCPA, as written, violated the First Amendment, and seven members agreed that the government-backed debt exception should be severed. *AAPC*, 140 S. Ct. at 2343.  Those two holdings—and only those two holdings—bind this Court.  *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *8-9; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18; Hussain, 2020 U.S. Dist. LEXIS 236577, at *7.  Accordingly, because even the *AAPC* Plurality does not contend that its Footnote 12 commanded a majority, it is not precedential.

Second, Footnote 12 is dicta. First, the question of liability for pre-severance calls was not even addressed by lower courts, making it extremely unlikely that the Court even intended to address it. *See Springfield v. Kibbe,* 480 U.S. 257, 259 (1987) (Supreme Court "ordinarily will not decide questions not raised or litigated in the lower courts."). Second, the only issues before the Court were whether the government-backed debt exemption rendered the TCPA in violation of the First Amendment, and whether that

exemption could be severed to save the statute. *AAPC*, Case No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited November 13, 2020). The parties to *AAPC* never even briefed or argued whether severance should apply prospectively or retrospectively.

### 4.   The Calls at Issue Occurred When the TCPA Was Unconstitutional.

Plaintiffs allege that their states' residents received millions of calls from the Rising Eagle Defendants between June of 2018 to the present, Second Am. Compl. ¶¶ 72-73, 126-30, 290.   The Supreme Court declared the TCPA's robocall restriction unconstitutional and severed the unconstitutional provision from § 227(b)(1)(A)(iii) on July 6, 2020.   Accordingly, the calls under Count III prior to that date occurred during a time the Supreme Court held the TCPA was an unconstitutional, content-based restriction on speech. *See AAPC*, 140 S. Ct. at 2346 (plurality opinion); *id*. at 2356-57 (Sotomayor, J., concurring in the judgment) ("Even under intermediate scrutiny, the Government has not explained how a debt-collection robocall about a government-backed debt is any less intrusive or could be any less harassing than a debt-collection robocall about a privately backed debt."); *id*. at 2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("The statute is content-based because it allows speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters).").

As § 227(b)(1)(A)(iii) of the TCPA only passed constitutional muster after July 6, 2020, this Court lacks subject matter jurisdiction over all calls alleging such violations in Count III prior to that date.   Each call – a form of speech – occurred during a time in

14

which the TCPA's autodialed-call prohibition was effectively void.  *See Creasy*, 2020 U.S. Dist. LEXIS 177798, at *14-15 ("the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [Defendants] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [Defendants]'s liability with regard to such communications."); *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8. Accordingly, Count III of Plaintiffs' Second Amended Complaint should be dismissed as to all calls that occurred prior to July 6, 2020.  Because the government-debt exemption remains intact in § 227(b)(1)(B), Count II of Plaintiffs' Second Amended Complaint should be dismissed in its entirety.

## V.  CONCLUSION

As explained above, Plaintiffs' Complaint seeks recovery under a law that the Supreme Court has now held was unconstitutional.  This Court lacks subject matter jurisdiction over claims under a void law.  Count III of Plaintiffs' Second Amended Complaint should therefore be dismissed for lack of jurisdiction for all calls that occurred prior to July 6, 2020, and Count II should be dismissed in its entirety.

Dated January 7, 2021

Respectfully submitted,

ROTH JACKSON GIBBONS
CONDLIN, PLC

By: /s/ *Mitchell N. Roth*

ATTORNEY-IN-CHARGE:

Mitchell N. Roth, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 35863)
ROTH JACKSON GIBBONS
CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3536
F: 703-485-3525
mroth@rothjackson.com

OF COUNSEL:

Gregory M. Caffas, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 92142)
ROTH JACKSON GIBBONS
CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3533
F: 703-485-3525
gcaffas@rothjackson.com

Joseph P. Bowser, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 88399)
ROTH JACKSON GIBBONS
CONDLIN, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

16

Jason Wagner
State Bar No. 00795704
Federal Bar No. 20325
WAGNER LAW, PLLC
Two North Main Street
Kingwood, Texas 77339
Phone: (713) 554-8450
Fax: (713) 554-8451
jwagner@jwagnerlaw.com

*COUNSEL FOR RISING EAGLE DEFENDANTS*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Movants conferred with all parties who may be affected by the relief sought in this motion. The motion is opposed.

*/s/ Mitchell N. Roth*
Mitchell N. Roth

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on January 7, 2020, I electronically filed the foregoing **RISING EAGLE DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

<u>*/s/ Mitchell N. Roth*</u>
Mitchell N. Roth