# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

STATE OF TEXAS et al.,

     Plaintiffs,

     v.

RISING EAGLE CAPITAL GROUP LLC et al.,

     Defendants.

CASE NO. 4:20-cv-02021

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

**Page No.**

I.      STATEMENT OF THE ISSUES ............................................................. 1

II.     INTRODUCTION ................................................................................. 1

III.    PROCEDURAL AND FACTUAL BACKGROUND .......................................... 4

IV.     STANDARD OF REVIEW UNDER RULE 12(b)(1) ............................................ 5

V.      ARGUMENT ....................................................................................... 7

       A.      In *AAPC*, the Supreme Court invalidated the government-debt
            exception, leaving the rest of the robocalling prohibition intact. ................ 8

       B.      The TCPA's ban on robocalls remains intact ............................................ 10

       C.      The preservation of a statute's enforceability to past
            violations has repeatedly been upheld by the Supreme Court .................. 12

       D.      A majority of courts have held that the severance of the
            government-debt exception preserves liability for
            robocalls placed after the 2015 amendment .............................................. 16

       E.      This Court should not adopt the flawed reasoning of
            three district courts that misconstrued *AAPC* ............................................ 19

       F.      Plaintiffs do not dispute that the government-debt exception
            in 47 U.S.C. § 227(b)(1)(B) is unconstitutional under the
            rationale in *AAPC*, and the correct remedy is to sever the
            offending language and preserve liability for the alleged violations ........ 24

VI.     CONCLUSION ................................................................................... 25

Plaintiffs, the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, and Ohio, respectfully submit this Response to Defendants Rising Eagle Capital Group LLC ("Rising Eagle"), JSquared Telecom LLC ("JSquared"), John C. Spiller ("Spiller") and Jakob Mears ("Mears") (collectively, "Defendants") Motion to Dismiss Counts II and III of the Second Amended Complaint ("Motion to Dismiss").

## I.    STATEMENT OF THE ISSUES

1. Whether the Court should follow the plurality opinion in *Barr v. American Association of Political Consultants*, conclude the severance of the unconstitutional government-debt exception to the Telephone Consumer Protection Act ("TCPA") preserves the enforceability of the statute's ban on robocalls, and deny Defendants' motion to dismiss Count III of Plaintiffs' Second Amended Complaint.

2. Whether the Court should sever similar unconstitutional language in 47 U.S.C. § 227(b)(1)(B), conclude the severance of the offending addendum preserves the original TCPA statute's well settled enforceability, and deny Defendants' motion to dismiss Count II of Plaintiffs' Second Amended Complaint.

## II.    INTRODUCTION

On June 9, 2020, Plaintiffs filed their Original Complaint against Defendants, alleging violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws. On July 6, 2020, a plurality of the Supreme Court held the government-debt exception in 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA to be unconstitutional, and a majority agreed to sever the exception from the statute. *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"). So

as to be consistent with the holding of *AAPC*, Plaintiffs concede section 227(b)(1)(B) contains nearly the identical language[1], and thus, the government-debt exception is unconstitutional and should also be severed. Plaintiffs and Defendants disagree on whether the statute remains enforceable during the period between 2015 and the *AAPC* decision. Defendants argue section 227(b)(1)(A)(iii) was unconstitutional from the enactment of the government-debt exception until the Supreme Court's severance, and that 227(b)(1)(B) continues to be unconstitutional from the enactment of the government-debt exception.

As the Supreme Court recognized in *AAPC*, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Id.* at 2343. Americans rely on the TCPA and its state counterparts to address that evil. In 2019 alone, the federal government received 3.7 million complaints concerning robocalls. *Id.* In January 2020 alone, Americans received more than 4.7 billion robocalls. YouMail Robocall Index, January 2020 Nationwide Robocall Data (last visited Feb. 19, 2020), available at https://robocallindex.com/2020/january. Declaring that the TCPA was invalid during that time will remove a critical enforcement tool to fight some of the most despised harassment in the country. Violators of the TCPA, on the other hand, have no equitable stake in non-enforcement.

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii) states: "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*." (emphasis added). 47 U.S.C. § 227(b)(1)(B) states: "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, *is made solely pursuant to the collection of a debt owed to* or *guaranteed by the United States*, or is exempted by rule or order by the Commission under paragraph (2)(B);" (emphasis added).

Plaintiffs do not dispute that millions, if not billions, of Defendants' calls at issue in this case were made at times during which the TCPA's robocall ban contained the constitutionally flawed government-debt exception in section 227(b)(1)(A)(iii) as well as section 227(b)(1)(B). Plaintiffs maintain that the severance of the offending exception in both subsections does not render the remaining provisions of the TCPA unenforceable.

