# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS et al., <br><br>     Plaintiffs, <br><br>     v. <br><br> RISING EAGLE CAPITAL GROUP LLC et al., <br><br>     Defendants. | CASE NO. 4:20-cv-02021 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS MICHAEL T. SMITH, JR., AND HEALTH ADVISORS OF AMERICA, INC.'S NOTICE OF JOINING CO-DEFENDANT RISING EAGLE'S MOTION TO DISMISS AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page No.**

I.    STATEMENT OF THE ISSUES ............................................................. 1

II.   INCORPORATION OF PLAINTIFFS' PREVIOUS 12(b)(1) RESPONSE......... 2

III.  INTRODUCTION TO 12(b)(6) RESPONSE ......................................... 3

IV.   PROCEDURAL AND FACTUAL BACKGROUND ................................... 5

V.    STANDARD OF REVIEW UNDER RULE 12(b)(6) ............................. 7

VI.   ARGUMENT ................................................................................. 9

    A.    Plaintiff gave fair notice of the claims against Defendants
          and did not impermissibly lump Defendants
          with other Co-Defendants. ......................................................... 10

          1.    Requirements under Rule 8(a)(2) and
               "Lumping" Defendants. .................................................. 10

          2.    Plaintiffs' have pleaded their allegations with
               sufficient particularity to survive a motion
               to dismiss under Rule 12(b)(6) ...................................... 14

    B.    Plaintiffs have pleaded with sufficient particularity to give
          Defendants notice under an agency theory. ............................... 17

VII.  CONCLUSION ............................................................................. 20

Plaintiffs, the States[1] of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas respectfully submit this Response to Defendants Michael T Smith, Jr. ("Smith") and Health Advisors of America, Inc.'s ("Health Advisors") (collectively, "Defendants") Notice of Joining Co-Defendant Rising Eagle's Motion to Dismiss and Motion to Dismiss Plaintiffs' Second Amended Complaint.

## I.    STATEMENT OF THE ISSUES

1. Whether the Court should follow the plurality opinion in *Barr v. American Association of Political Consultants*, conclude the severance of the unconstitutional government-debt exception to the Telephone Consumer Protection Act ("TCPA") preserves the enforceability of the statute's ban on robocalls, and deny Defendants' motion to dismiss Count VIII of Plaintiffs' Second Amended Complaint.

2. Whether the Court should sever similar unconstitutional language in 47 U.S.C. § 227(b)(1)(B), conclude the severance of the offending addendum preserves the original TCPA statute's well-settled enforceability, and deny Defendants' motion to dismiss Count VII of Plaintiffs' Second Amended Complaint.

3. Whether the Court should find Plaintiffs' Second Amended Complaint was sufficiently pealed to comport with fair notice pleading standards necessary to survive a Fed. R. Civ. P. 12(b)(6) challenge and deny Defendants' Motion to Dismiss.

---

[1] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. The matter was resolved by a consent judgment. Plaintiff State of Missouri, therefore, is not seeking any relief from these Defendants.

## II.    INCORPORATION OF PLAINTIFFS' PREVIOUS 12(b)(1) RESPONSE

Plaintiffs, in keeping with the page requirements in Local Court Rule 7(A), request the Court to incorporate Plaintiffs' previous response (ECF No. 87) into the constitutionality and applicability of the TCPA in light of *Barr v. American Association of Political Consultants, Inc*., __ U.S. __, 140 S. Ct. 2335 (2020) ("*AAPC*"). In the Second Amended Complaint, Plaintiffs alleged that Defendants illegally robocalled residents of the Plaintiff states from May 1, 2018, until July 31, 2019. Second Am. Compl. ¶ 166. The alleged calls fall directly within the time period between the 2015 amendment of the TCPA and the decision in *AAPC*. As Defendants have joined a previous 12(b)(1) motion (ECF Nos. 80, 81), Plaintiffs incorporate and emphasize herein their response. ECF No. 87.

