## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **RISING EAGLE CAPITAL GROUP** | § | Civil Action No.: 4:20-cv-02021 |
| **LLC, et al.,** | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

## RISING EAGLE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

II.     THE TCPA'S ENTIRE ROBOCALL PROVISION WAS UNENFORCEABLE FROM 2015 UNTIL THE GOVERNMENT-DEBT EXEMPTION WAS SEVERED............................2

III.    THE TCPA'S PRE-SEVEREANCE ROBOCALL BAN IS UNENFORCEABLE BECAUSE SEVERANCE IS NOT RETROACTIVE...................................................................7

IV.   THE COURT SHOULD FOLLOW *CREASY*, *LINDENBAUM,* AND *HUSSAIN*............11

V.     COUNT II'S CLAIMS UNDER 47 U.S.C. § 227(b)(1)(b) REMAIN UNENFORCEABLE..................................................................................................................15

VI.   CONCLUSION .................................................................................................................16

# I.    INTRODUCTION

Plaintiffs' opposition employs misdirection to subvert the straightforward application of controlling First Amendment principles here.  But Plaintiffs cannot refute the plain application of the Supreme Court's ruling in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020) ("*AAPC*"), as set forth in *Creasy v. Charter Communications, Inc.*, No. 20-1199 SECTION "F", 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020), *Lindenbaum v. Realgy, LLC*, CASE NO. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020), and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, Case No: 5:20-cv-38-Oc-30PRL, 2020 U.S. Dist. LEXIS 236577 (M.D. Fla. Dec. 11, 2020).

*AAPC* held that section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), as Congress amended it in 2015, was an unconstitutional restriction on speech.  When the Supreme Court finally severed the 2015 amendment that had caused the TCPA's robocalling provision relating to cellular phones to become unconstitutional, the Court's July-2020 solution only restored the TCPA to constitutional health prospectively.    Thus, the TCPA's automatic-call ban to cellular phones was unconstitutional, and therefore unenforceable, as it existed from 2015 until the *AAPC* severance in July 2020.  Furthermore, *AAPC* only dealt with calls to cellular phones, severing the unconstitutional provision from section 227(b)(1)(A)(iii), while leaving the identical unconstitutional provision intact in section 227(b)(1)(B), such that that subsection remains unconstitutional today.  As such, Plaintiffs are seeking relief under a law that was unconstitutional from 2015 until *AAPC* severed the offensive provision, and

1

on the part of the claims brought under 47 U.S.C. § 227(b)(1)(B), remain unconstitutional today. This Court cannot grant that relief.

Plaintiffs cite no credible authority to disregard the plain rulings of *Creasy, Lindenbaum*, and *Hussain,* which rely on firm Supreme Court precedent. Instead, Plaintiffs rely on three-Justice dicta in *AAPC* that does not control, and strangely suggest that the Supreme Court only held unconstitutional the 2015 exception, which *allowed* more speech (and thus could not, by itself, be an unconstitutional *restriction* on speech). Predictably, Plaintiffs cite nothing in *AAPC* or any other case that supports these views. As shown below, none of Plaintiffs' arguments have merit. Accordingly, the Court should grant Defendants' Motion to Dismiss.

## II. THE TCPA'S ENTIRE ROBOCALL PROVISION WAS UNENFORCEABLE FROM 2015 UNTIL THE GOVERNMENT-DEBT EXEMPTION WAS SEVERED.

As Defendants discussed at length in their initial brief, the TCPA's robocall provision, including the automated-call ban (the basis for the claims in Counts II and III), was unconstitutional, and thus unenforceable, from the enactment of the government-debt exemption in 2015 until it was severed by *AAPC* on July 6, 2020. *See* Defs.' Mot. to Dismiss Counts II and III of the Second Am. Compl. ("Mot.") 11-14, ECF No. 81.

