IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

| | |
|---|---|
| **STATE OF TEXAS**, *et al.*, | |
| Plaintiffs, | |
| v. | |
| **RISING EAGLE CAPITAL GROUP, LLC**, *et al.*, | Civil Action No. 4:20-cv-02021 |
| Defendants. | |

## UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT

# TABLE OF CONTENTS

ISSUES PRESENTED .................................................................................................. 1

INTRODUCTION ...................................................................................................... 2

BACKGROUND ........................................................................................................ 5

I.      Statutory Background and the *AAPC* Decision ............................................ 5

II.     Judicial Decisions After *AAPC* .................................................................... 7

III.    Procedural Background .................................................................................. 9

ARGUMENT............................................................................................................ 10

I.      Defendants May Be Liable Under Section 227(b)(1)(A)(iii) For Calls Made
        Before the Supreme Court's Decision in *AAPC*........................................... 10

        A.      Since The Government-Debt Exception Is Unconstitutional, It Has
                No Effect on Section 227(b)(1)(A)(iii), Which Has Been Fully
                Operative at All Relevant Times ................................................... 10

        B.      Defendants' Countervailing Arguments Are Meritless.............................. 15

II.     Defendants May Be Held Liable Under Section 227(b)(1)(B) ............................. 24

CONCLUSION ........................................................................................................ 25

## ISSUES PRESENTED

Defendants' motion seeks to dismiss the counts of the complaint assert-ing violations of two provisions of the Telephone Consumer Protection Act of 1991 ("TCPA"). Although Defendants styled their motion as one brought under Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of jurisdiction, the motion is properly analyzed under Rule 12(b)(6) for failure to state a claim. The Court must therefore determine whether the allegations of the complaint set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, this distinction does not meaningfully change the Court's standard of review. *See Morrison v. Nat'l Austrl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (determining to "proceed to address whether petitioners' allegations state a claim," where "a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion"). The two questions to be decided by the Court are:

I.  Whether Defendants can be held liable for violations of the TCPA's restrictions on robocalls made to cell phones – contained in 47 U.S.C. § 227(b)(1)(A)(iii) – for calls made after Congress amended the restriction to exclude calls made to collect govern-ment debts, but before that exception was held unconstitutional and severable.

II. Whether Defendants can be held liable for violations of the TCPA's restrictions on robocalls made to residential telephone lines – contained in 47 U.S.C. § 227(b)(1)(B) – which Congress amended with an exception materially identical to the exception contained in Section 227(b)(1)(A)(iii).

1

# INTRODUCTION

Two provisions of the Telephone Consumer Protection Act of 1991 ("TCPA") are at issue in this case. One of those provisions (hereinafter "the cell phone restriction") generally restricts the use of an autodialer or artificial voice technology in making calls to cell phones. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The other provision (hereinafter "the landline restriction") generally restricts the use of artificial voice technology in making calls to residential telephone lines. *See id.* § 227(b)(1)(B).

Both of these provisions were enacted in 1991, and there is no dispute that they were valid when enacted. In a 2015 amendment, Congress purported to allow the use of these technologies for calls made to collect debts owed to or guaranteed by the United States without the consent of the person being called (the "government-debt exception"). Last year, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the Supreme Court analyzed a challenge to the cell phone restriction and held that the government-debt exception is content based and severed the exception from the remainder of the statute. Thus, in light of *AAPC*, there is also no dispute that a call made today in violation of the cell phone restriction would subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

Nonetheless, Defendants argue that it would be unconstitutional to apply the cell phone restriction – contained in Section 227(b)(1)(A)(iii) – to any calls made between the enactment of the government-debt exception but before

the Court's decision in *AAPC*. According to Defendants, this time period (roughly 2015-2020) amounted to a regulatory donut hole in which the cell phone restriction cannot constitutionally be enforced against any robocaller because of the presence of the government-debt exception, even though there is no dispute that the provision was fully constitutional before and after that time period. Defendants further argue that the landline restriction – contained in Section 227(b)(1)(B), and which contains an exception materially identical to the one analyzed in *AAPC* – cannot be applied to *any* call since the enactment of the government-debt exception. Defendants contend this is so because the plaintiffs in *AAPC* challenged only Section 227(b)(1)(A)(iii) and not Section 227(b)(1)(B). Thus, according to Defendants, the landline restriction still contains the unconstitutional government-debt exception and therefore cannot be enforced against any robocaller until a court affirmatively removes this provision from the statute.

