IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS, et al.**, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| **RISING EAGLE CAPITAL GROUP LLC, et al.**, | § § § § | Civil Action No.: 4:20-cv-02021 |
| Defendants. | § § § § § | |

**DEFENDANTS' REPLY TO THE UNITED STATES OF AMERICA'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 3

    A. The Government Fundamentally Misunderstands *AAPC*'s Holding.................. 3

    B. The Government's Interpretation of *AAPC*'s Severance Continues the Unconstitutional Statutory Scheme *AAPC* Sought to Correct............................ 5

        1. The Government's analysis regarding the retroactivity of *AAPC*'s severance is meritless. ................................................................................................... 5

        2. The Government's interpretation of *AAPC* offends constitutional notions of Due Process.......................................................................................... 11

III. CONCLUSION ................................................................................................. 15

Defendants Rising Eagle Capital Group LLC, JSquared Telecom LLC, John C. Spiller, II, and Jakob A. Mears (collectively the "Rising Eagle Defendants"), jointly with Defendants Health Advisors of America, Inc. and Michael Theron Smith, Jr. (collectively with the Rising Eagle Defendants, "Defendants"), submit this Reply to the United States of America's Opposition to the Rising Eagle Defendants' Motion to Dismiss, ECF No. 108 ("Gov't Opp.").

I.  **INTRODUCTION**

The Government's brief largely repeats arguments already advanced by the Plaintiff States in their Opposition to Defendants' Motion to Dismiss, which have been refuted in Rising Eagle Defendants' Reply in Support of their Motion to Dismiss, ECF No. 102. Defendants incorporate all of the arguments in the previously-filed Reply brief, and this brief will focus on relevant legal developments since that Reply was filed and any new positions articulated by the Government.[1]

---

[1] For example, the Government's brief relies almost exclusively on footnote 12 of Justice Kavanaugh's three-Justice plurality in *AAPC*, *see* Gov't Opp. at 3, 7, 10, 16, 22 n.5 (citing *Barr v. Am. Ass'n of Pol. Consultants*, 140 S.Ct. 2335, 2355 n.12 (2020)), which is clearly non-binding obiter dicta, as previously fully briefed. *See* Rising Eagle Defendants' Motion to Dismiss at 8-11, ECF No. 81; Plaintiffs' Opposition at 22, ECF No. 87 ("Plaintiffs' Opp."); Rising Eagle Defendants' Reply at 3-5, ECF No. 102. Neither the Government's unsuccessful attempt to pass this non-binding footnote as something other than dicta, Gov't Opp. at 16, nor its attempt to use this dicta as a magic wand to wave away unfavorable precedent, Gov't Opp. at 22 n.5, warrants serious consideration. Likewise the Government's redundant attempts to resuscitate misplaced precedent relied upon by the States adds no relevant analysis. *See*, *e.g.*, Gov't Opp. at 12, 22 (citing *Eberle v. Michigan*, 232 U.S. 700, 704-707 (1914)); *id*. at 16-17 n.3 (citing *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993)); *id*. at 11, 14, 22 (citing *Frost v. Corp. Comm'n of Oklahoma*, 278 U.S. 515, 526-527 (1929)).

1

Oddly, although not at issue here, the chief purpose of the Government's intervention appears to be focused on ensuring that government debt collectors are free from liability under the TCPA's robocalling provision for calls made while the 2015 government-debt-call clause, which *Barr v. American Association of Political Consultants*, 140 S.Ct. 2335 (2020) ("*AAPC*"), declared unconstitutional when combined with the broader robocalling provision, remained a part of the statute.  A plain reading of the Supreme Court's ruling in *AAPC* shows that the Government seeks to do exactly the opposite of advocate for a constitutionally permissible application of the TCPA, notwithstanding the melodramatic title of the Government's opposition brief, the "United States of America's Brief in Support of the Constitutionality of the Telephone Consumer Protection Act."  That question is not up for debate; under the authority granted by *Marbury v. Madison*, 5 U.S. 137 (1803), the Supreme Court has unequivocally held that the TCPA's entire robocall prohibition was unconstitutional from the enactment of the 2015 amendment until it was severed in *AAPC* in July 2020.

