# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| STATE OF TEXAS et al., | |
| Plaintiffs, | |
| v. | CASE NO. 4:20-cv-02021 |
| RISING EAGLE CAPITAL GROUP LLC et al., | |
| Defendants. | |

**PLAINTIFF STATES' RESPONSE TO DEFENDANT SCOTT SHAPIRO'S
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AND
PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT
AGAINST SHAPIRO**

# TABLE OF CONTENTS

**Page No.**

I.      STATEMENT OF THE ISSUES ............................................................. 1

II.     INTRODUCTION.................................................................................. 1

III.    UNDISPUTED FACTS  ......................................................................... 2

A.      Shapiro was retained by Health Advisors to direct its telemarketing program. .... 2

B.      Health Advisors' telemarketing campaign included robocalls made without consent
        to subscribers on the National Do Not Call Registry and State Do Not Call lists
        ........................................................................................................ 8

IV.     STANDARD OF REVIEW .................................................................... 11

V.      ARGUMENT ....................................................................................... 11

A.      Spiller and Rising Eagle, acting on behalf of Health Advisors and
Shapiro, violated the TCPA, its related rules, and various state
telemarketing laws. ............................................................................. 12

B.      Shapiro is liable for the violations of Health Advisors, Rising Eagles, and Spiller
        ........................................................................................................ 12

B.      Summary Judgment should be denied to Shapiro and instead granted in favor of the
        States.  .......................................................................................... 15

VI.     CONCLUSION .................................................................................... 24

Plaintiffs, the States[1] of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas ("Plaintiffs" or "the States") respectfully submit this Response to Defendant Scott Shapiro's Motion for Summary Judgment on Plaintiffs' Claims and in support of Plaintiff States' Cross-Motion for Summary Judgment against Shapiro.

## I.    STATEMENT OF THE ISSUES

1. Whether the Court should grant summary judgment in favor of Defendant Scott Shapiro ("Shapiro") on all of the States' claims against him based on Shapiro's allegation that the States do not have sufficient evidence of Shapiro's violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws.

2. Whether the Court should instead grant summary judgment in favor of the States against Shapiro for his violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws.

## II.    INTRODUCTION

On June 9, 2020, the States (excluding North Dakota) filed their Original Complaint against Defendants John Spiller ("Spiller"), Jakob Mears ("Mears"), and Rising Eagle Capital Group, LLC ("Rising Eagle"), alleging violations of the TCPA, its related rules, and various state telemarketing laws. ECF. No. 1.

On August 28, 2020, the States filed their First Amended Complaint against Defendants, adding the State of North Dakota as a plaintiff. ECF No. 42.

---

[1] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. The matter was resolved by a consent judgment. Plaintiff State of Missouri, therefore, is not seeking any relief from Shapiro.

On October 30, 2020, the States filed their Second Amended Complaint, adding Defendants Rising Eagle Capital Group – Cayman ("Rising Cayman"), Health Advisors of America, Inc. ("Health Advisors"), Michael Theron Smith, Jr. ("Smith"), and Scott Shapiro ("Shapiro"). ECF No. 56. In the Second Amended Complaint, Plaintiffs added a claim that some of the Defendants violated the Telemarketing Sales Rule ("TSR"). *Id.*

In Counts VI, VII, VIII, IX and X, the States allege Shapiro violated the TCPA and its related rules. Second Am. Compl., ¶¶ 179, 181, 183, 186, 188. In Counts XVII, XVIII, XIX, XX, XXIII, XVI, XVII, XVIII, XXIX, XXXI, XXXII, and XXXIII, the States allege Shapiro violated the States' telemarketing laws, including by making or causing to be made telephone solicitations to subscribers on the National and/or State Do Not Call Registries, and by using artificial or prerecorded voices to deliver messages without prior consent. *Id.*, at ¶¶ 217, 219-23, 225, 228, 230, 234-37, 245-49, 253-55, 257-58, 260-65, 266-69, 275-81, 282-89. Shapiro contends the States lack evidence of his participation in or direction of the conduct. Def.'s Mot. for Summ. J. at 5-14 (May 12, 2022) [ECF No. 167] ("Mem.")

### III.   UNDISPUTED FACTS[2]

**A.    Shapiro was retained by Health Advisors to direct its telemarketing campaign.**

On or about April 10, 2017, Smith founded Health Advisors, which was engaged in the sale of health insurance. Ex. 1 (Health Advisors Articles of Incorporation) [SOS000002].

---

[2] Shapiro's self-serving and undated declaration denies making calls and argues Shapiro instructed Spiller to "scrub" the lists, but does not contradict or deny specific facts as set forth by Plaintiffs.

On April 12, 2017, Health Advisors entered into an agreement with Shapiro. ECF No. 167-2. According to the terms of the contract, Shapiro was contracted to "procure Insurance Contracts" and "provide strategic services" to Health Advisors. *Id*. at 4.

