# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

STATE OF TEXAS et al.,

     Plaintiffs,

     v.

RISING EAGLE CAPITAL GROUP LLC et al.,

     Defendants.

CASE NO. 4:20-cv-02021

# PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MICHAEL THERON SMITH, JR. AND HEALTH ADVISORS OF AMERICA, INC.

# TABLE OF CONTENTS

**Page No.**

I.     STATEMENT OF THE ISSUES ...........................................................................1

II.    INTRODUCTION ...............................................................................................1

III.   UNDISPUTED FACTS  ......................................................................................2

A.    Smith and Health Advisors knowingly used the Rising Eagle Defendants to send robocalls. ......................................................................................................2

B.    Health Advisors' telemarketing campaign included robocalls made without consent to subscribers on the National Do Not Call Registry and State Do Not Call lists....................................................................................................................9

IV.   STANDARD OF REVIEW................................................................................11

V.    ARGUMENT .....................................................................................................12

A.    Spiller and Rising Eagle, acting on behalf of Smith and Health Advisors, violated the TCPA, its related rules, and various state telemarketing laws. ...........12

B.    Smith and Health Advisors are liable for the actions of Shapiro and the Rising Eagle Defendants. ...............................................................................................13

       i.     Smith and Health Advisors' vicarious liability ........................................13

       ii.    Smith's personal liability for the violations of Health Advisors.  .............15

C.    Summary judgment should be granted in favor of Plaintiff States for Smith and Health Advisors' violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and the various States' telemarketing laws ............17

VI.   CONCLUSION ..................................................................................................25

Plaintiffs, the States[1] of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas ("Plaintiffs" or "the States") respectfully submit this Motion for Summary Judgment against Defendants Michael Theron Smith, Jr. and Health Advisors of America, Inc.

## I.    STATEMENT OF THE ISSUES

Whether the Court should grant summary judgment in favor of the States against Michael Theron Smith, Jr. and Health Advisors of America, Inc. for their violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws.

## II.    INTRODUCTION

On June 9, 2020, the States filed their Original Complaint against Defendants John Spiller ("Spiller"), Jakob Mears ("Mears"), JSquared Telecom LLC ("JSquared"), and Rising Eagle Capital Group, LLC ("Rising Eagle"), alleging violations of the TCPA, its related rules, and various state telemarketing laws. ECF No. 1.

On October 30, 2020, the States filed their Second Amended Complaint, adding Defendants Rising Eagle Capital Group – Cayman ("Rising Cayman") (collectively, the "Rising Eagle Defendants"), Health Advisors of America, Inc. ("Health Advisors"), Michael Theron Smith, Jr. ("Smith"), and Scott Shapiro ("Shapiro"). ECF No. 56.

In Counts VI through X, the States allege Smith and Health Advisors violated the TCPA and its related rules. Second Am. Compl., ¶¶ 168-89. In Counts XVII through

---

[1] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. Plaintiff State of Missouri, therefore, is not seeking any relief from Health Advisors or Smith.

XXXIII, the States allege Smith and Health Advisors violated the States' telemarketing laws, including by making or causing to be made telephone solicitations to subscribers on the National and/or State Do Not Call Registries, and by using artificial or prerecorded voices to deliver messages without prior consent. *Id.*, at ¶¶ 214-89.

### III.   UNDISPUTED FACTS

#### A.   Smith and Health Advisors knowingly used the Rising Eagle Defendants to send robocalls.

Smith was the sole owner of Health Advisors, which sold health insurance. Ex. 1 (Smith Deposition) at 50:12-22. Health Advisors was a "hub for agents to receive calls.*"* *Id.* at 53:15-21. Smith's role was to ensure that the agents were getting enough calls. *Id.* at 59:12-23. Health Advisors would receive 40 percent of the first month's premium and all of the residuals. *Id.* at 110:2-17; 111:1 to 10.

On April 12, 2017, Health Advisors entered into an agreement with Shapiro. ECF No. 167-2. According to the contract, Shapiro was contracted to "procure Insurance Contracts" and "provide strategic services." *Id.* at 4. This included "some marketing," including sending "aged data" to Spiller on Health Advisors' behalf. Ex. 1 at 115:17-19; 116:20-117:3. The contract was signed by Smith. *Id.* at 122:4-7. For compensation, Smith admitted he paid Shapiro through multiple entities for "convenience," even though it was all for Health Advisors' work. *Id.* at 118:14-119: 1-2.

In the course of discovery, Mears and Spiller provided Plaintiffs with two cellular phones and email records for several Gmail accounts. Ex. 2. (Decl. of Sgt Contreras). Plaintiffs extracted text messages from these phones." *Id.*

Smith testified that his cell phone number was 954-347-7383, that he had it for over ten years, and used it for business. Ex 1 at 12:2-15. Further, he confirmed that he texted with Spiller and Mears. *Id.* at 125:3-13; 129:19-24.

Shapiro testified that his cellular phone number was 954-790-2368 and that he used it for business. Ex. 3 (Scott Shapiro Depo.) at 21:6-21:17. Shapiro also used the email address Shapscott@hotmail.com for business purposes. *Id.* at 20:20-21:5.

