# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS et al., <br><br> Plaintiffs, <br><br> v. <br><br> RISING EAGLE CAPITAL GROUP LLC et al., <br><br> Defendants. | CASE NO. 4:20-cv-02021 |

**PLAINTIFF STATES' RESPONSE TO DEFENDANTS HEALTH ADVISORS OF AMERICA AND MICHAEL THERON SMITH'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS**

## TABLE OF CONTENTS

**Page No.**

I. STATEMENT OF THE ISSUES ...........................................................................1

II. INTRODUCTION ...................................................................................................1

III. UNDISPUTED FACTS ..........................................................................................2

IV. STANDARD OF REVIEW .....................................................................................3

V. ARGUMENT .........................................................................................................3

A. Smith and Health Advisors are vicariously liable for the Rising Eagle Defendants' actions........................................................................................................3

B. Defendants' proposed timeline excludes Smith's direct actions after Health Advisors was dissolved ..............................................................................10

VI. CONCLUSION ...................................................................................................12

i

Plaintiffs, the States[1] of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas ("Plaintiffs" or "the States") respectfully submit this Response to Defendants Health Advisors of America, Inc. and Michael Theron Smith Jr.'s Motion for Summary Judgment on Plaintiffs' Claims.

## I. STATEMENT OF THE ISSUES

1. Whether the Court should grant summary judgment in favor of Defendants Health Advisors of America, Inc. ("Health Advisors") and Michael Theron Smith Jr. ("Smith") on all of the States' claims against them based on their argument that the States do not have sufficient evidence of Health Advisors and Smith's violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws.

2. Whether the Court should instead grant summary judgment in favor of the States against Health Advisors and Smith for their violations of the TCPA, 47 U.S.C. § 227, its related rules, 47 C.F.R. § 64.1200, and various state telemarketing laws.

## II. INTRODUCTION

On September 9, 2022, Plaintiffs filed a Motion for Summary Judgment against Defendants Smith and Health Advisors. ECF No. 180.

On September 12, 2022, Defendants Smith and Health Advisors filed a Motion for Summary Judgment. ECF No. 182.

---

[1] On February 8, 2019, Plaintiff State of Missouri filed an action against Defendants Health Advisors and Smith. The matter was resolved by a consent judgment. Plaintiff State of Missouri, therefore, is not seeking any relief from Defendants Health Advisors and Smith.

1

## III. UNDISPUTED FACTS

The Plaintiffs reassert and incorporate by reference the factual section in their September 9 Motion. ECF No. 180.

The Plaintiffs wish to address two items in the Defendants' September 12 Motion.

First, the Federal Communications Commission ("FCC") proceeded with a Notice of Apparent Liability ("NAL") against Defendants John Spiller ("Spiller"), Jakob Mears ("Mears"), and Rising Eagle Capital Group LLC ("Rising Eagle") (collectively, the "Rising Eagle Defendants"). *See* ECF No. 182, Ex. 1. The FCC's NAL is irrelevant to this matter, and it is irrelevant to Smith or Health Advisor's culpability in this matter. The Court should view the NAL as analogous to any other matter where the federal government, in its discretion, chooses not to enforce the law against a party, and a state government, in its discretion, chooses to enforce the law against that party. It seems that it is the Defendants' opinion that if one sovereign passes on the opportunity to hold them accountable that they now have the equivalent of a get-out-of-jail-free card when seven other sovereigns want to hold them accountable for their prior bad acts which violated state and federal law.

To be as clear as possible, despite Defendants' assertions or suggestions to the contrary, that the FCC did not bring an NAL against Smith or Health Advisors is of no consequence and not determinative of any issue before this Court in this matter.

Second, Defendants' Statement of Undisputed Facts does not mention the voluminous quantity of text messages sent between Smith to Defendants Spiller and Mears. As the States' Factual section makes clear, Smith sent orders and directions to Spiller and Mears on how to run this robocalling operation. Further, Defendants' Motion does not

mention the voluminous number of phone numbers Defendant Scott Shapiro ("Shapiro") sent Defendants Spiller and Mears to call. These emails were sent on Smith and Health Advisors' behalf and for their benefit. Defendants' Motion likely does not address these communications because they directly implicate Smith and Health Advisors in this scheme. *See* ECF No. 181, Ex. 10 at MEARS_CELL_000757; 000835.

To be clear, Defendants Smith, Shapiro, and Health Advisors sent Defendants Spiller and Mears leads to call and orders on how and when to call. They do not mention this because it directly ties them to the scheme, thereby effectively disproving their central argument of guiltlessness.