Based on the dissenting opinion of two Justices, Defendants argue the severing of the government-debt exception from the statute renders the entire automated-calling provision of the TCPA unenforceable. Defendants' mischaracterization of *AAPC* sidesteps the severability analysis employed by the Court. In *AAPC*, the Supreme Court applied long-standing severability principles to conclude that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government debt-exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343. Seven Justices concurred in the severability conclusion, in which the plurality made clear that the "decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. The preservation of the remainder of the statute as enforceable is consistent with well-established severability law and has been followed by the majority of courts considering this question.[2] Defendants urge the Court to disregard this conclusion, and

---

[2] *See, e.g.*, *Less v. Quest Diagnostics Inc.*, No. 3:20-CV-2546, 2021 U.S Dist. LEXIS 14320, at * 2-3 (N.D. Oh., W.D. Jan. 26, 2021); *Stoutt v. Travis Credit Union,* No. 2:20-cv-01280-WBS-AC, 2021 U.S. Dist. LEXIS 6019, at *9 (E.D. Cal. Jan. 12, 2021); *Rieker, v. National Car Cure, LLC*, No. 3:20-CV-5901, 2021 U.S. Dist. LEXIS 9133, at * 2 (N.D. Fla. Jan. 5, 2021); *Trujillo, v. Free Energy Savings Co.*, LLC, No. 5:19-CV-02072, 2020 U.S. Dist. LEXIS 239730 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Grp., LLC*, No. CV 20-7419 PA (AGRx), 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-2523-T-60AAS, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230, 2020 WL 6135181, at * 4 n.2 (D. Ariz. Oct. 19, 2020); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *1 (D. Ariz. Sept. 3, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007, 2020 WL 4698646, at *1 (W.D.

3

instead, adopt the reasoning of three district courts that have misconstrued the severance rationale applied in *AAPC*.

The question here is not whether the government-debt exception is unconstitutional; it is. In contrast, Defendants' illegal calls were wholly unrelated to the unconstitutional government-debt exception. Yet, Defendants argue the mere existence of constitutional flaws in provisions of the TCPA robocall ban inapplicable to the facts of this case should render the TCPA unenforceable under section 227(b)(1)(iii) for a five-year period of time and under section 227(b)(1)(B) for some unknown or continuing timeframe. Defendants' arguments misconstrue the very basic foundation of severability in an effort to escape liability. Here, the argument is that Defendants should remain liable for millions of calls during the relevant time period.

As Justice Kavanaugh stated, "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351. This is precisely what Defendants seek to accomplish with their motion. For the reasons set forth below, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

## III.   PROCEDURAL AND FACTUAL BACKGROUND

On June 9, 2020, Plaintiffs (excluding North Dakota) filed their Original Complaint against Defendants, alleging violations of the TCPA, its related rules, and various state

---

Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 1:20 CV 00554, 2020 WL 4582689, at *1–5 (N.D. Ohio Aug. 10, 2020); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020); *Schick v. Caliber Home Loans, Inc.*, No. 20-CV-00617-VC, 2020 WL 4013224, at *1 (N.D. Cal. July 16, 2020); *Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at *1 (S.D. Tex. July 9, 2020).

telemarketing laws. On August 28, 2020, Plaintiffs filed their First Amended Complaint against Defendants, adding the State of North Dakota as a plaintiff. On October 30, 2020, Plaintiffs filed their Second Amended Complaint against Defendants adding Defendants Rising Eagle Capital Group – Cayman ("Rising Cayman"), Health Advisors of America, Inc. ("Health Advisors"), Michael Theron Smith, Jr. ("Smith"), and Scott Shapiro ("Shapiro"). In the Second Amended Complaint, Plaintiffs added a claim that Defendants violated the Telemarketing Sales Rule ("TSR").

In Count II, Plaintiffs alleged Defendants violated 47 U.S.C. § 227(b)(l)(B) for calls occurring from June 2018 to the present. *See* Second Am. Compl. ¶ 170. In Count III, Plaintiffs alleged Defendants violated 47 U.S.C. § 227(b)(l)(A)(iii) for calls made June 2018 to the present. *See* Second Am. Compl. ¶ 172.

In their answers, Defendants denied violating the TCPA, TSR, and various state laws. *See, e.g.,* Mears' Answer to Second Am. Compl. ¶ 73; Rising Eagle's Answer to Second Am. Compl. ¶ 73; Spiller's Answer to Second Am. Compl. ¶ 73; JSquared's Answer to Second Am. Compl. ¶ 73.

After a 12(b)(1) Conference with the Court, Defendants filed their Motion to Dismiss on January 7, 2021. Defendants moved to dismiss Count II in its entirety and Count III for alleged calls prior to the *AAPC* decision.

## IV.    STANDARD OF REVIEW UNDER RULE 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof and must

establish, by a preponderance of the evidence, that the court has jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A court properly dismisses a case for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)); *see* Fed. R. Civ. P. 12(b)(1). "It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid "law of the United States" to enforce)." *United States v. Baucum*, 80 F.3d 539, 540–41 (D.C. Cir. 1996). However, the purpose of severing a clause of a statute is to draw a line between what is and is not constitutional, so that courts "salvage rather than destroy the rest of the law passed by Congress and signed by the President." *AAPC*, 140 S. Ct. at 2350.

When a party challenges a court's subject matter jurisdiction under Rule 12(b)(1), it can make either a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchacha v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A "factual attack" challenges the existence of subject matter jurisdiction in fact, and matters outside the

6

pleadings, such as testimony and affidavits, are considered. *Id*. Here, the parties have not conducted any formal discovery,[3] and accordingly, the "facial attack" standard applies. *See id*.

Defendants place significant emphasis on the purported absence of Article III standing with respect to Plaintiffs' TCPA claims. However, Plaintiffs have properly alleged that the citizens of Plaintiff states have suffered injury in-fact, that is fairly traceable to the challenged conduct of Defendants, and which is likely to be redressed by a favorable judicial opinion. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As set forth below, Defendants' argument rests on the mistaken premise that the anti-robocall provisions of the TCPA were wholly unconstitutional during the relevant time periods.