As a supplement to their previous response, Plaintiffs would draw the Court's attention to similar rulings in support of their argument published right before or since that response was filed. *See, e.g.*, *McCurley v. Royal Sea Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2021 WL 288164, at *3 (S.D. Cal. Jan. 28, 2021), *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-CV-60638-WPD, 2021 WL 612212, at *2 (S.D. Fla. Jan. 19, 2021) (stating "it appears that the clear majority of cases to consider this issue have allowed parties to continue to bring § 227(b) claims post-*AAPC*."); *see also Kenneth Johansen v. Loandepot.com LLC, et al.,* No. 820CV00919DOCJDE, 2021 WL 669329, at *4 (C.D. Cal. Jan. 31, 2021) (refusing to extend the holdings of *Creasy*, *Lindenbaum*, and *Hussain* to Section 227(C)—the TCPA's Do Not Call provision). In *McCurley*, the district court directly addressed footnote 12 and concluded that:

> Justice Kavanaugh's statement that the AAPC decision 'does not negate the liability of parties who made robocalls covered by the robocall restriction' . . . is not dicta because it was joined by six other justices. However, even if it was dicta, this Court finds it signals the intent of the Supreme Court and what it would hold in future cases and, as such, may not be cavalierly dismissed by a district court.

*Id*. at *3.

### III.   INTRODUCTION TO 12(b)(6) RESPONSE

On October 30, 2020, Plaintiffs filed their Second Amended Complaint, adding Defendants Health Advisors and Smith, as well as Defendant Scott Shapiro ("Shapiro"). In the complaint, Plaintiffs made allegations against Rising Eagle Capital Group ("Rising Eagle"), JSquared Telecom LLC ("JSquared"), John C. Spiller, II ("Spiller"), and Jakob Mears ("Mears") for violations of the TCPA, and other state laws. Plaintiffs referred to those Defendants collectively in this robocalling operation as "Rising Eagle Defendants." *See* Second Am. Compl. ¶¶ 28, 30, 32, ECF No. 56. For their part in this scheme, Plaintiffs also alleged Defendants Health Advisors, Smith, and Shapiro violated the TCPA and other state laws. *See id.* ¶¶ 29, 33. Plaintiffs referred to those Defendants collectively in this health insurance selling operation as "Health Advisors Defendants." *Id.* ¶ 152. Plaintiffs alleged Defendants Smith and Shapiro each had an individual relationship with Defendant Health Advisors. *Id.* ¶¶ 153-54. This response refers to Defendants Health Advisors and Smith collectively as "Defendants."

With regard to Defendants, this case is about a robocalling scheme, and their participation in and direction of certain specific aspects of the scheme. *See id.* ¶¶ 65, 155. With respect to the Rising Eagle Defendants, Plaintiffs and Plaintiff State of Missouri have

alleged Rising Eagle Defendants initiated robocalls as a way to generate sales leads for multiple clients. *Id.* ¶ 65. Defendant Health Advisors is one of those clients. *See id.* ¶ 157. Plaintiffs have alleged that Defendant Smith is the president of Defendant Health Advisors, and that he had the authority to direct Rising Eagle Defendants to make calls on its behalf. *Id.* ¶ 153. Plaintiffs have also alleged, upon information and belief, that Defendant Shapiro had an ownership role in Health Advisors, and that he had the authority to direct Rising Eagle Defendants to make calls on its behalf. *Id.* ¶ 154. Plaintiffs alleged that Defendants directed Rising Eagle Defendants to initiate robocalls, and that Defendants paid Rising Eagle Defendants for sales generated by these calls. *Id.* ¶¶ 159, 162, 165. Plaintiffs further alleged that Defendants also *provided* telephone numbers to Rising Eagle Defendants in order to initiate robocalls on their behalf. *Id.* ¶ 163. Plaintiffs have pleaded with sufficient particularity to state a plausible TCPA claim against Defendants under the theory of vicarious liability.

Defendants argue Plaintiffs failed to comply with Fed. R. Civ. P. 8(a), in that Plaintiffs allegedly lumped Defendants Smith and Health Advisors with Defendant Shapiro and other Co-Defendants, while providing no factual basis to distinguish their conduct. Defendants incorrectly frame the allegations as lumping, even though the Second Amended Complaint details a larger robocalling scheme perpetrated by Rising Eagle Defendants and describes Defendants' integral role within that scheme.