Plaintiffs misinterpret the Supreme Court's ruling in an unsuccessful attempt to sidestep Defendants' argument by claiming (incorrectly) that severing the government-debt exemption cures the infirmity without impacting the enforceability of the restriction while the exemption was in place. *See* Pls.' Resp. to Defs.' Mot. to Dismiss Counts II and III of the Second Am. Compl. for Lack of Subject Matter Jurisdiction ("Opp.") 6,

ECF No. 87. But this ignores the plain language of *AAPC*, in which the Court made clear that the "question is *whether the robocall restriction, with the government-debt exception*, is content-based [and therefore unconstitutional]. The answer is yes." *AAPC*, 140 S. Ct. at 2346 (emphasis added). The Supreme Court clearly held that the *entire* robocall restriction was constitutionally cancerous. Instead of striking down the entire law, the Supreme Court prospectively invalidated the exemption, but that does not change the fact that Congress's enactment was unconstitutional until July 6, 2020.

Plaintiffs' misguided position that the TCPA's autodialer provision remained in effect while the subsection was unconstitutional rests mainly on their contention that a sentence of dicta in a footnote in Justice Kavanaugh's three-Justice plurality opinion is controlling. To do so, Plaintiffs incorrectly imply that this dicta is the holding of the seven-Justice majority. *See* Opp. 9 ("In *AAPC*, Justice Kavanaugh's three-Justice plurality opinion . . . is controlling because it rests on narrower grounds. A seven-Justice majority further concluded that it could sever the unconstitutional . . . provision and 'that the entire 1991 robocall restriction should not be invalidated.'") (quoting *AAPC*, 140 S. Ct. at 2343); *see also* Opp. 22 ("[Defendants] characterized [*AAPC* footnote 12] as dicta based on the mistaken impression that only three Justices joined in it. As discussed above, seven Justices joined the severance holding[.]") (citation omitted). Plaintiffs are wrong. Justice Kavanaugh's three-Justice plurality is *not* the narrower grounds, and the seven-Justice majority *did not* concur with footnote 12. The only holdings of the seven-Justice majority were that Congress's addition of the government-debt exemption rendered the entire robocall provision unconstitutional, and that the exemption should be

severed.[1]  *AAPC*, 140 S. Ct. at 2346.  Plaintiffs are in the difficult position of seeking relief under a law that a majority of the Supreme Court clearly held was unconstitutional because the government favored its debt-collection speech over the speech of everyone else calling cell phones.  But Plaintiffs cannot expand the holding of the majority to suit their purposes by simply stating that this three-Justice footnote is what the majority *held*.  *See* Opp. 22 ("Footnote twelve defines the scope of the severability judgment, clarifying what the Supreme Court's decision as to severability 'means.'").

Indeed, the very authority Plaintiffs rely on in an attempt to justify that untenable logical leap proves that Justice Kavanaugh's plurality is *not* binding and not the holding of the majority.  *See* Opp. 9 (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977) ("the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ."); *United States v. Duron-Caldera*, 737 F.3d 988, 994 n.4 ("The *Marks* principle, however, is only workable where there is some 'common denominator upon which all of the justices of the majority can agree.'").  As the Fifth Circuit has already unambiguously ruled, the three-Justice

---

[1]  The Supreme Court, conscious of its plurality, spelled out the only two holdings in *AAPC*: (1) "Six Members of the Court . . . conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment," and (2) "seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exemption must be invalidated and severed from the remainder of the statute."  *AAPC*, 140 S. Ct. at 2343.  Justice Sotomayor concurred only in the judgment.  *See id.* at 2356.  Similarly, the concurrences of Justices Breyer, Ginsburg, and Kagan "with respect to severability" offers no support for Justice Kavanaugh's vague statement regarding past liability under a law that six members of the Court agreed was unconstitutional.  *See id.* at 2363.  Justices Gorsuch and Thomas chastised Justice Kavanaugh's dicta regarding past liability: "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."  *Id.* at 2366.  Plaintiffs simply cannot contort the three-Justice footnote 12 into a majority opinion.

plurality and footnote 12 is by its very definition *not* controlling and is obiter dicta that does not control this Court's analysis.[2]  *See United States v. Badgett*, 957 F.3d 536, 540 (5th Cir. 2020) (noting that because only three Justices joined a plurality it was not controlling based on *Marks*); *see also Schwab v. Crosby*, 451 F.3d 1308, 1327 (11th Cir. 2006) (noting that in cases involving multiple concurring opinions, "that which is not necessary to the decision of a case is dicta.").