Defendants' contentions are meritless. As for Defendants' argument regarding the cell phone restriction, their position was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the Court's decision holding the government-debt exception invalid "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12, and neither of the opinions concurring in the judgment with respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although three district court opinions have ignored that clear direction and held that calls and texts made before the government-debt exception's severance are immune from the TCPA, the substantial majority of

district courts have rejected Defendants' argument that Section 227(b)(1)(A)(iii) was unenforceable for this five-year period.

Defendants' argument should also be rejected because it runs counter to the rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, in which the pertinent statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has allowed a finding of liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the time of the alleged violation.

For this reason, Defendants' contention with respect to the landline restriction must also be rejected. Because the exceptions contained in both the cell phone restriction and the landline restriction have materially identical language, there can be no doubt that the Supreme Court's holding in *AAPC* that the government-debt exception is unconstitutional but severable applies equally to both provisions. Accordingly, just as the government-debt exception can have no effect on the cell phone restriction, the near-identical exception in the landline restriction also has no effect on that provision. Consequently, there is no constitutional prohibition against holding Defendants liable under either provision.

4

## BACKGROUND

### I.     Statutory Background and the *AAPC* Decision

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012). As pertinent here, the statute since 1991 has restricted the use of autodialers and artificial or prerecorded voice in making calls. *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395-96. Specifically, Section 227(b)(1)(A)(iii) of the TCPA (the "cell phone restriction") makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). That provision has been interpreted to apply to both phone calls and text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003). Likewise, Section 227(b)(1)(B) (the "landline restriction") makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes . . . or is exempted by rule or order by the [FCC.]" 47 U.S.C. § 227(b)(1)(B).

In 2015, Congress added an exception ("the government-debt exception") to both of these provisions, using nearly identical language. *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588. With respect

to the cell phone restriction, the 2015 statute removed from the prohibition calls "made solely to collect a debt owed to or guaranteed by the United States." *Id.* Similarly, the 2015 statute added an exception to the landline restriction for calls "made solely pursuant to the collection of a debt owed to or guaranteed by the United States." *Id.* The Communications Act of 1934 contains a severability provision (covering the TCPA), which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court in *AAPC* considered a constitutional challenge to the cell phone restriction and held that the government-debt exception was content-based and violated the First Amendment. 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the provision's overall restriction on robocalls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"). The Court further held that the government-debt exception was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason

6

has no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the robocall restriction. The opinion explained that "although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355 n.12. However, the plurality continued by flatly stating that "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Neither of the separate opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.).

## II.    Judicial Decisions After *AAPC*

Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved to dismiss complaints that sought enforcement of the TCPA against calls and text messages sent after the government-debt exception was added but before *AAPC* was decided. Initially, three district courts agreed with this argument and dismissed TCPA complaints to the extent they sought damages for calls and texts made during this time period. *See Creasy v. Charter Commc'ns, Inc.*, No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio

Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).[1]

However, since that batch of early decisions, every district court to have addressed the issue has rejected the argument that robocallers can avoid liability for calls and texts made before the government-debt exception's severance. *See Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Rieker v. Nat'l Car Cure, LLC*, No. 3:20-cv-5901, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Stoutt v. Travis Credit Union*, No. 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (Mar. 25, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 20-cv-60638, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-510, 2021 WL 948805 (S.D. Cal. Mar. 12, 2021); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186, 2021 WL 1060105 (E.D. Mo. Mar. 18, 2021). Indeed, the same district court judge who dismissed the TCPA complaint in *Hussain* has more recently denied a defendant's request seeking to dismiss a TCPA complaint on identical grounds. *See Boisvert v. Carnival Corp.*, No. 8:20-cv-2076, 2021 U.S. Dist. LEXIS 47397, at *4 (M.D. Fla. Mar. 12, 2021) ("Upon further

---

[1] Defendants in these cases did not timely notify the government of their constitutional challenges and the United States accordingly had no opportunity to intervene in the district courts. The *Lindenbaum* decision has been appealed, and the United States has intervened in the Sixth Circuit and filed a brief arguing that the decision below is incorrect.

reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*.").