With its 2015 government-debt-collection-call exemption, the Government unconstitutionally favored its own commercial speech over that of every other speaker's speech using the same technology, in plain derogation of the First Amendment.  The Government, based on its misguided theory of *partial* retroactive application of *AAPC*'s severance, instead advocates a position that would lead to the very unequal treatment *AAPC* sought to remedy.  In essence, the Government argues that the exemption remained in place for federal debt collectors' calls (so they are not liable for their 2015-2020 calls), but the callers whose First Amendment rights were violated (such as Defendants) somehow

magically lived in a world where the law was not actually unconstitutional, even though the Supreme Court held just the opposite. In other words, the Supreme Court's severance power, the Government maintains, is a line-item, retroactive veto that Presidents certainly do not have[2] but the Supreme Court does, such that Congress is in a risk-free position to enact any unconstitutional law it likes, and the Court will just clean up the messes whenever it percolates its way up to the High Court. Fortunately, that is not the democracy our Founders created. The Government's heads-I-win, tails-you-lose theory lacks logical and legal support, and the Court should therefore grant Defendants' Motion to Dismiss. The Court simply cannot grant these States relief under a law that was unconstitutional—and thus no law—when the conduct occurred.

## II. ARGUMENT

### A. The Government Fundamentally Misapplies *AAPC*'s Holding.

The key to this dispute is that the Government, like the States, takes the misguided position that it is only the government debt-collection exemption that should be deemed ineffective from its enactment, not the entire robocalling provision. Gov't Opp. at 16, ECF No. 108. But the Government misunderstands that the reason there can be no liability under the TCPA's robocalling prohibition while the government-debt exemption was in place is that it is not the government-debt exemption alone that was unconstitutional; rather, section 227(b)(1)(A)(iii) *in its entirety*—the combination of the general restriction on robocalling and the government-debt exemption—was the content based-restriction on

---

[2] *Clinton v. City of New York*, 524 U.S. 417 (1998).

speech that *AAPC* found unconstitutional.  *See, e.g., Cunningham v. Matrix Fin. Servs.*, Civil Action No. 4:19-cv-896, 2021 U.S. Dist. LEXIS 62875, at *7-8 (E.D. Tex. Mar. 31, 2021) (citing *AAPC*, 140 S. Ct. at 2346).

Again, neither the general robocall restriction enacted with the TCPA's passage in 1991, nor the 2015 government debt exemption are problematic *on their own*.  The First Amendment violation only existed when the two were combined.  *See., e.g., Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010) (agreeing that "a number of statutory provisions . . . , working together, [can] produce a constitutional violation"); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2222 (2020) (Thomas, J., concurring in part and dissenting in part) ("In some instances, a constitutional injury arises as a result of two or more statutory provisions operating together.").

The Government was allowed to ban all robocalls.  Alternatively, it was allowed to make its own robocalls without a TCPA.  But its "do as I say, not as I do" 2015 combination was the impermissibly hypocritical, content-based maneuver that the Court held to be clearly unconstitutional.  Courts cannot continue to enforce the same constitutionally impermissible statutory interpretation that *AAPC* ruled led to unequal treatment while the government-debt exemption was intertwined with the general robocall prohibition.

This is the clear reading of *AAPC*: the restriction *combined with* the robocall prohibition subjected all non-government callers to unequal treatment.  *See, e.g., AAPC*, 140 S. Ct. at 2344 ("plaintiffs still may not make political robocalls to cell phones, but their speech is *now treated* equally with debt-collection speech." (emphasis added)); *id*. at 2342 (Kavanaugh, J., plurality opinion); *id.* at 2356-57 (Sotomayor, J.,); *id*. at 2364

(Gorsuch, J.). *AAPC* was "an *equal-treatment* case", and "Congress violated th[e] First Amendment['] *equal-treatment* principle . . . by favoring debt-collection robocalls and discriminating against political and other robocalls." *Id.* at 2354 (Kavanaugh, J.) (emphasis added). Any attempt by the Government to argue otherwise misunderstands the holding of *AAPC*, and, troublingly, suggests it has not learned the Court's unequal-treatment lesson.

    **B.    The Government's Interpretation of *AAPC*'s Severance Continues the Unconstitutional Statutory Scheme *AAPC* Sought to Correct.**

As Defendants have already established, by declining to invalidate the TCPA's entire autodialing restriction, the Supreme Court resolved the constitutional problem by prospectively severing the government-debt exemption. *See* Rising Eagle Defendants' Reply at 7-11, ECF No. 102. All parties here agree that the unconstitutional 2015 government-debt exemption has no impact on calls that occurred before it was added or after *AAPC*'s severance. The only dispute is the period the government-debt exemption remained in effect. There can be no liability imposed during that period, as the statutory construction of the TCPA impermissibly favored government-debt-collection speech over the speech of everyone else making calls with the same technology.