In response to Plaintiffs' Requests for Production, Mears and Spiller provided the Plaintiffs with two cellular phones and email records for several Gmail accounts. The cellular telephones were given to the Office of the Texas Attorney General. From there, the two cellular phones' text messages were extracted.  Ex. 2 (Decl. of Sgt Contreras).

In his deposition, Smith testified that his cell phone number was: 954-347-7383. Ex. 3 (Michael Smith, Jr. Depo.) at 12:2-12:6. Smith has had the phone for ten plus years, and that he used it for work. *Id at* 12:12-12:13.

In his deposition, Shapiro testified that his cellular phone number is 954-790-2368. Ex. 4 (Scott Shapiro Depo.) at 21:6-21:9. Shapiro has used the phone for business purposes, and that he has not used another phone number in the last five years for business purposes. *Id. at 21:10-21:17*. Shapiro also uses the email address Shapscott@hotmail.com. *Id. at 20:20-20:21*. He has not used any other email addresses in the last five years for business purposes. *Id. at 20:22-21:5*.

On February 12, 2018, Defendants Rising Eagle, Spiller, and Mears began robocalling on behalf of Health Advisors and Smith. Ex. 5 (Spiller/Smith Text Messages) [SPILLER_CELL_012401 to 12402].

In a text message exchange with Smith, Spiller messaged he was "waiting on a new recorded message." *Id.* Later, Spiller messaged he was "working on the broken piece, but

it will start powering through 2M leads to make up for yesterday." *Id*. Spiller then messaged Smith: "We're live. One call already went out." *Id*.

On February 22, 2018, Spiller texted Smith: "Sales are what I care about. I know how many actual calls got through from press one and I will hit that hard only tomorrow and onward. No more flooding your center with bullshit calls. Only press 1s."   *Id. at* SPILLER_CELL_012418. Smith responded: "Ok." *Id*. Smith later texted: "Let's come up with another word other than press 1 lol. That makes me nervous." *Id*.

On April 5, 2018, Spiller text messaged Shapiro: "Find a way to get me a little more money so I can make a little profit. Right now I'm living from 7500 to 7500 because the cost of mins and leads are killing my profits." Shapiro responded: "Ok I'll get with mike." Ex. 6 (Spiller/Shapiro Text Messages) [SPILLER_CELL_007518].

On April 5, 2018, Smith texted Spiller: "We need to ramp it up." Spiller responded: "I'm trying to ramp it up. . . yeah after you didn't respond I called Scott to check in and get my numbers. We should have 3 to 4 more sales shortly some of your guys on long sale calls right now." Smith responded: "He told me." Ex. 5 at SPILLER_CELL_012499 – 012500.

On April 9, 2018, Shapiro texted Spiller that he "Needs calls," then to "Slow it down a bit," "Stop the calls," and then to "Start the calls." Ex. 6 at SPILLER_CELL_007526.

On May 24, 2018, Smith texted Spiller: "Ok slow it down a lil pls." Ex. 5 at SPILLER_CELL_012533. Spiller responded: "Scott says speed it up and you say slow down. What's up. One voice please." *Id*. Smith responded: "Ok I'll shut up then lol." *Id*.

On May 28, 2018, Smith texted Spiller: "Getting a lot of NC state calls." Spiller responded: "We're only running leads Scott sent me." Smith responded: "Ok thx." *Id. at* SPILLER_CELL_012535

On July 7, 2018, Shapiro sent leads to RPGScottMike@gmail.com.   Ex. 7 [RISING_EMAILS001132]   The email contained an attachment titled "scrub_list_07.07.18.xlsx." *Id.* Shapiro texted Spiller about the e-mail he sent: "Just emailed you new leads to rpgscottmike@gmail.com." Ex. 6 at SPILLER_CELL_007813.

In his deposition, Mears stated that "rpgscottandmike@gmail.com was the e-mail used to receive files from Health Advisors of America." Ex. 8 (Jakob Mears Depo.) at 185:9-186:3.

On July 19, 2018, Shapiro texted Spiller: "Just emailed you another million [l]eads." Ex. 6 at SPILLER_CELL_007840. Later, Spiller responded: "Those leads suck man." *Id.* Shapiro responded: "Crap." *Id.*

On July 19, 2018, Shapiro sent RPGScottMike@gmail.com an email that contained a CSV titled "scrub_1st_mil_07.19.2018." Ex. 9 [RISING_EMAILS001753] The file included phone numbers with Arkansas, Indiana, Ohio, Michigan, North Carolina, North Dakota, and Texas area codes. *Id.*, Ex. 10 (Decl. of Joseph Yeoman).

The people with phone numbers on these lead lists sent to Rising Eagle did not opt-in for Shapiro or CRS Marketing LLC to call them. Ex. 4 at 155:2-156:14. Further, Shapiro did not know if they opted-in for Health Advisors or Rising Eagle to call them. *Id.* Shapiro had these leads in his email for years. *Id.*

When Rising Eagle made a call, the recipient received a prerecorded message and had the option of being placed on a do-not-call list or be forwarded to a call center.  Ex. 11 (John C. Spiller, II, Depo.) at 59:5-22. Health Advisors gave Rising Eagle access to Health Advisors' Vicidial system, *Id*. at 163:20-164:9. With Vicidial, if a call recipient pressed 1 to talk to an agent, he or she would be routed to Health Advisors' Vicidial system. *Id*. at 165:1-18.