On February 12, 2018, Rising Eagle Defendants began robocalling for Health Advisors and Smith. Ex. 4 (Smith-Spiller Text Messages) at SPILLER_CELL_012401-12402. Spiller text messaged Smith that he was "waiting on a new recorded message." *Id.* Later, Spiller messaged he "will start powering through 2M leads." *Id.*

On February 22, 2018, Spiller texted Smith: "I know how many actual calls got through from press one and I will hit that hard only tomorrow and onward. No more flooding your center with bullshit calls. Only press 1s." *Id. at* SPILLER_CELL_012418. Smith responded: "Ok." *Id.* Smith later texted: "Let's come up with another word other than press 1 lol. That makes me nervous." *Id.*

On March 1, 2018, Spiller texted Smith "We're dialing now at 1200cpm. *Id.* at SPILLER_CELL_012432. Smith responded, "Ok." *Id.*

On March 26, 2018, Smith messaged Spiller "Just emailed you the 1 million." *Id.* at SPILLER CELL 12481. Then he texted, "Also we have 27 agents waiting for calls" and then, "You need to change your data." *Id.*

On April 5, 2018, Spiller text messaged Shapiro requesting more money to cover expenses, and Shapiro responded: "Ok I'll get with mike." Ex. 5 (Shapiro - Spiller Text Messages) at SPILLER_CELL_007518.

On April 5, 2018, Smith texted Spiller: "We need to ramp it up." Ex. 4 at SPILLER_CELL_012499 – 012500. Spiller responded: "I'm trying to ramp it up. . . yeah after you didn't respond I called Scott to check in and get my numbers. . ." *Id.* Smith responded: "He told me." *Id.*

On April 9, 2018, Shapiro texted Spiller a series of instructions on how to run the dialer. Ex. 5 at SPILLER_CELL_007526.

On May 24, 2018, Smith texted Spiller: "Ok slow it down a lil pls." Ex. 4 at SPILLER_CELL_012533. Spiller responded: "Scott says speed it up and you say slow down. What's up. One voice please." *Id.* Smith responded: "Ok I'll shut up then lol." *Id.*

On May 28, 2018, Smith texted Spiller: "Getting a lot of NC state calls." *Id. at* SPILLER_CELL_012535. Spiller responded: "We're only running leads Scott sent me." Smith responded: "Ok thx." *Id.*

Mears testified that "rpgscottandmike@gmail.com was the e-mail used to receive files from Health Advisors of America." Ex. 6 (Jakob Mears Depo.) at 185:9-186:3.

On July 19, 2018, Shapiro texted Spiller: "Just emailed you another million [l]eads." Ex. 5 at SPILLER_CELL_007840. Later, Spiller responded: "Those leads suck man." *Id.* Shapiro responded: "Crap." *Id.*

On July 19, 2018, Shapiro sent RPGScottMike@gmail.com an email that contained a CSV titled "scrub_1st_mil_07.19.2018." Ex. 7 (Rising Eagle Emails) at

RISING_EMAILS001753. The file included phone numbers with Arkansas, Indiana, Ohio, Michigan, North Carolina, North Dakota, and Texas area codes. *Id.*, Ex. 8 (Decl. of Joseph Yeoman).

Smith and Health Advisors had no role in obtaining consent from the call recipients. Ex. 1 at 136:22-25; 140: 3-9. They did not have a contract requiring Spiller or Rising Eagle to obtain consent. *Id.* at 141:2-9. Shapiro and Spiller did not obtain consent. Ex. 3 at 155:2-156:14. Ex. 9 (John C. Spiller, II depo) at 186:18-25.

Marsha Griffin was an administrative assistant for Health Advisors. Ex. 1 at 47:16-19. Smith authorized Griffin to email "aged data" to Spiller. *Id.* at 150:24-151:10. Smith sent "aged date" to Spiller. *Id.*; 116:20-116:3; 134:16-135:8. According to Smith, "aged data" was a subset of "leads", and it included phone numbers. *Id.* at 32:22-24; 135:9-16.

When it came to scrubbing "aged data" against the Federal Do Not Call Registry, Smith had a SANs number[2], but never used it, even though he claimed to download the list of telephone numbers not to call. *Id.* at 137:6-16; 154: 6-8.

On December 18, 2018, Mears texted Smith that he was sending 200,000 calls per hour, and that the leads were "beat." Ex. 10 (Smith – Mears Text Messages) at MEARS_CELL_000757. Smith texted: "they would be getting more calls with less sells." *Id.* Mears responded: "Not if the leads they have been running on are 3+ weeks old and ran

---

[2] A SANS number obtained from the Federal Trade Commission is required for telemarketers to access/download phone numbers on the Federal Do Not Call Registry, for purposes of removing them from their call lists.

everyday. People hear the recording and don't press 1 so they aren't getting about of transfers." *Id.*

The call recipients on the lead lists sent to the Rising Eagle Defendants did not provide consent for Smith or Health Advisors to call them. Ex. 1 at 136:22-25; 140:3-9.

Health Advisors gave the Rising Eagle Defendants access to Health Advisors' Vicidial system. Ex. 9 at 163:20-164:9. If a call recipient pressed 1 to talk to an agent, he or she would be routed to Health Advisors' Vicidial system. *Id.* at 165:1-18.