## IV.   STANDARD OF REVIEW

The standard for summary judgment is well established: Summary judgment under Federal Rule of Civil Procedure 56(c) "is appropriate when, viewing the evidence in the light most favorable to the nonmovant," the court "determines that 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Johnson v. JPMorgan Chase*, No. CV H-14-1706, 2015 WL 7301082, at *1 (S.D. Tex. Nov. 18, 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of material fact is 'genuine' if the evidence would allow a reasonable jury to find in favor of the nonmovant." *Id.*

## V.   ARGUMENT

**A.   Smith and Health Advisors are vicariously liable for the Rising Eagle Defendants' action.**

3

Plaintiffs' case against Smith and Health Advisors has been exclusively about health insurance robocalls sent by the Rising Eagle Defendants on behalf of Smith and Health Advisors. Defendants claim that they did not have ultimate control over the Rising Eagle Defendants' operation. To do this, they point to a few sections of Smith's deposition, but fail to address inculpatory text messages sent by Smith and Shapiro and Shapiro's emails.

In their legal analysis, Defendants' main argument relies on a common law theory of agency so exacting that virtually no agency relationships would exist outside of the normal employee-employer relationship. Defendants focus heavily on the fact that Spiller and Mears had other clients for whom they also made robocalls. This is a red herring that the Court should disregard because their argument asserts that if a person or entity had more than one client, then they could never be an agent. That is illogical. For example, if a person were to drive for both Uber and Lyft, that person could never be an agent for Uber or Lyft, regardless of how much control Uber exerted over the driver. This argument just does not hold water.

Further, Defendants' definition of agency would require every relationship to be one of micro-management. The agency theory that provides for vicarious liability is much less exacting. *See Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (stating "Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification.").

In the FCC declaratory ruling that confirmed vicarious liability in TCPA lawsuits, the FCC wrote this about the DISH defendants:

> The plaintiffs further alleged that: (1) DISH had authorized its dealers "to use DISH Network trademarks and trade names, to collect money for DISH Network, and to perform other services as part of their positions as authorized dealers;" (2) DISH "paid commissions and other financial incentives to the Dealers for telemarketing services;" (3) DISH "received complaints from consumers regarding the Dealers' telemarketing practices, and thereby, knew or consciously avoided knowing that the Dealers were violating" telemarketing restrictions; and (4) despite possessing contractual authority to terminate the dealers, DISH "continued to retain the Dealers to perform telemarketing services ... after receiving consumer complaints."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6577 (2013).

In their motion, Plaintiffs provided evidence Spiller and Mears were Defendants Smith and Health Advisors' only source for inbound sales (ECF No. 181, Ex. 10 MEARS_CELL_000766); "received complaints from" consumers, upstream insurance providers, and lawsuits from consumers and the State of Missouri (ECF No. 181, Ex. 5 at SPILLER_CELL_011255; Ex. 10 at MEARS_CELL_0081, 000835-836; Ex. 11 at HII_TXAG015332; Ex. 12 at HII_TXAG015002; Ex. 13 at LAWSUIT_002701-2703, 002704-2718); and that despite all this, Smith and Health Advisors "continued to retain" Spiller and Mears "to perform telemarketing services ... after receiving consumer complaints." *See* ECF No. 181, Ex. 10 at MEARS_CELL_0081, 000835-836, MEARS_CELL_00892; Ex. 15. at BOA001693.

5

The only difference in this matter and the DISH example, as Defendants have pointed out, is that Spiller and Mears were not authorized to sell insurance. This is true. Defendants Spiller and Mears were not health insurance agents. As the record shows, agents at Health Advisors were the persons who made the actual sales. *See* ECF No. 181, Ex. 1 at 51:6-52:6; 110:2-17; 111:1 to 10. That does not mean Spiller and Mears cannot be Health Advisors and Smith's agents. At the end of the day, Smith and Health Advisors making the ultimate sale shows they are more culpable and have far more knowledge of the robocalling scheme, since consumers that had complaints lodged them with Smith and Health Advisors (who in turn recorded every phone interaction). *See* ECF No. 181, Ex. 8.

Further, the FCC stated this about the agency theory:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control. "Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

*Dish Network*, 28 F.C.C. Rcd. 6576 (citations omitted).

Again, the *DISH Declaratory Ruing* and other case law make clear that there are three theories of agency to get to vicarious liability: actual authority; apparent authority;

and ratification. *See Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019).