Where an unconstitutional amendment to an otherwise valid statute can be severed, the constitutionality of the pre-amendment statute endures. *See, e.g.*, *United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (upholding the defendants' violations of under the statute's surviving provisions). Contrary to Defendants' assertions, Plaintiffs meet the standing requirements articulated by the Supreme Court in challenging Defendants' violations of the TCPA.

## V.   ARGUMENT

As discussed below, Defendants fail to establish any basis for the Court to dismiss this action for lack of subject matter jurisdiction. Defendants' contention that sections 227(b)(1)(A)(iii) and 227(b)(1)(B) were inapplicable to the alleged calls they made during

---

[3] The deadline for completion of discovery in this case is 12 November 2021. *See* Docket Control Order, ECF No. 55, ¶ 5.

the relevant time periods relies on an incorrect reading of *AAPC* and the mistaken notion that the 2015 amendment rendered the entire statute unenforceable. Thus, Defendants' motion should be denied.

A.      **In *AAPC*, the Supreme Court invalidated the government-debt exception, leaving the rest of the robocalling prohibition intact.**

The subject of the Supreme Court's First Amendment analysis in *AAPC* was the government-debt exception in section 227(b)(1)(A)(iii). *AAPC*, 140 S. Ct. at 2343.[4] While the Court found that the government-debt exception was an unconstitutional content-based amendment to the TCPA, it did not invalidate section 227(b)(1)(A)(iii)'s entire prohibition on robocalls to cell phones, nor section 227(b)(1)(B)'s prohibition on robocalls to landlines. *See id*. at 2343-44. Although there is no majority opinion of the Court, six Justices concluded that Congress, in passing the government-debt exception, "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343. Seven Justices, applying severability principles, concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* The Court reasoned that the "justification for the *government-debt exception* is collecting government debt" and that, while the content-based exception represents a "worthy goal," it did not pass strict scrutiny. *Id*. at 2347 (emphasis added).

Rejecting the same argument advanced by Defendants here, the Court "disagreed with plaintiffs' . . . argument for holding the entire 1991 robocall restriction

---

[4] As noted above, Plaintiffs' claims here do not involve calls associated with collecting government debts.

unconstitutional" and held only "that *the 2015 government-debt exception* created an unconstitutional *exception* to the 1991 robocall restriction." *Id.* at 2349 (emphasis added). The Court did not address the constitutionality of 227(b)(1)(B)'s government-debt exception; however, Plaintiffs do not dispute that the exception, like section 227(b)(1)(A)(iii), would likely be rendered unconstitutional under the same rationale.

Under *Marks*, "[w]hen a fragmented Court decides a case . . ., 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (ellipsis in original) (citations omitted). "The *Marks* principle, however, is only workable where there is some "common denominator upon which all of the justices of the majority can agree." *United States v. Duron-Caldera*, 737 F.3d 988, 994 n.4 (5th Cir. 2013) (quoting *United States v. Eckford*, 910 F.2d 216, 219 n.8 (5th Cir. 1990) and citing *United States v. Johnson*, 467 F.3d 56, 63–64 (1st Cir. 2006) ("*Marks* is only workable—one opinion can be meaningfully regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions.")). In *AAPC*, Justice Kavanaugh's three-Justice plurality opinion, holding that only the government-debt exception is unconstitutional, is controlling because it rests on narrower grounds. *AAPC*, 140 S. Ct. at 2343. A seven-Justice majority further concluded that it could sever the unconstitutional exception from the prohibition and "that the entire 1991 robocall restriction should not be invalidated." *Id*. In a separate opinion, Justices Gorsuch and Thomas, concurring in the judgment in part and dissenting in part, reasoned the entire robocall ban, not just the government-debt exception, failed strict scrutiny and concluded that "the challenged

9

robocall ban unconstitutionally infringed on [plaintiffs'] speech." *See id.* at 2364-65. Here, severance of the unconstitutional government-debt exception is the common denominator upon which the justices of the majority can agree. Justice Kavanaugh's opinion is the narrower, logical subset of the broader opinions; thus, it is the holding of the Court.

**B.      The TCPA's ban on robocalls remains intact.**

The Court concluded that it could sever the unconstitutional government-debt exception from the robocall prohibition and "that the entire 1991 robocall restriction should not be invalidated." *AAPC*, 140 S. Ct. at 2343. In conducting its analysis, the Court noted the "strong presumption of severability" as the "normal rule." *Id.* at 2350 (quoting *Free Ent. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S 477, 508 (2010)). In addition, the Communications Act[5] has "an express severability clause," and the plurality concluded that "absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause." *AAPC*, 140 S. Ct. at 2352. The Court cited long-standing precedent on severability in which "[t]he Court has severed the 'exception introduced by amendment,' so that 'the original law stands without the amendatory exception.'" *Id*. at 2353 (quoting *Truax v. Corrigan*, 257 U.S. 312, 342 (1921)). Phrased differently, "the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* (quoting *Frost v. Corp. Comm'n of Oklahoma*, 278 U.S. 515, 526–527 (1929)).

---

[5] 47 U.S.C. § 608.