Rule 8(a) only requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal quotation omitted). Here, the Plaintiffs have pleaded with sufficient factual particularity to distinguish the conduct of the different actors in their roles in this scheme.

Further, Plaintiffs have laid the groundwork for holding Defendants liable through an agency theory. Under the TCPA, defendants can be held vicariously liable for calls made by a third-party caller. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 557 U.S. 153 (2016). In particularizing allegations of this robocalling scheme, Plaintiffs' Second Amended Complaint describes Defendants' role in directing Rising Eagle Defendants to initiate calls, Defendants paying for those calls, Defendants benefitting financially from those calls, and Defendants providing the phone numbers to call. *Id.* ¶¶ 162, 163, 165. Plaintiffs have pleaded sufficient factual allegations to tie Defendants to Rising Eagle Defendants under an agency theory, and distinguish the actions of these parties.

Plaintiffs have met their initial burden under Rule 8(a). Defendants have been given fair notice of the claims against them and the basis upon which they could be held liable for the injuries caused to the residents of Plaintiffs' states. As such, the Court should deny Defendants' Motion to Dismiss.

## IV. PROCEDURAL AND FACTUAL BACKGROUND

On June 9, 2020, Plaintiffs[2] filed their Original Complaint against Defendants Rising Eagle, JSquared, Spiller, and Mears, alleging violations of the TCPA, its related rules, and various state telemarketing laws. ECF No. 1. On August 28, 2020, Plaintiffs filed

---

[2] Excluding North Dakota.

their First Amended Complaint against these four Defendants, adding the State of North Dakota as a plaintiff. ECF No. 42.

On September 11, 2020, Defendants Rising Eagle, JSquared, Spiller, and Mears filed their answers to the First Amended Complaint. ECF Nos. 45-47, 49. In their answers, Rising Eagle Defendants claimed:

> [T]he alleged 'robocalling campaign' was controlled by Health Advisors of America, Inc. ("Health Advisors")[3], which independently procured all consumer leads to be called, directed the prerecorded messages to be used, independently hired and supervised its employees or agents who spoke with consumers, and used its own Vicidial system to conduct its campaign.

Mears' Answer to First Am. Compl. ¶ 33, Rising Eagle's Answer to First Am. Compl. ¶ 33, Spiller's Answer to First Am. Compl. ¶ 33, JSquared's Answer to First Am. Compl. ¶ 33, ECF Nos. 45-47, 49.

On October 15, 2020, the Court held an Initial Conference. ECF No. 51. The Court then issued a Control Order, which gave Plaintiffs until October 30, 2020 to add new parties. ECF No. 55, at ¶ 2.

On October 30, 2020, Plaintiffs filed their Second Amended Complaint against Defendants adding Defendants Rising Eagle Capital Group – Cayman ("Rising Cayman"), Health Advisors, Smith, and Shapiro. Plaintiffs alleged claims against Defendants Rising Eagle, JSquared, Spiller, Mears, and Rising Cayman as individuals and as Rising Eagle Defendants, depending on the context. Second Am. Compl. ¶ 64. Plaintiffs also alleged

---

[3] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. The matter was resolved by a consent judgment.

claims against Defendants Health Advisors, Smith, and Shapiro as individuals and as Health Advisors Defendants, depending on the context of the claim. *Id.* ¶ 152.

In Counts VI through X, Plaintiffs alleged various violations of 47 U.S.C. § 227 against Health Advisors Defendants for calls occurring from May 1, 2018, until July 31, 2019. *Id.* ¶¶ 179-89. In Counts XVII through XXI, and XXIII, XXVI through XXXIII, Plaintiffs alleged that Defendants violated various State laws. *Id.* ¶¶ 214-40, 245-49, 257-89.

On January 13, 2021, Defendants Health Advisors and Smith filed a Certificate of Conference. ECF No. 85. On January 19, 2021, the Court granted Defendants leave to file a motion to dismiss by February 3, 2021. ECF No. 86. On February 3, 2021, Defendants Health Advisors and Smith filed their Motion, and moved to join Rising Eagle Defendants' motion and to dismiss all of Plaintiffs' claims. ECF No. 93.