Plaintiffs' argument that *AAPC* only concerned the government-debt exemption, or was confined to that exemption in section 227(b)(1)(A)(iii) (and by extension to the identical language in § 227(b)(1)(B)), is also wrong.  *See* Opp. 8-9.  *AAPC* does not hold that *only* the government-debt exemption was invalid; rather, that exemption was the poisoned clause that made the TCPA's entire robocall restriction unconstitutional when the exemption was added in 2015.  Thus, "the robocall restriction*, with the government-debt exception*" was held to be unconstitutional, *AAPC*, 140 S. Ct. at 2346, and the government-debt exemption was severed to salvage the rest of the TCPA's cellphone-robocall provision *prospectively*.[3]

---

[2]  Plaintiffs repeat this incorrect position in their Response in Opposition to the Health Advisor Defendants' Motion to Dismiss, claiming specifically that "'Justice Kavanaugh's statement . . . is not dicta because it was joined by six other justices.'"  Resp. in Opp'n 2-3, ECF No. 101 (quoting *McCurley v. Royal Sea Cruises, Inc.*, Case No. 17-CV-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 16403, at *10 (S.D. Cal. Jan. 28, 2021)).  Again, this interpretation is simply incorrect.  Only the three justices concurred with Justice Kavanaugh's footnote, and this footnote regarding calls before the *AAPC* holding is in no way necessary to the majority holding relating to the unconstitutional preference granted to government debt collectors.  Footnote 12 is dicta.

[3]  This is also why the reasoning in cases cited by the Plaintiffs purporting to show that the severability can be applied retroactively fall short—they rely on the mistaken notion that the offending provision, which tainted the whole cellphone-robocall section that the Supreme Court held is unconstitutional, can simply be ignored for the time it was in place.  *See*, *e.g.* Opp. 3 n.2 (citing *Less v. Quest Diagnostics, Inc.*, Case No. 3:20 CV 2546, 2021 U.S. Dist. LEXIS 14320,

Selectively *and retroactively* removing only portions of the TCPA, as Plaintiffs advocate, is contrary to Supreme Court precedent, including precedent relied on in *AAPC*. For example, in *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015), cited in *AAPC* at 2346, the Supreme Court did not parse which subsection survived strict scrutiny—it declared the entire regulation unconstitutional. The Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, decided a week before *AAPC*, reaches the same conclusion, finding that a single provision being "repugnant to the Constitution," can render the whole provision void. 140 S. Ct. 2183, 2208 (2020); s*ee also Creasy*, 2020 U.S. Dist. LEXIS 177798, at *13 ("the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.") (emphasis in original). As *Creasy* explains, this is exactly what the Supreme Court did in *AAPC*: it declared the entire robocall provision unconstitutional during the time the defect existed and severed the unconstitutional provision prospectively.[4] *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *4; *see also Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8 ("Thus, at the time Defendants engaged in the speech at issue in this case, Defendants were subject to an unconstitutional content-based restriction."). Nothing in *AAPC*

---

at *2-3 (N.D. Ohio Jan. 26, 2021) (finding that a pre-*AAPC* § 227(b)(1)(A)(iii) claim could proceed because "[t]he conduct at issue here was not impacted by the exception."). This explicitly contradicts *AAPC*'s ruling that the robocall restriction *with the government debt provision* was unconstitutional, and fails to account for the well-established precedent that courts cannot award relief under an unconstitutional law.