## III.    Procedural Background

Plaintiffs in this case are the states of Texas, Arkansas, Indiana, Michigan, Missouri, North Carolina, Ohio, and North Dakota. They filed the operative complaint on October 30, 2020, asserting (among other things) violations of both the cell phone restriction and the landline restriction. Second Am. Compl., ECF No. 56. On January 7, 2021, several Defendants filed a motion to dismiss the counts of the operative complaint that sought to enforce these provisions of the TCPA, arguing that they cannot be held liable for violations of the cell phone restriction for calls made between the enactment of the government-debt exception and the Court's severance of the exception in *AAPC*. *See* ECF No. 80 ("Def. Br."), at 6-15. Defendants further argued that they cannot be liable for violations of the landline restriction for calls made at any time after the enactment of the government-debt exception. *Id.* at 15. On February 3, 2021, additional Defendants filed a motion to dismiss incorporating these arguments, *see* ECF No. 93, at 9, as well as raising additional non-constitutional arguments, *see id.* at 9-10.

Federal Rule of Civil Procedure 5.1 provides for a procedure to notify the United States when a federal statute is challenged as unconstitutional. *See* Fed. R. Civ. P. 5.1(a)(1). Rule 5.1(c) allows the Attorney General to intervene within 60 days of the filing of an appropriate notice or the Court's certification of the constitutional challenge, "[u]nless the court sets a later time." No notice

was filed in this case pursuant to Rule 5.1. However, the government became aware of the constitutional questions presented in this case, and accordingly the United States filed an unopposed motion to be allowed until April 5, 2021 to determine whether to intervene in this matter. ECF No. 91. The Court granted the government's motion. ECF No. 94.

## ARGUMENT

### I. Defendants May Be Liable Under Section 227(b)(1)(A)(iii) For Calls Made Before the Supreme Court's Decision in *AAPC*

In *AAPC*, the Supreme Court considered the effect of the government-debt exception on the cell phone restriction – contained in Section 227(b)(1)(A)(iii) – and held that the exception was unconstitutional but severable from the remainder of the statute. In doing so, the Supreme Court affirmed the validity of the TCPA's general prohibition on placing robocalls to cell phones without the consent of the person being called. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, this Court should hold (consistent with *AAPC*) that Defendants may be held liable for violations of the cell phone restriction that occurred after the enactment of the government-debt exception and prior to the Supreme Court's decision in *AAPC*.

### A. Since The Government-Debt Exception Is Unconstitutional, It Has No Effect on Section 227(b)(1)(A)(iii), Which Has Been Fully Operative at All Relevant Times

There is no dispute that the cell phone restriction was valid before the enactment of the government-debt exception and that it is likewise valid and

enforceable today. Defendants urge, however, that the cell phone restriction was rendered unenforceable for the period of time between the enactment of the government-debt exception and the Court's determination in *AAPC* that the exception is severable. *See* Def. Br. at 9-15.

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929). Thus, the validity of a provision "c[an] not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the cell phone restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). *AAPC* further concluded that the impermissibly content-based government-debt amendment was severable from the remainder of the statute, *see id.* at 2349; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did not have any effect on the concededly valid restrictions already

11

in effect, *id.* at 2348-49 (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack of genuine congressional concern for consumer privacy" that called the autodialer restriction into doubt).

Prior Supreme Court decisions applying those principles confirm that a defendant may be liable for violating a provision notwithstanding the enactment of an unconstitutional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a Michigan law prohibiting the manufacture of alcohol even though amendments to the law enacted prior to the alleged violation were inconsistent with principles of equal protection. 232 U.S. at 706. The Court explained that the original "statute had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside" based on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be tried under the Federal Kidnapping Act for alleged violations of its original terms, which prohibited the interstate transport of kidnapped individuals, notwithstanding the unconstitutionality of an amendment that conditioned the possibility of capital punishment on the exercise of the right to trial by jury. In holding the capital punishment clause invalid and severable from the remainder of the statute, *id.* at 583, 586, the Court confirmed that "the unconstitutionality of that clause does not require the defeat of the law as a whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amendment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.* at 591.

Defendants' position cannot be reconciled with the holdings in *Eberle* and *Jackson*. In each case, the defendant allegedly violated a law that was constitutional as originally enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original provision occurred after the legislature had enacted an amendment that was later held to be invalid and severable from the statute. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

Defendants' argument is also at odds with longstanding principles of judicial review insofar as Defendants suggest that the *AAPC* decision altered the law. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that part of a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L.R. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming

13

that when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. The Court's holding that the exception was severable from the remainder of the statute likewise "is a question of interpretation and of legislative intent." *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924). The *AAPC* plurality explained that the Communications Act's severability clause "squarely covers the unconstitutional government-debt exception and requires that we sever it," 140 S. Ct. at 2352, and observed that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," *id.* at 2353. *See also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception was invalid but not

14

severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and defendants may be held liable under the valid remainder of the statute. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of the Anti-Riot Act that the court held were valid and severable from provisions found to violate the First Amendment), *cert. petition* filed, No. 20-1241 (U.S. Mar. 4, 2021).