    **1.    The Government's analysis regarding the retroactivity of *AAPC*'s severance is without merit.**

First, the Government, like the States,[3] incorrectly claims that the post-*AAPC* authority it cites favors its ill-founded retroactive application of *AAPC*'s severance. Gov't

---

[3]     *See* Rising Eagle Defendants' Reply at 11 n.7 (noting that the post-*AAPC* cases Plaintiffs rely on in support of their theory of retroactive application of *AAPC*'s severance do not credibly support this retroactive effect and for the most part contain no analysis on retroactivity). An examination of the Government's Opposition shows that it relies largely

5

Opp. at 7-9 (interpreting "Judicial Decisions After AAPC"). And like the authority relied on by the States, the cases the Government relies on (that were not already discussed in Defendants' Reply to the States' Opposition) do not contain relevant analysis of the retroactivity issue that is crucial to this matter.[4] To the contrary, the Eastern District of Texas has recently joined *Creasy*, *Lindenbaum*, and *Hussain* with its ruling in *Cunningham v. Matrix Financial Services*, Civil Action No. 4:19-cv-896, 2021 U.S. Dist. LEXIS 62875 (E.D. Tex. Mar. 31, 2021), clearly ruling that *AAPC*'s severance cannot be applied retroactively, and is perhaps the most thorough in its analysis of this issue.

As these cases succinctly establish, the Government fundamentally misunderstands the function of *AAPC*'s severability by advocating its selectively retroactive application. *See*, *e.g.*, *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *16 ("a severability decision is quasi-legislative, and thereby prospective."). When deciding whether severance is an

---

on the same inapposite authority as the States. *Compare* Gov't Opp. at 8 *with* Plaintiffs' Opp. at 3 n.2.

[4] *See* Gov't Opp. at 8 (citing *Bonkuri v. Grand Caribbean Cruises, Inc.*, Civ. No. 0:20-cv-60638-WPD, 2021 U.S. Dist. LEXIS 30940 (S.D. Fla. Jan. 19, 2021)) (containing no discussion of retroactive application of *AAPC* severance); *McCurley v. Royal Sea Cruises, Inc.*, Case No. 17-CV-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 16403 (S.D. Cal. Jan. 28, 2021) (relying on dicta of *AACP* footnote 12 with no analysis of retroactive application of severance); *Massaro v. Beyond Meat, Inc.*, Case No.: 3:20-cv-00510-AJB-MSB, 2021 U.S. Dist. LEXIS 46980 (S.D. Cal. Mar. 12, 2021) (same); *Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 44267, at *8 (E.D. Mo. Mar. 9, 2021) (declining to analyze retrospective liability because defendant was not a government debt collector); *Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, at *4-5 (M.D. Fla. Mar. 12, 2021) (blindly following the ruling of other cases regarding the enforceability of *AAPC* with no analysis of retroactivity). In short, all of the post-*AAPC* cases the Government relies on are inapposite, as they largely ignore the need to analyze whether *AAPC*'s severance applies retroactively. The Court should reject this uncritical echo-chamber approach of simply following along with other unreasoned, non-binding opinions.

appropriate course of action, a court does not undertake to discern what a statute always meant. A severance inquiry arises only after a court has determined that a provision is unconstitutional. *Id.* at *13-14 (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.")). In other words, the severance serves to reflect the court's view of how Congress would have modified the statute to eliminate the constitutional defect *going forward*, acting in a quasi-legislative rather than judicial function, as it in effect changes the law in force. *Free Enter. Fund*, 561 U.S. at 508-10; *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *14 ("Given the deliberate focus courts direct toward legislative intent in this area, adjudicating severability is a judicial act that is, at least somewhat, legislative.") (citing *AAPC*, 140 S. Ct. at 2365); *see also* David H. Gans, *Severability as Judicial Lawmaking*, 76 Geo. Wash. L. Rev. 639, 643 (2008) (noting that severance "asks a remedial question about the scope of the relief a court should order, not an interpretive question about the statute's meaning.").