Health Advisors' Vicidial system recorded these inbound calls, and Vicidial provided Plaintiffs with a copy of Health Advisors' Vicidial database and recordings. Ex. 10. When comparing the leads Shapiro sent Rising Eagle to the inbound call recordings, there are inbound phone numbers that match the lead list phone numbers, specifically for phone numbers with the States' area codes in below were recorded by Vicidial as inbound calls. *Id*.

On July 31, 2018, Spiller messaged Shapiro to request a wire payment, Shapiro responded it had been "Sent already." Ex. 6 at SPILLER_CELL_007856. Shapiro then told Spiller that he had "Sent [him] more leads." *Id*. Later on July 31, 2018, Shapiro texted Spiller: "13946 calls[,] 34 sales[,] 426 transfers." *Id*. Spiller responded: "We need to be at the closer 42 sales Scott. Every 10.2 transfers gives us a sale like we did every day last week." Shapiro responded: "We also 5 long calls." Spiller responded: "Still high. Xfers to sales." Shapiro responded: "Just talked to all managers." *Id*.

Sean Duffie ("Duffie") was an agent associated with Health Advisors, and Health Advisors sold Health Insurance Innovations ("HII") through Duffie. Ex. 4 at 51:6-52:6.  At HII, Shapiro would communicate with Amy Brady. Ex. 4 at 95:23-97:11

On June 12, 2018, Amy Brady from HII sent Shapiro an email at 1:33 PM Eastern with the subject line: "FW: More Duffie/Shapiro." Ex. 12 [HII_TXAG015332]. In the body of the email, another HII employee wrote: "Gamlen just got robodialed on his cellphone." *Id*. Amy Brady wrote to Shapiro: "Hey Scott . . . see below. You called one of our employees today." *Id*.

On June 12, 2018 at 1:52 PM Eastern (12:52 PM Central), Shapiro sent Spiller a screen shot of the email above.  Ex. 6 [SPILLER_CELL_011255]

On September 17, 2018, HII e-mailed Shapiro and stated, "Your [Shapiro's] list of TCPA violation [sic] is long and you have the most violations of any agency at our company ... as you know this activity has garnered a lot of attention from our compliance area, carriers and exec team," and stated, "BUT we have to get this under control and fast ...". Ex. 13.

In 2018, Spiller was incarcerated at the Travis County Jail, and Shapiro called him. Ex. 11 at 67:24-68:12; 87:2-94-8. During the recorded conversation, Shapiro and Spiller discussed the nature of the robocalling operation and the numbers of calls being made. Shapiro complained that his operators were not on calls, and that "1100 [calls] are not enough for 30 people." *See* Ex. 11 at 87:2-94-8 Shapiro and Spiller also discussed Shapiro's desire for "AI" calls, disclaiming knowledge of robocalling. *See Id*.

At his deposition, Spiller testified that he and his company, Rising Eagle, made robocalls on behalf of Health Advisors. Ex. 11 at 167:1 to 171.24.. Spiller testified: "Scott and Mike had told me previously not to use robocalls anymore, in phone conversations; and so we decided to use 'AI calls' as an acronym for robocalls." *Id. a*t 103:18-104:17.

On December 28, 2018, Smith texted Mears: "All sales are count because you guys are the only source we use for leads." Ex. 14 [MEARS_CELL_000766].

On March 30, 2019, Scott texted Mears: "We want to take Ai calls starting at 11am EST." Mears responded: "Sounds good." Ex. 15 [MEARS_CELL_000700].

On September 25, 2019, Smith texted Spiller: "Pls call me." Spiller responded: "I'm working on your dialer." Smith responded: "We made a deal. Pay more per deal and we would never have more then 35 waiting bro." Ex. 5 [SPILLER_CELL_012644].

Shapiro is the owner of CRS Marketing. Ex. 4 at 67:12-16. Smith is the owner of McShap Marketing Inc. ("McShap"). Ex. 3 at 21:13-20.

Smith, Health Advisors, and/or McShap  sent CRS Marketing money via wire transfer. Ex. 16 [TDBank001077-1173] to end. From April 17, 2017 until 10/6/2020, Smith, Health Advisors, or McShap paid CRS Marketing roughly four million dollars. *Id.*

As of May 26, 2022, Rising Eagle, Rising Eagle - Cayman, Jsquared Telecom LLC, Mears, Spiller, Health Advisors, Smith, Shapiro, O Health, Hibbert, and/or Martin were not registered to access Indiana's Do Not Call list. Ex. 17 (Decl. of Victoria Hardcastle).