Health Advisors' Vicidial system recorded these inbound calls, and Vicidial provided Plaintiffs with a copy of Health Advisors' Vicidial database and recordings. Ex. 8. When comparing leads sent to the Rising Eagle Defendants to the inbound call records, there are matches between the lead lists and inbound call records, including Plaintiff States' area codes. *Id.*

Health Advisors sold health insurance for Health Insurance Innovations ("HII"). Ex. 3 at 51:6-52:6. At HII, Shapiro and Griffin would communicate with Amy Brady ("Brady"). *Id.* at 95:23-97:11.

On June 12, 2018, Brady sent Shapiro an email, writing "Hey Scott . . . see below. You called one of our employees today," and below, the email stated: "Gamlen just got robodialed on his cellphone." Ex. 11 (June 12 Brady Email to Shapiro) at HII_TXAG015332. Shapiro then sent Spiller a screen shot of the email. Ex. 5 at SPILLER_CELL_011255.

On September 17, 2018, HII e-mailed Shapiro and stated, "Your list of TCPA violation [sic] is long and you have the most violations of any agency at our company ...

6

as you know this activity has garnered a lot of attention from our compliance area, carriers and exec team." Ex. 12 (Sep 17 Brady Email to Shapiro) at HII_TXAG015002.

In 2018, Spiller was incarcerated at the Travis County Jail, and Shapiro spoke with him. Ex. 9 at 67:24-68:12; 87:2-94:8. During the recorded conversation, Shapiro and Spiller discussed the nature of the robocalling operation and the numbers of calls being made. *Id.* Shapiro complained that his operators were not getting calls, and that "1100 [calls] are not enough for 30 people." *See Id.* at 87:2-94:8 Shapiro and Spiller also discussed Shapiro's desire for "AI" calls, but disclaimed knowledge of robocalling. *See Id.*

At his deposition, Spiller testified that he and his company, Rising Eagle, made robocalls on behalf of Health Advisors. *Id.* at 167:1-171:24. Spiller testified: "Scott and Mike had told me previously not to use robocalls anymore, in phone conversations; and so we decided to use 'AI calls' as an acronym for robocalls." *Id. a*t 103:18-104:17.

On December 28, 2018, Smith texted Mears: "All sales are count because you guys are the only source we use for leads." Ex. 10 at MEARS_CELL_000766.

On February 8, 2019, the Missouri Attorney General filed a lawsuit against Smith and Health Advisors. Ex. 13 (MO AG Lawsuit) at LAWSUIT_002701-2703. On March 6, 2019, Smith texted Mears "no more sales in MO and emailed a list to ramp up." Ex. 10 at MEARS_CELL_00819.

On March 22, 2019, Smith texted Mears to block a phone number with a Columbus, Ohio area, stating "pls block this faggot" and "Can't you scrub ppl from the national dnc"? *Id.* at MEARS_CELL_000835. Mears responded: "I think we have to register a business to get access to that list," and "Like through them and say what we do and everything." *Id.*

Smith responded: *"We're getting hit with lawsuits left and right,"* and "We have to find a way to not call these fucks." *Id.* Smith then wrote "He's on the DNC." *Id.* at MEARS_CELL_000836.

On April 4, 2019, Smith texted Mears: "Any news on why the dialer is messed up"? *Id.* at MEARS_CELL_00852. On April 22, 2019, Smith texted Mears to remove Florida, California, Missouri, and Illinois from the dialer. *Id.* at MEARS_CELL_000859.

On June 14, 2019, Health Advisors was dissolved. Ex. 14 (HAA SOS filing) at SOS000001.

On July 1, 2019, Smith texted Mears: "Also Marsha sent John 6 mill records." Ex. 10 at MEARS_CELL_000881.

On July 10, 2019, Missouri, Smith, and Health Advisors filed a joint memo for settlement. Ex. 13 at LAWSUIT_002704-2718. On that same day, Smith personally paid Rising Eagle. Ex. 15 (Rising Eagle BOA_Redacted) at BOA001693. Smith also texted Mears that he was buying a "shit ton of data." Ex. 10 at MEARS_CELL_00892. On July 12, 2019, Health Advisors paid Rising Eagle. Ex. 15 at BOA001693.

On September 10, 2019, Smith texted Mears to let him know agents were waiting, and Mears responded that the leads were leading to "lots of take me off list" and "I don't have leads with IPs to change it up." Ex. 10 at MEARS_CELL_000920-921. Smith directed him to "Take the data out and put it back in" and "15 million files in 3 days is a problem." *Id.* Smith also texted: "You're asking for the moon regards to IP addresses and url with the data." *Id.* Mears later texted: "Without IPs we risk having any call made search and asked for the info. If we don't produce it we risk being shut down. . ." *Id.*

On September 25, 2019, Smith texted Spiller: "Pls call me." Ex. 4 at SPILLER_CELL_012644. Spiller responded: "I'm working on your dialer." *Id.* Smith responded: "We made a deal. Pay more per deal and we would never have more then 35 waiting bro." *Id.*

On April 22, 2020, Spiller started the "Horizon Group" chat on Skype. Ex. 16 (Spiller Skype) at SKYPE00001. On June 5, 2020, Smith wrote "Reps are happy and there's a good buzz on the floor" *Id.* at SKYPE00008.

As of May 26, 2022, the Rising Eagle defendants, Smith, Shapiro, and Health Advisors were not registered to access Indiana's Do Not Call list. Ex. 17 (Decl. of Victoria Hardcastle).