As Plaintiffs have shown, Defendants Smith and Health Advisors authorized Spiller and Mears to make calls on their behalf. *See* ECF No. 181, Ex. 4 at SPILLER_CELL_012401-12402, 012432, 012481, 012533, 012644; Ex. 10 at MEARS_CELL_000757, 000766, 000819, 000835, 000859, 000881, 000892, 000920-921. Defendants Smith and Health Advisors then ratified their actions time and time again. *See* ECF No. 181, Ex. 10 at MEARS_CELL_000835-836, 00892; Ex. 13 at LAWSUIT_002704-2718; Ex. 15 at BOA001693.

The most persuasive and illustrative hypothetical of vicarious liability and how it applies in this case comes from *Birchmeier v. Caribbean Cruise Line, Inc.*:

> To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed.

*Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012). Minus the physical proximity, this is what happened in this matter: Smith, Health Advisors, and Shapiro sent Spiller and Mears phone numbers to call. *See* ECF No. 181, Ex. 4 at SPILLER_CELL_012535; Ex. 5 at SPILLER_CELL_007840; Ex. 7 at RISING_EMAILS001753; Ex. 8. Then, Smith, Health Advisors, and Shapiro sent directions on when to call, how to make the calls, and how many times to call the phone

7

numbers. *See* ECF No. 181, Ex. 4 at SPILLER_CELL_012401-12402, 012432, 012481, 012533, 012644; Ex. 10 at MEARS_CELL_000757, 000766, 000819, 000835, 000859, 000881, 000892, 000920-921. Now, Smith and Health Advisors are trying to "get off scot-free."

Defendants rely on *Cano v. Assured Auto Group*, et al, but it is not on point with the issue at hand. *Cano* centers around personal jurisdiction over one of the defendants by way of an agency relationship. *Cano v. Assured Auto Group*, 3:20-cv-03501-G (N.D. Tex. July 19, 2021) (Memorandum Opinion and Order) (attached to this filing as Exhibit 1). The Court concluded by allowing limited discovery to see if there was an agency relationship and denied the defendant's motion to dismiss. The case is only instructive here in that it cites to *Callier v. SunPath Ltd.,* No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020):

> To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." Alternately, apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal. Finally, a principal may be liable on the theory of ratification if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances.

(citations omitted).

Again, Plaintiffs have shown Smith and Health Advisors assigned Spiller and Mears a task and controlled the process. *See* ECF No. 181, Ex. 4 at SPILLER_CELL_012401-12402, 012432, 012481, 012533, 012644; Ex. 10 at MEARS_CELL_000757, 000766, 000819, 000835, 000859, 000881, 000892, 000920-921. While it is true Smith and Health

8

Advisors did not control every single aspect of the operation, they controlled the core of the operation: who was to be called, how often they were called, and when they were called, as well as how many calls needed to be made at any given time. *Id.* Under Defendants' argument, a principal could not be responsible for a delivery of a package because the agent got to choose what type of car to drive.

Further, Plaintiffs have shown Smith ratified Spiller and Mears's actions. The two most egregious examples are that the State of Missouri sued Smith and Health Advisors, and Smith's reaction was to text his robocaller: "no more sales in MO and emailed a list to ramp up." ECF No. 181, Ex. 10 at MEARS_CELL_00819. So, Smith learned from the complaint that his agent was illegally robocalling, and his response was to send the robocallers more telephone numbers to call. *Id.*

Sixteen days after the text above, Smith sent his robocallers a phone number to block, using a homophobic slur to deride the person who did not want to be called because he was on the federal Do Not Call registry. *Id.* at MEARS_CELL_000835-836. The homophobic slur illustrates Smith's contempt for the people they call. It also illustrates his familiarity with Defendant Mears. Then, after being alerted that no one, including himself, was scrubbing numbers from the Federal Do Not Call registry, Smith texted Mears a few days later to see how the dialer was doing. *Id.* at MEARS_CELL_00852.

Smith and Health Advisors were given notice of sending illegal robocalls and calling people on the Federal Do Not Call registry, and, instead of firing Spiller and Mears, they continued the relationship. That is ratification.