The purpose of severance is to "salvage rather than destroy the rest of the law passed by Congress and signed by the President." *Id*. at 2350. As recognized by Justice Kavanaugh,

> If courts had broad license to invalidate more than just the offending provision, a reviewing court would have to consider what other provisions to invalidate: the whole section, the chapter, the statute, the public law, or something else altogether. Courts would be largely at sea in making that determination, and usually could not do it in a principled way. Here, for example, would a court invalidate all or part of the Bipartisan Budget Act of 2015 rather than all or part of the 1991 TCPA? After all, that 2015 Bipartisan Budget Act, not the 1991 TCPA, added the constitutionally problematic government-debt exception. That is the kind of free-wheeling policy question that the Court's presumption of severability avoids.

*AAPC*, 140 S. Ct. at 2351 n.7. Thus, if severed and invalidated, "an unconstitutional statutory amendment 'is a nullity' and 'void' *when enacted*, and for that reason has *no effect on the original statute*." *Id*. at 2353 (quoting *Frost*, 278 U.S. at 526) (emphasis added)). Severing an unconstitutional portion from an otherwise valid statute "allows courts to avoid judicial policymaking or de facto judicial legislation in determining just how much of the remainder of a statute should be invalidated." *Id*. at 2351.

As discussed in further detail below, the statute continues to be enforceable, even after the offending amendments have been severed. As such, Defendants' argument that the unconstitutionality of the government-debt exception renders the entire TCPA unenforceable for the past five years is at odds with the long-standing principles of severability articulated and espoused by a majority of the Justices in *AAPC*. Until the Court's decision in *AAPC*, both federal and state governments enforced the TCPA against all violators, except those with an express exemption, like government-debt collectors.

Halting these enforcement actions would be doctrinally far-reaching because it would disable the enforcement of a federal statute and prevent the continued prosecution of constitutionally permissible enforcement actions.

Further, the plurality of the Court explained that, owing to the doctrine of fair notice, "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case," but specifically stated that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12.

The concurring opinions acquiesced to the same position. Justice Sotomayor concurred in the judgment, explaining that she agreed with the plurality "that the offending provision is severable." *Id.* at 2357. Justices Breyer, Ginsburg, and Kagan also concurred on the severability issue, explaining that they "agree[d] with Justice Kavanaugh's conclusion that the provision is severable." *Id.* at 2363. Neither the Sotomayor nor the Breyer opinion found any fault with Justice Kavanaugh's conclusion that parties who violated the robocall restriction between 2015 and 2020 remain liable.

## C.     The preservation of a statute's enforceability to past violations has been upheld repeatedly by the Supreme Court.

Defendants argue that the "relevant question" in this case is "whether the statute at issue was constitutional when the alleged violation occurred." Defs.' Br. p 10. In answering that question, Defendants sidestep well-established holdings of the Supreme Court, including several cited by Justice Kavanaugh in *AAPC*, regarding severance principles and

constitutionality. Instead, Defendants point to two Supreme Court cases analyzing punishment for criminal convictions, which are inapposite here. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017); *Montgomery v. Louisiana*, 136 S. Ct. 718, 731 (2016). In his plurality opinion, Justice Kavanaugh specifically distinguished the rationale articulated by the Supreme Court in *Morales-Santana*, finding it inapplicable to the "narrow exception to the broad robocall restriction" involving the TCPA. *AAPC*, 140 S. Ct. at 2354. Moreover, in *Harper,* the Court directly addressed the distinction between civil and criminal matters with respect to severance and retroactive application stating that while the Court was "mindful of the 'basic norms of constitutional adjudication' that animated our view of retroactivity in the criminal context, we now prohibit the erection of selective temporal barriers to the application of federal law in non-criminal cases." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).

Contrary to Defendants' interpretation of *AAPC*, severance removes the offending addition and treats the statute as if the unconstitutional provision had never been added. It does not render the surviving portions of the statute unenforceable during the period in which the offending language existed. *See id.* ("When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule."). The Supreme Court has "prohibit[ed] the erection of selective temporal barriers to the application of federal law" because "the substantive law" should not "'shift and spring' according to 'the particular equities of [individual parties'] claims'

13

of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* (alterations in original) (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543 (1991)). The *Harper* rule is grounded in the idea that courts have no "constitutional authority . . . to disregard current law or to treat similarly situated litigants differently." *Id.* (citation omitted). Moreover, the Court's severability holding in *AAPC* was a remedy for a constitutional violation. In *Harper*, the Supreme Court stated "both the common law and our own decisions have recognized a general rule of retrospective effect for the constitutional decisions of this Court." *Harper*, 509 U.S. at 94 (internal quotation marks and brackets omitted).

Beyond *Harper*, the retroactive nature of severability is well-settled by Supreme Court precedent, and has been for more than a century. In 1914, in *Eberle*, the Supreme Court held that a constitutional statute's validity "could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 704-05 (1914). In *Eberle*, officers of a brewing company charged with making beer in violation of an 1889 prohibition on manufacturing alcohol argued that the prohibition was void because subsequent amendments created an exception for making wine and cider, and thus, the exception denied brewers equal protection under the law. *Id.* The Court agreed that the amendments violated the Equal Protection clause, but held that they were severable from the underlying 1889 prohibition on manufacturing alcohol, and therefore, the amendments were "mere nullities" that did not invalidate the 1889 prohibition. *Id.* The Court sustained the brewers' convictions. *Id.* at 707. Here,

Defendants argue that they should not be held liable because of a severed unconstitutional exception. Following *Eberle*, this Court should dismiss that argument.