Also, on February 3, 2021, the United States of America, through Assistant U.S. Attorney Joshua Abbuhl, filed for an extension of time to determine whether the United States would intervene. ECF No. 91. On February 4, 2021, the Court granted the United States' motion for an extension of time, giving the United States until April 5, 2021 to respond. ECF No. 94.

## V.    STANDARD OF REVIEW UNDER RULE 12(b)(6)

A Rule 12(b)(6) motion allows a party to challenge the complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). However, "the Federal Rules of Civil Procedure erected a powerful presumption against rejecting pleadings for

failure to state a claim." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985).

When considering a motion to dismiss under Rule 12(b)(6), a district court must construe the allegations in the complaint in favor of the pleader and must accept as true all well-pleaded facts in the complaint. *See Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). That is, consistent with Rule 8(a), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" and only requires "more than simply a 'sheer possibility' that a defendant has acted unlawfully." *Id*. at 678. Thus, a pleading need not contain detailed factual allegations. In fact, a pleading that merely sets forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" is sufficient. *Twombly*, 550 U.S. at 555 (citation omitted). As such, a court "should not dismiss the claim unless the plaintiff would not be entitled to relief under *any set of*

*facts* or *any possible theory* that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (emphasis added) (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

Moreover, even where a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice, unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).

Contrary to Defendants' assertions, Plaintiffs' pleading is facially sufficient to survive a Rule 12(b)(6) challenge. In the alternative, should this Court agree with Defendants' argument, Plaintiffs request leave to cure the defects of their pleading and amend their complaint as it relates to Defendants.

## VI.   ARGUMENT

As discussed below, Plaintiffs' pleading is sufficient to satisfy the pleading standards under Fed. R. Civ. P. 8(a). Defendants were given fair notice. Defendants were not impermissibly lumped together. Plaintiffs' Second Amended Complaint contained more than sufficient factual allegations to state a plausible claim for relief, and for the Court to draw a reasonable inference that Defendants are liable for the misconduct alleged. Thus, the Defendants' motion should be denied.

A.   **Plaintiffs gave fair notice of the claims against Defendants and did not impermissibly lump Defendants with other Co-Defendants.**

In their Second Amended Complaint, Plaintiffs alleged Defendants Health Advisors, Smith, and Shapiro directed Rising Eagle Defendants to make robocalls, provided them phone numbers to call, and then compensated Defendant Rising Eagle over 2.85 million dollars for making hundreds of millions of robocalls. Second Am. Compl. ¶¶ 162-63, 166-67. Plaintiffs did not impermissibly lump Defendants with other Co-Defendants. Instead, Plaintiff pled with particularity, such that Defendants had notice of the claims against them and the conduct upon which such claims are based.

1.   **Requirements under Rule 8(a)(2) and "Lumping" Defendants.**

As noted above, Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation omitted). However, "[a] complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) (citing *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001)).

Generally, defendants can argue impermissible lumping as a way to dismiss a TCPA claim. *See McCabe v. Caribbean Cruise Line, Inc*., No. 13-CV-6131, 2014 WL 3014874, at *2 (E.D.N.Y. July 3, 2014). "Lumping" specifically refers to grouping defendants together without distinguishing the individual responsibility of each party. *See, e.g.*,

*McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 13203454, at *3 (S.D. Tex. Feb. 3, 2015) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); *Gayton et al v. Great Lakes Reinsurance (UK) PLC et al*, No.7:14–CV–229, 2014 WL 12599508, at *2 (S.D. Tex. July 3, 2014); *TAJ Properties, LLC v. GAB Robins N. Am., Inc.*, No. CIV.A. H–10–4134, 2011 WL 2162321, at *4–5 (S.D. Tex. June 2, 2011)).

Courts within this jurisdiction have held that the individual responsibility of each party was not distinguished in cases like *McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 13203454, at *3 (S.D. Tex. Feb. 3, 2015) (finding that the plaintiff improperly lumped two entities together as an "indistinguishable conglomerate, . . . [by] failing to distinguish the alleged role and wrongful conduct" of each defendant). *See also Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding that the plaintiff included a defendant but mentioned them only "once in passing"), and in *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *13 (S.D. Tex. July 13, 2016) (stating that by generally lumping together eight distinct corporate entities, plaintiffs did not "in any way distinguish the alleged actions of PMI Holdings from the actions of the other 'PMI defendants,' nor . . . even delineate between the actions of the 'PMI defendants' and the actions of the 'Pemex defendants'").