[4] Or, as stated more colorfully by the Chief Judge of the Northern District Ohio in *Lindenbaum*, "[t]he Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter." 2020 U.S. Dist. LEXIS 201572, at *20.

suggests the Court was rewriting Congress's law retroactively, effectively giving the Court a line-item veto to retroactively repair Congress's unconstitutional laws. *See, e.g., AAPC*, 140 S. Ct. at 2344 ("plaintiffs still may not make political robocalls to cell phones, but their speech is *now treated* equally with debt-collection speech.") (emphasis added).

Plaintiffs misconstrue *AAPC* by arguing it applies only to a single clause of a single sub-section of the TCPA. Nothing in *AAPC* limits the scope of the Supreme Court's holding that an unconstitutional statute is unconstitutional *as enacted*, in its entirety. Accordingly, Plaintiffs' unsupported interpretation cannot stand, and the Court should follow the reasoned conclusion in *Creasy*, *Lindenbaum*, and *Hussain* that the Court lacks jurisdiction to adjudicate Counts II and III of Plaintiffs' Second Amended Complaint for all claims that allegedly arose while the TCPA's cellphone-robocall provision was in place.

## III. THE TCPA'S PRE-SEVEREANCE ROBOCALL BAN IS UNENFORCEABLE BECAUSE SEVERANCE IS NOT RETROACTIVE.

The First Amendment forbids laws that "abridge the freedom of speech" (the restriction), not laws permitting speech (the exception). The TCPA's government-debt exception could not be unconstitutional standing alone because it does not prevent speech. The *restriction* (the robocall provision itself) was unconstitutional while the content-based exception for government-debt calls existed, and therefore Plaintiffs'

argument, that the TCPA is now retroactively enforceable with the exception severed, is wrong.[5]

To salvage their claims under a law the Supreme Court declared unconstitutional, Plaintiffs argue that the government-debt exception was somehow retroactively severed from the TCPA before *AAPC*. To support this sorcery, Plaintiffs cite, and misinterpret, a series of cases that they claim show *AAPC*'s severance can apply retroactively (and only to a clause in a sub-section of the TCPA), one of which is *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993). But *Harper* supports Defendants' position that the severance of the unconstitutional government-debt provision is prospective. *Harper* does not, as Plaintiffs claim, stand for a general rule that retroactive application of the Supreme Court's remedy is always necessary. *See* Opp. 13-14 (citing *Harper*, 509 U.S. at 94, 97). The Supreme Court itself provided a more accurate summary of *Harper*'s holding: "when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all pending cases, whether or not those cases involve predecision events." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995). Here, parties cannot be penalized for violating a speech restriction that the

---

[5]  In *AAPC*, the Supreme Court was not asked to decide, and did not decide, whether pending claims like Plaintiffs' were viable. The questions before the Court were "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Question Presented Report, *AAPC*, No. 19-631, http://supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited March 1, 2021). Whether the unconstitutional provision of the statute could be enforced during the time it was unconstitutional was not argued before or ruled on by the Court. *See McLane Co. v. EEOC*, 137 S. Ct. 1159, 1170 (2017) (the Supreme Court is "a court of review, not of first view") (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)).

Supreme Court held was unconstitutional (the TCPA *with* the government-debt exemption).[6]  In other words, *AAPC*'s severance of the government-debt exception is a prospective fix, not a retroactive one.