### B. Defendants' Countervailing Arguments Are Meritless

Although Defendants raise several arguments in an attempt to avoid liability, they do not provide a basis for this Court to depart from the traditional understanding of severance principles.

**1.** Defendants argue that the Supreme Court in *AAPC* struck down the government-debt exception only "prospectively," and that the cell phone restriction therefore was affected – and invalidated by – the government-debt exception until the exception's severance in *AAPC*. Defendants principally support this contention by arguing that the *AAPC* Court understood itself to be holding the entire cell phone restriction – not just the government-debt exception – unconstitutional for a period of time. *See, e.g.*, Def. Br. at 7; Def. Reply at 2-3, 5 (ECF No. 102). But this contention disregards *AAPC*'s conclusion that the government-debt exception did not render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plurality op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"), and the plurality's admonishment that

15

its opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12.

Thus, while Defendants correctly note that unconstitutional laws are void, *see* Def. Br. at 8-9, Defendants incorrectly seeks to apply that principle to the overall autodialer restriction (which was constitutional when enacted) rather than the government-debt exception. The *AAPC* Court made clear that the statute's only constitutional defect stemmed from the government-debt exception.[2] *See, e.g., AAPC*, 140 S. Ct. at 2352 ("Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."); *see also id.* at 2353 (describing the government-debt exception as "the constitutionally offending provision"). Accordingly, it is only the government-debt exception that should be deemed ineffective from its enactment, meaning that this amendment had no effect on the already-existing and constitutional autodialer restriction.[3] *See supra.* This result is also faithful to

---

[2] Defendants are incorrect to argue that the *AAPC* Court cannot have meant to strike down only the government-debt exception because that exception does not itself restrict speech. *See* Def. Reply at 7. The *AAPC* Court made clear that the constitutional problem at issue was differential treatment among different types of speech. That constitutional problem was remedied by removing the government-debt exception – which was the source of the differential treatment – even though the exception itself did not restrict speech. *See, e.g., AAPC*, 140 S. Ct. at 2354.

[3] In a footnote, Defendants cite a Federal Circuit opinion concurring in the denial of rehearing en banc in a case, for the proposition that "judicial severance . . . is a *forward-looking* judicial fix." Def. Reply at 9 n.6 (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir.), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 549 (2020)). The *Arthrex* concurrence of course cannot displace Supreme Court precedent holding that the Court's construction of a statute does not "change" the law, *see Rivers*, 511 U.S. at 312-13, 313 n.12, or that that the Court's interpretation of a law must be given

the *AAPC* plurality's admonition that litigants should not be able to undermine an entire regulatory scheme merely because one of its marginal provisions is unconstitutional. *See AAPC*, 140 S. Ct. at 2351 (plurality op.) ("Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute.").

Moreover, to hold otherwise would lead to substantial logistical difficulties. Before the Supreme Court decided *AAPC*, two circuits had struck down the government-debt exception but held it severable from the remainder of the statutory scheme. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019); *AAPC v. FCC*, 923 F.3d 159 (4th Cir. 2019). Presumably, under Defendants' theory, a defendant would therefore be liable for violating the autodialer restriction for calls made within the Fourth and Ninth Circuits following those appellate decisions but not for violations of the statute in other circuits until after the Supreme Court decided *AAPC*, notwithstanding the interstate nature of the regulated activity. That result underscores the problems inherent in Defendants' position.

**2.** Defendants asks the Court to ignore the *AAPC* plurality's statement that the decision "does not negate the liability of parties who made robocalls"

---

retroactive effect in all pending cases, *see Harper*, 509 U.S. at 97. In any event, *Arthrex* is inapposite as it concerns the relief warranted when a party challenges an agency decision issued by improperly appointed officers. There is no analogous agency decision in this case, in which the only question is whether defendant can be liable for allegedly violating a statutory provision that was valid when enacted.

prior to the Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta. *See* Def. Br. at 8, 13; Def. Reply at 3-5. Although it is true that this footnote appeared in an opinion signed by only three Justices, neither of the opinions expressly concurring with respect to severability disagreed with the footnote's conclusion that robocallers who violated the clearly constitutional autodialer restriction during the relevant time period should still be liable for those violations of that provision. *See AAPC*, 140 S. Ct. at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part). And as explained above, allowing liability for entities like Defendants would be consistent with the Supreme Court's treatment of similar instances in which the Court upheld liability for violations of an underlying, lawful provision even after an unconstitutional amendment has later been enacted. *See Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