Importantly, this severance, effectively a legislative change, operates *prospectively*. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311-12 (1994) (quoting *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982)) ("statutes operate only prospectively"); *see also cf. Bouie v. City of Columbia*, 378 U.S. 347, 353-54 (1964) ("If a state legislature is barred by the Ex Post Facto Clause from passing . . . a [retroactive criminal] law, it must follow that a State Supreme Court is barred by the Due Process clause from achieving precisely the same result by judicial construction."); *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at

7

\*17 (citing *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 102 (1911)) ("the American constitutional order precludes federal courts from adjudicating severability matters with retrospective effect."). The *Cunningham* court also correctly rejects the Government's arguments relying on the dicta of *AAPC*'s footnote 12.[5]

Additionally, severance employed to restore a statute to constitutional health does not erase the impermissible treatment caused by the unconstitutional statutory regime, and certainly does not provide for liability for conduct that occurred while the provision was invalid. *See Smith v. Cahoon*, 283 U.S. 553, 563-64 (1931) ("[U]ntil such separation [of the invalid provision] has been accomplished by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what eventually will be eliminated and what will be left."). And contrary to the Government's opposing stance, the Supreme Court's rulings in *Grayned v. City of Rockford,* 408 U.S. 104 (1972), and *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), support that liability cannot be imposed retroactively under an unconstitutional statutory regime. *See* Gov't Opp. at 19-20 (discussing *Grayned*, 408 U.S. 104 (1972)); *id*. at 22 n.5 (discussing *Morales-Santana*, 137 S. Ct. 1678 (2017)).

The Government misunderstands the crux of the ruling in *Grayned*—its quibbling over whether the subject statute contained a severability clause is immaterial. What is

---

[5] Defendants note that *Cunningham* affirms Defendants' interpretation of *Harper*, *Eberle*, and *Frost*, stating that these cases even *cut against* the argument for a retroactive application of *AAPC*'s severance in ruling that the dicta of Justice Kavanaugh's footnote was unpersuasive. *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at \*21-22 (citing *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993); *Eberle v. Michigan*, 232 U.S. 700 (1914); and *Frost v. Corp. Comm. of Oklahoma*, 278 U.S. 515 (1929)).

8

relevant is that the statute in that case, like here, dealt with unequal treatment of speech, and whether retroactive liability could be imposed for the unconstitutional restriction that existed at the time of the alleged conduct. *Grayned*, 408 U.S. at 105-07. In that case, the legislature had already amended the subject provision to eliminate the content-based exception for speech prior to the Supreme Court's ruling—effectively functioning to sever the impermissible portion prospectively, as the Supreme Court did in *AAPC*. *Id.* at 107 n.2. The Government also fails to distinguish *Grayned* from *AAPC* on the grounds that "the government-debt exception was severable and did not undermine the validity of the restriction," Gov't Opp. at 20-21, because, as discussed at length above, it is the exemption *combined with* the ATDS prohibition that *AACP* ruled was unconstitutional, and the two cannot be analyzed independently.[6]

*Morales-Santana* affirms *Grayned*'s holding that liability cannot be imposed for conduct made unlawful by an unconstitutional statute. In *Morales-Santana*, the Court ruled that "a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." *Morales-Santana*, 137 S. Ct. at 1699 n.24. Liability for past conduct

---

[6] This is also why the Government's reliance on *Jackson* is misplaced. *See* Gov't Opp. at 12-13, 21 (citing *United States v. Jackson*, 390 U.S. 570). In *Jackson*, the Court ultimately determined that *only* the added death penalty clause was unenforceable, unlike here where the government-debt exception *combined* with the existing robocall prohibition is what *AAPC* ruled was unenforceable. 390 U.S. at 589-91. This distinguishing fact, combined with *Jackson*'s non-retroactive effect, *see Sims v. Eyman*, 405 F.2d 439, 445 n.3 (9th Cir. 1969)(prisoners whose trials began prior to *Jackson*'s holding could not raise a challenge based on *Jackson* because it was not retroactive), shows that the Government's reliance on this case is unfounded.

can only be assessed based on the law at the time of the violation, not how the statute may be altered after a finding that the statute is unconstitutional. *Id.* (citing *Grayned*, 408 U.S. at 107 n.2) ("[It is] irrelevant . . .whether the legislature likely would . . . cure[] the constitutional infirmity[;]" the Court "must consider the facial constitutionality of the [law] in effect when [defendant] was arrested[.]"). The Government simply cannot dispute that established principles of severability provide that severance cannot retroactively erase a constitutional violation or create liability under unconstitutional laws.[7] The Government's palimpsest theory of its own laws lacks any credible legal basis. At the risk of belaboring the obvious, the Government is in the *only* position to guard against the risk that *it* passes an unconstitutional law. When Congress chose to unconstitutionally favor its own speech in 2015, that choice had consequences. Article III courts are courts of limited jurisdiction; rewriting laws retroactively and adjudicating parties under unconstitutional laws are not among those limited powers.