As of May 26, 2022, Rising Eagle, Rising Eagle - Cayman, Jsquared Telecom LLC, Mears, Spiller, Health Advisors, Smith, Shapiro, O Health, Hibbert, and/or Martin were not registered to as a telephone solicitor with the Office of the Indiana Attorney General. Ex. 18 (Decl. Of Meagan R. Collier).

B. **Health Advisors' telemarketing campaign included robocalls made without consent to subscribers on the National Do Not Call Registry and State Do Not Call lists.**

Between January 2019 and March 2021, 2.2 billion unique calls were made to the States. Ex. 19 (Decl. of Michael Shores), Ex. 20 (Expert Report of Michael Shores) at 6.

Between January 2019 and June 9, 2020, 1.7 billion unique calls were made to the States. Ex. 20 at 7.

Of those 1.7 billion unique calls, over 308 million calls came from the lead lists Shapiro provided Spiller that the States had access to. *Id.*

Calls to subscribers in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas included subscribers registered on the National Do Not Call Registry.

From January 2019 to March 2021, there were calls made to people on the Indiana and Texas do not call list. *Id.* at 17. For Indiana, it was over 26 million calls to over 1.16 million unique phone numbers. *Id.* For Texas, it was over 274 million calls to over 13.1 million unique phone numbers. *Id.*

In total, 742,324,416 calls[3] were made to a subscriber with a Plaintiff State area code who had been registered on the National Do Not Call Registry list for more than 31 days. *Id.* at 9. Excluding Missouri, and based on the limited calling data that has been made available to the States, the following numbers of calls were made to subscribers with a Plaintiff State area code on the National Do Not Call Registry list:

| State | Calls |
|-------|-------|
| AR | 29,943,608 |
| IN | 52,081,097 |
| MI | 106,413,724 |
| NC | 112,737,683 |
| ND | 3,981,207 |
| OH | 160,691,246 |

---

[3] 750,302,943 in total, minus 7,978,527 made to Missouri.

| | |
|---|---|
| TX | 276,475,851 |
| **Total** | **742,324,416** |

*Id.* at 10.

Of the 742,324,416 calls made to subscribers in the States on the National Do Not Call Registry list, the following numbers of calls were made to subscribers on lead lists provided by Shapiro that the States had access to:

| State | Calls |
|---|---|
| AR | 10,142,516 |
| IN | 23,849,363 |
| MI | 35,697,293 |
| NC | 50,956,287 |
| ND | 1,567,955 |
| OH | 55,091,799 |
| TX | 101,295,494 |
| **Total** | **283,317,117** |

*Id.* at 11.

Health Advisors' calls to subscribers on the National Do Not Call Registry included unsolicited robocalls made through Rising Eagle to the residents of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas.

Subscribers in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas who answered the unsolicited robocalls were greeted with automated, prerecorded voice messages relating to health insurance or other health-related products marketed by Health Advisors. A representative sample of the prerecorded voice messages is included in the attached Ex. 21 (Decl. of John Isaacs).

Shapiro himself elicited testimony during Spiller's deposition that Spiller was acting at the direction and request of Shapiro. Ex. 11 at 255:1-21.

For Spiller's other clients, Spiller testified that in 2019 the estimated volume of calls was less than 500,000. Ex. 11 at 300:8-21.. He estimated that it was five to ten percent of the total volume of calls. *Id.*

## IV.   STANDARD OF REVIEW

The standard for summary judgment is well established: Summary judgment under Federal Rule of Civil Procedure 56(c) "is appropriate when, viewing the evidence in the light most favorable to the nonmovant," the court "determines that 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Johnson v. JPMorgan Chase*, No. CV H-14-1706, 2015 WL 7301082, at *1 (S.D. Tex. Nov. 18, 2015) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of material fact is 'genuine' if the evidence would allow a reasonable jury to find in favor of the nonmovant."   *Id.*

## V.   ARGUMENT

In support of his motion for summary judgment, Shapiro does not "offer evidence that undermines the [States'] claim[s]," *Id.*, and Section I of his brief asserts only a handful of facts for which he provides no support. Instead, Shapiro claims an absence of evidence supporting the States' claims by ignoring the factual evidence (summarized above) that he acknowledges having received by written discovery, document production, and deposition. Br. p. 8. For these reasons, Shapiro has failed to make a showing to this Court that there is an actual dispute as to a material fact in this matter.

**A.    Spiller and Rising Eagle, acting on behalf of Health Advisors and Shapiro, violated the TCPA, its related rules, and various state telemarketing laws.**

The States can easily show that Rising Eagle violated the TCPA in at least one way when Rising Eagle called cellular phones and played a prerecorded message. *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent."). The same analysis would apply to calls made to residential lines and/or calls made to phone numbers on the Federal Do Not Call Registry.

*First*, Rising Eagle made at least 742,324,416 calls to subscribers in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas. Ex. 20 at 9-10. Shapiro provided the leads that made up 283,317,117 of those calls. Ex. 20 at 11.

*Second*, Rising Eagle's calls, on behalf of Health Advisors and at the direction of Shapiro, played a pre-recorded message and/or were call to phone numbers on the Federal Do Not Call Registry.