**B.      Health Advisors' telemarketing campaign included robocalls made without consent to subscribers on the National Do Not Call Registry and State Do Not Call lists.**

Between January 2019 and June 9, 2020, 1.7 billion unique calls were made to the States. Ex. 18 (Decl. of Michael Shores); Ex. 19 (Expert Report of Michael Shores) at 6, 7. From the lead lists provided to the Plaintiffs, Shapiro's leads account for 14,615,386 unique phone numbers. Ex. 19 at 8.

Of those 1.7 billion unique calls, based on data culled from discovery provided to Plaintiff States, over 308 million calls were made to telephone numbers on the lead lists that Shapiro provided to the Rising Eagle Defendants. *Id.*

From January 2019 to March 2021, there were calls made to people on the Indiana, and Texas state do not call lists. *Id.* at 17. For Indiana, it was over 26 million calls to over

1.16 million unique phone numbers. *Id.* For Texas, it was over 274 million calls to over 13.1 million unique phone numbers. *Id.*

In total, 742,324,416 calls[3] were made to a subscriber with a Plaintiff State area code who had been registered on the National Do Not Call Registry list for more than 31 days. *Id.* at 9. Based on the limited calling data that has been made available to the States, the following numbers of calls were made to subscribers with a Plaintiff State area code on the National Do Not Call Registry list:

| State | Calls |
|-------|-------|
| AR | 29,943,608 |
| IN | 52,081,097 |
| MI | 106,413,724 |
| NC | 112,737,683 |
| ND | 3,981,207 |
| OH | 160,691,246 |
| TX | 276,475,851 |
| **Total** | **742,324,416** |

*Id.* at 10.

Of the 742,324,416 calls made to subscribers in the States on the National Do Not Call Registry list, the following numbers of calls were made to subscribers on lead lists provided by Shapiro to the Rising Eagle Defendants:

| State | Calls |
|-------|-------|
| AR | 10,142,516 |
| IN | 23,849,363 |
| MI | 35,697,293 |
| NC | 50,956,287 |
| ND | 1,567,955 |
| OH | 55,091,799 |
| TX | 101,295,494 |
| **Total** | **283,317,117** |

---

[3] 750,302,943 in total, minus 7,978,527 made to Missouri.

*Id.* at 11.

Subscribers in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas who answered the unsolicited robocalls were greeted with automated, prerecorded voice messages relating to health insurance or other health-related products marketed by Health Advisors. A representative sample of the prerecorded voice messages is included in the attached Ex. 20 (Decl. of John Isaacs).

For Spiller's other clients, Spiller testified that in 2019 the estimated volume of calls was less than 500,000. ECF No. # (Ex. 11) at 300:8-21. Spiller estimated that it was five to ten percent of the total volume of calls. *Id.*

## IV.    STANDARD OF REVIEW

The standard for summary judgment is well established: Summary judgment under Federal Rule of Civil Procedure 56(c) "is appropriate when, viewing the evidence in the light most favorable to the nonmovant," the court "determines that 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Johnson v. JPMorgan Chase*, No. CV H-14-1706, 2015 WL 7301082, at *1 (S.D. Tex. Nov. 18, 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of material fact is 'genuine' if the evidence would allow a reasonable jury to find in favor of the nonmovant." *Id.*

## V.   ARGUMENT

**A.**   **Spiller and Rising Eagle, acting on behalf of Smith and Health Advisors, violated the TCPA, its related rules, and various state telemarketing laws.**

Where the Rising Eagle Defendants called cellular phones using an automatic dialing system and played a prerecorded message, the States can establish violations of the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent."). The same analysis would apply to calls made to residential lines and/or calls made to phone numbers on the Federal Do Not Call Registry. 47 C.F.R. § 64.1200(a)(2), 47 C.F.R. § 64.1200(a)(3).

The State's evidence shows that the Rising Eagle Defendants violated the TCPA. *First*, Rising Eagle made at least 742,324,416 calls to subscribers in Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas. Ex. 19 at 9-10. Shapiro, acting pursuant to the actual authority given to him by Health Advisors, provided the leads that made up at least 283,317,117 of those calls. Ex. 19 at 11. Further, Smith personally provided leads to Spiller. Ex. 1 at 116:25-117:3; 134:16-135:-8; 150:24-151:10.

*Second*, the Rising Eagle Defendants' calls, on behalf of Health Advisors and at the direction of Smith and/or Shapiro, played a pre-recorded message and/or were calls to phone numbers on the Federal Do Not Call Registry. *See Id.;* Ex. 4 at SPILLER_CELL_012418 and Ex. 10 at MEARS_CELL_00835-836.

*Third*, none of the Defendants obtained the call recipient's consent. Ex. 1 at 136:22-25; 140: 3-9; Ex. 3 at 155:2-156:14; Ex. 9 at 186:18-25. Thus, the Rising Eagle Defendants did not have the requisite consent to make at least the 283,317,117 calls to phone numbers on Shapiro's lead lists made on behalf of Health Advisors and Smith. *See* Ex. 19 at 11.