From the start of their relationship, Smith and Health Advisors knew the Rising Eagle Defendants were sending robocalls ECF No. 181, Ex. 4 at SPILLER_CELL_012418 ("Let's come up with another word other than press 1 lol. That makes me nervous."); Ex. 10 at MEARS_CELL_000757 ("Not if the leads they have been running on are 3+ weeks old and ran everyday. **People hear the recording and don't press 1** so they aren't getting about of transfers." (emphasis added). They were notified on many occasions that these robocalls violated the law. *See* ECF No. 181, Ex. 5 at SPILLER_CELL_011255, Ex. 8; Ex. 10 at MEARS_CELL_00819 ("no more sales in MO"), 000835-836 ("We're getting hit with lawsuits left and right"); Ex. 11 at HII_TXAG015332; Ex. 12 at HII_TXAG015002; Ex. 13 at LAWSUIT_002701-2703, 002704-2718. They gave the Rising Eagle Defendants specific directions to follow. *See* ECF No. 181, Ex. 4 at SPILLER_CELL_012418 ("Let's come up with another word other than press 1 lol. That makes me nervous."), 012481 ("Also we have 27 agents waiting for calls" and then, "You need to change your data."), 012499 – 012500 ("We need to ramp it up."), 012533 ("Ok slow it down a lil pls."); Ex. 10 at MEARS_CELL_00819 ("no more sales in MO and emailed a list to ramp up."), 000835-836 ("pls block this [slur]"), 000859, 000920-921 ("Take the data out and put it back in").

This is not a case where a telemarketer went rogue or where a call center had no idea what was going on. This is a case where Smith and Health Advisors knew and were responsible for sending millions of robocalls to Americans without their consent.

### B. Defendants' proposed timeline excludes Smith's direct actions after Health Advisors was dissolved.

Defendants' proposed timeline falls short of the facts of this case. Smith may have dissolved Health Advisors on June 14, 2019. ECF No. 181, Ex. 14 at SOS000001. However, the record clearly shows, as outlined in Plaintiffs' motion, that Smith and Health Advisors continued working with Spiller and Mears long past the dissolution date.

Plaintiffs highlighted:

- Smith texted Mears on July 1, 2019. ECF No. 181, Ex. 10 at MEARS_CELL_000881.
    - 18 days after the dissolution date.
- Smith texted Mears on July 10, 2019. *Id.* at MEARS_CELL_00892.
    - 27 days after the dissolution date.
- Smith paid Rising Eagle on July 10, 2019. ECF No. 181, Ex. 15 at BOA001693
    - 27 days after the dissolution date.
- The dissolved Health Advisors paid Rising Eagle on July 12, 2019. *Id.*
    - 29 days after the dissolution date.
- Smith texted Mears on September 10, 2019. ECF No. 181, Ex. 10 at 000920-921.
    - 89 days after the dissolution date.
- Smith texted Spiller on September 25, 2019. ECF No. 181, Ex. 4 at SPILLER_CELL_012644 ("We made a deal. Pay more per deal and we would never have more then [sic] 35 waiting bro.")

11

- o  104 days after the dissolution date.
- Smith Skype chatted with Mears and Spiller on June 5, 2020. ECF No. 181, Ex. 16 at SKYPE00008.
  - o  358 days after the dissolution date, and four days before this lawsuit was filed.

Plaintiffs contend that Smith is responsible for calls that occurred between February 12, 2018 and June 5, 2020. Had Smith ceased his engagement with Spiller and Mears robocalling operation on June 14, 2019, the States might agree with the Defendants on a limited time period. Smith, however, did not stop directing Spiller and Mears to make calls.

Plaintiffs would like to highlight one of Smith's texts to Spiller: "We made a deal. Pay more per deal and we would never have more then [sic] 35 waiting bro." ECF No. 181, Ex. 4 at SPILLER_CELL_012644. This text, regarding a contractual agreement between Smith and Spiller, was sent 104 days after Health Advisors was dissolved.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Smith and Health Advisors' Motion for Summary Judgment and grant the States' Motion for Summary Judgment.

Dated September 22, 2022                           Respectfully submitted,

/s/ Joseph D. Yeoman
Joseph D. Yeoman

| FOR THE STATE OF ARKANSAS: | FOR THE STATE OF INDIANA: |
|---|---|
| LESLIE RUTLEDGE<br>Attorney General for the State of Arkansas | TODD ROKITA<br>Attorney General for the State of Indiana |
| /s/ David McCoy<br>DAVID MCCOY<br>Ark. Bar No. 2006100<br>David.McCoy@ArkansasAG.gov<br>SHANNON HALIJAN<br>Ark. Bar No. 2005136<br>Shannon.Halijan@ArkansasAG.gov<br>PEGGY JOHNSON<br>Ark. Bar No. 92-223<br>Peggy.Johnson@ArkansasAG.gov<br>Assistant Attorneys General<br>AMANDA WENTZ<br>Ark. Bar No. 2021066<br>Amanda.Wentz@ArkansasAG.gov<br>Assistant Attorney General<br>Office of the Arkansas Attorney General<br>323 Center Street, Suite 200<br>Little Rock, AR 72201<br>(501) 682-7506 (McCoy)<br>(501) 683-1509 (Halijan)<br>(501) 682-8062 (Johnson)<br><br>*Counsel for Plaintiff*<br>*STATE OF ARKANSAS* | /s/ Douglas S. Swetnam<br>DOUGLAS S. SWETNAM<br>Indiana Bar No. 15860-49<br>douglas.swetnam@atg.in.gov<br>JOSEPH D. YEOMAN<br>Indiana Bar No. 35668-29<br>Joseph.Yeoman@atg.in.gov<br>Deputy Attorneys General<br>302 West Washington Street<br>IGCS – 5th Floor<br>Indianapolis, IN 46204<br>(317) 232-6294 (Swetnam)<br>(317) 234-1912 (Yeoman)<br>(317) 232-7979 (Fax)<br><br>*Counsel for Plaintiff*<br>*STATE OF INDIANA* |