Likewise, in *Frost*, the Court held that an amendment exempting certain corporations from making a showing of "public necessity" in order to obtain a cotton gin license constituted an unconstitutional denial of equal protection. *Frost,* 278 U.S. at 524-25. The Court held the amendment was severable from the original 1915 law requiring a showing of "public necessity." *Id*. The Court held that because the amendment was unconstitutional, it was "a nullity" and "powerless to work any change in the existing statute," which "must stand as the only valid expression of legislative intent." *Id.* at 526. The Court reasoned that "[a]n act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality." *Id.* at 527. Just as in *Frost*, the 2015 unconstitutional amendment carving out government-debt calls cannot—even temporarily—invalidate the 1991 TCPA prohibition on robocalls.

As noted above, in support of their position, Defendants incorrectly rely on precedent involving the retroactive application of an unconstitutional statute in the criminal context, which is inapplicable to the case at bar. *See Montgomery,* 136 S. Ct. at 724; *Grayned v. City of Rockford,* 408 U.S. 104, 107 n.2 (1972); *Baucum*, 80 F.3d at 540-41. In *Montgomery*, unlike the instant case, the Supreme Court held that the prohibition on sentencing juveniles to life without parole was "a new substantive rule that, under the Constitution, is retroactive in cases on state collateral review." *Montgomery*, 136 S. Ct. at 724. But *Montgomery* was not a case like *AAPC*, in which a later amendment to an

otherwise enforceable statute was declared unconstitutional and the court then had to decide whether the remainder could independently remain valid. Rather, *Montgomery* held that because an *entire* course of conduct—sentencing juveniles to life without parole—was unconstitutional, such sentences could be reviewed retroactively. *Grayned* and *Baucum* are similarly inapposite, here. In *Grayned*, the Supreme Court did not consider whether it would be appropriate to sever the offending portion of the original statute nor the resulting implications if it had done so. *Grayned,* 408 U.S. at 107. And in *Baucum*, the D.C. Circuit Court of Appeals analyzed whether an unconstitutional claim against a criminal statute can be brought as a jurisdictional claim, thus making it nonwaivable. *Baucum¸* 80 F.3d at 542 The court rejected this argument. *Id.*

Defendants also cite to a string of cases that state that courts have no jurisdiction over an unconstitutional law; however, what Defendants fail to recognize is that because the narrow unconstitutional exception at issue here can be severed from the remainder of the statute, the remaining portions of the TCPA—including the pre-amendment ban on robocalls—endure. As such, Defendants' analysis relies upon the faulty premise that the TCPA itself is unconstitutional. Defendants' conclusion is wrong, and their argument should be rejected by this Court.

**D.    A majority of courts have held that the severance of the government-debt exception preserves liability for TCPA robocalls placed after the 2015 amendment.**

The Ninth Circuit and numerous district courts have held that the government-debt exception should be severed and that such severance does not affect liability for robocall violations made after the 2015 amendment. *See, e.g.*, *Duguid v. Facebook, Inc.,* 926 F.3d

1146, 1153 (9th Cir. 2019), *cert. granted in part,* 207 L. Ed. 2d 1118, No. 19-511, 2020 WL 3865252 (July 9, 2020); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Sliwa v. Bright House Networks, LLC*, 2018 U.S. Dist. LEXIS 52509 (M.D. Fl. 2018). The weight of authority strongly supports the retroactive application of the Supreme Court's severability holding, ensuring that parties may still be held liable for robocall violations pre-severance.

In *Duguid*, the defendant, Facebook, argued that the statute violated the First Amendment, as an affirmative defense. *Duguid,* 926 F.3d at 1149. The Ninth Circuit "reject[ed] Facebook's challenge that the TCPA as a whole is facially unconstitutional," "sever[ed] the debt-collection exception as violative of the First Amendment," and "reverse[d] the dismissal of Duguid's amended complaint." *Id.* at 1157. The Ninth Circuit remanded for further proceedings, recognizing that severing the unconstitutional government-debt exception from the general prohibition meant that plaintiff's TCPA claims could proceed.

Before the *AAPC* decision, district courts routinely denied motions to dismiss TCPA robocall claims on the grounds that the government-debt exception created an unconstitutional content-based speech restriction. These courts reasoned that even if the government-debt exception was unconstitutional, the exception was severable from the rest of § 227(b)(1)(A)(iii), and that the plaintiffs' claims for robocall violations unrelated to the collection of government debt could, therefore, still proceed.[6]

---

[6] *See Geraci v. Red Robin Int'l, Inc.*, No. 19-CV-01826-RM-KLM, 2020 WL 2309559, at *9 (D. Colo. Feb. 28, 2020), *report and recommendation adopted,* 2020 WL 1443597 (D. Colo. Mar. 25, 2020); *Rosenberg v. LoanDepot.com, LLC*, 435 F. Supp. 3d 308, 321 (D. Mass. 2020); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1060 (W.D. Mo.

Since the *AAPC* decision, district courts have continued to find that severance of the unconstitutional government-debt exception means that parties may still be liable under the TCPA for robocalls made after 2015.[7] Recently, in *Abramson*, the court found the *Creasy* argument unpersuasive, stating that "[a]lthough XenCall cites two cases supporting its arguments, the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*." *Abramson*, 2020 WL 7318953, at *2 (citations omitted). In *Shen*, in denying the defendant's motion to dismiss, the court stated, "[t]his Court, like several others to have considered the issue, declines to adopt an analysis that appears to be at odds with the views of a majority of the Supreme Court's Justices and the Ninth Circuit." *Shen*, 2020 WL 7705888, at *4 (citations omitted).