Here, Defendants argue that Plaintiffs have impermissibly lumped them together with Defendant Shapiro and Rising Eagle Defendants. In support of their argument, Defendants rely on *Del Castillo*, 2015 WL 3833447, *Murphy v. Kellar*, 950 F.2d 290 (5th

Cir. 1992), *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 U.S. Dist. LEXIS 98990 (S.D. Tex. June 27, 2017), and *Bailey v. Willis*, No. 4:17-CV-00276-ALM-CAN, 2018 U.S. Dist. LEXIS 78178 (E.D. Tex. Jan. 11, 2018).

However, Defendants' reliance upon these four cases is misplaced, as each case is easily distinguished from the case at bar. Specifically, in *Del Castillo*, the court observed that "[Co-]Defendants . . . are not even mentioned in the body of the complaint, save where Plaintiffs list information about how to serve them[,]" and thus found that "[t]he only allegations that could plausibly apply to them are allegations directed at all 28 Defendants." *Del Castillo*, 2015 WL 3833447 at *6. As such, the court held that "the complaint's failure to distinguish between the so-called [Co-]Defendants is fatal." *Id*. Here, as discussed in detail in Sections VI.A.2. and VI.B., below, there are numerous specific references to Defendants' acts in Plaintiffs' allegations that distinguish them from Rising Eagle Defendants and Defendant Shapiro.

Similarly, in *Mendoza*, the court observed that the plaintiff's complaint was "devoid of any specific causes of action against [the defendant]." *Mendoza*, 2017 U.S. Dist. LEXIS 98990 at *8. The court held that the plaintiff's complaint thus did not meet "the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." *Id*. Here, again, Plaintiffs have described Defendants' separate conduct with specificity in their Second Amended Complaint, and have alleged specific causes of action against them.

Likewise, Defendants' reliance on *Murphy* and *Bailey* is also inapposite, here, as both cases discuss the standard for pleading a cause of action against multiple defendants

under 42 U.S.C. § 1983. *See Bailey*, 2018 U.S. Dist. LEXIS 78178 at *36 ("As to Plaintiff's § 1983 claims, each defendant can only be held responsible solely for their own illegal acts." (citing *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350 (2011))). Quoting the Fifth Circuit in *Murphy*, the district court in *Bailey* recognized that "a plaintiff *bringing a section 1983 actio*n must specify the personal involvement of each defendant." *Id.* (emphasis added) (quoting *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). The issues in controversy in the instant case are wholly unrelated to, and completely distinct from, claims for violations of individual civil rights and their heightened pleading standard.

Conversely, for the TCPA, the court in *Britereal* held that lumping did not exist when the plaintiff sued only one entity and the entity's agent. *Cunningham v. Britereal Mgmt., Inc.*, No. 4:20-CV-144-SDJ-KPJ, 2020 WL 7391693, at *6 (E.D. Tex. Nov. 20, 2020), *report and recommendation adopted*, No. 4:20-CV-144-SDJ-KPJ, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020). "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Id.* (citations omitted) (quoting *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013)) (internal quotations removed). There, the court observed that "[i]f an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force." *Id.* (quoting *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415–16 (D. Md. 2011)). Accordingly, the district court held the plaintiff pleaded sufficient factual allegations. *Id.*

Yet in *Britereal*, the plaintiff only mentions the individual defendant, Anna Yeh, by name in its two primary allegations, which read: "First, Plaintiff alleges Yeh is a registered agent who can receive service of process on behalf of Britereal. Second, Plaintiff alleges Yeh can be served as an individual at the same address as Britereal's." *Id.* at *5 (citations omitted). "In the remainder of the Complaint, Yeh is only implicitly discussed under the umbrella term, 'Defendants.'" *Id.* In declining to dismiss the plaintiff's claims, the court found the agent's conduct was "fairly traceable" to the plaintiff's injury. *Id.*; *accord Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) (stating that where the complaint clearly alleged that two defendants acted jointly in violation of the TCPA, plaintiff need not explain the details of each defendant's role in the joint telemarketing scheme prior to discovery). The court in *Hudak* also found that "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Hudak,* 2014 WL 354676, at *4.