Plaintiffs next cite *Eberle v. Michigan*, 232 U.S. 700 (1914), again in an unsuccessful attempt to argue that a Supreme Court severance decision can become the "magic wand" rejected in *Lindenbaum*.  *See* Opp. 14.  *Eberle* is inapposite here for several reasons.  First, *Eberle* dealt with the Michigan Supreme Court's (not the U.S. Supreme Court's) determination that the original statute in question was constitutional and that the subsequent amendment was void.  *Eberle*, 232 U.S. at 703-05.  This is in contrast to the issue before the Supreme Court in *AAPC*, which decided that the TCPA's original, long-standing, content-neutral speech restriction was rendered unconstitutional by the addition of the exemption.  *AAPC*, 140 S. Ct. at 2346-47.  *Eberle* is also distinguishable in that it is not a First Amendment case, and therefore it fails to address that the content-based speech restriction is assessed based on when the speech took place (here, when the autodialer provision with the government-debt exemption was in place).  *See Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (Supreme Court considers

---

[6]  *See Bible Believers v. Wayne County*, 805 F.3d 228, 247 (6th Cir. 2015) ("It is a fundamental precept of the First Amendment that the government cannot favor the rights of one private speaker over those of another.") (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*,  515 U.S. 819, 828 (1995)); *see also Ex parte Siebold*, 100 U.S. 371, 377 (1880) ("if . . . the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes."); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 766-67 (Fed. Cir. 2020) ("While the principle of retroactive application requires that we afford the same remedy afforded the party before the court to all others still in the appellate pipeline, judicial severance is not a "remedy"; it is a *forward-looking* judicial fix.") (interpreting *Harper*) (emphasis added).

the facial constitutionality of the statute in effect when the speech was undertaken, not under the statute as amended).

Finally, *AAPC* cites *Eberle*, but the *AAPC* plurality contained no discussion regarding *Eberle* and its effect on the retroactivity of severed statutes. 140 S. Ct. at 2353. Rather, it cited *Eberle* only as an example of the Court's severance jurisprudence in cases where a later amendment rendered the law unconstitutional. *Id.* *Eberle* simply does not affect the conclusion that the form of the TCPA held to be unconstitutional in *AAPC* (i.e., the speech restriction *with* the government-debt exemption) is unenforceable based on established Supreme Court precedent. *See, e.g.*, *Siebold*, 100 U.S. at 377 (federal courts have no jurisdiction to enforce unconstitutional laws); *Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (same).

Plaintiffs also cite *Frost v. Corp. Commission of Oklahoma,* 278 U.S. 515, 525-528 (1929). Opp. 15. In *Frost*, the Supreme Court held that an amendment exempting certain corporations from making a showing of public necessity to obtain a cotton gin license was invalid and severable. 278 U.S. at 528. *Frost* is similarly distinguishable from *AAPC* because the amendment itself was deemed to be unconstitutional and void, unlike in *AAPC*, where the government exception rendered the broader robocall restriction itself unconstitutional. *Frost* also did not involve the only question before this Court in Counts II and III: penalizing a speaker for allegedly violating a speech restriction the Supreme Court has now held to be unconstitutional under the First Amendment.

*AAPC* did not rule that severance of the government-debt exemption was retroactive, and Plaintiffs do not cite a single case credibly supporting that position. Rather, the entire content-based restriction was unenforceable when the alleged call(s) at issue in this case occurred through July 6, 2020.

## IV. THE COURT SHOULD FOLLOW *CREASY*, *LINDENBAUM*, AND *HUSSAIN*.

Plaintiffs fail to show that *Creasy*, *Lindenbaum*, and *Hussain* were improperly decided. Plaintiffs take the untenable position that *AAPC* somehow surgically severed Congress's government-debt exemption retroactively, when the question was not before the Supreme Court.[7] In attempting to prop up this unsupported argument, they simply