**3.** Defendants assert that to hold them liable for violations of the cell phone restriction would be equivalent to making the TCPA "retroactively enforceable." Def.Reply at 7-8. But there is nothing "retroactive" about holding Defendants liable for their calls. Any liability imposed on Defendants would stem from violations of the cell phone restriction, which as discussed, was fully constitutional and operative at all relevant times. Moreover, Defendants cannot claim that their activities were prejudiced in any way. The cell phone restriction was passed approximately thirty years ago and has applied to entities like Defendants since its enactment. Defendants cannot complain that they

were unaware of the TCPA's prohibitions at the time they undertook the actions that are the subject of the present complaint.

This conclusion is unaffected by the fact that the Supreme Court plurality recognized that debt collectors should not be held liable for calls and texts made to collect government debt prior to *AAPC*, while at the same time upholding liability for other robocallers during that time period. This differential treatment is neither unfair nor creates any constitutional problem. Holding collectors of government debt liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the "fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). Thus, even though the government-debt exception was invalid from its inception and never had effect, it does not follow that debt collectors should be penalized for reasonably relying on its enactment. Any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that certain callers had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.

**4.** Defendants cite various cases that they believe show that they cannot be held liable, but these cases are distinguishable. For example, Defendants

cite *Grayned v. City of Rockford*, 408 U.S. 104 (1972), for the proposition that "the relevant question is whether the statute at issue was constitutional when the alleged violation occurred, not whether it has subsequently been cured by judicial or legislative action." Def. Br. at 10. In *Grayned*, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following his conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment "has, of course, no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2.

Unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act, and the Court noted no legislative history indicating that the legislature would have enacted the general prohibition on picketing without the offending exception. Accordingly, the anti-picketing provision as a whole was invalid as enacted, and the Court held that Grayned could not be convicted under that unconstitutional provision.[4] By contrast, *AAPC* confirms that the autodialer restriction was valid when enacted

---

[4] The *Grayned* Court struck down the ordinance at issue after noting that it was "identical" to a Chicago ordinance that had been invalidated the same day in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). *See Grayned*, 408 U.S. at 107. In contrast to *AAPC*, the *Mosley* Court held that the content-based exception called into doubt the validity of the *entire* restriction. 408 U.S. at 100 ("If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful.").

and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.). The situation here is thus much more similar to *Jackson* and *Eberle*, in which the Court upheld a finding of liability when the liability arose from violations of a statute that had been found constitutional but then subject to an unconstitutional amendment. *See Jackson*, 390 U.S. at 586, 591; *Eberle*, 232 U.S. at 705. *Grayned* did not involve that situation, and therefore provides no basis for allowing Defendants to avoid liability in these circumstances. *See also Miselis*, 972 F.3d at 547.

Equally unavailing is Defendants' comparison to *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). *See* Def. Br. at 10-11. The question there concerned the retroactivity of the Supreme Court's prior holding that the Eighth Amendment prohibited sentencing juveniles to mandatory sentences of life in prison without the possibility of parole. *See Miller v. Alabama*, 567 U.S. 460, 465 (2012). Concluding that the holding did apply retroactively, the Court held that the petitioner – who had received a mandatory sentence of life in prison without the possibility of parole for a murder he committed as a juvenile – could rely on *Miller* to challenge his sentence. *Montgomery* thus involved a situation where the petitioner had been found liable under the precise type of provision that the Court had held unconstitutional, *i.e.* a law requiring that the petitioner be sentenced to life without parole for a crime committed as a juvenile.

*See Montgomery*, 136 S. Ct. at 726-27. In contrast, Defendants' potential liability here derives from the TCPA's restrictions on robocalls, which the Supreme Court has confirmed are constitutional. *AAPC*, 140 S. Ct. at 2343-44.[5]

   **5.** Defendants try to distinguish cases such as *Eberle* and *Frost* and argue that they are inapplicable here. Defendants contend that *Eberle* is inapposite because it "dealt with the Michigan Supreme Court's (not the U.S. Supreme Court's) determination that the original statute in question was constitutional and that the subsequent amendment was void." Def. Reply at 9. This argument fails for two reasons. First, the U.S. Supreme Court in *Eberle* did consider and reject at least some of the defendants' constitutional arguments against the original statute. 232 U.S. at 706-07. Second, the liability of the defendants in *Eberle* in no way turned on *which* court had held the original statute was constitutional. The crucial fact remains that the U.S. Supreme Court recognized that the underlying statute was constitutional, that the legislature had purported to add unconstitutional (and therefore void) amendments, and that defendants therefore could be liable for violating the original statute. *Id.* at 704-06. The same result should follow here.