---

[7] *See, e.g., Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) (ruling that the Court's severance did not act retroactively to cure the subject unconstitutional subpoena that was issued before the severance); *United States v. Booker*, 543 U.S. 220, 243-44 (2005) (holding that prospective severance did not cure sentences imposed under the unconstitutional statute at the time sentences were imposed); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 (Fed. Cir. 2020) ("curative severance of the statute . . . does not 'remedy' the harm to Arthrex, whose . . . rights were adjudicated under an unconstitutional scheme."); *Intercollegiate Broad Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) (refusing to grant retroactive effect to severance of unconstitutional removal restrictions for Copyright Royalty Judges).

10

### 2. The Government's interpretation of *AAPC* offends constitutional notions of Due Process.

But even if the Government somehow could rely on *AAPC*'s severance, liability under Counts II and III would still be unenforceable because of the unequal-treatment violation imposed against disfavored speakers. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995) (recognizing the "unsurprising fact" that an independent "principle of law" may "limit[] the principle of retroactivity"). Like in this case, when "the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984) (quoting *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 247 (1931)). *AAPC*'s severance cannot be applied retroactively because it would violate principles of due process and fair notice, against any callers, including government-debt callers that relied on the exception while it was in effect. *See PHH Corp v. CFPB*, 839 F.3d 1, 46 (D.C. Cir. 2016), *aff'd on reh'g en banc*, 881 F.3d 75, 82-83, 150 (D.C. Cir. 2018); *see also Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) (noting that "[d]eprivation of the right to fair warning" can result from "an unforeseeable and retroactive judicial expansion of statutory language[.]").

While due process normally only forbids applying an unforeseeable judicial enlargement of a criminal statute retroactively, the Supreme Court has taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values. *Marks v. United States*, 430 U.S. 188, 196 (1977) (citing *Buckley v. Valeo*, 424 U.S. 1, 40-41 (1976)). Indeed, the Court treats civil speech restrictions like criminal laws by applying "a more stringent vagueness test" to them. *Village of Hoffman*

11

*Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see also Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 287 (1961) (quoting *Smith v. California*, 361 U.S. 147, 151 (1959)) ("[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser."). And it is logical to conclude that civil speech restrictions should be held to the same prohibition against retroactive enforcement as criminal statutes because fair notice may be required to prevent a chilling effect on free speech. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 249 (3rd Cir. 2015).

Interestingly, the Government comes close to the correct conclusion before veering astray with its claims that government debt-collection calls that occurred between 2015 and *AAPC*'s severance remain immune to TCPA claims. *See* Gov't Opp. at 19 (claiming that the Supreme Court plurality recognized that debt collectors should not be held liable for calls made to collect government debt prior to *AAPC*, while at the same time upholding liability for other robocallers during that time period.) Notably, the Government does not cite *AAPC* to support this position. This must be because *AAPC*'s decision protecting the First Amendment rights of disfavored speakers expressly rejects it. "When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *AAPC*, 140 S. Ct. at 2354. The unconstitutional unequal treatment—favoring the speech of government debt collectors over all other callers—*is the very wrong AAPC corrected*. Yet the Government now advocates that

12

courts should ignore this solution by upholding that Defendants, disfavored speakers, may still be punished under the unconstitutional version of the law *it enacted* while government debt collectors retain their unconstitutional privilege. Its stance would effectively erase *AAPC*'s ruling. The only justiciable reading of *AAPC* is that *no party* can be punished under section 227(b)(1)(A)(iii) for any conduct that occurred while that section was unconstitutional.

The government relies on *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012), to claim that government debt collectors could remain immune to liability while all other unprivileged speakers remain subject to liability while the unconstitutional exemption was in place, because unprivileged callers allegedly had "ample notice" of the unconstitutional statutory scheme. Gov't Opp. at 19 (citing *Fox Television*, 567 U.S. at 253). But no amount of notice can cure an equal-treatment infirmity. And again, unequal treatment is expressly what the Government's preferred outcome advocates, which is exactly the opposite of *AAPC*'s holding. *AAPC,* 140 S. Ct. at 2354 ("Congress violated that First Amendment equal-treatment principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls.") (citation omitted). This is also where the Government's argument that the restriction was content-neutral fails. *See* Gov't Opp. at 19. It is well established that "[L]aws favoring some speakers over others [like section 227(b)(1)(A)(iii) with the inclusion of the government-debt exemption] demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994).