*Third*, Shapiro testified that he did not have the consent to call the subscribers on the leads he sent to Rising Eagle. Thus, Rising Eagle did not have the requisite consent to make the 283,317,117 calls to phone numbers on Shapiro's lead lists.

**B.    Shapiro is liable for the violations of Health Advisors, Rising Eagle, and Spiller.**

Under the TCPA, a person or entity initiates "a telephone call when it takes the steps necessary to physically place a telephone call." *In the Matter of the Joint Petition Filed by*

*Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6583 (2013). The TCPA "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.*

As Spiller admitted in his deposition, Rising Eagle initiated the phone calls. Ex. 11 at 255:1-21.

A person, however, "may be held vicariously liable for certain third-party telemarketing calls." *Id.* at 6584. Specifically, the person "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers. [. . .] [The person] may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.*

The Supreme Court stated, in *dicta*, "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred to that ruling, . . . and we have no cause to question it." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) (internal citations removed).

"Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report*

13

*and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019).

Shapiro's own evidence shows that he held actual authority, because he contracted to "procure Insurance Contracts with various carriers and thirty party administrators and provide strategic services to [Health Advisors]." Health Advisors "contracted with [Shapiro] to conduct telemarketing activities and, in so doing, provided [Shapiro] with the actual authority to solicit their products." *Cunningham v. Cap. Advance Sols.*, LLC, No. CV 17-13050 (FLW), 2018 WL 6061405, at *7 (D.N.J. Nov. 20, 2018).

In this case, Shapiro, Smith, and Health Advisors worked in active concert with Rising Eagle to send robocalls to subscribers in the Plaintiff States. Pursuant to his contract with Health Advisors, Shapiro exercised actual authority for Rising Eagle's robocalls when he sent leads to Rising Eagle. Shapiro exercised actual authority for Rising Eagle's robocalls when he directed them to "start," "slow down," and "stop the calls." *See* Ex. 6 at SPILLER_CELL_007526. Shapiro ratified Rising Eagle's robocalls when he continued to send leads and give directions after he was notified of Rising Eagle's TCPA violations, including when Spiller told him Rising Eagle was sending robocalls. Shapiro benefitted from Rising Eagle's robocalls when he was paid by Smith and Health Advisors for his work.

Allowing Shapiro to escape liability when he had actual authority over the robocalling scheme, ratified the scheme, and provided a minimum of 14.6 million leads would undermine the purpose of the TCPA. *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *2, n.1 (N.D. Tex. Nov. 2, 2017) (*citing*

*Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) ("To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.").

**C.**   **Summary judgment should be denied to Shapiro and instead granted in favor of the States.**

Shapiro's argument in support of his motion for summary judgment is only that the States "do not have and cannot produce evidence that Rising Eagle completed an illegal telemarketing call on behalf of [Health Advisors] from one of the lists provided by Mr. Shapiro." Br. at 2. As shown above, this is not the case. Shapiro had actual authority to act on behalf of and he was compensated by Health Advisors. Pursuant to that authority, Shapiro provided at least 14.6 million leads to Spiller and Rising Eagle, and Rising Eagle made robocalls on behalf of Health Advisors from the lead lists provided by Shapiro. The States' evidence, including testimony elicited by Shapiro himself, shows that Shapiro directed Spiller and Rising Eagle to make robocalls on Health Advisors' behalf. *See* Ex. 6 at SPILLER_CELL_007526. Therefore, Shapiro's argument is without merit, and the Court should deny Shapiro's motion for summary judgment.

For the very same reasons, the Court should grant summary judgment on the States' claims against Shapiro.

*Arkansas.*   Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq., prohibits a person from engaging in any unconscionable, false, or deceptive acts or practices in business, commerce, or trade.  A "telephonic seller" is defined as a person who on his own or through salespersons causes a telephone solicitation to occur which meets certain specified criteria. Ark. Code Ann. § 4-99-103(9).  Ark. Code Ann. § 4-99-201(a)(1) further requires that any person who, on behalf of any business, calls a residential phone number for the purpose of soliciting or to offer goods or services shall immediately disclose to the person contacted the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purposes of the telephone call, including a brief description of the goods or services to be offered. The statute requires that the person calling shall immediately discontinue the call if the person called indicates that he or she does not want to hear about the goods or services.

A total of 29,943,608 calls were made to Arkansas subscribers who were listed on the Do Not Call registry. Of those calls, 10,142,516 came from leads provided by Shapiro, who had actual authority under his contract with Health Advisors to provide those leads. Neither Shapiro, nor anyone on behalf of Shapiro, registered as a telephonic seller with the Arkansas Secretary of State as is required by Ark. Code Ann. § 4-99-105. Ex. # 22. Shapiro knowingly supplied Rising Eagle with phone numbers to call and provided directions on when and how to make those calls. Rising Eagle initiated telephone calls, at Shapiro's direction, using the telephone numbers supplied by Shapiro. Many of these numbers were listed on the Do Not Call Registry, and the owners of these numbers had no relationship with Shapiro, Health Advisors, or Rising Eagle and had not consented to receive such calls.