**B.    Smith and Health Advisors are liable for the actions of Shapiro and the Rising Eagle Defendants.**

    **i.    Smith and Health Advisors' vicarious liability**

Under the TCPA, a person or entity initiates "a telephone call when it takes the steps necessary to physically place a telephone call." *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6583 (2013). The TCPA "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.*

Though the TCPA generally excludes persons or entities that may have a minor role in the making of a telephone call, a person "may be held vicariously liable for certain third-party telemarketing calls." *Dish Network* at 6584. Specifically, a person "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers. [. . .] [The person] may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.*

In *dicta*, the Supreme Court said, "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred to that ruling, . . . and we have no cause to question it." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) (internal citations removed).

"Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019).

Under the TCPA, an entity who employs others to place unsolicited prerecorded telephone calls on its behalf is appropriately held accountable for the conduct of its agents. *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *2, n.1 (N.D. Tex. Nov. 2, 2017) (citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) ("To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.").

Health Advisors is appropriately held liable under the TCPA. Smith directed the Rising Eagle Defendants on how and when to make calls. *See* Ex. 10 at

MEARS_CELL_000920 - 921. Finally, Smith had direct knowledge that the Rising Eagle Defendants were sending robocalls and calling people on the Federal Do Not Call list. *Id.* at MEARS_CELL_000757; 000835-836.

### ii.   Smith's personal liability for the violations of Health Advisors.

"Generally, the corporate veil prevents personal liability for tort or contract obligations of the corporation." *Schumacher v. Cap. Advance Sols., LLC*, No. CV H-18-0436, 2019 WL 1026305, at *3 (S.D. Tex. Jan. 22, 2019), *report and recommendation adopted*, No. CV H-18-0436, 2019 WL 1025894 (S.D. Tex. Mar. 4, 2019) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)). Under Texas law, "there are three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetuate fraud." *Id.* (quoting *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004)).

Under consumer protection jurisprudence, corporate representatives can be held personally liable without proving the facts otherwise necessary to pierce the corporate veil. "It is a longstanding rule in Texas that a corporate agent may be personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment. A corporate agent may also be personally liable under the Deceptive Trade Practices Act for his own misrepresentations." *Brown v. Bowers*, No. 05-07-00136-CV, 2008 WL 2152889, at *3 (Tex. App. May 22, 2008) (internal quotations and citations omitted).

Smith is appropriately held liable for Health Advisors' violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and the State's various telemarketing and consumer protection laws. At minimum, Health Advisors was used for the purpose of making illegal robocalls.

As detailed above, Smith, on behalf of Health Advisors, Smith personally directed and personally paid the Rising Eagle Defendants in connection with the illegal robocall operation carried out on behalf of Health Advisors. *Supra* pp. ##. Smith testified it was his responsibility to ensure that Health Advisors' agents were receiving enough calls. Ex. 1 at 59:12-23. Smith directed the Rising Eagle Defendants and provided leads to Spiller. *See* Ex. 1 at 116:25-117:3; 134:16-135:-8; 150:24-151:10. Ex. 4 SPILLER_CELL_12481; 012499 – 012500. Smith did not obtain consent from the subscribers whose numbers he provided to Spiller. Ex. 3 at 155:2-156:14. Ex. 9 at 186:18-25. Smith received updates from Spiller who reported to him. Ex. 4 at SPILLER_CELL_012401 to 12402; SPILLER_CELL_012418; SPILLER_CELL_012432. Smith personally paid Spiller. Ex. 15 at BOA001693.

Where Health Advisors' illegal robocalling operation was directed by Smith, it is appropriate to pierce the corporate veil and hold Smith personally liable. *Schumacher*, No. CV H-18-0436, 2019 WL 1026305, at *3. Furthermore, Smith's conduct is sufficient to hold him personally liable for violating the States' consumer protection laws. *Brown*, No. 05-07-00136-CV, 2008 WL 2152889, at *3.

**C.     Summary judgment should be granted in favor of Plaintiff States for Smith and Health Advisors' violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and the various States' telemarketing laws.**

Smith and Health Advisors directed the Rising Eagle Defendants to send calls that used a pre-recorded message. Ex. 1 a 116: 20-117:3; 134:16-135:-8; 150:24-151:10 . Ex. 4 SPILLER_CELL_12481; 012499 – 012500. Smith knew they were robocalls to recipients on the Federal Do Not Call Registry. Ex. 10 at MEARS_CELL_00835-836. Smith or Shapiro did not obtain consent from the call recipients before the Rising Eagle Defendants called them. Ex. 1 at 136:22-25; 140:3-9; Ex. 3 at 155:2-156:14. Further, the Rising Eagle Defendants eventually became Smith and Health Advisors' only lead source. Ex. 10 at MEARS_CELL_000766. Smith admitted that his and Health Advisors' main function was to supply their agents with calls. Ex. 1 at 59:12-23.

At the beginning of their relationship, Smith was notified that Spiller was using "press 1" calls, and Smith's response was to come up with another name for them because "press 1" made him nervous. Ex. 4 at SPILLER_CELL_012418.

Smith and Health Advisors' gave Shapiro the authority to send the Rising Eagle Defendants leads to call. *See* 115:17-19; 116:20-117:3; Ex. 4 at SPILLER_CELL_012535. Pursuant to that authority, Shapiro provided them at least 14.6 million leads. Ex. 19 at 8.