| FOR THE STATE OF MICHIGAN: | FOR THE STATE OF MISSOURI: |
|---|---|
| DANA NESSEL<br>Attorney General for the State of Michigan | ERIC SCHMITT<br>Attorney General for the State of Missouri |
| /s/  Kathy Fitzgerald<br>KATHY FITZGERALD<br>Michigan State Bar No. P31454<br>fitzgeraldk@michigan.gov<br>SCOTT MERTENS<br>Michigan State Bar No. P60069<br>Mertenss@michigan.gov<br>Assistant Attorneys General<br>Corporate Oversight Division<br>Michigan Department of Attorney General<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-7632<br><br>*Counsel for Plaintiff*<br>*STATE OF MICHIGAN* | /s/  Michelle L. Hinkl<br>MICHELLE L. HINKL<br>Missouri State Bar No. 64494<br>Michelle.Hinkl@ago.mo.gov<br>Assistant Attorney General<br>P.O. Box 861<br>St. Louis, MO 63188<br>Telephone: (314) 340-7961<br>Fax: (314) 340-7981<br><br>*Counsel for Plaintiff*<br>*STATE OFMISSOURI* |

14

<table>
<tr><td>

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina


/s/  Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

</td><td>

**FOR THE STATE OF NORTH DAKOTA:**

DREW H. WRIGLEY
Attorney General for the State of North Dakota


/s/ Brian M. Card
BRIAN M. CARD
North Dakota State Bar No. 07917
bmcard@nd.gov
Assistant Attorney General
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
Assistant Attorney General
North Dakota Attorney General's Office
Consumer Protection & Antitrust Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

</td></tr>
</table>

| FOR THE STATE OF OHIO: | FOR THE STATE OF TEXAS: |
|---|---|
| DAVE YOST<br>Attorney General for the State of Ohio | KEN PAXTON<br>Attorney General for the State of Texas |
| /s/  Erin B. Leahy<br>ERIN B. LEAHY<br>Ohio Bar No. 69509<br>W. TRAVIS GARRISON<br>Ohio Bar No. 76757<br>Assistant Attorneys General<br>Ohio Attorney General's Office<br>Consumer Protection Section<br>30 E. Broad Street, 14th Floor<br>Columbus, Ohio 43215<br>(614) 752-4730 (Leahy)<br>(614) 728-1172 (Garrison)<br>Erin.Leahy@OhioAttorneyGeneral.gov<br>Travis.Garrison@OhioAttorneyGeneral.gov<br><br>*Counsel for Plaintiff*<br>STATE OF OHIO | /s/ Patrick Abernathy<br>PATRICK ABERNATHY<br>Texas State Bar No. 24109556<br>Patrcik.abernathy@oag.texas.gov<br>C. BRAD SCHUELKE<br>Texas State Bar No. 24008000<br>Brad.schuelke@oag.texas.gov<br>Assistant Attorneys General<br>Office of the Attorney General<br>P.O. Box 12548 (MC-010)<br>Austin, Texas 78711<br>Telephone: (512) 463-2100<br>Facsimile: (512) 473-8301<br><br>*Counsel for Plaintiff*<br>STATE OF TEXAS |

## CERTIFICATE OF SERVICE

I hereby certify that, on September 22, 2022, I electronically filed the foregoing **PLAINTIFF STATES' RESPONSE TO DEFENDANTS HEALTH ADVISORS OF AMERICA AND MICHAEL THERON SMITH'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record. I hereby certify that, on September 22, 2022, I served the below parties via US Mail and E-Mail:

John C Spiller, II
on his own behalf and on behalf of all
Rising Eagle
9022 N. Ferndale Place Drive
Houston, TX 77064
rpgleads@gmail.com

Jakob A. Mears
9009 N FM 620 Rd., Apt. 2208
Austin, Texas 78726
jakobmears2016@gmail.com

/s/ Joseph D. Yeoman
Joseph D. Yeoman