In *Trujillo* the court rejected a similar argument stating that, "[t]he *Frost* framework is applicable here. The 2015 amendment of the statute introduced the constitutionally offensive government-debt exception; as determined by the Supreme Court, the statute was sound before Congress introduced the errant exception." *Trujillo*, 2020 U.S. Dist. LEXIS 239730, at * 8 (citations omitted). Likewise, in *Stoutt*, the court rejected a similar argument,

---

2019); *Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019); *Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096, 1122 (W.D. Mo. 2019); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 269 (D. Del. 2019); *Katz v. Liberty Power Corp.*, No. 18-cv-10506-ADB, 2019 WL 4645524, at *8 (D. Mass. Sept. 24, 2019); *Parker v. Portfolio Recovery Assocs., LLC*, No. SACV 18-02103-JVS, 2019 WL 4149436, at *3 (C.D. Cal. July 11, 2019); *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 WL 3409487, at *6 (S.D. Fla. Apr. 3, 2019); *Silwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018).

[7] *See Less*, 2021 U.S Dist. LEXIS 14320, at * 2-3; *Rieker, LLC*, 2021 U.S. Dist. LEXIS 9133, at * 2; *Buchanan,* 2020 WL 6381563, at *3; *Schmidt*, 2020 WL 6135181, at *4 n.2; *Canady*, 2020 WL 5249263, at *1; *Lacy,* 2020 WL 4698646, at *1; *Komaiko*, 2020 WL 5104041, at *2; *Rogers,* 2020 WL 4582689, at *1–5; *Burton,* 2020 WL 4504303, at *1 n.2; *Schick*, 2020 WL 4013224, at *; *Shields*, 2020 WL 5522991, at *1.

stating "defendant's view of severability has no foundation in law. Because the Supreme Court has invalidated and severed the government-debt exception from the remainder of § 227(b)(1)(A)(iii), the exception did not affect the remainder of the statute and the statute remains enforceable, at least against nongovernment debt collectors, as to calls made between November 2015 and July 6, 2020." *Stoutt,* 2021 U.S. Dist. LEXIS 6019, at * 9.

**E.      This Court should not adopt the flawed reasoning of three district courts that misconstrued *AAPC*.**

Despite the severability analysis in *AAPC*, Defendants argue they cannot be held liable for calls made during the relevant time periods. Defendants urge the Court to adopt the reasoning and holdings of three district courts that accepted similar arguments. *See generally Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.,* No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020), *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), *appeal filed,* No. 20-4252 (6th Cir. 2020); *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020). These courts misconstrued the Supreme Court's analysis in *AAPC*, as well as long-standing principles of severability.

The Supreme Court expressly rejected the conclusion of *Creasy*, *Lindenbaum*, and *Hussain* when it repudiated the argument that the entire robocall ban was unlawful. *See AAPC*, 140 S. Ct. at 2348-49 ("we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional"). The *Creasy* decision and its progeny take a contradictory position that is antithetical to the constitutional and severance holdings of the Supreme Court in *AAPC*. The *Creasy* argument is that the law was

unconstitutional and severance only cured it for future violations. *Creasy*, 2020 WL 5761117, at *6. This reasoning is wrong. *See Hulin v. Fibreboard Corp,* 178 F.3d 316, 333 (5th Cir. 1999) (The *Harper* decision affirms adjudicative retroactivity "leaving only an indistinct possibility of the application of pure prospectivity in an extremely unusual and unforeseeable case."). The point of the severability doctrine is to identify the portion of a statute that is unconstitutional and to "refrain from invalidating more of the statute than is necessary." *AAPC*, 140 S. Ct. at 2350 (quoting *Reagan v. Time Inc.*, 468 U.S. 641, 652-53 (1984)); *see also Koog v. United States*, 79 F.3d 452, 463 (5th Cir. 1996) (holding that the "remainder of the interim provision" of the Brady Handgun Violence Protection Act "is severable from the invalidated duties and therefore survives this constitutional attack").

The courts in *Hussain* and *Lindenbaum* take the argument one step further and conclude the court has no subject matter jurisdiction over the entire statute because it was unconstitutional at the time. *See Hussain*, 2020 WL 7346536, at * 3, *Lindenbaum*, 2020 WL 6361915, at *7.

In *Lindenbaum*, the court circumvented *Harper* and, instead, relied on a concurring opinion denying rehearing *en banc* in *Arthrex*. *Lindenbaum*, 2020 WL 6361915, at *5-6 (citing *Arthrex, Inc. v. Smith & Nephew, Inc*., 953 F.3d 760, 766-67 (Fed. Cir. 2020) (O'Malley, J., concurring in the denial of rehearing *en banc*) ("While the principle of retroactive application requires that we afford the same remedy afforded the party before the court to all others still in the appellate pipeline, judicial severance is not a 'remedy;' it is a forward-looking judicial fix.")). Courts, however, cannot "fix" statutes. Rather, "a legislative act contrary to the Constitution is not law." *Marbury v. Madison*, 5 U.S. (1

Cranch) 137, 177 (1803). Moreover, neither the Plaintiffs' remedies nor the Defendants' obligations are affected by the severance of the government-debt exception. Simply put, Defendants were not making government-debt related calls and, thus, their calls were always in violation of the TCPA, regardless of if they were pre or post *AAPC*.