## 2. Plaintiffs' have pleaded their allegations with sufficient particularity to survive a motion to dismiss under Rule 12(b)(6).

In their Second Amended Complaint, Plaintiffs detailed Rising Eagle Defendants' robocalling operation and how they are the initiating caller for hundreds of millions of robocalls, at the behest of multiple clients. *See* Second Am. Compl. ¶¶ 64-68. Defendants Health Advisors and Smith are one of those clients, and Defendants Health Advisors and Smith paid Rising Eagle Defendants to make calls regarding health insurance on their behalf. *Id.* ¶¶ 162, 165-66. Defendants argue that Plaintiffs have not alleged that Rising

Eagle Defendants' calls were exclusive to those made on their behalf; however, it is immaterial that theirs was not an exclusive relationship. To comply with Rule 8(a), Plaintiffs need only to plead with sufficient particularity to give rise to a "reasonable inference that the defendant is liable for the misconduct alleged," *see Iqbal*, 556 U.S. at 678, and for the parties to be on notice of their role in the robocalling scheme. *See Twombly*, 550 U.S. at 555. Here, Plaintiffs have shown Defendants are a unique, fully sliced piece of the pie. The lack of exclusivity between Defendants and Rising Eagle is of no consequence.

This matter is analogous to *Britereal* and *Hudak*. Plaintiffs alleged Rising Eagle Defendants are robocallers. Second Am. Compl. ¶¶ 64-65. Separately, Plaintiffs alleged Defendants Health Advisors and Smith used Rising Eagle Defendants' services to initiate robocalls. *Id.* ¶¶ 155, 158-60, 162. In their allegations, Plaintiffs explained the details of how the telemarketing scheme was funded, and how much Defendant Smith and Defendant Health Advisors paid Defendant Rising Eagle for making the calls. *Id.* ¶¶ 165-67. Furthermore, Plaintiffs described that the payments were for the sale of an insurance premium connected to a robocalling lead. *Id.* ¶¶ 152, 155, 165. Plaintiffs have pled that each grouping is separate and distinct and have sufficiently delineated the role of each individual defendant in the robocalling operation.

In the Second Amended Complaint, Plaintiffs sometimes describe Defendants Health Advisors, Smith, and Shapiro, generally, as Health Advisors Defendants, both because Defendants acted jointly, and because there are identical claims that Plaintiffs are alleging against each individual Defendant. *Id.* ¶ 152. Such allegations do not improperly lump Defendants in an indistinguishable manner. Like in *Britereal*, Plaintiffs pleaded

specific allegations against Defendant Smith to show that his actions were traceable to Plaintiffs' injuries. *Britereal*, 2020 WL 7391693, at *6. Plaintiffs pleaded that Defendants Shapiro and Smith each had the authority to direct Rising Eagle Defendants to make calls. Second Am. Compl. ¶¶ 153-54. Plaintiffs alleged, individually, that Defendant Smith was a main point of contact with Rising Eagle Defendants, and that he provided phone numbers for the robocallers. *Id*. ¶ 164. Plaintiffs also alleged, individually, that Defendant Shapiro was also a main point of contact, and that he also provided phone numbers for the robocallers. *Id.* ¶ 164. Plaintiffs alleged Defendant Smith paid Defendant Rising Eagle over $350,000 for actions undertaken at his direction. *Id.* ¶ 167. Since Plaintiffs alleged facts that clearly distinguish the relationship between each entity, and each entity's separate conduct, it is not necessary, for pleading purposes, to determine which actor did each specific act for every instance where Defendants were grouped. *See Martinez v. Nueces Cty., Tex.*, No. 2:13-CV-178, 2013 WL 6190519, at *6 (S.D. Tex. Nov. 26, 2013) ("These are matters that can be developed in discovery. As alleged, this is not a case where some Defendants were participants in a physical altercation and some were not. And while some officers may not have participated in bringing charges that supply the basis of the malicious prosecution claim, no additional pleading is required for those Defendants to understand the claim and formulate their defense.").