---

[7] Plaintiffs list a series of cases purporting to show that the remainder of the robocall restriction was preserved retroactively, contrary to *Creasy*, *Lindenbaum*, and *Hussain*. *See* Opp. 3 n.2. These cases do not credibly support the retroactive effect of severability that Plaintiffs advocate. Indeed, several of these cases fail to even discuss whether *AAPC*'s severance can be applied retroactively. *See id.* (citing *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 U.S. Dist. LEXIS 146003 (W.D. Wash. Aug. 13, 2020) (deciding whether to stay a TCPA class action for a third time; no mention of when calls at issue occurred, or the constitutional issues raised in this motion); *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 U.S. Dist. LEXIS 202519 (D. Neb. Oct. 30, 2020) (raising no constitutional issues in bizarre case brought by gas station owner against person with personal vendetta against station owner, and noting defendant "asserts the Court lacks subject-matter jurisdiction but advances no argument to support this claim."); *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953 (N.D. Cal. Aug. 11, 2020) (denying motion to stay pending *AAPC* after *AAPC* was issued, and thus the questions presented here were neither briefed nor decided); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 U.S. Dist. LEXIS 193358, at *11 n.2 (D. Ariz. Oct. 19, 2020) ("Schmidt has not alleged that her purported debt was owned or guaranteed by the government, so *Barr* does not affect this case.")). Others recognized that *AAPC* did not determine the issue of the retroactive effect of severability but simply declined to analyze the issue. *See, e.g.*, *Stoutt v. Travis Credit Union*, No. 2:20-cv-01280 WBS AC, 2021 U.S. Dist. LEXIS 6019, at *11 n.2 (E.D. Cal. Jan. 12, 2021) (noting, without a single mention of retroactive applicability that "Defendant is not a government-debt collector. The due process question [of *AAPC*'s retroactive application] should properly be resolved in a different case."). The Court should decline to entertain Plaintiffs' plea that *Creasy*, *Lindenbaum*, and *Hussain* should be disregarded based on this unpersuasive authority, which fails to properly analyze the prospective only effect of *AAPC*'s severance.

misconstrue the scope of the holdings in *Creasy*, *Lindenbaum*, and *Hussain* and ineffectively recycle their unfounded arguments in favor of retroactivity and the dicta of *AAPC* footnote 12. For example, Plaintiffs revert to again referencing *Harper* and *Eberle* in to attempt to argue that *Lindenbaum* is inapposite. *See* Opp. 20-21. As stated at length above, neither *Harper* nor *Eberle* support Plaintiffs' contention that *AAPC*'s severance can be applied retroactively.

Plaintiffs' reliance on *Hulin v. Fibreboard Corporation* is similarly unfounded. Opp. 20 (citing 178 F.3d 316, 333 (5th Cir. 1999)). *Hulin* does not support Plaintiffs' flawed contention that *Harper* is a magic solution that allows an unconstitutional provision to be cured retroactively for the entire period it was in effect. But *Hulin* is inapposite because it did not deal with judicial severance at all—its retroactivity analysis pertained only to adjudicative retroactivity applied to a new, judicially established rule of law. *Hulin*, 178 F.3d at 333. Here, however, Plaintiffs paradoxically pick and choose what they like and discard what they do not from the minority dicta in footnote 12. That footnote indicates both that government-debt collectors' calls remain immune from suit for calls made while their unconstitutional exemption was in place, but also suggests that other provisions are unaffected. In other words, footnote 12 is explicitly prospective-only, yet Plaintiffs now suggest that the severance really was retroactive all along, footnote 12 notwithstanding. Plaintiffs cannot twist footnote 12 and *Harper* in two opposite directions.

Plaintiffs' reference to *Marbury v. Madison* on this point—that "a legislative act contrary to the Constitution is not law"—proves Defendants' position: parties cannot be

penalized for violating a speech restriction that the Supreme Court held was unconstitutional (the TCPA's cellphone-robocall section with the government-debt exemption) and therefore unenforceable. Plaintiffs' argument that their remedies are unaffected by the severance because "Defendants were not making government-debt related calls" again disproves Plaintiffs' own position regarding the application of retroactivity to the severance of the unconstitutional provision of the TCPA. Opp. 21. This implies that if Defendants had made government-debt-related calls before AAPC's severance, they would have been afforded protection under the unconstitutional exemption. Plaintiffs' argument also ignores that this unconstitutional provision rendered the entire automatic-call provision with the government-debt exemption in place unenforceable.