---

[5] Without substantial discussion, Defendants cite *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), noting that there the Supreme Court had stated that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." Def. Br. at 10 (quoting *Morales-Santana*, 137 S. Ct. at 1699 n.24). But the quoted section from *Morales-Santana* primarily discussed *Grayned*, which is distinguishable from the situation here for the reasons explained above. Moreover, the *AAPC* plurality was well aware of this case, *see AAPC*, 140 S. Ct. at 2354 (citing *Morales-Santana*), but nonetheless stated shortly after this citation that *AAPC* "does not negate the liability of parties who made robocalls" prior to that decision. 140 S. Ct. at 2355 n.12.

Defendants attempt to distinguish *Frost* by arguing that in that case "the amendment itself was deemed to be unconstitutional and void," which they say is "unlike in *AAPC*." Def. Reply at 10. But that is precisely what happened in *AAPC. See, e.g.*, 140 S. Ct. at 2352 ("Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."); *id.* at 2353 (describing the government-debt exception as "the constitutionally offending provision"). Indeed, the *AAPC* plurality noted that "[t]he Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law," and cited *Frost* for the proposition that "[i]n those cases, the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

Finally, Defendants suggest that both *Eberle* and *Frost* are distinguishable because neither of those cases involved a First Amendment-based challenge. Def. Reply at 9-10. But Defendants offer no reason why this distinction makes any difference. The question here concerns how a constitutional statute is affected by a later, unconstitutional amendment. Cases like *Eberle*, *Frost*, and *Jackson* – as well as the plurality in *AAPC* – all indicate that the original statute is unaffected by the unconstitutional amendment, and none of these authorities indicate that conclusion would change if the amendment had been struck down under the First Amendment instead of some other constitutional provision.

## II.   Defendants May Be Held Liable Under Section 227(b)(1)(B)

*AAPC* concerned a challenge to the cell phone restriction contained in Section 227(b)(1)(A)(iii) and did not technically address the landline restriction contained in Section 227(b)(1)(B). According to Defendants, this means that the landline restriction still contains the unconstitutional government-debt exception, and the provision therefore cannot be enforced against Defendants. *See* Def. Br. at 15.

Defendants are incorrect. Because the exceptions contained in Section 227(b)(1)(A)(iii) and Section 227(b)(1)(B) contain materially identical language, there can be no doubt that the Supreme Court's holding in *AAPC* that the government-debt exception is unconstitutional but severable applies equally to both provisions. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain calls to cell phones "unless such call is made solely to collect a debt owed to or guaranteed by the United States"), *with id.* § 227(b)(1)(B) (prohibiting certain calls made with an artificial or prerecorded voice to residential lines "unless the call . . . is made solely pursuant to the collection of a debt owed to or guaranteed by the United States").

Just as the government-debt exception can have no effect on the cell phone restriction contained in Section 227(b)(1)(A)(iii), the near-identical exception in Section 227(b)(1)(B) also has no effect on the underlying restriction on calls to residential landlines made with an artificial or prerecorded voice. There is accordingly no constitutional prohibition against holding Defendants liable under either provision.

## CONCLUSION

For the foregoing reasons, Defendants' constitutional challenge should be rejected.

DATED:  April 5, 2021                    BRIAN M. BOYNTON
                                                          Acting Assistant Attorney General

                                                          ERIC R. WOMACK
                                                          Assistant Director, Federal Programs Branch

                                                          */s/ Joshua C. Abbuhl*
                                                          JOSHUA C. ABBUHL
                                                          Trial Attorney (D.C. Bar No. 1044782)
                                                          Attorney-in-Charge
                                                          United States Department of Justice
                                                          Civil Division, Federal Programs Branch
                                                          1100 L St. NW
                                                          Washington, D.C. 20005
                                                          (202) 616-8366 (tel.)
                                                          (202) 616-8470 (fax)
                                                          Joshua.Abbuhl@usdoj.gov
                                                          *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, a copy of the foregoing document was filed electronically via the Court's ECF system, which sent notification of such filing to counsel of record.

                                                          */s/ Joshua C. Abbuhl*

                                                          JOSHUA C. ABBUHL