Neither government-debt-collection callers *nor* other robocallers can be found liable under a statute that unconstitutionally infringed on First Amendment rights without proper notice as required for due process. In *Schacht v. United States*, 398 U.S. 58 (1970), the Supreme Court examined two federal statutes: 18 U.S.C. § 702 generally criminalized wearing of a military uniform absent prior authorization, while 10 U.S.C. § 772 authorized the wearing of uniforms in certain circumstances. One such circumstance, explained in § 772(f), allowed a uniform to be worn by an actor in a theatrical performance, so long as the actor did not "say things during his performance critical of the conduct or policies of the Armed Forces." 398 U.S. at 62-63. The petitioner, who had worn a uniform in a "street skit . . . to expose the evil of the American presence in Vietnam" was tried and convicted under § 702. The Court struck that latter clause from the statute on First Amendment grounds and, critically, reversed the petitioner's conviction. *Id.* at 63 ("his conviction can be sustained only if he can be punished for speaking out against the role of our Army and our country in Vietnam. Clearly punishment for this reason would be an unconstitutional abridgment of freedom of speech."). The Government's reliance on notice as a deciding factor in this case, *see* Gov't Opp. at 19, is inconsistent with *Schacht*. The petitioner in *Schacht* clearly had fair notice that his conduct was forbidden by statute, but that did not render enforcement against him, as a disfavored speaker, permissible. Due process demands that there can be no retroactive liability under an unconstitutional statutory scheme, as the Government proposes.[8] To follow the Government's proposed course

---

[8] *See also Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("government may not grant the use of a forum to people whose views it finds acceptable, but deny use

14

would lead to the unconstitutional result that was avoided in *Schacht*. Accordingly, the Court should dismiss Counts II and III of the Second Amended Complaint.

### III.  CONCLUSION

The Government's Opposition fails to resurrect claims under a law that the Supreme Court has held was unconstitutional when the speech at issue in this case occurred. The Court should therefore grant Defendants' Motion to Dismiss Counts II and III of the Second Amended Complaint.

---

to those wishing to express less favored . . . views."); *Carey v. Brown*, 447 U.S. 455 (1980) (ruling that a measure exempting peaceful labor disputes from an anti-picketing statute unconstitutionally discriminated between lawful and unlawful conduct based on the content of the demonstrator's communication).

Dated April 26, 2021

Respectfully submitted,

ROTH JACKSON GIBBONS CONDLIN, PLC

By: /s/ *Mitchell N. Roth*

*ATTORNEY-IN-CHARGE:*

Mitchell N. Roth, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 35863)
ROTH JACKSON GIBBONS CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3536
F: 703-485-3525
mroth@rothjackson.com

*OF COUNSEL:*

Gregory M. Caffas, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 92142)
ROTH JACKSON GIBBONS CONDLIN, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia
T: 703-485-3533
F: 703-485-3525
gcaffas@rothjackson.com

Joseph P. Bowser, *Pro Hac Vice*
(VA State Bar/Federal Bar No. 88399)
ROTH JACKSON GIBBONS CONDLIN, PLC
1519 Summit Avenue, Suite 102
Richmond, VA 23230
T: 804-441-8701
F: 804-441-8438
jbowser@rothjackson.com

Jason Wagner
State Bar No. 00795704
Federal Bar No. 20325
WAGNER LAW, PLLC
Two North Main Street
Kingwood, Texas 77339
Phone: (713) 554-8450
Fax: (713) 554-8451
jwagner@jwagnerlaw.com

*COUNSEL FOR DEFENDANTS
RISING CAPITAL GROUP LLC,
JSQUARED TELECOM LLC,
JOHN C. SPILLER, AND JAKOB A.
MEARS*

Anthony G. Franqui
The Franqui Firm
1451 W. Cypress Creek Rd., Ste. 300
Ft. Lauderdale, FL 33309
Phone: 305-494-8120
Fax: 888-531-7773
tony@thefranquifirm.com

*COUNSEL FOR DEFENDANTS
HEALTH ADVISORS OF AMERICA,
INC. AND MICHAEL T. SMITH*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 26, 2021, I electronically filed the foregoing **DEFENDANTS' REPLY TO THE UNITED STATES OF AMERICA'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ *Jason Wagner*
Jason Wagner