Further, neither the telephone solicitors nor the pre-recorded messages provided the initial disclosures required by law for telephonic solicitations. Ex. 21. Arkansas consumers who called the number repeatedly informed the person answering the call that their number was on the Do Not Call Registry and requested that the solicitor stop calling. However, their requests were ignored, and the calls continued. By supplying leads and directing Rising Eagle to make telephone calls for the purpose of selling insurance, was a seller as defined by Ark. Code Ann. § 4-99-103(9) and a "controlling person" within the meaning of Ark. Code Ann. § 4-88-113(d).

*Indiana.* Indiana's Telephone Solicitation of Consumers Act ("TSCA"), Ind. Code 24-4.7-4, prohibits persons from making sales calls to consumers on Indiana's Do Not Call list. Ind. Code § 24-4.7-4-1. Further, it is a violation of the TSCA to sell, transfer, or make available to another person for solicitation purposes if that consumer's phone number is on the Indiana Do Not Call list. Ind. Code § 24-4.7-4-7(b). Further, it is a violation of the TSCA if a person substantially assists or supports another telephone solicitor, supplier, or caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7. Ind. Code § 24-4.7-4-7(e). Rising Eagle called Indiana residents on the Indiana Do Not Call list. Shapiro knowingly supplied Rising Eagle with phone numbers to call and provided directions on when and how to make those calls. Shapiro did not have consent to call these people. Shapiro substantially assisted Rising Eagle and knew or consciously avoided knowing Rising Eagle was violating the TSCA.

Indiana's Auto Dialer Act, Ind. Code 24-5-14, prohibits the using of an automatic dialing-announcing device, as defined by Ind. Code 24-5-14-1, and disseminated a prerecorded voice message, when the call is made without consent or without a live person obtaining consent before playing the message. Further, it is a violation of Indiana law if a person substantially assists or supports another telephone solicitor, supplier, or caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(e). Rising Eagle used an automatic dialing-announcing device, and their calls disseminated a prerecorded voice message. These calls were made at the direction of Shapiro, and he knowingly supplied Rising Eagle leads. Shapiro provided substantial support to Rising Eagle, and knew or should have known Rising Eagle was violating the Auto-Dialer Act.

Indiana's Telephone Solicitation Registration act requires persons making solicitations through him or her to Indiana residents through telephone calls when there is a there is a false representation or implication as to the identity of the person making the solicitation to register with state before making calls. Ind. Code § 24-5-12-11. Shapiro, by supplying leads and directing Rising Eagle to make telephone calls with the purpose of selling insurance, was a seller. The telephone calls misrepresented or omitted who was the caller. Ex. 21. Shapiro was not registered with the state as a telephone solicitor.

***Michigan.*** Michigan's Home Solicitation Sales Act, MCL 445.111, *et seq*., prohibits a telephone solicitor from: (1) making a telephone solicitation using in whole or in part a recorded message, and (2) calling a residential telephone subscriber whose

residential telephone number is on the then-current version of the National Do Not Call Registry.  MCL 445.111a(1); 445.111a(5). Additionally, the Act requires that the name of the caller and the full name of the organization or other person on whose behalf the call was initiated be stated at the beginning of a telephone solicitation. MCL 445.111b(1). "Telephone solicitor" is broadly defined as any person who "makes or *causes to be made* a telephone solicitation from within or outside of this state [Michigan], including but not limited to, calls made by use of automated dialing and announcing devices or by a live person." MCL 445.111(1)(n).  (Emphasis added.)

106,413,724 violative calls were made to Michigan subscribers on the National Do Not Call Registry.  Ex. 20 at 10. 35,697,293 of those calls came from leads provided by Shapiro, who thereby caused them to be made. In addition, however, Shapiro had actual authority under his contract with Health Advisors. *Id.* at 11. Further, the calls made at the direction of Shapiro were robocalls. Ex. 6 at SPILLER_CELL_007526. The calls made pursuant to lead lists provided by Shapiro, and at his authority and direction, were in violation of Michigan's Home Solicitation Sales Act; MCL 445.111a(5) and constitute violations of MCL 445.903(1)(gg); Michigan's Consumer Protection Act (MCPA). The calls were also persistent and knowing, as shown by the massive number of calls and other facts set forth above, and are therefore subject to the maximum monetary penalties allowed by the MCPA; MCL 445.905(1).

*North Carolina*. North Carolina General Statutes § 75-102 prohibits (i) making or having third-parties make telephone calls to the telephone numbers of North Carolina telephone subscribers when those numbers were on the National Do Not Call Registry, and

(ii) failing to enforce compliance with that statute. N.C. Gen. Stat. § 75-102. North Carolina General Statutes § 75-104 prohibits making or having third-parties make telephone calls to the telephone numbers of North Carolina residents by using automatic dialing and recorded message players to make unsolicited calls. N.C. Gen. Stat. § 75-104.