Then, Smith would direct them on how to use the leads, including reusing the leads for multiple calls. *See* Ex. 10 at MEARS_CELL_000920-921.

The Court should grant summary judgment on the States' claims against Smith and Health Advisors.

*Arkansas.* Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq., prohibits a person from engaging in any unconscionable, false, or deceptive acts or practices in business, commerce, or trade. A "telephonic seller" is defined as a person who on his own or through salespersons causes a telephone solicitation to occur which meets certain specified criteria. Ark. Code Ann. § 4-99-103(9). Ark. Code Ann. § 4-99-201(a)(1) further requires that any person who, on behalf of any business, calls a residential phone number for the purpose of soliciting or to offer goods or services shall immediately disclose to the person contacted the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purposes of the telephone call, including a brief description of the goods or services to be offered. The statute requires that the person calling shall immediately discontinue the call if the person called indicates that he or she does not want to hear about the goods or services.

A total of 29,943,608 calls were made to Arkansas subscribers who were listed on the Do Not Call registry. Of those calls, 10,142,516 came from leads provided by Shapiro, who had actual authority under his contract with Health Advisors to provide those leads. Neither Smith nor Health Advisors registered as a telephonic seller with the Arkansas Secretary of State as is required by Ark. Code Ann. § 4-99-105. Ex. # 22. Shapiro, on behalf of Smith and Health Advisors, knowingly supplied Rising Eagle with phone numbers to call and provided directions on when and how to make those calls. Rising Eagle initiated telephone calls, at Shapiro's direction, using the telephone numbers supplied by Shapiro. Many of these numbers were listed on the Do Not Call Registry, and the owners of these numbers had no relationship with Shapiro, Health Advisors, or Rising Eagle and

had not consented to receive such calls. Further, neither the telephone solicitors nor the pre-recorded messages provided the initial disclosures required by law for telephonic solicitations. Ex. 21. Arkansas consumers who called the number repeatedly informed the person answering the call that their number was on the Do Not Call Registry and requested that the solicitor stop calling. However, their requests were ignored, and the calls continued. By supplying leads and directing Rising Eagle to make telephone calls for the purpose of selling insurance, Smith was a seller as defined by Ark. Code Ann. § 4-99-103(9) and a "controlling person" within the meaning of Ark. Code Ann. § 4-88-113(d).

*Indiana.* Indiana's Telephone Solicitation of Consumers Act ("TSCA"), Ind. Code 24-4.7-4, prohibits persons from making sales calls to consumers on Indiana's Do Not Call list. Ind. Code § 24-4.7-4-1. Further, it is a violation of the TSCA to sell, transfer, or make available to another person for solicitation purposes if that consumer's phone number is on the Indiana Do Not Call list. Ind. Code § 24-4.7-4-7(b). Further, it is a violation of the TSCA if a person substantially assists or supports another telephone solicitor, supplier, or caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7. Ind. Code § 24-4.7-4-7(e). Rising Eagle called Indiana residents on the Indiana Do Not Call list. Shapiro, on behalf of Smith and Health Advisors, knowingly supplied Rising Eagle with phone numbers to call and provided directions on when and how to make those calls. Smith, Health Advisors, and Shapiro did not have consent to call these people. Shapiro, on behalf of Smith and Health Advisors, substantially assisted Rising Eagle and knew or consciously avoided knowing Rising Eagle was violating the TSCA.

Indiana's Auto Dialer Act, Ind. Code 24-5-14, prohibits the using of an automatic dialing-announcing device, as defined by Ind. Code 24-5-14-1, and disseminated a prerecorded voice message, when the call is made without consent or without a live person obtaining consent before playing the message. Further, it is a violation of Indiana law if a person substantially assists or supports another telephone solicitor, supplier, or caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(e). Rising Eagle used an automatic dialing-announcing device, and their calls disseminated a prerecorded voice message. These calls were made on behalf Smith and Health Advisors at the direction of Shapiro, who knowingly supplied Rising Eagle leads. Shapiro, on behalf of Smith and Health Advisors, provided substantial support to Rising Eagle and knew or should have known Rising Eagle was violating the Auto-Dialer Act.

***Michigan.*** Michigan's Home Solicitation Sales Act, MCL 445.111, *et seq*., prohibits a telephone solicitor from: (1) making a telephone solicitation using in whole or in part a recorded message, and (2) calling a residential telephone subscriber whose residential telephone number is on the then-current version of the National Do Not Call Registry. MCL 445.111a(1); 445.111a(5). "Telephone solicitor" is broadly defined as any person who "makes or *causes to be made* a telephone solicitation from within or outside of this state [Michigan], including but not limited to, calls made by use of automated dialing and announcing devices or by a live person." MCL 445.111(1)(n). (Emphasis added.)

106,413,724 violative calls were made to Michigan subscribers on the National Do Not Call Registry. Ex. 19 at 10. 35,697,293 of those calls came from leads provided by Shapiro, who thereby caused them to be made on behalf of Smith and Health Advisors, who had actual authority under his contract with Health Advisors. *Id.* at 11. Further, the calls made at the direction of Shapiro were robocalls. Ex. 5 at SPILLER_CELL_007526. The calls made pursuant to lead lists provided by Shapiro, and at his authority and direction, were in violation of Michigan's Home Solicitation Sales Act; MCL 445.111a(5) and constitute violations of MCL 445.903(1)(gg); Michigan's Consumer Protection Act (MCPA). The calls were also persistent and knowing, as shown by the massive number of calls and other facts set forth above, and are therefore subject to the maximum monetary penalties allowed by the MCPA; MCL 445.905(1).