Further in *Lindenbaum*, the court distinguished *Eberle* from the case at hand, concluding the plurality opinion in *AAPC* only cited *Eberle* "to support the concept that severance of the government-debt exception does not affect the validity of the remainder of the statute" and not if the severance applied retroactively. *Lindenbaum*, 2020 WL 6361915, at *7. However, when a court severs an unconstitutional part of a statute, it is interpreting the remainder of the statute to have always operated unencumbered. A statute's validity cannot "be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle*, 232 U.S at 704-05. The *Lindenbaum* court wrongly concluded that the plurality in *AAPC* "could not have intended" the severing the exception to mean the TCPA could be enforced retroactively. *Id.* However, the plurality in *AAPC expressly stated,* "our decision today does not negate liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. The *Lindenbaum* court's application of *Eberle* is unpersuasive.

Overall, the approach adopted by the *Creasy, Lindenbaum,* and *Hussain* courts "disrespect[s] the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. "[S]everability is a doctrine borne out of constitutional-avoidance principles, respect for the separation of powers, and judicial circumspection when confronting legislation duly

enacted by the co-equal branches of government. Parties cannot, by litigation tactics or oversight, compel the courts to strike down more of a law than the Constitution or statutory construction principles demand." *Ass'n of Am. Railroads v. United States Dep't of Transp.*, 896 F.3d 539, 550 (D.C. Cir. 2018), *cert. denied sub nom.*, 139 S. Ct. 2665 (2019).

The district courts in *Creasy*, *Lindenbaum*, and *Hussain* acknowledged the Supreme Court's direction in footnote twelve that its decision "does not negate the liability of parties who made robocalls covered by the robocall restriction," *AAPC*, 140 S. Ct. at 2355 n.12, but characterized it as dicta based on the mistaken impression that only three Justices joined in it. *See Lindenbaum*, 2020 WL 6361915, at *5 ("footnote 12 is contained in a plurality opinion endorsed by only three Justices" and "constitutes non-binding *obitur dictum*"). As discussed above, seven Justices joined the severance holding: Chief Justice Roberts and Justice Alito, who joined in Justice Kavanaugh's plurality opinion; Justice Sotomayor, who disagreed with the application of strict scrutiny but agreed that the government-debt exception was severable, *AAPC*, 140 S. Ct. at 2357; and Justice Breyer, joined by Justices Ginsburg and Kagan, who would have held the government-debt exception was constitutional but "concur[red] in the judgment with respect to severability," *Id.* at 2363. Footnote twelve defines the scope of the severability judgment, clarifying what the Supreme Court's decision as to severability "means." *See id.* at 2355 n.12.[8]

Even if footnote twelve is dicta, it is the dicta of the Supreme Court, which is extremely persuasive. *See United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir.1980)

---

[8] The fact that a statement is made in a footnote does not mean that it is dicta. *See, e.g.*, *Fla. Dep't of Labor & Emp't Sec. v. United States Dep't of Labor*, 893 F.2d 1319, 1323 n.7 (11th Cir. 1990) ("it is not possible to characterize this footnote in [the Supreme Court's opinion] as *obiter dictum*").

("[W]e are not bound by dicta, even of our own court [,] [d]icta of the Supreme Court are, of course, another matter.") (citations omitted). "[W]e give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013).

Moreover, the Supreme Court's grant of certiorari in *Duguid* confirms its intent that parties are liable for violating the robocall prohibition pre-*AAPC*. Facebook sought review of the Ninth Circuit's severance of the government-debt exception. *See* Petition for Writ of Certiorari, *Facebook, Inc. v. Duguid*, 2019 WL 5390116, at *1-2, 16-22 (Oct. 17, 2019). The Supreme Court denied certiorari as to that issue, while granting certiorari as to a second, unrelated issue. *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020). Thus, these decisions are in direct conflict with the Ninth Circuit's decision to sever the government-debt exception. *Duguid*, 926 F.3d at 1156. The Supreme Court had an opportunity to reverse the Ninth Circuit and chose not to do so. *Duguid*, 2020 WL 3865252, at *1.

Finally, Defendants, themselves, tacitly disagree with the *Creasy¸ Lindenbaum*, and *Hussain* holdings as they do not argue the Court lacks standing to adjudicate Count I, violations of 47 U.S.C. § 227(c); Count IV, violations of 47 U.S.C. § 227(d)(3)(A); or Count V, violations of 47 U.S.C. § 227(e)(1). Effectively, their argument is that portions of the *AAPC* decision have retroactive severance and other portions do not.

In sum, under Supreme Court precedent, the government-debt exception was void from the minute it was enacted. It had no effect on the rest of the TCPA. *Creasy* and its progeny therefore erred in holding that the law cannot be enforced against defendants here.

This Court should reject Defendant's arguments and hold that the *Harper* rule applies to *AAPC*'s severance holding. Therefore, the Court also should deny Defendant's motion to dismiss Count III of the Second Amended Complaint.