Plaintiffs' Second Amended Complaint also details the myriad of conversations between Defendants Spiller and Mears that specify how their robocalling operation benefits Defendants. Second Am. Compl. ¶¶ 96-102. In one call, Defendant Spiller stated: "You should put two more campaigns up for Scott [Shapiro] and Mike [Smith]. . . . If you can

keep it under ten people waiting for a call, you might be able to get beyond forty-two sales today." *Id.* ¶ 96. In another call, Defendant Spiller described his post-incarceration role in the robocalling operation as: "Making sure business flow is back running smoothly again to where I can expect Scott [Shapiro] and Mike [Smith] to pay me the day that they finish their numbers." *Id.* ¶ 99.

In another call, Defendant Spiller went on to describe what he and Defendant Mears had done for Defendants Health Advisors, Smith, and Shapiro stating: "Look, we gave him dedicated servers. We've given him a dedicated space. We've given him dedicated everything. We've cloned his name outside. So when he registered for Ryan for Rsquared, we cloned another name under his name, so that he's hidden from the FTC." *Id.* ¶ 101. Further, according to Defendants Spiller and Mears, Defendants Smith and Shapiro gave them "a couple million leads a week." *Id.* ¶ 102.

Plaintiffs have given the Defendants fair notice of what the claims against them are and what grounds they rest on, as required by *Twombly*, 550 U.S. at 555. Here, there is a factual basis on the face of the complaint to distinguish their conduct. Plaintiffs did not impermissibly lump Defendants together with other parties in a way that makes their conduct indistinguishable. The Court should deny Defendants' 12(b)(6) motion.

**B.     Plaintiffs have pleaded with sufficient particularity to give Defendants notice under an agency theory.**

Defendants cannot avoid liability simply because Plaintiffs alleged Rising Eagle Defendants initiated the calls. As discussed herein, Defendants directed Rising Eagle Defendants to initiate robocalls so that Defendants could sell health insurance.

Plaintiffs acknowledge that "[d]irect liability under the TCPA . . . applies only to entities that 'initiate' the telemarketing calls." *See In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013) ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call."). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *See id.* at 6583 ¶ 26. "[A] seller does not 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA," and may only "be held vicariously liable under federal common law principles of agency for violations . . . that are committed by third-party telemarketers[.]" *Palm Beach Golf Ctr.–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1255 (11th Cir. 2015); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017) ("Direct liability under the TCPA, however, applies only to entities that 'initiate' the telemarketing calls . . . . [A]s the FCC made clear to initiate a call means to physically place a telephone call.").

Conversely, a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Campbell-Ewald Co.*, 768 F.3d at 877. Typically, in the context of a TCPA claim, courts will look to the Restatement of Agency in analyzing liability for violations. *Id.* at 878; *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997) ("To determine the general common law of agency, the [Supreme] Court

18

notes that it has traditionally looked to sources such as the Restatement of Agency."). In the Third Restatement of Agency, the "essential element" of an agency relationship is the principal's control over the agent's actions. Restatement (Third) of Agency, § 1.01 cmt. f. The FCC has recognized, for example, that:

> a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*In the Matter of the Joint Petition Filed by Dish Network*, LLC, 28 FCC Rcd. 6574, 6592 ¶ 46 n.138 (2013).

"'Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts.'" *Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2519568, at *6 (E.D. Tex. Apr. 30, 2019) (quoting *Mauer v. American Intercontinental Uni., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016)), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2524736 (E.D. Tex. June 19, 2019).

Here, the Plaintiffs alleged Defendants—through Rising Eagle Defendants—initiated millions of telephone calls to residents of the Plaintiff States. Second Am. Compl. ¶¶ 155, 160. Plaintiffs alleged Defendants used many different prerecorded messages, including the following:

> Hi, this is Ann. I am calling to let you know we have been granted a limited health enrollment period for a few weeks, so you and your family can get a

great insurance plan at the price you can afford. And we make it hassle free to sign up. We have pre-approvals ready in your area including Cigna, Blue Cross, Aetna, United and many more. Press 1 to get a hassle-free assessment or press 2 to be placed on our do not call list. Thanks for your time and be healthy and blessed.