Plaintiffs also attempt time travel to misconstrue the significance of both the holding of the Ninth Circuit's ruling in *Facebook v. Duguid* and the Supreme Court's writ of certiorari in that case. *See* Opp. 17 (citing *Duguid v. Facebook*, 926 F.3d 1146 (9th Cir. 2019), which was decided **before the Supreme Court's *AAPC* decision**) (emphasis added). None of this is relevant to this Motion *because AAPC had not been decided*. Thus, this ruling does not have any bearing on the effect of *AAPC* on alleged liability for calls that occurred while the unconstitutional law was in effect.[8] Plaintiffs

---

[8]  Plaintiffs cite later decisions from the Ninth Circuit that rely on this incorrect interpretation of *Duguid* to support that pre-*AAPC* claims under the cellphone-robocall ban are enforceable; because they rely on that mistaken logic, they are therefore unpersuasive. *See* Opp. 3 n.2 (citing *Trujillo v. Free Energy Sav. Co., LLC*, Case No. 5:19-cv-02072-MCS-SP, 2020 U.S. Dist. LEXIS 239730, at *9 (C.D. Cal. Dec. 21, 2020), *Shen v. Tricolor Cal. Auto Grp., LLC*, CV 20-

also erroneously claim that "the Supreme Court's grant of certiorari in *Duguid* confirms its intent that parties are liable for violating the robocall prohibition pre-*AAPC*." Opp. 23. This is wrong. First, it is well established that "refusal to grant certiorari creates no inference." *Glick v. United States*, 93 F.2d 953, 955 (7th Cir. 1937) (citing *Atlantic Coast Line R. Co. v. Powe*, 283 U.S. 401 (1931)). But more importantly, the Ninth Circuit ruled on *Duguid v. Facebook* in 2019, and the Supreme Court granted certiorari *three days after* the *AAPC* ruling. *See* Grant of Petition for Certiorari, *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020). There is no conflict because the Ninth Circuit issued its opinion before *AAPC*, and it is entirely unsurprising that the Supreme Court chose not to review an issue on the effect of an opinion it had just decided three days earlier. Therefore, contrary to Plaintiffs' contention, no action by the Supreme Court (or in any appellate court for that matter) contradicts the holdings in *Creasy*, *Lindenbaum*, and *Hussain*.

The remainder of Plaintiffs' attack on *Creasy*, *Lindenbaum*, and *Hussain* also falls flat. First, contrary to Plaintiffs' strawman attack, these cases do not posit that the entire TCPA was unlawful from its inception in 1991. *See* Opp. 19. *Creasy*, *Lindenbaum*, and *Hussain* correctly enforce *AAPC*'s holding that the TCPA's robocalling ban was only unconstitutional once the government-debt exception was added in 2015. *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *14; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *6; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *7-8 (concurring with *Creasy*'s holding that

---

7419 PA (AGRx), 2020 U.S. Dist. LEXIS 237582, at *4 (C.D. Cal. Dec. 17, 2020)); *see also Stoutt*, U.S. Dist. LEXIS 6019, at *6 (relying on *Trujillo* and *Shen*).

"the entirety of the pre-severance version of § 227(b)(1)(A)(iii) is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.").  As such, the Court should follow the correct interpretation of *AAPC* in *Creasy*, *Lindenbaum*, and *Hussain* that federal courts lack subject matter jurisdiction over alleged violations from the enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC*, or in the case of claims under section 227(b)(1)(B), until the unconstitutional provision is removed from that subsection.  Contrary to Plaintiffs' claims otherwise, Defendants are not arguing—both because it does not matter, and is not true— that the TCPA has been unconstitutional since it was first enacted in 1991.  The majority of the calls at issue in this case occurred before *AAPC*, when the relevant provision of the TCPA was unconstitutional and thus void.  Plaintiffs cannot support their argument that there is any basis to selectively apply *AAPC*'s severance retroactively.