112,737,683 violative calls were made to North Carolina telephone subscribers whose numbers were on the National Do Not Call Registry. Ex. 20 at 10. 50,956,287 of those calls came from leads provided by Shapiro who had Spiller and Rising Eagle make those calls and who failed to enforce compliance with N.C. Gen. Stat. § 75-102. The calls made at Shapiro's direction, who had actual authority, were robocalls that used automatic dialing and recorded message players to make unsolicited calls in violation of N.C. Gen. Stat. § 75-104.

***North Dakota.*** North Dakota's Telephone Solicitations Act prohibits callers from (i) using an automatic dialing-announcing device or delivering a prerecorded or synthesized voice message; (ii) where the telephone numbers were on the North Dakota or National Do Not Call Registry; and (iii) without stating the caller's name, telephone number, city and state of location, and the business on whose behalf the calls were being made. N.D.C.C. §§ 51-28-02, 51-28-06, 51-28-07. "Caller" is broadly defined to include persons and entities, and "telephone solicitation" broadly includes communications over telephone lines for the purpose of selling merchandise. N.D.C.C. §§ 51-28-01(2), (8).

3,981,207 violative calls were made to North Dakota. Ex. 20 at 10. 1,567,955 of those calls came from leads provided by Shapiro, who had actual authority under his contract with Health Advisors. *Id.* at 11. The calls made at the direction of Shapiro were

robocalls. The robocalls did not identify the caller's name, telephone number, location, and business on whose behalf the calls were being made. The calls made pursuant to Shapiro's authority and at his direction, therefore, constitute violations of N.D.C.C. §§ 51-28-02, 51-28-06, and 51-28-07. Under N.D.C.C. § 51-28-19, each call constitutes a separate violation of N.D.C.C. ch. 51-58 and N.D.C.C. ch. 51-15, North Dakota's Unlawful Sales or Advertising Practices Act.

**Ohio.** Shapiro violated Ohio's Consumer Sales Practices Act ("CSPA"), O.R.C. § 1345.02(A) and the Ohio Administrative Code ("O.A.C."), § 109:4-3-11 by engaging in a pattern or practice of initiating telephone solicitations, either directly or as a result of a third party acting on his behalf, to Ohio telephone subscribers: (i) where the telephone numbers were on the National Do Not Call Registry; (ii) by delivering artificial or prerecorded voices messages to cellular or residential subscribers and (iii) engaging in direct solicitations without clearly, affirmatively, and expressly revealing upon initial contact with consumers or prospective consumers that the purpose of the contact is to effectuate sales and stating the general terms that were being offered. Second Am. Compl., ¶¶ 275-81.  Shapiro contends Ohio lacks evidence of his participation in or direction of the conduct. Mem. at 13.  Plaintiffs' Statements of Undisputed Facts show Shapiro's personal participation and role in the management of the telemarketing activities at issue.

Ohio CSPA, O.R.C. § 1345.02 prohibits "suppliers" from engaging in unfair or deceptive consumer sales acts or practices.  A "supplier" as defined in O.R.C. § 1345.01(C), as a … person engaged in the business of effecting "consumer transactions," whether or not the person deals directly with the consumer.  A "consumer transaction"

means a sale, lease, assignment, award by chance or other transfer of an item or goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family or household, or a solicitation to supply any of those things. The CSPA defines "direct solicitations" in O.A.C. § 109:4-3-11 as solicitations to consumers at their residences.

160,691,246 violative calls were made to Ohio telephone subscribers whose numbers were on the National Do Not Call Registry. Ex. 20 at 10. 55,091,799 of those calls came from leads provided by Shapiro who directed Spiller and Rising Eagle to make calls. The calls made at Shapiro's direction, while he possessed actual authority under his contract, were robocalls that failed to clearly, affirmatively, and expressly reveal upon initial contact that the purpose of the call was to sell insurance related services and stating the general terms offered, in violation of O.R.C. § 1345.02(A) and O.A.C. § 109:4-1-11. Ex. 23.

Ohio's Telephone Solicitation Sales Act ("TSSA") prohibits acting as a telephone solicitor without first having obtained a certificate of registration from the Ohio Attorney General in violation of O.R.C. § 4719.02(A), failing to have a surety bond on file with the Ohio Attorney General's Office as required by O.R.C. § 4719.04(A), and failing to disclose the solicitor's true name and the name of the company on whose behalf solicitations were made, within the first sixty seconds of the telephone call in violation of O.R.C. § 4719.06.

 Ohio's TSSA does not require a showing that Shapiro personally made the calls. Pursuant to O.R.C. 4719.01(A)(8), a telephone solicitor includes "a person that engages in telephone solicitation directly or through one or more salespersons … from a location

outside this state to persons in this state…[and] includes, but is not limited to, any such person that is an owner, operator, … partner in, or other individual engaged in the management activities of, a business." Shapiro had actual authority under his contract with Health Advisors to engage in management activities on behalf of Health Advisors and therefore, is subject to the TSSA.   Shapiro, nor any of his co-defendants, have been registered as telephone solicitors with the Ohio Attorney General's in the preceding 6 years. Jauregui at Declaration at 1-2. Under O.R.C. § 4719.14, violations of O.R.C. § 4719.02(A) or O.R.C. § 4719.06 are unfair or deceptive acts or practices that violate the CSPA, O.R.C. § 1345.02.