***North Carolina***. North Carolina General Statutes § 75-102 prohibits (i) making or having third-parties make telephone calls to the telephone numbers of North Carolina telephone subscribers when those numbers were on the National Do Not Call Registry, and (ii) failing to enforce compliance with that statute. N.C. Gen. Stat. § 75-102. North Carolina General Statutes § 75-104 prohibits making or having third-parties make telephone calls to the telephone numbers of North Carolina residents by using automatic dialing and recorded message players to make unsolicited calls. N.C. Gen. Stat. § 75-104.

112,737,683 violative calls were made to North Carolina telephone subscribers whose numbers were on the National Do Not Call Registry. Ex. 19 at 10. At least 50,956,287 of those calls came from leads provided by Shapiro. Acting on behalf of Smith and Health Advisors, Shapiro directed Spiller and Rising Eagle to make the violative calls

and failed to enforce compliance with N.C. Gen. Stat. § 75-102. The calls made at Shapiro's direction—who had actual authority provided by Health Advisors—were robocalls that used automatic dialing and recorded message players to make unsolicited calls in violation of N.C. Gen. Stat. § 75-104.

**North Dakota.** North Dakota's Telephone Solicitations Act prohibits callers from (i) using an automatic dialing-announcing device or delivering a prerecorded or synthesized voice message and (ii) where the telephone numbers were on the North Dakota or National Do Not Call Registry. N.D.C.C. §§ 51-28-02, 51-28-06. "Caller" is broadly defined to include persons and entities, and "telephone solicitation" broadly includes communications over telephone lines for the purpose of selling merchandise. N.D.C.C. §§ 51-28-01(2), (8).

3,981,207 violative calls were made to North Dakota. Ex. 19 at 10. 1,567,955 of those calls came from leads provided by Shapiro, who had actual authority under his contract with Health Advisors. *Id.* at 11. The calls made at the direction of Smith on Health Advisors' behalf were robocalls. The calls made on behalf of Health Advisors, and at the direction of Smith on its behalf, constitute violations of N.D.C.C. §§ 51-28-02 and 51-28-06. Under N.D.C.C. § 51-28-19, each call constitutes a separate violation of N.D.C.C. ch. 51-58 and N.D.C.C. ch. 51-15, North Dakota's Unlawful Sales or Advertising Practices Act.

**Ohio.** Section 1345.02 of the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. § 1345.01 *et seq.*, and its Substantive Rules, O.A.C. 109:4-3-01 *et seq.* prohibits suppliers from engaging in unfair or deceptive consumer sales acts or practices. A "supplier" is

defined in O.R.C. § 1345.01(C), as a "… person engaged in the business of effecting consumer transactions, whether or not the person deals directly with the consumer." Smith and Health Advisors engaged in a pattern or practice of initiating telephone solicitations, either directly or as a result of a third party acting on their behalf, to Ohio telephone subscribers, including telephone numbers on the National Do Not Call Registry, in violation of O.R.C. § 1345.02.

Pursuant to O.A.C. § 109:4-3-11(A)(1), it is a deceptive actor or practice to engage in direct solicitations without clearly, affirmatively, and expressly revealing upon initial contact with consumers or prospective consumers that the purpose of the contact is to effectuate sales and stating the general terms that are being offered. The CSPA defines "direct solicitations" in O.A.C. § 109:4-3-11 as solicitations to consumers at their residences.

160,691,246 violative calls were made to Ohio telephone subscribers whose numbers were on the National Do Not Call Registry. Ex. 19 at 10. 55,091,799 of those calls came from leads provided by Shapiro. Acting on behalf of Smith and Health Advisors, Shapiro directed Spiller and Rising Eagle to make the violative calls. *Id.* at 11. The calls made at Shapiro and Smith's direction were robocalls that failed to clearly, affirmatively, and expressly reveal upon initial contact that the purpose of the call was to sell insurance related services and stating the general terms offered, in violation of O.R.C. § 1345.02(A), O.A.C. § 109:4-1-11, and O.R.C. § 4719.06. See Ex. 22 at 2.

Further, Ohio's Telephone Solicitation Sales Act ("TSSA"), O.R.C. § 4719.01 *et seq.,* prohibits acting as a telephone solicitor without first having obtained a certificate of

registration from the Ohio Attorney General pursuant to O.R.C. § 4719.02(A) and having a surety bond on file with the Ohio Attorney General's Office as required by O.R.C. § 4719.04(A). It is also a violation of O.R.C. § 4719.06 to fail to disclose the solicitor's true name and the name of the company on whose behalf solicitations are made within the first sixty seconds of the telephone call. And, under O.R.C. § 4719.14, violations of O.R.C. § 4719.02(A) or O.R.C. § 4719.06 are also unfair or deceptive acts or practices that violate O.R.C. § 1345.02.