**F.    Plaintiffs do not dispute that the government-debt exception in 47 U.S.C. § 227(b)(1)(B) is unconstitutional under the rationale in *AAPC*, and the correct remedy is to sever the offending language and preserve liability for the alleged violations.**

In *AAPC,* the Supreme Court did not address the constitutionality of section 227(b)(1)(B), stating "[t]he issue before us concerns only robocalls to cell phones." *AAPC*, 140 S. Ct. at 2347. Following the reasoning of *AAPC*, Plaintiffs do not dispute that the government-debt exception in section 227(b)(1)(B) would also be rendered unconstitutional. However, Defendants continue to argue the constitutional flaw renders the TCPA inapplicable to their alleged calls for some unknown or continuing timeframe. The remedy, as in *AAPC* and argued above, should be for the Court to sever the offending language and apply the severance retroactively. *See Katz*, 2019 WL 4645524, at *8. *See generally Geraci*, 2020 WL 2309559, at *9; *Rosenberg*, 435 F. Supp. 3d at 321; *Doohan*, 427 F. Supp. 3d at 1060; *Taylor*, 2019 WL 6499140, at *16; *Hand*, 425 F. Supp. 3d at 1122; *Smith*, 414 F. Supp. 3d at 1231; *Perrong*, 411 F. Supp. 3d at 269;; *Parker*, 2019 WL 4149436, at *3; *Wijesinha*, 2019 WL 3409487, at *6; *Silwa*, 2018 WL 1531913, at *6. Thus, Defendants can be held liable for their alleged calls.

In *Katz*, the defendant argued both sections 227(b)(1)(A)(iii) and 227(b)(1)(B) were unconstitutional, similar to the case at hand. *Katz*, 2019 WL 4645524, at *6. The court followed the Ninth Circuit's *Duguid* reasoning and severed the government-exception from

both provisions of the statute. *Id.* at *8. The court went on to state, "[t]herefore, the claims in this case are unaffected by the debt-collection exception's unconstitutionality." *Id.*

For example, in *Miselis*, the defendants challenged their convictions under the Anti-Riot Act on the grounds that statute is facially overbroad under the Free Speech Clause of the First Amendment. *United States v. Miselis*, 972 F.3d 518, 525 (4th Cir. 2020). The Fourth Circuit held that it was unconstitutionally overbroad, but that the "overbroad portions of the statute are severable from the constitutionally valid remainder." *Id.* at 541. The Fourth Circuit stated the overly broad language is "easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in [*AAPC*]." *Id.* at 542. The court noted that *AAPC* and other cases "illustrate just how 'surgical' we ought to be in severing unconstitutional language from an otherwise inoffensive statute." *Id.* The Fourth Circuit rejected the argument the defendants' convictions should be overturned, reasoning that "because the defendants' substantive offense conduct falls under the statute's surviving purposes, their convictions must stand." *Id.* at 546-47. The same is true here. The offending language can be surgically removed from the statute, and Defendants can and should still be found liable for their actions.

Accordingly, the Court should hold the government-debt exception to be retroactively severable from section 227(b)(1)(B), and deny Defendant's Motion to Dismiss.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

25

Dated January 28, 2021                         Respectfully submitted,

**FOR THE STATE OF ARKANSAS:**                 **FOR THE STATE OF INDIANA:**

LESLIE RUTLEDGE                                TODD ROKITA
Attorney General for the State of              Attorney General for the State of Indiana
Arkansas

/s/  David McCoy                               /s/  Douglas S. Swetnam
DAVID MCCOY                                    DOUGLAS S. SWETNAM
Ark. Bar No. 2006100                           Indiana Bar No. 15860-49
David.McCoy@ArkansasAG.gov                     douglas.swetnam@atg.in.gov
SHANNON HALIJAN                                JOSEPH D. YEOMAN
Ark. Bar No. 2005136                           Indiana Bar No. 35668-29
Shannon.Halijan@ArkansasAG.gov                 Joseph.Yeoman@atg.in.gov
PEGGY JOHNSON                                  Deputy Attorneys General
Ark. Bar No. 92-223                            302 West Washington Street
Peggy.Johnson@ArkansasAG.gov                   IGCS – 5th Floor
Assistant Attorneys General                    Indianapolis, IN 46204
Office of the Arkansas Attorney General        (317) 232-6294 (Swetnam)
323 Center Street, Suite 200                   (317) 234-1912 (Yeoman)
Little Rock, AR 72201                          (317) 232-7979 (Fax)
(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)                       *Counsel for Plaintiff*
                                               *STATE OF INDIANA*

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

26

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan

/s/  Wisam E. Naoum
WISAM E. NAOUM
Michigan State Bar No. P83335
NaoumW1@michigan.gov
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OF MICHIGAN*

**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of Missouri

/s/  Michelle L. Hinkl
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*

FOR THE STATE OF NORTH CAROLINA:

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
KRISTINE M. RICKETTS
North Carolina State Bar No. 46914
Pennsylvania Bar ID 89042
kricketts@ncdoj.gov
Assistant Attorneys General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050


*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

FOR THE STATE OF NORTH DAKOTA:

WAYNE STENEHJEM
Attorney General for the State of North Dakota


/s/ Brian M. Card
BRIAN M. CARD
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorney General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1050 E. Interstate Ave., Ste. 200
Bismarck, ND 58503

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/  Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.
gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 28, 2020, I electronically filed the foregoing

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Joseph D. Yeoman
Joseph D. Yeoman