*Id.* ¶ 156. Plaintiffs alleged Defendants directed Rising Eagle Defendants to initiate the calls, and Defendants supplied Rising Eagle Defendants with phone numbers to call. *Id.* ¶¶ 162, 163. Plaintiff alleged there was an agreement between Defendants and Rising Eagle Defendants, where Defendants would compensate Rising Eagle Defendants for sales made as a result of robocall leads. *Id.* ¶ 165. Plaintiffs alleged Defendant Smith was a main point of contact with Rising Eagle Defendants. *Id.* ¶ 164.

Plaintiffs also alleged Defendant Smith, personally, paid Defendant Rising Eagle over $350,000. *Id.* ¶ 167. Plaintiffs also alleged Defendant Health Advisors paid Defendant Rising Eagle over $2,500,000. *Id.* ¶ 166. Plaintiffs have alleged sufficient facts to establish a plausible liability theory through Defendants' conduct.

The Court should not dismiss the claims against the Defendants, as the Plaintiffs are entitled to relief under either a direct liability or vicarious liability theory. *Jones*, 188 F.3d at 324. At the pleading stage, it is immaterial if Defendants physically initiated the calls or directed a third party to initiate the calls. Plaintiffs only need to plead sufficient facts that either theory is possible. Plaintiffs have done so here.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Notice of Joining Co-Defendant Rising Eagle's Motion to Dismiss and Motion to Dismiss Plaintiffs' Second Amended Complaint. In the alternative, should

this Court agree with Defendants' argument, Plaintiffs request leave to cure the defects of their pleading and amend their complaint as it relates to Defendants.

Dated February 24, 2021

**FOR THE STATE OF ARKANSAS:**

LESLIE RUTLEDGE
Attorney General for the State of
Arkansas

/s/  David McCoy
DAVID MCCOY
Ark. Bar No. 2006100
David.McCoy@ArkansasAG.gov
SHANNON HALIJAN
Ark. Bar No. 2005136
Shannon.Halijan@ArkansasAG.gov
PEGGY JOHNSON
Ark. Bar No. 92-223
Peggy.Johnson@ArkansasAG.gov
Assistant Attorneys General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

Respectfully submitted,

**FOR THE STATE OF INDIANA:**

TODD ROKITA
Attorney General for the State of Indiana

/s/  Douglas S. Swetnam
DOUGLAS S. SWETNAM
Indiana Bar No. 15860-49
douglas.swetnam@atg.in.gov
JOSEPH D. YEOMAN
Indiana Bar No. 35668-29
Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 232-6294 (Swetnam)
(317) 234-1912 (Yeoman)
(317) 232-7979 (Fax)

*Counsel for Plaintiff*
*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan

/s/  Wisam E. Naoum
WISAM E. NAOUM
Michigan State Bar No. P83335
NaoumW1@michigan.gov
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OF MICHIGAN*

**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of Missouri

/s/  Michelle L. Hinkl
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
KRISTINE M. RICKETTS
North Carolina State Bar No. 46914
Pennsylvania Bar ID 89042
kricketts@ncdoj.gov
Assistant Attorneys General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

**FOR THE STATE OF NORTH DAKOTA:**

WAYNE STENEHJEM
Attorney General for the State of North Dakota


/s/ Brian M. Card
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
BRIAN M. CARD
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorneys General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1050 E. Interstate Ave., Ste. 200
Bismarck, ND 58503
Telephone: (701) 328-5570
Facsimile: (701) 328-5568

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/  Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas

/s/  Patrick Abernethy
PATRICK ABERNETHY
Texas State Bar No. 24109556
Patrick.abernethy@oag.texas.gov
C. BRAD SCHUELKE
Texas State Bar No. 24008000
Brad.schuelke@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 24, 2021, I electronically filed the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS MICHAEL T. SMITH, JR., AND HEALTH ADVISORS OF AMERICA, INC.'S NOTICE OF JOINING CO-DEFENDANT RISING EAGLE'S MOTION TO DISMISS AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Joseph D. Yeoman
Joseph D. Yeoman