This Court cannot entertain Counts II and III in the Second Amended Complaint under a statute that the Supreme Court held in *AAPC* was unconstitutional.

## V.     COUNT II'S CLAIMS UNDER 47 U.S.C. § 227(B)(1)(B) REMAIN UNENFORCEABLE.

Plaintiffs' concession that they "do not dispute that the government-debt exception in section 227(b)(1)(B) would also be rendered unconstitutional," Opp. 24, ends this argument.  While they attempt to backpedal by claiming that section 227(b)(1)(B) is presently enforceable, their argument is unpersuasive and disproven by their own admission.  As Plaintiffs also state in their Opposition, "*the Supreme Court did not address the constitutionality of section 227(b)(1)(B)*, stating '[t]he issue before us

concerns only robocalls to cell phones.'" *Id.* (quoting *AAPC*, 140 S. Ct. at 2347). Because *AAPC* only severed the unconstitutional provision contained in section 227(b)(1)(A)(iii), the identical (and as Plaintiffs admit) unconstitutional provision in section 227(b)(1)(B) governing calls to residential telephone lines *remains intact*. And while it appears that Plaintiffs ask this Court to now sever the unconstitutional provision from section 227(b)(1)(B), that would not change the fact that it is—and for over five years has been—unconstitutional. Accordingly, Plaintiffs' arguments regarding the effects of severance, either prospective or retroactive, are irrelevant. As Plaintiffs themselves concede, the unconstitutional provision remains in section 227(b)(1)(B), rendering all claims under this section unenforceable. Count II must therefore be dismissed.

## VI. CONCLUSION

Plaintiffs' Opposition fails to resurrect claims under a law that the Supreme Court had held was unconstitutional when the speech at issue in this case occurred. The Court should therefore grant Defendants' Motion to Dismiss Counts II and III of the Second Amended Complaint.

Dated March 3, 2021                              Respectfully submitted,

                                                 ROTH JACKSON GIBBONS
                                                 CONDLIN, PLC

                                                 By: /s/ *Mitchell N. Roth*
ATTORNEY-IN-CHARGE:                              Mitchell N. Roth, *Pro Hac Vice*
                                                 (VA State Bar/Federal Bar No. 35863)
                                                 ROTH JACKSON GIBBONS
                                                 CONDLIN, PLC
                                                 8200 Greensboro Drive, Suite 820
                                                 McLean, Virginia
                                                 T: 703-485-3536
                                                 F: 703-485-3525
                                                 mroth@rothjackson.com

OF COUNSEL:                                      Gregory M. Caffas, *Pro Hac Vice*
                                                 (VA State Bar/Federal Bar No. 92142)
                                                 ROTH JACKSON GIBBONS
                                                 CONDLIN, PLC
                                                 8200 Greensboro Drive, Suite 820
                                                 McLean, Virginia
                                                 T: 703-485-3533
                                                 F: 703-485-3525
                                                 gcaffas@rothjackson.com

                                                 Joseph P. Bowser, *Pro Hac Vice*
                                                 (VA State Bar/Federal Bar No. 88399)
                                                 ROTH JACKSON GIBBONS
                                                 CONDLIN, PLC
                                                 1519 Summit Avenue, Suite 102
                                                 Richmond, VA 23230
                                                 T: 804-441-8701
                                                 F: 804-441-8438
                                                 jbowser@rothjackson.com

Jason Wagner
State Bar No. 00795704
Federal Bar No. 20325
WAGNER LAW, PLLC
Two North Main Street
Kingwood, Texas 77339
Phone: (713) 554-8450
Fax: (713) 554-8451
jwagner@jwagnerlaw.com

*COUNSEL FOR RISING EAGLE
DEFENDANTS*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 3, 2021, I electronically filed the foregoing **REPLY IN SUPPORT OF RISING EAGLE DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ *Mitchell N. Roth*
Mitchell N. Roth