*Texas.* The Texas Telemarketing Disclosure and Privacy Act makes it unlawful for a telemarketer to make a telemarketing call to a telephone number that has been published on the then-current Texas no-call list for more than sixty days. Tex. Bus. & Com. Code § 304.052. "Telemarketer" is defined as a person who makes or causes to be made a telemarketing call. Tex. Bus. & Com. Code § 304.002(8). A "telemarketing call" is defined as an unsolicited telephone call made to (A) solicit a sale of a consumer good or service; (B) solicit an extension of credit for a consumer good or service; or (C) obtain information that may be used to solicit a sale of a consumer good or service or to extend credit for the sale. Tex. Bus. & Com. Code § 304.002(9).

276,475,851 violative calls were made to consumers on the Texas no-call list.[4] Exh. at 10.  101,295,494 of those telemarketing calls came from leads provided by Shapiro, who

---

[4] Texas's State no-call list violations are based only on telephone numbers that were on the Federal Do-Not-Call Registry.

had actual authority under his contract with Health Advisors and thereby caused them to be made. *Id.* at 11. The calls made pursuant to lead lists provided by Shapiro and at his authority and direction, were in violation of the Texas Telemarketing Disclosure and Privacy Act. Tex. Bus. & Com. Code § 304.052.

Therefore, because Shapiro cannot meet the States' evidence, and since he makes no effort to "offer evidence that undermines [the States'] claim[s]," summary judgment should be rendered in favor of the States and against Shapiro.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Shapiro's Motion for Summary Judgment and grant the States' Cross-Motion for Summary Judgment.

Dated May 26, 2022                         Respectfully submitted,


                                           /s/ Joseph D. Yeoman
                                           Joseph D. Yeoman



**FOR THE STATE OF ARKANSAS:**            SHANNON HALIJAN
                                          Ark. Bar No. 2005136
LESLIE RUTLEDGE                           Shannon.Halijan@ArkansasAG.gov
Attorney General for the State of         PEGGY JOHNSON
Arkansas                                  Ark. Bar No. 92-223
                                          Peggy.Johnson@ArkansasAG.gov
/s/  David McCoy                          Assistant Attorneys General
DAVID MCCOY                               Office of the Arkansas Attorney General
Ark. Bar No. 2006100                      323 Center Street, Suite 200
David.McCoy@ArkansasAG.gov                Little Rock, AR 72201

(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

**FOR THE STATE OF INDIANA:**

TODD ROKITA
Attorney General for the State of Indiana

/s/  Douglas S. Swetnam
DOUGLAS S. SWETNAM
Indiana Bar No. 15860-49
douglas.swetnam@atg.in.gov
JOSEPH D. YEOMAN
Indiana Bar No. 35668-29
Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 232-6294 (Swetnam)
(317) 234-1912 (Yeoman)
(317) 232-7979 (Fax)

*Counsel for Plaintiff*
*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of
Michigan

/s/ Kathy Fitzgerald
KATHY FITZGERALD
Michigan State Bar No. P31454
fitzgeraldk@michigan.gov
SCOTT MERTENS
Michigan State Bar No. P31454
Mertenss@michigan.gov
Assistant Attorneys General
Corporate Oversight Division
Michigan Department of Attorney
General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OF MICHIGAN*

**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of
Missouri

/s/ Michelle L. Hinkl
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*

**FOR THE STATE OF NORTH DAKOTA:**

DREW H. WRIGLEY
Attorney General for the State of North Dakota

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina

/s/ Brian M. Card
BRIAN M. CARD
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorney General
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
Assistant Attorney General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736

/s/  Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

27

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/  Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.
gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas

/s/ Patrick Abernathy
PATRICK ABERNATHY
Texas State Bar No. 24109556
Patrcik.abernathy@oag.texas.gov
C. BRAD SCHUELKE
Texas State Bar No. 24008000
Brad.schuelke@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2022, I electronically filed the foregoing **PLAINTIFF STATES' RESPONSE TO DEFENDANT SCOTT SHAPIRO'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AND PLAINTIFF STATES' CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST SHAPIRO** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record. I hereby certify that, on May 26, 2022, I served the below parties via US Mail and E-Mail:


John C Spiller, II
on his own behalf and on behalf of all
Rising Eagle
9022 N. Ferndale Place Drive
Houston, TX 77064
rpgleads@gmail.com


Jakob A. Mears
9009 N FM 620 Rd., Apt. 2208
Austin, Texas 78726
jakobmears2016@gmail.com


/s/ Joseph D. Yeoman
Joseph D. Yeoman