Ohio's TSSA does not require a showing that Smith or Health Advisors personally made the calls.  Pursuant to O.R.C. 4719.01(A)(8), a telephone solicitor includes "a person that engages in telephone solicitation directly or through one or more salespersons … from a location outside this state to persons in this state…[and] includes, but is not limited to, any such person that is an owner, operator, … partner in, or other individual engaged in the management activities of, a business." Smith and Health Advisors gave authority to Shapiro to engage in management activities on their behalf and to ultimately direct the calls, and are therefore, subject to the TSSA. Neither Smith nor Health Advisors have been registered as telephone solicitors with the Ohio Attorney General's Office in the preceding 6 years. Ex. 21 (Jauregui at Declaration) at 1-2.

*Texas.* The Texas Telemarketing Disclosure and Privacy Act makes it unlawful for a telemarketer to make a telemarketing call to a telephone number that has been published on the then-current Texas no-call list for more than sixty days. Tex. Bus. & Com. Code § 304.052. "Telemarketer" is defined as a person who makes or causes to be made a telemarketing call. Tex. Bus. & Com. Code § 304.002(8). A "telemarketing call" is defined

as an unsolicited telephone call made to (A) solicit a sale of a consumer good or service;

(B) solicit an extension of credit for a consumer good or service; or (C) obtain information

that may be used to solicit a sale of a consumer good or service or to extend credit for the

sale. Tex. Bus. & Com. Code § 304.002(9).

276,475,851 violative calls were made to consumers on the Texas no-call list, which

are telephone numbers on the Federal Do-Not-Call Registry. Ex. 19 at 10. 101,295,494 of

those telemarketing calls came from leads provided by Shapiro, who had actual authority

under his contract with Health Advisors and thereby caused them to be made. *Id.* at 11. The

calls made pursuant to lead lists provided by Shapiro and on behalf of Health Advisors,

were in violation of the Texas Telemarketing Disclosure and Privacy Act. Tex. Bus. &

Com. Code § 304.052.

Therefore, because Smith and Health Advisors employed Shapiro, Spiller, and

Rising Eagle to make robocalls on their behalf, summary judgment should be rendered in

favor of the States and against Smith and Health Advisors.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the

States' Motion for Summary Judgment against Defendants Michael Smith and Health

Advisors, Inc.

Dated September 9, 2022                    Respectfully submitted,


                                          /s/ Joseph D. Yeoman
                                          Joseph D. Yeoman

25

**FOR THE STATE OF ARKANSAS:**

LESLIE RUTLEDGE
Attorney General for the State of Arkansas

/s/  David McCoy
DAVID MCCOY
Ark. Bar No. 2006100
David.McCoy@ArkansasAG.gov
SHANNON HALIJAN
Ark. Bar No. 2005136
Shannon.Halijan@ArkansasAG.gov
PEGGY JOHNSON
Ark. Bar No. 92-223
Peggy.Johnson@ArkansasAG.gov
Assistant Attorneys General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-7506 (McCoy)
(501) 683-1509 (Halijan)
(501) 682-8062 (Johnson)

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

**FOR THE STATE OF INDIANA:**

TODD ROKITA
Attorney General for the State of Indiana

/s/  Douglas S. Swetnam
DOUGLAS S. SWETNAM
Indiana Bar No. 15860-49
douglas.swetnam@atg.in.gov
JOSEPH D. YEOMAN
Indiana Bar No. 35668-29
Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 232-6294 (Swetnam)
(317) 234-1912 (Yeoman)
(317) 232-7979 (Fax)

*Counsel for Plaintiff*
*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan

/s/  Kathy Fitzgerald
KATHY FITZGERALD
Michigan State Bar No. P31454
fitzgeraldk@michigan.gov
SCOTT MERTENS
Michigan State Bar No. P60069
Mertenss@michigan.gov
Assistant Attorneys General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

*Counsel for Plaintiff*
*STATE OF MICHIGAN*

**FOR THE STATE OF MISSOURI:**

ERIC SCHMITT
Attorney General for the State of Missouri

/s/  Michelle L. Hinkl
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961
Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OFMISSOURI*

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

**FOR THE STATE OF NORTH DAKOTA:**

DREW H. WRIGLEY
Attorney General for the State of North Dakota


/s/ Brian M. Card
BRIAN M. CARD
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorney General
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
Assistant Attorney General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/  Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAttorneyGeneral.gov
Travis.Garrison@OhioAttorneyGeneral.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas

/s/ Patrick Abernathy
PATRICK ABERNATHY
Texas State Bar No. 24109556
Patrcik.abernathy@oag.texas.gov
C. BRAD SCHUELKE
Texas State Bar No. 24008000
Brad.schuelke@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 9, 2022, I electronically filed the foregoing

**PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT AGAINST**

**DEFENDANT MICHAEL THERON SMITH, JR. AND HEALTH ADVISORS OF**

**AMERICA, INC.** with the Clerk using the CM/ECF system, which will automatically

send e-mail notification of such filing to all counsel of record. I hereby certify that, on

September 9, 2022, I served the below parties via US Mail and E-Mail:


John C Spiller, II
on his own behalf and on behalf of all
Rising Eagle
9022 N. Ferndale Place Drive
Houston, TX 77064
rpgleads@gmail.com


Jakob A. Mears
9009 N FM 620 Rd., Apt. 2208
Austin, Texas 78726
jakobmears2016@gmail.com


/s/ Joseph D. Yeoman
Joseph D. Yeoman