# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

STATE OF TEXAS et al.,

      Plaintiffs,

      v.

RISING EAGLE CAPITAL GROUP, LLC, et al.,

      Defendants.

Case No. 4:20-cv-02021

Judge: George C. Hanks, Jr.

## PLAINTIFFS' MEMORANDUM OF LAW

## TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF THE CASE ............................................................................. 4

   A.   Violations of the Telephone Consumer Protection Act .................................. 4

      1.   Making Telephone Solicitations to Residential Numbers on the National Do Not Call Registry- Count VI ........................................................................................... 8

      2.   Using Artificial or Prerecorded Voice Messages to Residential Telephone Lines – Count VII ...................................................................................................................... 10

      3.   Using Artificial or Prerecorded Voice Messages to Cellular Telephone Lines – Count VIII   ............................................................................................................ 11

   B.   Violations of State Telephone Privacy and Telemarketing Laws ................................ 12

      1.   Arkansas Telemarketing Laws ........................................................................ 12

      2.   Indiana Telemarketing Laws ........................................................................... 17

      3.   Michigan Telemarketing Laws ........................................................................ 23

      4.   North Carolina Telemarketing Laws ............................................................... 27

      5.   North Dakota Telemarketing Laws .................................................................. 30

      6.   Ohio Telemarketing Laws ................................................................................ 35

      7.   Texas Telemarketing Laws .............................................................................. 37

   C.   VICARIOUS LIABILITY AND AGENCY ................................................................ 42

   D.   PIERCING THE CORPORATE VEIL ....................................................................... 44

   E.   PERSONAL LIABILITY ........................................................................................... 45

   F.   AFFIRMATIVE DEFENSES .................................................................................... 47

      1.   Standing ............................................................................................................ 47

      2.   Failure to State a Claim ................................................................................... 47

      3.   Failure to State a Claim – Consent .................................................................. 48

      4.   Lack of Intent ................................................................................................... 49

      5.   Third Party Actions .......................................................................................... 49

      6.   "Not Charged for the Call" ............................................................................... 50

      7.   Safe Harbor ...................................................................................................... 51

      8.   Misjoinder ........................................................................................................ 52

      9.   Unconstitutional ............................................................................................... 53

      10.  Laches ............................................................................................................... 53

      11.  Improper Venue ................................................................................................ 54

      12.  Personal Jurisdiction ........................................................................................ 55

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aguilar,*
   511 B.R. 507 (Bankr. N.D. Ill. 2014) .....................................................................43

*Alfred L. Snapp & Son. V. Puerto Rico,*
   458 U.S. 592 (1982)........................................................................................8, 47

*American GNC Corp. v. ZTE Corp.,*
   2017 U.S. Dist. LEXIS 185358 (E.D. Tex. Oct. 4, 2017) ......................................54

*Ancor Holdings, LP v. Landon Cap. Partners LLC,*
   2022 U.S. Dist. LEXIS 234347 (N.D. Tex. Nov. 3, 2022)......................................47

*Arbaugh v Y_H Corp,*
   546 U.S. 500 (2006)..............................................................................................26

*Arcieri v. Suntuity Solar Ltd. Liab. Co.,*
   2021 U.S. Dist. LEXIS 186205 (Dist. N.J. Sept. 27, 2021) ...................................11

*Arrwdondo v. Flexi Corp.,*
   2017 U.S. Dist. LEXIS 220710 (S.D. Tex. Aug. 18, 2017)....................................49

*Atkinson v. Pro Custom Solar LLC,*
   2022 U.S. Dist. LEXIS 158629 (W.D. Tex. Sept. 1, 2022)....................................48

*Atwal v. Ifinex Inc.,*
   2022 U.S. Dist. LEXIS 192015 (W.D. N.Y. Oct. 19, 2022) ...................................55

*Bangor Punta Operations, Inc. v. Bangor & A.R. Co.,*
   417 U.S. 703 (1974)..............................................................................................44

*Barnes v. Conn Appliances, Inc.,*
   2018 U.S. Dist. LEXIS 146470 (S.D. Miss. Aug. 28, 2018)..................................49

*Barr v. American Assoc. of Political Consultants, Inc.,*
   140 S. Ct. 2335(2020)...........................................................................................53

*Barton v. J.M.S. Assoc. Mktg,*
   LLC, 2021 U.S. Dist. LEXIS 171409 (W.D. Wash. Sept. 9, 2021) .......................11

*Broussard v. San Juan Prods.,*
   273 S.W.3d 400, 406 2008 Tex. App. LEXIS 9024 ..............................................41

*Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*,
   317 S.W.3d 361, 377 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)............................39

*Bruno v. Zwirkoski*,
   124 Mich. App. 664 (1983) .................................................................................................25

*Builders Transp., Inc. v. Grice-Smith*,
   167 S.W.3d 1, *12 2005 Tex. App. LEXIS 1839 ..................................................................41

*Burke v. Direct Energy, LP*,
   2021 U.S. Dist. LEXIS 178408 (S.D. Tex. Sept. 20. 2021) ....................................................11

*Caldwell Nat. Bank v. O'Neil*,
   785 S.W.2d 840, 847 (Tex. App.—El Paso 1990, writ denied).............................................42

*Callier v. Multiplan, Inc.*,
   2021 U.S. Dist. LEXIS 256747 (W.D. Tex. Aug. 26, 2021) ...................................................43

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016)...........................................................................................................6, 42

*Carriere v. Shuffield*,
   949 S.W. 2d 862 (Tex. App. 1997)........................................................................................45

*Castleberry v. Branscum*,
   721 S.W. 2d 270 (Tex. 1986).................................................................................................44

*Celtic LIfe Ins. Co. v. Coats*,
   885 S.W.2d 96, 99 (Tex. 1994), judgment reformed (Dec. 22, 1994)....................................39

*Chemtool, Inc. v. Lubrication Tech., Inc.*,
   148 F. 3d 742 (7th Cir. 1998) ...............................................................................................43

*Chesbro v. Best Buy Stores, P.L.*,
   705 F. 3d 913 (9th Cir. 2012) ...............................................................................................11

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984)..............................................................................................................51

*Chinitz v. NRT West, Inc.*,
   2019 U. S. Dist. LEXIS 27134 (N.D. Cal. Feb. 20, 2019) ....................................................11

*Christiana Tr. v. Riddle*,
   911 F. 3d 799 (5th Cir. 2018) ...............................................................................................43

*Commercial Escrow Co. v. Rockport Rebel, Inc.*,
   778 S.W.2d 532, 541 (Tex. App.—Corpus Christi–Edinburg 1989, writ
   denied)..................................................................................................................................40

*Consumer Financial Protection Bureau v. Nesheiwat*,
No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022)..................................................21

*Cornejo v. EMJB, Inc.*,
2021 U.S. Dist. LEXIS 177082 (W.D. Tex. Sept. 16, 2021)....................................................49

*Cunningham v. Britereal Mgmt., Inc.*,
2020 WL 7391693 (E.D. Tex. Nov. 20, 2020), adopted, 2020 WL 7388415
(E.D. Tex. Dec. 16, 2020).........................................................................................................45

*Cunningham v. Mark D. Guidubaldi & Assoc.*,
2019 U.S. Dist. LEXIS 38652, *adopted by*, 2019 U.S. Dist. LEXIS 170945
(E.D. Tex. Jan. 11, 2019)............................................................................................................9

*Cunningham v. Montes*,
378 F.Supp.3d 741 (W.D. Wis. 2019) .......................................................................................6

*David v. Serges*,
373 Mich. 442 (1964) ...............................................................................................................25

*Depositors Ins. Co. v. Estate of Ryan*,
637 F. App. 864, 871 (6th Cir. 2016)........................................................................................53

*State ex rel. DeWine v. Calvin*,
Case No. A602927 (Hamilton C.P. Nov. 13, 2018) .................................................................37

*In re DISH Network, LLC*,
28 FCC Rcd 6574 (Apr. 17, 2013).............................................................................................42

*Expro. Ams., LLC v. Sanguine Gas Exploration, LLC*,
LLC, 351 S.W.3d 915, 2011 Tex. App. LEXIS 8556, 176 Oil & Gas Rep. 887,
177 Oil & Gas Rep. 1044....................................................................................................40, 41

*FTC v. Chapman*,
714 F.3d 1211 (10th Cir. 2013) ..........................................................................................20, 21

*FTC v. Consumer Health Benefits Ass'n*,
No. 10-CV-3551 (ILG), 2011 WL 3652248 (E.D. N.Y. Aug. 18, 2011) ...............................21

*German v. Federal Home Loan Mort. Corp.*,
896 F. Supp. 1385 (S.D. N.Y. 1995).........................................................................................52

*Gesten v. Stewart Law Group, LLC*,
67 F. Supp. 3d 1356 (S.D. Fla. 2014) .......................................................................................50

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)...................................................................................................................22

iv

*Gulfco of Louisiana, Inc. v. Brantley*,
2013 Ark. 367, 430 S.W.3d 7 (2013) ...................................................................13

*Hamilton v. Atlas Turner, Inc.*,
197 F. 3d 58 (2d Cir. 1999) ...............................................................................55

*Harrison v. Aztec Well Servicing Co.*,
2021 U.S. Dist. LEXIS 244798 (N.D. Tex. Dec. 23, 2021) .....................................45

*Henriquez v. City of Farmers Branch*,
2021 U.S. Dist. LEXIS 188553 (N.D. Tex. Sept. 9, 2021)......................................54

*Herider Farms-El Paso, Inc. v. Criswell*,
519 S.W.2d 473, 477 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.)................................42

*Hernandez v. Clearwater Trasp., Ltd.*,
550 F. Supp. 3d 405 (W.D. Tex. 2021).................................................................49

*Horizon Ag-Products v. Verdesian Life Scis.*,
2020 U.S. Dist. LEXIS 258084 (N.D. Tex. Mar. 5, 2020) ......................................53

*Hutchens v. Smith & Nephew, Inc.*,
2014 U.S. Dist. LEXIS 116839 (N.D. Tex. Aug. 22, 2014)......................................45

*InfoGation Corp. v. HTC Corp.*,
2017 U.S. Dist. LEXIS 103645 (S.D. Cal. Jul. 5, 2017) .........................................54

*Johnson v. Palmer Admin. Servs., Inc.*,
2022 U.S. Dist. LEXIS 207008 (E.D. Tex. Oct. 20, 2022) ......................................43

*Jones v. Wal-Mart Stores, Inc.*,
2006 U.S. Dist. LEXIS 103666 (E.D. Tex. Feb. 2006) ...........................................53

*Kondaur Capital Corp. v. Smith*,
802 Fed. App. 938 (6th Cir. 2020)......................................................................53

*Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*,
2017 U. S. Dist. LEXIS 111889 (Dist. Del. Jul. 19, 2017)......................................54

*Krakauer v. Dish Network, LLC*,
168 F. Supp 3d 843 (M.D. N.C. 2016) ..............................................................8, 47

*Labat v. Rayner*,
2021 U.S. Dist. LEXIS 140566 (E.D. La. Jul. 28, 2021)........................................49

*LaGuardia v. Designer Brands Inc.*,
2021 U.S. Dist. LEXIS 170704 (S.D. Ohio Sept. 9, 2021) .....................................52

v

*Lawler v. Federal Deposit Ins. Corp.*,
   538 S.W.2d 245, 249 1976 Tex. App. LEXIS 2867, 19 U.C.C. Rep. Serv.
   (Callaghan) 1172 ................................................................................................40

*Lee v. Credit Mgmt., LP*,
   846 F. Supp. 2d 716 (S.D. Tex. 2012) ..............................................................48

*Leonard v. Hare*,
   161 Tex. 28, 336 S.W.2d 619, 621 (1960).........................................................42

*Lester v. Wells Fargo Bank N.A.*,
   805 Fed Appx. 288 (5th Cir. 2020)...................................................................12

*Libby v. National Republican Senatorial Comm.*,
   551 F. Supp 3d 724 (W.D. Tex. 2021).........................................................8, 47

*Med. Slenderizing, Inc. v. State*,
   579 S.W.2d 569, 574 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)...................39

*Meretta v. Peach*,
   195 Mich. App. 695 (1992) ...............................................................................25

*Mey v. All Access Telecom, Inc.*,
   No. 5:19-CV-00237-JPB, 2021 WL 8892199 (N.D. W.Va. Apr. 23, 2021) ............6

*Miller v. Kennedy & Minshew*,
   142 S.W.3d 325, 2003 Tex. App. LEXIS 9908 ..................................................42

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012)..........................................................................................12

*Nat'l Coal. of Prayer, Inc. v. Carter*,
   455 F.3d 783 (7th Cir. 2006) ............................................................................17

*Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*,
   235 S.W.3d 695, 2007 Tex. LEXIS 928, 51 Tex. Sup. J. 13 ...............................40

*Noviello v. Holloway Funding Grp.*,
   2023 U.S. Dist. LEXIS 3060 (N.D. Tex. Jan. 9, 2023) .......................................50

*Pension Ben. Guar. Corp. v. Karp*,
   2018 U.S. Dist. LEXIS 83561 (S.D. Cal. May 17, 2018).....................................52

*Petty v. Ferguson*,
   601 S.W.2d 782, 785 (Tex. Civ. App.—Fort Worth 1980, writ dism'd)................39

*Reliant Energy Servs. v. Cotton VAlley Compression, LLC*,
   336 S.W.3d 764, 783, 2011 Tex. App. LEXIS 959, 173 Oil & Gas Rep. 732 .......40

*In re Robbins*,
  2022 FCC LEXIS 687 (Feb. 18, 2022) ...................................................................44

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  18 FCC Rcd 14014 ...................................................................................................51

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act
  of 1991*,
  30 FCC Rcd. 7961 (2015) ........................................................................................12

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
  642 F. 3d 560 (7th Cir. 2011) ....................................................................................8

*SEC v. GenAudio Inc.*,
  32 F. 4th 902 (10th Cir. 2022) .................................................................................52

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources*,
  99 F. 3d 746 (5th Cir. 1996) ....................................................................................45

*In re Spiller*,
  36 FCC Rcd 6225 (Mar. 17, 2021) ..........................................................................45

*Staal v. Scherping Enterprises, Inc.*,
  466 F. Supp. 3d 1030 (D. N.D. 2020) .....................................................................33

*Stratosaudio Inc. v. Subaru of Am., Inc.*,
  2022 U.S. Dist. LEXIS 153799 (W.D. Tex. Aug. 26, 2022) ..................................54

*Sullivan v. All Web Leads, Inc.*,
  2017 U.S. Dist. LEXIS 84232 (N.D. Ill. June 1, 2017) .........................................48

*Susinno v. Work Out World Inc.*,
  862 F. 3d 346 (3d Cir. 2017)....................................................................................50

*Synergy Strategic Solutions, LLC v. Totus Solutions, Inc.*,
  2019 U.S. Dist. LEXIS 53179 (N.D. Tex. Mar. 28, 2019) ....................................45

*Texas v. American Blastfax, Inc.*,
  164 F. Supp. 2d 892 (W.D. Tex. 2001).....................................................................46

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States
  of Am., & the States of California, Illinois, N. Carolina, and Ohio for
  Declaratory Ruling Concerning the Tel. Consumer Prot. Act Rules*,
  28 F.C.C. Rcd. 6574 (2013) ..............................................................................6, 44

*Thomas v. Life Protect 24/7 Inc.*,
  559 F. Supp. 3d 554 (S.D. Tex. 2021) ...............................................................9, 12

vii

*United States v. Dish Network L.L.C.,*
  954 F.3d 970 (7th Cir. 2020) ...................................................................22, 44

*United States v. Dish Network LLC,*
  256 F. Supp. 3d 810 . (C.D. Ill..2017) ...............................................................43

*United States v. Dish Network LLC,*
  75 F. Supp 3d 916,936 (C.D. Ill. Dec. 11, 2014) ................................................10

*United States v. Salinas,*
  763 F.3d 869 (7th Cir. 2014) .............................................................................21

*Van Patten v. Vertical Fitness Group, LLC,*
  847 F. 3d 1037 (9th Cir. 2017) ..........................................................................48

*Walker Ins. Servs. v. Bottle Rock Power Corp.*
  108 S.W.3d 538, 549 2003 Tex. App. LEXIS 4527 ............................................40

*White v. Harrison,*
  390 S.W.3d 666, 672 2012 Tex. App. LEXIS 10279, 2012 WL 6191348 ............42

*Wilke v. CareSource Mgmt. Group Co.,*
  2016 US Dist. LEXIS 170519 (N.D. Ind. Dec. 9, 2016) ...................................8, 47

*Ybarra v. Dish Network, L.L.C.,*
  807 F. 3d 635 (5th Cir. 2015) ............................................................................12

**Statutes**

28 U.S.C. § 1331 ...............................................................................................7, 26

28 U.S.C. § 1337(a) ..........................................................................................7, 26

28 U.S.C. § 1355 ...............................................................................................7, 26

28 U.S.C. § 1367 ...................................................................................................26

28 U.S.C. § 1658 .....................................................................................................8

28 U.S.C. § 1658(a) ...............................................................................................54

47 U.S.C. § 227 .....................................................................................................10

47 U.S.C. § 227(a)(4) ..............................................................................................5

47 U.S.C. § 227(b) .................................................................................................11

47 U.S.C. § 227(b)(1)(A) ..................................................................................11, 48

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................11, 50

47 U.S.C. § 227(b)(1)(B) ...........................................................................................7, 10

47 U.S.C. § 227(b)(2(B) ...................................................................................................10

47 U.S.C. § 227(c) ...............................................................................................................9

47 U.S.C. § 227(c)(1) ..........................................................................................................5

47 U.S.C. § 227(g)(1) ..........................................................................................................8

47 U.S.C. § 227(g)(2) ......................................................................................................7, 26

Ark. Code Ann. §§ 4-88-101 ..........................................................................................12

Ark. Code. Ann. § 4-88-102 ...........................................................................................13

Ark. Code. Ann. § 4-88-102(4) .......................................................................................13

Ark. Code. Ann. § 4-88-102(5) .......................................................................................13

Ark. Code. Ann. § 4-88-102(7) .......................................................................................13

Ark. Code. Ann. § 4-88-107 ...........................................................................................13

Ark. Code. Ann. § 4-88-107(10) .....................................................................................13

Ark. Code. Ann. § 4-88-113(d) .......................................................................................13

Ark. Code. Ann. § 4-88-115 ...........................................................................................13

Ark. Code. Ann. § 4-88-1012(a)(3) .................................................................................16

Ark. Code Ann. § 4-99-101 ............................................................................................14

Ark. Code Ann. § 4-99-103(9) ........................................................................................15

Ark. Code Ann. § 4-99-104(a) ........................................................................................15

Ark. Code Ann. § 4-99-111 ............................................................................................16

Ark. Code Ann. § 4-99-201(a)(1) ...................................................................................15

Ark. Code Ann. § 4-99-201(c)(1) ...................................................................................16

Ark. Code Ann. § 4-99-201(e) ........................................................................................16

Ark. Code Ann. § 4-99-405 ............................................................................................15

Ark. Code Ann. § 4-99-407 ........................................................................16

Ind. Code 24-4.7 ........................................................................................17

Ind. Code 24-4.7-4 ...............................................................................17, 22

Ind. Code 24-4.7-5-1 .................................................................................17

Ind. Code 24-4.7-5-2 .................................................................................17

Ind. Code § 24-4.7-2- ................................................................................19

Ind. Code § 24-4.7-2-1.7 ...........................................................................18

Ind. Code § 24-4.7-2-3 ...............................................................................20

Ind. Code § 24-4.7-2-4 ...............................................................................20

Ind. Code § 24-4.7-2-5 ...............................................................................19

Ind. Code § 24-4.7-2-7 ...............................................................................20

Ind. Code § 24-4.7-2-7.7 ............................................................................18

Ind. Code § 24-4.7-2-8 ...............................................................................20

Ind. Code § 24-4.7-2-9 ...............................................................................19

Ind. Code § 24-4.7-2-10 .............................................................................19

Ind. Code § 24-4.7-4-1 .........................................................................18, 22

Ind. Code § 24-4.7-4-7 ...............................................................................18

Ind. Code § 24-4.7-4-7(e) .....................................................................17, 20

Ind. Code § 24-4.7-5-2 ...............................................................................22

MCL 445.111(n) .........................................................................................24

MCL 445.111a(1) ..................................................................................24, 25

MCL 445.111a(5) ..................................................................................24, 25

MCL 445.901 ..............................................................................................23

MCL 445.903(1)(gg) ..................................................................................23

MCL 445.905 ..............................................................................................23

x

MCL 445.905(1) .................................................................................................. 25

MCL 445.905(2) .................................................................................................. 26

N.C. Gen. Stat. 75-105(a) ................................................................................... 27

N.C. Gen. Stat. § 75-14 ....................................................................................... 30

N.C. Gen. Stat. § 75 101(2) ................................................................................ 29

N.C. Gen. Stat. § 75-101(3) ................................................................................ 28

N.C. Gen. Stat. § 75 101(7) ................................................................................ 29

N.C. Gen. Stat. § 75-101(10) ......................................................................... 28, 29

N.C. Gen. Stat. § 75-101(11) ............................................................................. 28

N.C. Gen. Stat. § 75 101(12) ............................................................................. 29

N.C. Gen. Stat. § 75-102(a) ............................................................................... 27

N.C. Gen. Stat. § 75-102(d) ....................................................................... 27, 28, 30

N.C. Gen. Stat. § 75-104 ................................................................................... 28

N.C. Gen. Stat. § 75-104(a) ............................................................................... 28

N.C. Gen. Stat. § 75-104(b)(2) .......................................................................... 29

N.C. Gen. Stat. § 75-105(a) ............................................................................... 30

N.C. Gen. Stat. § 75-105(d) ............................................................................... 30

N.D.C.C. 51-28-13 ............................................................................................. 30

N.D.C.C. § 51-15-02 ......................................................................................... 34

N.D.C.C. § 51-15-10 ......................................................................................... 35

N.D.C.C. § 51-15-11 ......................................................................................... 35

N.D.C.C. § 51-28-01(1) ..................................................................................... 31

N.D.C.C. § 51-28-01(2) ..................................................................................... 31

N.D.C.C. § 51-28-01(8) ..................................................................................... 32

N.D.C.C. § 51-28-02 ..................................................................................... 31, 34

N.D.C.C. § 51-28-06 ............................................................................................32, 34

N.D.C.C. § 51-28-07 ............................................................................................33, 34

N.D.C.C. § 51-28-17 ............................................................................................33, 34

O.R.C. 4719.01(B) ...................................................................................................36

O.R.C. § 4719.01(A)(4) .............................................................................................36

O.R.C. § 4719.01(A)(6) .............................................................................................36

O.R.C. § 4719.01(A)(7) .............................................................................................35

O.R.C. § 4719.01(A)(8) .............................................................................................36

O.R.C. § 4719.02(A) .................................................................................................35

O.R.C. § 4719.04(A) .................................................................................................35

O.R.C. § 4719.06 ......................................................................................................35

O.R.C. §4719.06(A)(1)-(3) .........................................................................................37

O.R.C. § 4719.12 ......................................................................................................35

O.R.C. § 4719.16(C) .................................................................................................36

Tex. Bus. & Com. Code § 304.052 ..............................................................................37

Texas Bus. & Com. Code § 304.252 ......................................................................37, 38

**Other Authorities**

16 C.F.R. Part 310................................................................................................27, 28

16 C.F.R. Part 310......................................................................................................29

16 C.F.R. Part 310......................................................................................................28

16 C.F.R. § 310.3(b) ..................................................................................................20

47 C.F.R. § 64.1200(a)(1)(iii) ......................................................................................11

47 C.F.R. § 64.1200(a)(2) ...........................................................................................11

47 C.F.R. § 64.1200(a)(3) ...........................................................................................10

47 C.F.R. § 64.1200(c) .................................................................................................5

47 C.F.R. § 64.1200(c)(2) ................................................................8, 9, 10

47 C.F.R. § 64.1200(c)(2)(i)(A)-(E) .................................................52

47 C.F.R. § 64.1200(e) ....................................................................9

47 C.F.R. § 64.1200(f)(9) ................................................................7

47 C.F.R. § 64.1200(f)(9)(i) .............................................................7

47 C.F.R. § 64.1200(f)(10) ...............................................................5

47 C.F.R. § 64.1200(f)(12) ...............................................................6

47 C.F.R. § 64.1200(f)(15) ............................................................9, 51

47 C.F.R. § 64.1200(f)(15) ...............................................................5

11 IAC 1-1-7 ..................................................................................19

27 FCC Rcd 1830 (Feb. 15, 2012) ...................................................5

Restatement (Second) of Agency § 7 ...............................................41

Restatement (Third) of Agency, §1.01(2006) ..................................43

Restatement (Third) of Agency § 4.01 .............................................25

Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60
   Fed. Reg. 43,842, 43,852 (Aug. 23, 1995) ..................................21

Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60
   Fed. Reg. 43,842, 43,852 n.106 (Aug. 23, 1995) .........................21

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat.
   2394, §2(10) ...............................................................................10

Plaintiffs, the States of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas, respectfully submit this memorandum of law.

## I. INTRODUCTION

On June 9, 2020, Plaintiffs (excluding North Dakota) filed their Original Complaint against Defendants, John C. Spiller II, and Jakob A. Mears alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, or its implementing rule, 47 C.F.R. 64.1200 *et seq.*, and various state telephone privacy and telemarketing laws. On August 28, 2020, Plaintiffs filed their First Amended Complaint against the Defendants, adding the State of North Dakota as a plaintiff. On October 30, 2020, Plaintiffs filed their Second Amended Complaint adding Defendants Rising Eagle Capital Group – Cayman, Health Advisors of America, Inc. ("Health Advisors"), Michael Theron Smith, Jr. ("Smith"), and Scott Shapiro ("Shapiro"). In the Second Amended Complaint, the Plaintiffs also added claims that certain Defendants violated the Telemarketing Sales Rule ("TSR").

On March 6, 2023, Stipulated Orders and Final Judgments were entered against Defendants Spiller and Mears which resolved Plaintiffs' claims against them. On May 8, 2023, Plaintiffs filed a Motion to Dismiss (ECF No. 228) to dismiss all remaining Counts of the Second Amended Complaint (ECF No. 56) against Defendants Rising Eagle Capital Group LLC, JSquared Telecom LLC and Rising Eagle Capital Group Cayman. In addition,

Plaintiffs dismissed Counts IX, X, XX, XXI, XXX and XXXI without prejudice against the Health Advisors Defendants.[1]

The case now proceeds to trial against the remaining Defendants—Health Advisors, Smith, and Shapiro—for violations of the TCPA, its implementing rule and various state telephone privacy and telemarketing laws as alleged in Counts VI-VIII, XVII-XIX, XXIII, XXVI-XXIX, XXXII-XXXIII of the Second Amended Complaint.

In Count VI, Plaintiffs allege that Defendants Health Advisors, Shapiro, and Smith (collectively, "Health Advisors Defendants") violated 47 C.F.R. 64.1200(c)(2) and 47 § U.S.C. 227(c) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 179. In Count VII, Plaintiffs allege that Health Advisors Defendants violated 47 C.F.R. 64.1200(a)(3) and 47 U.S.C. § 227(b)(1)(B) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 181. In Count VIII, Plaintiffs allege that Health Advisors Defendants violated 47 C.F.R. 64.1200(a)(1)(iii), 47 C.F.R. 64.1200(a)(2), and 47 U.S.C. § 227(b)(1)(A)(iii) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 183-184. In Count XVII, Plaintiff, State of Arkansas, alleges that Health Advisors Defendants violated Ark. Code Ann. § 4-88-107(a)(10) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 217. In Count XVIII, Plaintiff, State of Arkansas, alleges that Health Advisors Defendants violated Ark. Code Ann. §§ 4-99-104, 4-99-201(a)(1), and 4-99-405(1) for calls occurring from June 2018 to June 14, 2019. *See*

---

[1] Plaintiff State of Missouri filed an action in state court against Defendants Health Advisors of America, Inc. and Michael T. Smith, Jr. and therefore, did not join in seeking relief from any Health Advisors Defendants.

Second Am. Compl. ¶ 220-222. In Count XIX, Plaintiff, State of Indiana, alleges that Health Advisors Defendants violated Ind. Code § 24-4.7-4-1 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 233. In Count XXIII, Plaintiff, State of Michigan, alleges that Health Advisors Defendants violated MCL 445.111a(1) and (5), and 445.903(1)(gg) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 247-248. In Count XXVI, Plaintiff, State of North Carolina, alleges that Health Advisors Defendants violated N.C. Gen. Stat. §§ 75-102(a) and 75-102(d) for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 254-255. In Count XXVII, Plaintiff, State of North Carolina, alleges that Health Advisors Defendants violated N.C. Gen. Stat. § 75-104 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 258. In Count XXVIII, Plaintiff, State of North Dakota, alleges that Health Advisors Defendants violated N.D.C.C. 51-28-02, 51-28-06, and 51-28-07 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 262-264. In Count XXIX, Plaintiff, State of North Dakota, alleges that Health Advisors Defendants violated N.D.C.C. ch. 51-15 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 269. In Count XXXII, Plaintiff, State of Ohio, alleges that Health Advisors Defendants violated O.R.C. §§ 4719.02(A), 4719.04(A), and 4719.06 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 285, 287-288. In Count XXXIII, Plaintiff, State of Texas, alleges that Health Advisors Defendants violated Tex. Bus. & Com. Code § 304.052 for calls occurring from June 2018 to June 14, 2019. *See* Second Am. Compl. ¶ 289.

In their answers, Defendants denied violating the TCPA and various state laws. Additionally, Defendants raised the affirmative defenses that Plaintiffs' claims are barred due to: lack of standing; failure to state a claim upon which relief can be granted because the calling party had been given prior express consent; that Defendants had not willfully violated any statute and any violations were unintentional; that any damages resulted for acts or omissions of third parties who were not agents of Defendants; that called parties were not charged for the calls; that Defendants satisfied the requirements of 47 C.F.R. § 64.1200(c)(2)(i); that parties were misjoined; that the TCPA was unconstitutional at the time some or all of the alleged violations occurred; the doctrine of laches; improper venue; and lack of personal jurisdiction.

## II.   STATEMENT OF THE CASE

Plaintiffs allege that Defendants violated the TCPA or its implementing rule by initiating millions of outbound telephone calls which delivered artificial or prerecorded voice messages ("robocalls") to residents of the Plaintiff States for the purpose of generating insurance sales leads.  The calls occurred between February of 2018 through June 14, 2019. Additionally, Defendants violated various state telephone privacy and telemarketing laws of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas.

### A.   Violations of the Telephone Consumer Protection Act

The TCPA was enacted in 1991 by adding 47 U.S.C. § 227 to the Communications Act of 1934, authorizing the Federal Communications Commission ("FCC") to promulgate rules to "protect residential telephone subscribers' privacy rights to avoid receiving

telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC promulgated rules in 1992, which are codified in 47 CFR § 64.1200.

In 2003, the FCC revised its rules and added new rules establishing a national "do not call" registry ("National Registry") where consumers who do not wish to receive certain types of telemarketing calls can register their telephone numbers. 47 C.F.R. § 64.1200(c). Sellers and telemarketers can download the numbers on the National Registry at telemarketing.donotcall.gov in order to avoid calling numbers on the National Registry.

The telephone calls at issue in this case fall under two categories under the TCPA; the prerecorded message regulations and the Do-Not-Call regulations.

A telephone solicitation is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4), 47 C.F.R. § 64.1200(f)(15). A telephone solicitation does not include calls or messages to: "any person with that person's prior express invitation or permission," or "any person with whom the caller has an established business relationship." *Id.* The "established business relationship" exemption does not apply to calls using an artificial or prerecorded voice. 27 FCC Rcd 1830, 1845 (Feb. 15, 2012)

A "seller" is the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services which is transmitted to any person. 47 C.F.R. § 64.1200(f)(10). In this case, the Health Advisors Defendants are the sellers on whose behalf the telephone solicitations were made which offered health insurance services.

A "telemarketer" is the person or entity that initiates a telephone call or message for the purpose of purpose of encouraging the purchase or rental of, or investment in, property, goods, or services which is transmitted to any person. 47 C.F.R. § 64.1200(f)(12). In this case, the Rising Eagle Defendants acted as telemarketers that initiated the telephone calls or messages.

"Initiate" can include taking steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it. *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, and Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act Rules*, 28 F.C.C. Rcd. 6574, 6583 (2013); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016), as revised (Feb. 9, 2016) (internal citations removed) (declaring the "Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred that ruling...and we have no cause to question it). *Id.* at 7890 ¶ 30 (quoting *DISH Network*, 28 FCC Red. At 6583 ¶ 27). And in making this determination, the adjudicator must look to the totality of the facts and circumstances surrounding the placing of a particular call. *Id.* Factors relevant to this analysis include the extent to which the defendant controls: (i) the call's message; (ii) the timing or initiation of the call; and (iii) who receives the call. *Cunningham v. Montes*, 378 F.Supp.3d 741, 747–48 (W.D. Wis. 2019); *Mey v. All Access Telecom, Inc.*, No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *4 (N.D. W.Va. Apr. 23, 2021).  In this case, the Health Advisor Defendants were sellers that also initiated the calls at issue by being so involved in the

placing of the calls as to be directly liable for them in that they provided the telephone numbers to dial, approved the prerecorded message to be played, gave instruction to the Rising Eagle Defendants as to the dates, times and even as to the speed at which to operate the dialer platform.

The TCPA prohibits the initiation of a telephone call which delivers a prerecorded or artificial voice message to a residential line without prior express written consent from the call recipient unless the call is initiated for emergency purposes or is exempted by rule or order by the FCC. 47 U.S.C. § 227(b)(1)(B). "Prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using...an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(9). The written agreement must include a clear and conspicuous disclosure that informs the person: "(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using...an artificial or prerecorded voice" and "(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(9)(i).

This Court has subject matter jurisdiction to hear the Plaintiffs' TCPA claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1355, and has exclusive jurisdiction pursuant to 47 U.S.C. § 227(g)(2). When a State Attorney General "has reason to believe that any

person has engaged or is engaging in a pattern or practice of telephone calls or other transmission to residents of that State in violation of this section or the regulations prescribed under this section" then "the State may bring a civil action on behalf of its residents." 47 U.S.C. § 227(g)(1). Plaintiffs bring these claims in *parens patriae* to protect the citizens of their states. Courts have found that the annoyance and distress caused by unwanted telemarketing calls constitute injuries sufficient to establish the Plaintiffs' standing. *Libby v. National Republican Senatorial Comm.*, 551 F. Supp 3d 724, 727 (W.D. Tex. 2021); *Krakauer v. Dish Network, LLC*, 168 F. Supp 3d 843, 845 (M.D. N.C. 2016); *Wilke v. CareSource Mgmt. Group Co.*, 2016 US Dist. LEXIS 170519, *8 (N.D. Ind. Dec. 9, 2016). The actual harm caused to Plaintiffs' citizens meets the standard set forth in *Alfred L. Snapp & Son. V. Puerto Rico*, 458 U.S. 592, 602-05 (1982) to support Plaintiffs' TCPA claims.

The statute of limitations under the TCPA is four years, and that limitations period does not implicate state law. 28 U.S.C. § 1658. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F. 3d 560, 561 (7th Cir. 2011). As the Plaintiff's Second Amended Complaint was filed June 9, 2020, the timeframe applicable to this cause of action begins on June 9, 2016.

### 1.        Making Telephone Solicitations to Residential Numbers on the National Do Not Call Registry- Count VI

Plaintiffs allege that Defendants violated the TCPA by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers whose telephone numbers were listed on the National Registry in violation of 47 C.F.R. §

64.1200(c)(2) and 47 U.S.C. § 227(c). The FCC Rule provides that "(c) No person or entity shall initiate any telephone solicitation, as defined in paragraph (f)(12) of this section, to…(2) A residential telephone subscriber who has registered his or her telephone number on the national do not call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Sellers and telemarketers must honor the registration as long as the number remains on the National Registry. *Id*. Consumers may add their wireless telephone numbers to the National Registry, as well as their residential land lines.  47 C.F.R. § 64.1200(e)

The National Registry was established in 2003 to enable individuals to avoid receiving unwanted telemarketing calls. 47 C.F.R. § 64.1200(c)(2) prohibits making a telemarketing call to a number listed on the National Registry without having an established business relationship with the telephone subscriber. *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 448 (S.D. Tex. 2021); *Cunningham v. Mark D. Guidubaldi & Assoc.*, 2019 U.S. Dist. LEXIS 38652, *4, *adopted by*, 2019 U.S. Dist. LEXIS 170945 (E.D. Tex. Jan. 11, 2019) Telemarketers who follow the safe harbor provisions in the Rule are not liable for certain calls that resulted from errors or mistakes. To be eligible for the safe harbor provisions the telemarketer would have to show they have written procedures for implementing the do not call requirement for numbers on the National Registry and would have to maintain records documenting the use of a process to prevent telemarketing to numbers on the National Registry. 47 C.F.R. § 64.1200(c)(2)(i).

It is not necessary for the Plaintiffs to prove that the calls were made to the person who registered the number on the National Registry, merely that the number is on the

Registry. *United States v. Dish Network LLC*, 75 F. Supp 3d 916,936 (C.D. Ill. Dec. 11, 2014)

Defendants have violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c)(2) by engaging in a pattern or practice of making outbound telemarketing calls to sell health insurance products and services to residents of the Plaintiff States whose telephone numbers were on the National Registry.

### 2.      Using Artificial or Prerecorded Voice Messages to Residential Telephone Lines – Count VII

Plaintiffs allege that Defendants have violated the TCPA, 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(1)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party and such calls were not initiated for emergency purposes or exempted by rule or order of the Federal Communications Commission ("FCC") under 47 U.S.C. § 227(b)(2(B).

The TCPA states that "[i]t shall be unlawful for any person with the United States, or any person outside the United States if the recipient is within the United States…to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the call party, unless the call is initiated for emergency purposes…." 47 U.S.C § 227(b)(1)(B)

Congressional findings confirm that consumers consider "prerecorded calls, regardless of the content [of the] message, to be a nuisance and an invasion of privacy." TCPA of 1991, Pub. L. No. 102-243, 105 Stat. 2394, §2(10). Defendants' calls to

consumers were for the purpose of inducing them to purchase health insurance or extended service warranties for automobiles. Courts have found that robocalls with automated or prerecorded messages that are intended to promote products and services constitute unsolicited advertisements, telephone solicitations and telemarketing under the TCPA. *Arcieri v. Suntuity Solar Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 186205, *14 (Dist. N.J. Sept. 27, 2021); *Barton v. J.M.S. Assoc. Mktg,* LLC, 2021 U.S. Dist. LEXIS 171409, *14 (W.D. Wash. Sept. 9, 2021); *Chinitz v. NRT West, Inc.*, 2019 U. S. Dist. LEXIS 27134, *6-7 (N.D. Cal. Feb. 20, 2019); *Chesbro v. Best Buy Stores, P.L.*, 705 F. 3d 913, (9th Cir. 2012)

### 3.   Using Artificial or Prerecorded Voice Messages to Cellular Telephone Lines – Count VIII

Plaintiffs allege that Defendants violated 47 C.F.R. § 64.1200(a)(1)(iii), 47 U.S.C. § 227(b)(1)(A)(iii), and 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of initiating telephone solicitations to cellular telephone lines using artificial or prerecorded voices to deliver a message related to health care without the prior express written consent of the called party.

The TCPA states that it is a violation for any person within the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using...an artificial or prerecorded voice" to any "cellular telephone service." 47 U.S.C. § 227(b)(1)(A). *Burke v. Direct Energy, LP*, 2021 U.S. Dist. LEXIS 178408, *2 (S.D. Tex. Sept. 20, 2021). To make a TCPA claim under 47 U.S.C. § 227(b), one must show that: 1) the defendant called a cellular telephone number;

2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; 3) without the recipient's prior express consent.

The TCPA prohibits the initiation of telephone solicitations to cellular telephone lines using artificial or prerecorded voices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012); *Lester v. Wells Fargo Bank N.A.*, 805 Fed Appx. 288, 289 (5th Cir. 2020); *Ybarra v. Dish Network, L.L.C.*, 807 F. 3d 635, 640 (5th Cir. 2015): *Thomas*, 559 F. Supp. 3d at 562-63 (multiple unwanted phone calls with prerecorded messages give rise to a concrete injury under the TCPA). Cellular phones were added to TCPA coverage in 2015 when the FCC recognized that the invasion of privacy from an unwanted call may be greater "where the calls are received on a phone that the consumer may carry at all times." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, ¶124 (2015).

In order for a call to be covered under the "artificial or prerecorded voice" provision of the TCPA, the defendant must make a call and an artificial or prerecorded voice message must play. *Ybarra*, 807 F. 3d at 640-1 ("With a prerecorded voice, though, unless the recipient answers, an artificial or prerecorded voice is never used.").

### B.   Violations of State Telephone Privacy and Telemarketing Laws

In addition to violating the TCPA, Defendants' actions also violated the telephone privacy and telemarketing laws of the Plaintiff States.

#### 1.   Arkansas Telemarketing Laws

Plaintiff Arkansas alleges a claim in Count XVII under the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. §§ 4-88-101 *et seq*. The ADTPA prohibits

"unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code. Ann. § 4-88-107(10). "An act is unconscionable if it affronts the sense of justice, decency, and reasonableness." *Gulfco of Louisiana, Inc. v. Brantley*, 2013 Ark. 367, 430 S.W.3d 7 (2013). The statute of limitations is five years, and so extends back to calls made after June 09, 2016. Ark. Code. Ann. § 4-88-115.

The ADTPA defines "person" to mean "an individual, organization, group, association, partnership, corporation, or any combination of them." Ark. Code. Ann. § 4-88-102(5). At all times relevant to this complaint, Defendants were "persons" under the meaning of Ark. Code. Ann. § 4-88-102(5). Furthermore, the ADTPA defines "goods" as "any tangible property, coupons, or certificates, whether bought or leased," Ark. Code. Ann. § 4-88-102(4), and "services" as "work, labor, or other things purchased that do not have physical characteristics." Ark. Code. Ann. § 4-88-102(7). At all times relevant herein, Defendants engaged in the sale of goods or services as defined by Ark. Code. Ann. § 4-88-102, which constitutes business, commerce, or trade under the ADTPA. Ark. Code. Ann. § 4-88-107.

Defendants engaged in unconscionable business practices when they initiated 29,943,608 prerecorded telephone calls to Arkansas residents on the National Do Not Call List for the purpose of soliciting the sale of purported health insurance and extended automobile warranties, continuing even after consumers requested that the solicitor stop calling.

Defendants are jointly and severally liable for violations of the ADTPA because each is a "controlling person" under Ark. Code. Ann. § 4-88-113(d), which states that:

> Every person who directly or indirectly controls another person or who is in violation of or liable under this chapter and every partner, officer, or director of another person who is in violation of or liable under this chapter shall be jointly and severally liable for any penalties assessed and any monetary judgments awarded in any proceeding for civil enforcement of the provisions of this chapter, provided that the persons to be held jointly and severally liable knew or reasonably should have known of the existence of the facts by reason of which the violation or liability exists.[2]

At all times relevant herein, Defendants knew or reasonably should have known of the facts and violations alleged herein, and each Defendant directly or indirectly facilitated and assisted the unconscionable acts and practices that violated the ADTPA.

Plaintiff Arkansas alleges a claim in Count XVIII under the Regulation of Telephonic Sellers ("RTS"), Ark. Code Ann. § 4-99-101 *et seq.* that Defendants violated the RTS when they failed to register with the Arkansas Secretary of State before doing business within the state as a telephonic seller; when they initiated telephone calls using artificial or prerecorded voices to deliver messages that failed to clearly identify the business, individual, or other entity responsible for initiating the call; when Defendants initiated robocalls to consumers on the Do Not Call Registry; and when Defendants continued to initiate calls to consumers even after consumers informed Defendants that the consumers' telephone numbers were on the Do Not Call Registry. Second Am. Compl., ¶¶ 220–222.

The RTS defines "telephonic seller" (or "seller") as "a person who on his or her own behalf or through salespersons causes a telephone solicitation or attempted telephone

---

[2] This statute was updated after the filing of this lawsuit by Acts of 2021, Act 1015, § 3, eff. July 28, 2021. The statute as quoted contains the text at the time of the filing of the Complaint.

solicitation to occur" which meets certain specified criteria. Ark. Code Ann. § 4-99-103(9). Defendants are telephonic sellers under the meaning of the RTS. Telephonic sellers are required to register with the Arkansas Secretary of State no less than ten (10) days before doing business in the state. Ark. Code Ann. § 4-99-104(a). A seller is deemed to be doing business in the state if the seller "solicits prospective purchasers from locations in [Arkansas] or solicits prospective purchasers who are located in [Arkansas]." Ark. Code Ann. § 4-99-104(a).  Furthermore, Ark. Code Ann. § 4-99-201(a)(1) requires that any person who, on behalf of any business, calls a residential phone number for the purpose of soliciting or to offer goods or services shall immediately disclose to the person contacted the caller's identity, the identity of the organization on whose behalf the telephone call is being made, and the purposes of the telephone call, including a brief description of the goods or services to be offered. The statute requires that the person calling shall immediately discontinue the call if the person called indicates that he or she does not want to hear about the goods or services. The RTS also provides that it is a violation for any person to make or transmit a telephone solicitation to the telephone number of any Arkansas consumer whose telephone number is included in the then-current database maintained by the Attorney General, or even to make or transmit a telephone solicitation without having first accessed the then-current database maintained by the Attorney General. Ark. Code Ann. § 4-99-405. The Attorney General currently utilizes the National Do Not Call Registry as the statewide database to maintain the list of telephone numbers of Arkansas consumers who object to receiving telephone solicitations.

A violation of the RTS constitutes a separate deceptive act or practice as defined by the ADTPA and may be enforced by the Attorney General. Ark. Code Ann. § 4-99-111; Ark. Code Ann. § 4-99-201(c)(1); Ark. Code Ann. § 4-99-407. Further, the remedies and penalties available for RTS violations are cumulative and in addition to the remedies and penalties provided for ADTPA violations. Ark. Code Ann. § 4-99-201(e).

A total of 29,943,608 calls were made by Defendants to Arkansas subscribers who were listed on the Do Not Call registry. Of those calls, 10,142,516 came from leads provided by Shapiro, who had actual authority under his contract with Health Advisors to provide those leads to Spiller and Mears. Defendants were not registered as telephonic sellers with the Arkansas Secretary of State. Many of these numbers were listed on the Do Not Call Registry, and the owners of these numbers had no relationship with Spiller and Mears and had not consented to receive such calls. Further, neither the telephone solicitors nor the pre-recorded messages provided the initial disclosures required by law for telephonic solicitations. Arkansas consumers who repeatedly informed the solicitors that their number was on the Do Not Call Registry requested that the solicitor stop calling; however, these requests were ignored, and the calls continued.

Arkansas has established that Defendants violated the ADTPA and the RTS when they made 29,943,608 calls to Arkansas residents. Each call was a separate violation. Under the ADTPA, the Court may assess civil penalties to be paid to the state, not to exceed ten thousand dollars per violation. Ark. Code. Ann. § 4-88-1012(a)(3). There is no cap on civil penalties under the ADTPA. Arkansas is entitled to recover civil penalties for the 29,943,608 calls that Defendants made to Arkansas residents on the National Do Not Call

List between January 2019 and June 9, 2020. The maximum civil penalty exceeds one billion dollars (29,943,608 X $10,000 = $299,436,080,000). Arkansas suggests that $1 per violation, or $29,943,608, would be an appropriate penalty.

### 2.    Indiana Telemarketing Laws

Plaintiff, the State of Indiana, by and through its Attorney General, Theodore Rokita, is authorized under Ind. Code 24-4.7-5-1 to enforce Indiana's Telephone Solicitation of Consumers Act, ("TSCA"), Ind. Code 24-4.7-4, and to seek civil penalties, injunctive relief, "all money the defendant[s] obtained through a violation of IC 24-4.7-4," and attorney's fees. Ind. Code 24-4.7-5-2.

Indiana alleges violations of the TSCA, which prohibits persons from making sales calls to consumers on Indiana's Do Not Call list. Further, Indiana also alleged violations of the TSCA if a person substantially assists or supports another telephone solicitor, supplier, or caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates the TSCA, Ind. Code 24-4.7. Ind. Code § 24-4.7-4-7(e); *See* Second Am. Compl. ¶¶ 224-231. "Once citizens affirmatively place their telephone numbers on the list, 'telephone solicitors' cannot legally call the numbers for a 'telephone sales call.'" *Nat'l Coal. of Prayer, Inc. v. Carter*, 455 F.3d 783, 784 (7th Cir. 2006).

Defendants caused telephone sales calls to be made to telephone numbers on Indiana's Do Not Call List. Or, in the alternative, Defendants substantially assisted a telephone solicitor, supplier, or caller engaged in any act or practice that violates the TSCA and Defendants knew or consciously avoided knowing that the telephone solicitor,

supplier, or caller has engaged in any act or practice that violates the TSCA. Defendants did this when they caused to be made or assisted and facilitated in the making of telephone sales calls, selling health insurance, to Indiana consumers on the Indiana Do Not Call List.

Ind. Code § 24-4.7-4-1 prohibits a "telephone solicitor" from making or causing to be made a "telephone sales call" to "a telephone number if that telephone number appears in the most current quarterly listing published by the division."

Ind. Code § 24-4.7-4-7 prohibits that a "person may not provide substantial assistance or support to a telephone solicitor, a supplier, or a caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates" the TSCA. Further, "A telephone solicitor, a supplier, or a caller may not provide substantial assistance or support to another person if the telephone solicitor, supplier, or caller knows or consciously avoids knowing that the person has engaged in any act or practice that violates" the TSCA.

Ind. Code § 24-4.7-2-7.7 defines supplier as "A seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions." It includes a "wholesaler, or retailer, whether or not the person deals directly with the consumer."

Ind. Code § 24-4.7-2-1.7 defines caller as an individual or entity that attempts to contact or contacts a "a subscriber in Indiana by using a telephone or telephone line." This includes an officer or a corporation or member of a limited liability company if the individual has a high degree of involvement and "fails to take reasonable steps to prevent the unlawful contact or attempted contact."

Ind. Code § 24-4.7-2-10 defines "telephone solicitor" as a person doing business in Indiana. It includes a person "that controls, directly or indirectly, one (1) or more other persons."

Ind. Code § 24-4.7-2-5 defines "doing business in Indiana" as making or causing other to make "telephone sales calls to consumers located in Indiana whether the telephone sales calls are made from a location in Indiana or outside Indiana." Further, a person that controls, directly or indirectly, one or more persons to make or cause to make telephone calls to "a consumer located in Indiana is "doing business in Indiana", no matter where the person is located or domiciled."

Ind. Code § 24-4.7-2- defines "consumer" as a residential telephone subscriber who has a "place of primary use" in Indiana or is issued "an Indiana telephone number or an Indiana identification number" and is an actual or prospective purchaser, lessee, or recipient of consumer goods or services."

11 IAC 1-1-7 defines "residential telephone subscriber" as an individual who subscribes to or for another person with the individual's residential address, including: a landline, wireless, or interconnected VoIP.

Ind. Code § 24-4.7-2-9 defines "telephone sales call" as a telephone call made to a consumer for: 1. "Solicitation of a sale of consumer goods or services" or 2. "Obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." The term includes a call made by use of a record message device.

Ind. Code § 24-4.7-2-3 defines "consumer goods or services" as "[t]angible or intangible personal property or real property that is normally used for personal, family, or household purposes" and "[s]ervices related to" said property."

Ind. Code § 24-4.7-2-8 defines "telephone number" as the residential telephone number that is "is assigned to a subscriber who has a place of primary use in Indiana" or "otherwise represents an Indiana telephone number or is associated with an Indiana identification number."

Ind. Code § 24-4.7-2-7 defines "listing" as "the no telephone sales solicitation listing published by the division under IC 24-4.7-3 that lists the telephone numbers of consumers who do not wish to receive telephone sales calls."

Ind. Code § 24-4.7-2-4 defines "division" as "the consumer protection division of the office of the attorney general." Indiana's Do Not Call List can be found here: https://www.indonotcall.org/.

Indiana law does not directly define "consciously avoids knowing" and "substantial assistance." Ind. Code § 24-4.7-4-7(e) is nearly identical to the Telemarketing Sales Rule's ("TSR") assisting and facilitating provision. *See* 16 C.F.R. § 310.3(b) ("It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates...this Rule.").

In defining "substantial assistance," courts have defined it as requiring more than casual or incidental help to a telemarketer. *See* 16 C.F.R. § 310.3(b); *FTC v. Chapman*, 714

F.3d 1211, 1216 (10th Cir. 2013) (quoting *FTC, Complying with the Telemarketing Sales Rule*, available at http://business.ftc.gov/documents/bus27-complying-telemarketing-sales-rule#assisting (Feb. 2011)); *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 WL 3652248, at *5 (E.D. N.Y. Aug. 18, 2011) (quoting Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (Aug 23, 1995)). here must be some link between the third party's actions and the telemarketer's, but not necessarily a direct connection. *See Chapman*, 714 F.3d at 1216. For example, someone who provides lists of contacts to a seller or telemarketer, drafts the language used for telemarketing, or makes available incentives to be used in the telemarketing, provides substantial assistance. *See* Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43,842, 43,852 (Aug. 23, 1995).

A person consciously avoids knowing about a violation when "there are facts and evidence that support an inference of deliberate ignorance." Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43,842, 43,852 n.106 (Aug. 23, 1995) (citing *United States v. Williams*, 32 F.3d 570, at *6 (7th Cir. 1994)); *see FTC v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (quoting *FTC, Complying with the Telemarketing Sales Rule*, available at https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule (Feb. 2011)) ("[T]aking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability."). Knowledge can be inferred from a combination of suspicion and indifference to the truth. *See United States v. Salinas*, 763 F.3d 869, 875 (7th

Cir. 2014) (discussing the "ostrich instruction"); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (finding that a willfully blind defendant takes deliberate actions to avoid confirming a high probability of wrongdoing). Further, "knowledge of the agent is imputed to the principal." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020).

If Indiana establishes that Defendants violated the TSCA, the Court may enjoin Defendants from violating Ind. Code 24-4.7-4; award a civil penalty of $10,000 for the first violation of the TSCA and $25,000 for subsequent violations of the TSCA (for purposes of the TSCA, each call violative call is a separate violation); award all the money Defendants obtained through a violation of the TSCA; and award the Attorney General reasonable costs in the investigation, maintaining the action, attorney's fees, and costs of the actions. Ind. Code § 24-4.7-5-2.

Further, the Attorney General may obtain these remedies separately against or from each person that violates the Ind. Code § 24-4.7-4-1, including a person that directly or indirectly controls a person that violates Ind. Code § 24-4.7-4-1.

To succeed a claim under the TCSA, Indiana must establish that Defendants made or caused to be made telephone sales calls to phone numbers on the Indiana Do Not Call List. In the alternative, Indiana must establish that Defendants provided substantial assistance or support to a "a telephone solicitor, a supplier, or a caller" who made or made or caused to be made telephone sales calls to phone numbers on the Indiana Do Not Call List, and Defendants knew or consciously avoided knowing the "telephone solicitor,

supplier, or caller" made or caused to be made telephone sales calls to phone numbers on the Indiana Do Not Call List.

### 3.     Michigan Telemarketing Laws

Plaintiff, the State of Michigan, by and through its Attorney General, Dana Nessel, is authorized to enforce the Michigan Consumer Protection Act, ("MCPA"), MCL 445.901 et seq. and to seek civil penalties, costs, injunctive orders, and other equitable relief against violators of the Act.  MCL 445.905.

Plaintiff State of Michigan alleges a claim in Count XXIII for violation of the MCPA, which provides that it is a violation of the MCPA to violate the Michigan Home Solicitation Sale Act ('MHSSA'), in connection with a telephone solicitation. MCL 445.903(1)(gg).

Plaintiff State of Michigan alleges that Defendants violated the MHSSA when they made, or caused to be made, telephone solicitation calls to Michigan phone numbers that were on the National Do Not Call Registry and using prerecorded voice messages in the calls.

Count XXIII alleges:

> MCL 445.111a(5) provides that no telephone solicitor shall make a telephone solicitation to a Michigan telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(5) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers when those numbers were in the pertinent edition of the National Do Not Call Registry. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

Second Am. Compl. ¶ 247.

> MCL 445.111a(1) prohibits any person from making a telephone solicitation using a prerecorded message, in whole or in part. Defendants, and/or third parties acting on Defendants' behalf, have violated MCL 445.111a(1) and, thus, MCL 445.903(1)(gg) of the MCPA by making telephone solicitations to the telephone numbers of Michigan telephone subscribers using a prerecorded message, in whole or in part. Such violations by Defendants, and/or third parties acting on Defendants' behalf, were persistent and knowing.

Second Am. Compl. ¶ 248.

The MHSSA prohibits a telephone solicitor from making, or causing to be made, a telephone solicitation to a person residing in Michigan whose residential telephone number is on the then-current version of the federal do not call registry. MCL 445.111a(5)

The MHSSA further prohibits a telephone solicitation that consists in whole or in part of a recorded message. MCL 445.111a(1).

The MHSSA defines "telephone solicitor" as any person who "makes or causes to be made" a telephone solicitation from within or outside of Michigan, including but not limited to, calls made by use of automated dialing and announcing devices or by a live person." MCL 445.111(n).

Under Michigan law, a defendant can be liable for violations of law committed by the actions of their agent. An agency relationship may arise when there is a manifestation by the principal that the agent may act on his behalf. The test of whether an agency relationship has been created is whether the principal has a right to control the conduct of the agent. The authority of an agent may be actual or apparent. Actual authority may be express or implied. Implied authority is authority which an agent

believes he possesses. *Meretta v. Peach,* 195 Mich. App. 695, 697, 698 (1992). When an agent purporting to act for his principal exceeds his actual or apparent authority, the act of the agent may still bind the principal if he ratifies it. *David v. Serges*, 373 Mich. 442, 443 (1964). A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents. Restatement (Third) of Agency § 4.01. Unauthorized acts of an agent are ratified if a principal accepts the benefits of the unauthorized acts with knowledge of the material facts. *Bruno v. Zwirkoski,* 124 Mich. App. 664, 668 (1983).

A defendant may violate the Michigan Home Solicitation Sales Act as a telephone solicitor by causing a telephone a solicitation call to be made to a Michigan subscriber on the National Do Not Call Registry, MCL 445.111a.(5) or using a recorded message, MCL 445.111a.(1), or doing so through agency.

To succeed in a claim under the MCPA, Plaintiff State of Michigan must establish that Defendant(s), as a telephone solicitor or through agency, made, or caused to be made, telephone sales calls to Michigan phone numbers on the National Do Not Call Registry; or that were prerecorded, in whole or in part in violation of the MHSSA.

If Michigan establishes a violation of the MCPA the court may award costs to the State. Further, for persistent and knowing violation, the court may assess the defendant a civil fine of not more than $25,000.00. MCL 445.905(1).

Defendants assert (for the first time in the Joint Pretrial Order) that the MCPA requires any state enforcement action to proceed only in a designated Michigan court. However, MCL 445.905(1) provides "[t]he action *may* be brought in the circuit court of

the county where the defendant is established or conducts business or, if the defendant is not established in this state, in the circuit court of Ingham County (emphasis added)." The word "only" does not appear. Plaintiff Michigan asserts that the statutory language, pertaining to venue for actions, is permissive and not mandatory or jurisdictional.

Defendants also assert that this Court lacks subject matter jurisdiction to hear any MCPA claims alleging insufficient 10-day notice required under MCL 445.905(2). It is Plaintiff State of Michigan's position that this assertion is misplaced as Section 5(2) of the MCPA is a procedural requirement, not jurisdictional, as a court has authority to waive the notice requirement "upon good cause shown." It is well established that subject matter jurisdiction cannot be waived by the parties, or a court. See *Arbaugh v Y_H Corp*, 546 U.S. 500, 514 (2006) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). Including the waiver language is clear evidence of the Michigan Legislature's intent that MCPA Section 5(2) be a procedural requirement and not jurisdictional. Further, Defendants did not timely raise the notice requirement (by responsive pleading, subsequent motion or in any other manner prior to inclusion in the Joint Pretrial Order) and is therefore waived.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355, and the TCPA, 47 U.S.C. § 227(g)(2). It is Plaintiff State of Michigan's position that the Court has pendent subject matter jurisdiction over all of the state law claims pursuant to 28 U.S.C. § 1367.

### 4.    North Carolina Telemarketing Laws

Plaintiff, the State of North Carolina, by and through its Attorney General, Joshua H. Stein, is authorized under N.C. Gen. Stat. 75-105(a) to enforce the State's Telephone Solicitations Act, N.C. Gen. Stat. 75-100, et seq., and to seek civil penalties, restraining orders and other equitable relief against violators of the Act. This relief also includes reasonable attorneys' fees if the Court finds the violators willfully engaged in the act or practice.

Plaintiff State of North Carolina alleges a violation of the Telephone Solicitations Act in Count XXVI. The Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, N.C. Gen. Stat. § 75-102, provides that no telephone solicitor shall make a telephone solicitation to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry, N.C. Gen. Stat. § 75-102(a), and requires telephone solicitors to implement systems and procedures to prevent telephone solicitations to telephone subscribers whose numbers appear in the National Do Not Call Registry and to monitor and enforce compliance by its employees and independent contractors in those systems and procedures.  N.C. Gen. Stat. § 75-102(d).

North Carolina's Telephone Solicitations Act prohibits a telephone solicitor from making a telephone solicitation to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry.  N.C. Gen. Stat. § 75-102(a). The "'Do Not Call' Registry" is created and maintained by the Federal Trade Commission pursuant to the Telemarketing Sales

Rule.  N.C. Gen. Stat. § 75-101(3). The term "telephone solicitor" means an individual or entity that, directly or through agents, makes or attempts to make telephone solicitations or causes telephone solicitations to be made. N.C. Gen. Stat. § 75-101(10). "Telephone solicitor" also includes any party defined as a "telemarketer" under the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. N.C. Gen. Stat. § 75-101(10). The term "telephone subscriber" means an individual who subscribes to a residential telephone service from a provider, including a wireless telephone company. N.C. Gen. Stat. § 75-101(11). The term "telephone solicitation" means a voice or text communication, whether prerecorded, live, over a telephone line or wireless telephone network that is made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase of goods or services, or obtaining information that will or may be used for that purpose. "Telephone solicitation" also includes those transactions that are defined as "telemarketing" under the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. Section 75-102 also requires telephone solicitors to implement systems and written procedures to prevent making telemarketing calls to numbers on the Do Not Call Registry. N.C. Gen. Stat. § 75-102(d).

Plaintiff State of North Carolina also alleges a violation of the Telephone Solicitations Act in Count XXVII. The Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, N.C. Gen. Stat. § 75-104, provides that, subject to some exceptions, no person may use an automatic dialing and recorded message player to make an unsolicited telephone call. N.C. Gen. Stat. § 75-104(a). One of those exceptions allows a person to make such calls if, prior to the playing of the recorded message, a live

operator, among other things, states the nature and length in minutes of the recorded message, and asks for and receives prior approval to play the recorded message from the person receiving the call.  N.C. Gen. Stat. § 75-104(b)(2).

An "unsolicited telephone call" is a voice or text communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network that is made by a person to a telephone subscriber without prior express invitation or permission. N.C. Gen. Stat. § 75 101(12). A "person" is defined as any individual, business establishment, business, or other legal entity. N.C. Gen. Stat. § 75 101(7). An "automatic dialing and recorded message player" means, in relevant part, any automatic equipment that incorporates a storage capability of telephone numbers to be called that, working alone or in conjunction with other equipment, disseminates a prerecorded message to the telephone number called. N.C. Gen. Stat. § 75 101(2).

Section 75-105 imposes penalties on telephone solicitors. As set out above, the term "telephone solicitor" means an individual or entity that, directly or through agents, makes or attempts to make telephone solicitations or causes telephone solicitations to be made. N.C. Gen. Stat. § 75-101(10). "Telephone solicitor" also includes any party defined as a "telemarketer" under the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310.  N.C. Gen. Stat. § 75-101(10).

In actions brought by the North Carolina Attorney General under the Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, violations established under Sections 75-102 and 75-104 shall result in the following civil penalties: five hundred dollars ($500.00) for the first violation; one thousand dollars ($1,000) for the

second violation; and five thousand dollars ($5,000) for the third and any other violation that occurs within two years of the first violation. N.C. Gen. Stat. § 75-105(a).

Section 75-102(d) requires telephone solicitors to implement systems and written procedures to prevent telephone solicitations to telephone subscribers whose telephone number appears in the Do Not Call Registry, to train, monitor and enforce compliance by its employees, to monitor and enforce compliance by its independent contractors, to record consumers' do-not-call requests, and to maintain Internal Do-Not-Call Lists. N.C. Gen. Stat. § 75 102(d).

Pursuant to N.C. Gen. Stat. §§ 75-14 and 75-105(a), this Court may also permanently enjoin Defendants, their successors, agents, representatives, employees, assigns and all persons who act in concert with Defendants from violating N.C. Gen. Stat. §§ 75 102 and/or 75-104. Additionally, pursuant to N.C. Gen. Stat. § 75-105(d), upon a finding from this Court that Defendants willfully engaged in violations of N.C. Gen. Stat. §§ 75 102 or 75-104, the State of North Carolina may be awarded reasonable attorneys' fees.

### 5.      North Dakota Telemarketing Laws

Plaintiff, the State of North Dakota, by and through its Attorney General, Drew H. Wrigley, is authorized under N.D.C.C. 51-28-13 to enforce the States Telephone Solicitations Act, N.D.C.C. 51-28-01, et seq., and to seek civil penalties, attorney's fees and costs, and equitable relief against violators of the Act.

Plaintiff State of North Dakota alleges violations of the North Dakota Telephone Solicitations Law that prohibits the use of prerecorded or synthesized voice messages,

prohibits telephone solicitations to subscribers on the North Dakota or national do-not-call registries, and requires a telephone solicitor to immediately identify themselves at the beginning of a telephone call.

Count XXVIII alleges:

> In violation of N.D.C.C. § 51-28-02, Defendants, or an agent on Defendants' behalf, used or connected to the telephone line of a subscriber in North Dakota using an automatic dialing-announcing device or delivered a prerecorded or synthesized voice message where a subscriber did not knowingly request, consent to, permit, or authorize receipt of the message. Defendants' prerecorded or synthesized voice message was not immediately preceded by a live operator who obtained the consent of the subscriber before they delivered a message.

Second Am. Compl. ¶ 262.

N.D.C.C. § 51-28-01(1) defines "automatic dialing-announcing device" as a "device that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called." N.D.C.C. § 51-28-01(2) defines "callers" as a "person, corporation, firm, partnership, association, or legal or commercial entity" that attempts to contact or contacts North Dakota subscribers using a telephone or telephone line.

N.D.C.C. § 51-28-02 proscribes the use of an automatic dialing-announcing device or delivery of a prerecorded or synthesized voice message "unless the subscriber has knowingly requested, consented to, permitted, or authorized receipt of the message or the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered." Therefore, to succeed on a claim under N.D.C.C. § 51-28-02 Plaintiff State of North Dakota must establish that Defendants called a North Dakota

subscriber without first receiving knowing consent or without first obtaining consent from a live operator.

Count XXVIII next alleges:

> In violation of N.D.C.C. § 51-28-06, Defendants, or an agent on Defendants' behalf, made or caused to be made telephone solicitations to a subscriber in North Dakota who, for at least thirty-one days before the date of the call, was on the do-not-call list established and maintained or used by the Attorney General of North Dakota, as provided by N.D.C.C. § 51-28-09, or the national do-not-call registry established and maintained by the Federal Trade Commission under 16 C.F.R. Part 310.

Second Am. Compl. ¶ 263.

N.D.C.C. § 51-28-01(8) defines "telephone solicitation" as "any voice, text, or other electronic communication over a telephone line for...the purchase or rental of, or investment in, property, goods, services, or merchandise...whether the communication is made by a live operator, through the use of an automatic dialing-announcing device, or by other means."

N.D.C.C. § 51-28-06 proscribes a caller from "mak[ing] or caus[ing] to be made any telephone solicitation to the telephone line" of a North Dakota subscriber who has been, as of the date of the call, on either the do-not-call list maintained by the North Dakota Attorney General or the national do-not-call registry for at least thirty-one days. Therefore, to succeed on a claim under N.D.C.C. § 51-28-06, Plaintiff State of North Dakota must establish that Defendant made or caused to be made a telephone solicitation to a North Dakota subscriber who has been registered on either the North Dakota or national do-not-call registry of at least thirty-one days.

Finally, Count XXVIII alleges:

> In violation of N.D.C.C. § 51-28-07, Defendants, or an agent on Defendant's behalf, made a telephone solicitation to a subscriber in North Dakota without immediately and clearly stating, at the beginning of the call, their true first and last name, their telephone number, their city and state of location, and the name of the business on whose behalf their telephone solicitation was made.

Second Am. Compl. ¶ 264.

N.D.C.C. § 51-28-07 requires a caller engaged in a telephone solicitation to a North Dakota subscriber to "immediately and clearly state at the beginning of the call the caller's true first and last name, the caller's telephone number, the caller's city and state of location, and the name of the business on whose behalf the telephone solicitation is made." To succeed claim under N.D.C.C. § 51-28-07, Plaintiff State of North Dakota must establish that Defendants, while making a telephone solicitation, failed to provide any of the statutorily required information, including the caller's name, location, telephone number, and on whose behalf the call is made.

Plaintiff State of North Dakota alleges violations of the Unlawful Sales or Advertising Practices Act that proscribes the "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby...." Under N.D.C.C. § 51-28-17, violations of N.D.C.C. ch. 51-28 constitute violations of N.D.C.C. ch. 51-15. "It is well established that the Unlawful Sales Practices Act is remedial in nature and must be liberally construed to effectuate its purpose." *Staal*

*v. Scherping Enterprises, Inc.*, 466 F. Supp. 3d 1030, 1034 (D. N.D. 2020) (*citing State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D. 1986)).

Plaintiff State of North Dakota incorporates the allegations of Count XXVIII and alleges that Defendants violated N.D.C.C. § 51-15-02 by:

> using or connecting to the telephone line of a subscriber in North Dakota using an automatic dialing-announcing device or delivered a prerecorded or synthesized voice message without prior request, consent, permission, or authorization from a subscriber in North Dakota; (2) making or causing to be made telephone solicitations to a subscriber in North Dakota who, for at least thirty-one days before the date of the call, was on the do-not-call list established and maintained or used by the Attorney General of North Dakota, as provided by N.D.C.C. § 51-28-09, or the national do-not-call registry established and maintained by the Federal Trade Commission under 16 C.F.R. Part 310; (3) making a telephone solicitation to a subscriber in North Dakota without immediately and clearly stating, at the beginning of the call, their true first and last name, their telephone number, their city and state of location, and the name of the business on whose behalf their telephone solicitation was made; and (4) knowingly causing a telephone caller identification system to transmit misleading or inaccurate caller identification information, or Defendants used or displayed a telephone number that they did or do not own or had not received consent to use from the owner of the telephone number when they called subscribers in North Dakota.

Second Am. Compl. ¶ 269.

Therefore, if Plaintiff State of North Dakota successfully establishes that Defendants violated N.D.C.C. §§ 51-28-02, 51-28-06, or 51-28-07, North Dakota will succeed on its claim that Defendants violated N.D.C.C. § 51-15-02.

If Plaintiff State of North Dakota establishes a violation of N.D.C.C. §§ 51-28-02, 51-28-06, and 51-28-07, it is entitled to civil penalties of no more than two thousand dollars per violation. N.D.C.C. § 51-28-17. Because violations of N.D.C.C. ch. 51-28 constitute violations of N.D.C.C. ch. 51-15, North Dakota is also entitled to civil penalties under

N.D.C.C. § 51-15-11. *Id.* Under N.D.C.C. § 51-15-11, "[t]he court may assess for the benefit of the state a civil penalty of not more than five thousand dollars for each violation of this chapter." Under N.D.C.C. § 51-15-10, "[i] any action brought under the provisions of [N.D.C.C. ch. 51-15], or under other provisions of law...the court shall award to the attorney general reasonable attorney's fees, investigation fees, costs, and expenses of any investigation and action brought under this chapter, or under other provisions of law."

### 6. Ohio Telemarketing Laws

Plaintiff, the State of Ohio, by and through its Attorney General, Dave Yost, is authorized by the Ohio's Telephone Solicitation Sales Act ("TSSA"), O.R.C. § 4719.12 to bring action to enjoin violations, and seek orders for consumer damages, civil penalties, investigative costs, and attorney's fees.

The TSSA, O.R.C. § 4719.01 et seq., prohibits acting as a telephone solicitor in Ohio without first having obtained a certificate of registration from the Ohio Attorney General as required by O.R.C. § 4719.02(A), failing to have a surety bond on file with the Ohio Attorney General's Office as required by O.R.C. § 4719.04(A), and failing to disclose the solicitor's true name and the name of the company on whose behalf solicitations were made within the first sixty seconds of the telephone call as required by O.R.C. § 4719.06.

Under the TSSA, a "telephone solicitation" is defined as "a communication to a person that…is initiated by or on behalf of a telephone solicitor or by a salesperson [and]…represents a price or the quality or availability of goods or services or is used to induce the person to purchase goods or services, including, but not limited to, inducement through the offering of a gift, award, or price." O.R.C. § 4719.01(A)(7).

"Goods or services" are defined as any real property or any tangible or intangible personal property, or services of any kind provided or offered to a person. O.R.C. § 4719.01(A)(4).

Under the TSSA, a "telephone solicitor" is defined as "a person that engages in telephone solicitation directly or through one or more salespersons either from a location in [Ohio], or from a location outside [Ohio] to persons in [Ohio]." The definition includes, but is not limited to, "any such person that is an owner, operator, officer, or director of, partner in, or other individual engaged in the management activities of, a business." O.R.C. § 4719.01(A)(8).

Under the TSSA, a "salesperson" is defined as "an individual who is employed, appointed, or authorized by a telephone solicitor to make telephone solicitations…." O.R.C. § 4719.01(A)(6).

The TSSA does not require a showing that Defendants HAA, Smith and/or Shapiro personally made the telephone solicitations  at issue as , a telephone solicitor includes "a person that engages in telephone solicitation directly or through one or more salespersons…from a location outside this state to persons in this state…[and] includes, but is not limited to, any such person that is an owner, operator…partner in, or other individual engaged in the management activities of, a business." O.R.C. § 4719.01(A)(8).

In a civil action under the TSSA, if a person who is alleged to have violated the TSSA claims that the person or the person's actions comes within an exemption of TSSA set forth in ).R.C. 4719.01(B), the person has the burden of proving the exemption applies. O.R.C. § 4719.16(C).

The TSSA requires that telephone solicitor disclosure certain information within the first sixty seconds of the telephone call. O.R.C. §4719.06(A)(1)-(3). Information that must be disclosed includes the solicitor's or salesperson's true name and the company on whose behalf the solicitation is made, that the purpose of the telephone call is to effect a sale, and the identity of the goods or services being sold. *Id.* Telephone solicitors using delivering prerecorded messages that do not include the identity of the telephone solicitor or the company on whose behalf are made violate the TSSA. *State ex rel. DeWine v. Calvin*, Case No. A602927, slip op. at 8 (Hamilton C.P. Nov. 13,2018) (Ex. A)

None of the Defendants have been registered as telephone solicitors with the Ohio Attorney General's Office in the preceding six years.

### 7. Texas Telemarketing Laws

Plaintiff, the State of Texas, by and through its Attorney General, Ken Paxton, is authorized by the Texas Business and Commerce Code Section 304.252 to obtain civil penalties, injunctive relief, and attorney's fees for violations of the Texas Telemarketing Disclosure and Privacy Act.

The Texas Telemarketing Disclosure and Privacy Act, under Subsection B of the Texas Business and Commerce Code Section 304.052 states "A telemarketer may not make a telemarketing call to a telephone number published on the Texas no-call list more than 60 days after the date the telephone number appears on the current list." Enforcement is allowed by the Attorney General:

(a) Except as provided by Section 304.253, the attorney general may investigate violations of Subchapter B, C, and D and file civil enforcement actions seeking:

> (1) a civil penalty in an amount not to exceed $1,000 for each violation, except as provided by Subsection (b);
>
> (2) injunctive relief; and
>
> (3) attorney's fees.
>
> (b) If the court finds the defendant willfully or knowingly violated Subchapter B, C, or D, the court may increase the amount of the civil penalty to an amount not to exceed $3,000 for each violation.
>
> (c) A violation of Subchapter B, C, or D is subject to enforcement action by the attorney general's consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61.[3]

Chapter 17 of the Texas Business and Commerce code deals with Deceptive Trade Practices. As we have found no agency case law under the Texas Telemarketing Disclosure and Privacy Act, we look to the Deceptive Trade Practices Act, as does the enforcement statute, to clarify the law. The Deceptive Trade Practices Act (DTPA) also extends the case law available for a DTPA violation to "interpretations given by the Federal Trade Commission and federal courts to Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. § 45(a)(1)]. In fact, in *F.T.C. v. Kennedy*, the Defendant, who owned and worked for a telemarketing company, could be held individually liable for DTPA violations because, as manager, he should have been aware of the fraud of sales employee who were making calls but using an unapproved script that contained misrepresentations.[4]

In a suit seeking relief under the Deceptive Trade Practices Act and the Texas Insurance Code, where Insured brought suit against Insurer and its agent with respect to

---

[3] Tex. Bus. & Com. Code Ann. § 304.252.
[4] 574 F. Supp. 2d 714 (S.D. Tex. 2008).

the agent's misrepresentations, the Supreme Court of Texas cited to the common law regarding agency and quoted Leonard Lakin and Martin Schiff's, The Law of Agency 144-45 (1984):

> In determining a principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act; if that were the case, principals would seldom be liable for their agents' misconduct. Rather, the proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of committing the act.[5]

Whether an agency relationship exists is usually a question of fact, and circumstantial evidence may be used to establish the extent of the agent's authority. To determine whether an agent had apparent authority we look to the acts of the principal "to see if those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority he purported to exercise."[6] The general rule is that an employer may be held accountable for the wrongful act of his employee committed while acting in his employers business and within the scope of his employment, although he did not have knowledge thereof or had even expressly forbidden it.[7] Additionally, corporate shareholders may be liable for individual acts where the corporate entity is a sham or used unfairly to achieve an inequitable result when the case was tried on the theory that the Defendant was the alter ego of the corporation or in any event an undisclosed principal.[8] Also, a corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as

---

[5] *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994), judgment reformed (Dec. 22, 1994) (citations omitted).
[6] *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 377 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citations omitted).
[7] *Med. Slenderizing, Inc. v. State*, 579 S.W.2d 569, 574 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.).
[8] *Petty v. Ferguson*, 601 S.W.2d 782, 785 (Tex. Civ. App.—Fort Worth 1980, writ dism'd).

an agent of the corporation. It is not necessary that the "corporate veil" be pierced to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing.[9]

Under the common law, "agency" is a fiduciary relationship that results from the manifestation of consent by one person to another for the other person to act on the former's behalf and subject to the former's control, together with consent by the other person to so act.[10] The agent's authority to act and the principal's right to control that action are the two essential elements for an agency relationship.[11] There must be some act amounting to an appointment of a person as an agent and such a relationship can arise only at the will and by the act of the principal.[12] An agency relationship does not depend on express appointment or assent by the principal, but may be implied from the conduct of the parties under the circumstances.[13]

A principal is liable for the acts of its agent only when the agent has actual or apparent authority to perform those acts or when the principal ratifies the agent's conduct.[14]

---

[9] *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 541 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied).

[10] *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 2007 Tex. LEXIS 928, 51 Tex. Sup. J. 13.

[11] *Reliant Energy Servs. v. Cotton Valley Compression, LLC*, 336 S.W.3d 764, 783, 2011 Tex. App. LEXIS 959, 173 Oil & Gas Rep. 732.

[12] *Lawler v. Federal Deposit Ins. Corp.*, 538 S.W.2d 245, 249 1976 Tex. App. LEXIS 2867, 19 U.C.C. Rep. Serv. (Callaghan) 1172.

[13] *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 2003 Tex. App. LEXIS 4527.

[14] *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 2011 Tex. App. LEXIS 8556, 176 Oil & Gas Rep. 887, 920-21 177 Oil & Gas Rep. 1044.

<u>Actual or implied authority</u>:

Actual authority is the power of an agent to act on behalf of the principal in accordance with the principal's manifestation of consent.[15] Actual authority denotes authority the principal intentionally confers on the agent, or intentionally or negligently allows the agent to believe that the agent possesses.[16] Actual authority may be expressly conveyed either orally or in writing.[17] A principal delegates express authority to an agent by words that expressly and directly authorize the agent to do an act or series of acts on the principal's behalf.[18] Implied authority is the authority of an agent to do whatever is necessary and proper to carry out the agent's express powers.[19]

<u>Ratification</u>:

Ratification is the subsequent affirmation by the principal of a prior unauthorized act that was not legally binding on the principal, but that was done for the principal's benefit. When ratified, the formerly unauthorized act is given the same effect as if it had been authorized originally.[20]

A person ratifies an act by:

(a) approval by act, word, or conduct;

(b) with full knowledge of the facts of the earlier act; and

---

[15] Restatement (Second) of Agency § 7.
[16] *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 2011 Tex. App. LEXIS 8556, 176 Oil & Gas Rep. 887, 921 177 Oil & Gas Rep. 1044.
[17] *Builders Transp., Inc. v. Grice-Smith*, 167 S.W.3d 1, *12 2005 Tex. App. LEXIS 1839.
[18] *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 2011 Tex. App. LEXIS 8556, 176 Oil & Gas Rep. 887, 921 177 Oil & Gas Rep. 1044
[19] *Id.*
[20] *Broussard v. San Juan Prods.*, 273 S.W.3d 400, 406 2008 Tex. App. LEXIS 9024

(c) with the intention of giving validity to the earlier act.[21]

Ratification does not occur unless:

(a) the benefits have been received as a direct, certain, and proximate result of the agent's unauthorized act;[22]
(b) the act was admittedly and openly performed for the benefit of the principal, not for the agent or a third party;[23]

(c) the principal had full knowledge of all material facts pertaining to the transaction prior to any affirmation of the act.[24]

Ratification may be made by the principal expressly or it may be implied from a course of conduct.[25]

## C.    VICARIOUS LIABILITY AND AGENCY

Under the TCPA, a seller may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (dicta); *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574 (Apr. 17, 2013). The FCC has determined that the principal/agent principle applies in TCPA actions against businesses that contract telemarketers, stating that a seller "may be held vicariously liable under general common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* A seller can be vicariously liable under federal common law principles, including not only formal agency, but also principles of apparent authority and ratification. *Id.*

---

[21] *White v. Harrison*, 390 S.W.3d 666, 672 2012 Tex. App. LEXIS 10279, 2012 WL 6191348.
[22] *Caldwell Nat. Bank v. O'Neil*, 785 S.W.2d 840, 847 (Tex. App.—El Paso 1990, writ denied).
[23] *Herider Farms-El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.).
[24] *Leonard v. Hare*, 161 Tex. 28, 336 S.W.2d 619, 621 (1960).
[25] *Miller v. Kennedy & Minshew*, 142 S.W.3d 325, 342-43 2003 Tex. App. LEXIS 9908.

Agency can be shown under the TCPA if the illegal robocalls were made on behalf of the principal. *Johnson v. Palmer Admin. Servs., Inc.*, 2022 U.S. Dist. LEXIS 207008, 14-15 (E.D. Tex. Oct. 20, 2022) Additionally, a principal/agent relationship can be shown when the principal ratifies the agent's acts by knowingly accepting their benefits. *Callier v. Multiplan, Inc.*, 2021 U.S. Dist. LEXIS 256747, *33 (W.D. Tex. Aug. 26, 2021) (citing *DISH Network*, 28 FCC Rcd. at 6587)

The principal/agent relationship arises "when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency, §1.01(2006) The key aspects of the definition are that the principal and agent agree that the agent acts for the principal and that the agent is subject to the control of the principal. *In re Aguilar*, 511 B.R. 507, 513 (Bankr. N.D. Ill. 2014). *Christiana Tr. v. Riddle*, 911 F. 3d 799, 803 (5th Cir. 2018) (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). The principal does not need to exercise the right of control for an agency relationship to exist, it is enough that the principal has the right to control the agent. *United States v. Dish Network LLC*, 256 F. Supp. 3d 810 at 921. (C.D. Ill..2017) citing *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 877 (N.D. Ill. 2006) The determination of whether an agency exists is a factual issue. *Dish Network*, 256 F. Supp. 3d at 921 citing *Spitz v. Proven Winners of North Am. LLC*, 759 F. 3d 724 (7th Cir. 2014)); *Chemtool, Inc. v. Lubrication Tech., Inc.*, 148 F. 3d 742, 746 (7th Cir. 1998) Both written agreements and the actual practices of the parties are relevant to determine if an agency relationship exists. *Dish Network*, 256 F. Supp. 3d at 921.

An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only. *Dish Network LLC*, 256 F. Supp. 3d at 388. A principal that learns of illegal behavior committed by its agents, chooses to do nothing, and continues to receive the gains, is liable for the agent's acts. *United States v. Dish Network L.L.C.,* 954 F.3d 970, 976 (7th Cir. 2020) citing *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013).

### D.   PIERCING THE CORPORATE VEIL

Ordinarily, individual officers and shareholders of a corporation are not personally liable for the illegal actions of the corporation. However, "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy." *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, 417 U.S. 703, 713 (1974). In determining whether to pierce the corporate veil, courts must consider three factors: 1) if the corporation is the alter ego of its owners and/or shareholders, 2) if the corporation is used for illegal purposes, and 3) if the corporation is being used as a sham to perpetuate fraud. *Castleberry v. Branscum*, 721 S.W. 2d 270, 271-2 (Tex. 1986) (declaring that corporate fiction should be disregarded when it has been "used as part of a basically unfair device to achieve an inequitable result.").

In enforcing the TCPA the FCC has found that it is appropriate to pierce the corporate veil to hold a business's owner personally liable in order to "prevent reliance on [the] corporate form to frustrate…efforts to implement core statutory provisions." *In re*

*Robbins*, 2022 FCC LEXIS 687, ¶38 (Feb. 18, 2022) (citing *Telseven, LLC, Patrick Hines, Forfeiture Order*, 31 FCC Rcd. 1629, 1635 (2016); *In re Spiller*, 36 FCC Rcd. 6225, ¶¶41-42 (Mar. 17, 2021).

Texas courts will pierce the corporate veil to prevent fraud or achieve equity when individuals use the corporate form to perpetrate a fraud. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources*, 99 F. 3d 746, 752 (5th Cir. 1996) If a plaintiff can show that an individual defendant "caused the corporation to be used for the purpose of perpetrating a fraud…primarily for the personal benefit of the defendant," courts will impose vicarious liability. *Id.*; *Synergy Strategic Solutions, LLC v. Totus Solutions, Inc.*, 2019 U.S. Dist. LEXIS 53179, *19-20 (N.D. Tex. Mar. 28, 2019);*Carriere v. Shuffield*, 949 S.W. 2d 862, 864 (Tex. App. 1997) (declaring the corporate form should be disregarded when the corporation was created to avoid legal obligations or is used against public policy or to perpetuate a fraud).

### E.    PERSONAL LIABILITY

Defendants Shapiro and Smith can be held personally liable for the acts and practices they engaged in as owners and officers of Defendant Health Advisors. The fact that they were acting in the course and scope of their employment is no defense to liability for their own acts. *Harrison v. Aztec Well Servicing Co.*, 2021 U.S. Dist. LEXIS 244798, *55 (N.D. Tex. Dec. 23, 2021) (citing *Miller v. Keyser*, 90 S.W. 3d 712, 717 (Tex. 2002)); *Cunningham v. Britereal Mgmt., Inc.*, 2020 WL 7391693, *5-6 (E.D. Tex. Nov. 20, 2020), adopted, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020); *Hutchens v. Smith & Nephew, Inc.*, 2014 U.S. Dist. LEXIS 116839, *17 (N.D. Tex. Aug. 22, 2014)

An officer of a company can be found personally liable under the TCPA if "if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) Allowing the corporate officers to evade culpability would allow them to simply set up business under a new name and repeat their offenses, which is not a result that Congress can have intended to permit.  *Id.*

Defendant Shapiro actively participated in the illegal robocall operation carried out on behalf of Health Advisors. Pursuant to his contract with Health Advisors, he exercised actual authority for Rising Eagle's robocalls when he sent leads to Rising Eagle and when he directed Rising Eagle to "start," "slow down," and "stop the calls." He ratified Rising Eagle's robocalls by continuing to send leads and give directions even after being notified of Rising Eagle's TCPA violations. He benefitted from Rising Eagle's robocalls when he was paid by Defendants Smith and Health Advisors.

Defendant Smith actively participated in the illegal robocall operation carried out on behalf of Health Advisors. He directed the Rising Eagle defendants on how and when to make calls and he provided leads to Defendant Spiller. He failed to obtain consent from the telephone subscribers whose numbers he provided to Spiller. He received updates from Spiller and personally paid Spiller.  Smith had direct knowledge that the Rising Eagle Defendants were sending robocalls and calling numbers listed on the Registry. Where, as

here, an individual defendant actively participates in the violations of federal and state laws, it is appropriate to hold him personally liable for those actions.

### F.   AFFIRMATIVE DEFENSES

#### 1.   Standing

Defendants HAA and Smith asserted as an affirmative defense that Plaintiffs lack standing to bring this action as their citizens had not incurred any actual injury or harm.

Courts have found that the annoyance and distress caused by unwanted telemarketing calls constitute injuries sufficient to establish the Plaintiffs' standing. *Libby v. National Republican Senatorial Comm.*, 551 F. Supp 3d 724, 727 (W.D. Tex. 2021); *Krakauer v. Dish Network, LLC*, 168 F. Supp 3d 843, 845 (M.D. N.C. 2016); *Wilke v. CareSource Mgmt Group Co.*, 2016 US Dist. LEXIS 170519, *8 (N.D. Ind. Dec. 9, 2016). The actual harm caused to Plaintiffs' citizens meets the standard set forth in *Alfred L. Snapp & Son. v. Puerto Rico*, 458 U.S. 592, 602-05 (1982) to support Plaintiffs' TCPA claims.

#### 2.   Failure to State a Claim

Defendants HAA, Smith and Shapiro asserted as an affirmative defense that Plaintiffs' claims fail to state a claim upon which relief can be granted.

A claim of failure to state a claim is an attack on a plaintiff's pleadings, not an affirmative defense supported by facts and, therefore should be dismissed. *Ancor Holdings, LP v. Landon Cap. Partners LLC*, 2022 U.S. Dist. LEXIS 234347, *4 (N.D. Tex. Nov. 3, 2022).

### 3.      Failure to State a Claim – Consent

Defendants HAA and Smith asserted as an affirmative defense that Plaintiffs have failed to state a claim upon which relief can be granted because, among other reasons, on information and belief, the calling party was given prior express consent to call the number(s) at issue and that consent was never revoked.

Defendants bear the burden of proof to show that they received prior express consent. *Van Patten v. Vertical Fitness Group, LLC*, 847 F. 3d 1037, 1044 (9th Cir. 2017); *Atkinson v. Pro Custom Solar LLC*, 2022 U.S. Dist. LEXIS 158629, *15 (W.D. Tex. Sept. 1, 2022); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012) In order to show consent, Defendants must show that 1) they made a clear and conspicuous disclosure that the purpose for obtaining consent was to authorize them to place prerecorded calls, 2) consent to receive calls was required, either directly or  indirectly, as a condition of purchasing any good or service, 3) the consent shows the willingness of the recipient to receive calls that deliver prerecorded messages by or on behalf of Defendants, and 4) the consent includes the consumer's telephone number and signature. 47 U.S.C. § 227(b)(1)(A); *Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232, *6 (N.D. Ill. June 1, 2017) Merely providing a phone number does not mean that a consumer has expressly consented to be called; the scope of the consent is related to the reason the consumer gave their phone number in the first place. *Van Patten*, 847 F. 3d at 1045-6. Defendants failed to offer any evidence that consent was obtained from call recipients in response to discovery.

### 4.      Lack of Intent

Defendants HAA and Smith assert as an affirmative defense that they have no liability with respect to Plaintiffs' claims and allegations as they did not willfully violate any statute and that any violation(s) that may have occurred were unintentional as they had received prior express consent to call the phone numbers at issue.

The TCPA does not require intent for liability to attach. *Barnes v. Conn Appliances, Inc.*, 2018 U.S. Dist. LEXIS 146470, *13 (S.D. Miss. Aug. 28, 2018); *Arrwdondo v. Flexi Corp.*, 2017 U.S. Dist. LEXIS 220710, *2 (S.D. Tex. Aug. 18, 2017) ("The TCPA is a strict liability statute.")

### 5.      Third Party Actions

Defendants HAA and Smith assert as an affirmative defense that any damages suffered by any party resulted from the acts or omissions of third parties who were not agents of Defendants, over whom Defendants exercised no control or authority, and for whose conduct Defendants are not responsible.

Defendants bear the burden of proof to show that a third party was the proximate cause of any damages suffered. "When a defendant urges the fault of a non-party, it is incumbent upon that defendant to provide a preponderance of evidence that fault actual exists on the part of the non-party." *Labat v. Rayner*, 2021 U.S. Dist. LEXIS 140566, *15 (E.D. La. Jul. 28, 2021) (citing *Willis v. Noble Drilling (US), Inc.*, 105 So. 3d 828, 841-42 (La. App. 2012); *Cornejo v. EMJB, Inc.*, 2021 U.S. Dist. LEXIS 177082, *10 (W.D. Tex. Sept. 16, 2021); *Hernandez v. Clearwater Trasp., Ltd.*, 550 F. Supp. 3d 405, 415 (W.D. Tex. 2021)

Defendants have failed to provide any evidence that the acts and practices complained of by Plaintiffs were committed by third parties who were not their agents and over whom Defendants exercised no control or authority; therefore Defendants' affirmative defense should fail.

### 6.    "Not Charged for the Call"

Defendants HAA and Smith assert as an affirmative defense that Plaintiffs' claims are barred to the extent that the called parties were not charged for the call(s) at issue pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

Defendants' interpretation of the TCPA is erroneous. Courts have previously interpreted the relevant section of the TCPA and have determined that the phrase "for which the called party is charged for the call" applies to the phrase immediately preceding, "any service," and does not extend to or include the previous language in the sentence. *Susinno v. Work Out World Inc.*, 862 F. 3d 346, 349 (3d Cir. 2017) (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F 3d 1242, 1257 (11th Cir. 2014); *Gesten v. Stewart Law Group, LLC*, 67 F. Supp. 3d 1356, 1359 (S.D. Fla. 2014).

In the event this Court declines to follow the interpretation of the *Osorio* court, Defendants bear the burden of proving that the consumers whose cellular phones were called were not charged for those calls. *Noviello v. Holloway Funding Grp.*, 2023 U.S. Dist. LEXIS 3060, *7 (N.D. Tex. Jan. 9, 2023) (a defendant asserting an affirmative defense must establish "beyond peradventure *all* of the essential elements…to warrant judgment in his favor") (citing *Fontenot v. Upjohn Co.*, 780 F. 2d 1190, 1194 (5th Cir. 1986)) The FCC has recognized that cellular customers are charged for incoming calls

whether they pay in advance or after their minutes are used. Consumers who purchase a fixed number of cellular minutes have additional charges if their calls exceed that fixed number of minutes and may reach that limit sooner due to unwanted telemarketing calls. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, para. 165 (June 26, 2003). The FCC's interpretation of the TCPA should be accorded deference by this Court. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984).

### 7.   Safe Harbor

Defendants HAA and Smith assert as an affirmative defense that Plaintiffs' claims are barred to the extent that they meet the safe harbor provision requirements set forth in 47 C.F.R. § 64.1200(c)(2)(i).

In order to meet the safe harbor provisions, Defendants must show that the calls made were the result of error and that as part of their routine business practice they have: 1) established and implemented written procedures to comply with the national  do-not-call rules, 2) trained their personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules, 3) maintained and recorded a list of telephone numbers that they may not contact, 4) used a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-no-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made and maintains records documenting this process, and 5) used a process to ensure that they did not sell, rent, lease, purchase or use the national do-not call database, or any part thereof,

for any purpose except compliance with [the TCPA] and any such state or federal law to prevent telephone solicitations to telephone numbers registered on the national database. 47 C.F.R. § 64.1200(c)(2)(i)(A)-(E). *SEC v. GenAudio Inc.*, 32 F. 4th 902, 939 (10th Cir. 2022) (burden of proof for safe harbor defense is "clearly upon" those claiming the defense): *LaGuardia v. Designer Brands Inc.*, 2021 U.S. Dist. LEXIS 170704, *26 (S.D. Ohio Sept. 9, 2021)

### 8.    Misjoinder

Defendants HAA and Smith assert as an affirmative defense that the claims against them are misjoined.

Where actions have been brought against multiple defendants based upon the same transactions or occurrences and which raise the same questions of law, joinder is appropriate. *Pension Ben. Guar. Corp. v. Karp*, 2018 U.S. Dist. LEXIS 83561, *5-6 (S.D. Cal. May 17, 2018) In determining whether severance is appropriate, courts consider whether 1) the issues sought to be tried separately are significantly different from one another, 2) the separable issues require the testimony of different witness and different documentary proof, 3) the party opposing the severance will be prejudiced if it is granted, and 4) the party requesting the severance will be prejudiced if it is not granted. *German v. Federal Home Loan Mort. Corp.*, 896 F. Supp. 1385, 1400 (S.D. N.Y. 1995).

Severing Plaintiffs' claims would neither serve the interests of justice nor further the prompt and efficient resolution of this litigation. Plaintiffs' claims contain questions of law and fact common to all Defendants and will, in significant part, require the testimony of the same witnesses and presentation of the same evidence and requiring Plaintiffs to

prove these points at separate trials would go against judicial economy and would pose a danger of inconsistent judgments. *Jones v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 103666, *5-6 (E.D. Tex. Feb. 2006).

### 9.   Unconstitutional

Defendants HAA and Smith assert as an affirmative defense that the TCPA was unconstitutional at the time some or all of the alleged violations occurred.

In its Order issue on September 27, 2021, this Court rejected Defendants' argument that the Supreme Court's decision in *Barr v. American Assoc. of Political Consultants, Inc.*, 140 S. Ct. 2335(2020) rendered the TCPA unconstitutional. (ECF No. 133 at 6).

### 10.   Laches

Defendant Shapiro asserts as an affirmative defense that Plaintiffs' claims are barred by the doctrine of laches.

Defendant Shapiro has failed to list the elements of laches, and "simply 'naming' the broad affirmative defenses of…laches 'falls well short of the minimum particulars needed to identify the affirmative defense in question'" *Horizon Ag-Products v. Verdesian Life Scis.*, 2020 U.S. Dist. LEXIS 258084, *9 (N.D. Tex. Mar. 5, 2020) (citations omitted)

The defense of laches is based on the principle that "equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." *Depositors Ins. Co. v. Estate of Ryan*, 637 F. App. 864, 871 (6th Cir. 2016). In order to succeed on a laches defense, a defendant must establish that the plaintiff's delay in asserting its claim was unreasonable and prejudiced it in some way. *Id*. Prejudice includes "loss of evidence, expenditure of money, change of value, or a change of a party's right." *Kondaur Capital*

*Corp. v. Smith*, 802 Fed App. 938, 945 (6th Cir. 2020) (citing *Archer v. Archer*, 907 S.W. 2d 412, 416 (Tenn. Ct. App. 1995)); *Henriquez v. City of Farmers Branch*, 2021 U.S. Dist. LEXIS 188553, 8-9 (N.D. Tex. Sept. 9, 2021)

The statute of limitations for actions under the TCPA is four years, as established by 28 U.S.C. § 1658(a). Plaintiffs are properly seeking relief for calls made by or on behalf of the Health Advisors Defendants between early 2018 through June 14, 2019. As the actions of Defendant Shapiro which are the subject of this action occurred well within the four year statute of limitations, the doctrine of laches does not apply.

### 11.   Improper Venue

Defendant Shapiro asserts as an affirmative defense that Plaintiffs' claims are barred because of improper venue.

A plaintiff need not include allegations in their complaint showing that venue is proper. The majority of Fifth Circuit cases hold that the burden is on the objecting defendant to establish that venue is not proper. *American GNC Corp. v. ZTE Corp.*, 2017 U.S. Dist. LEXIS 185358, *4-5 (E.D. Tex. Oct. 4, 2017) (citations omitted). Additionally, a defendant may waive an affirmative defense of improper venue, even after properly asserting it, by actively participating in the litigation. *Stratosaudio Inc. v. Subaru of Am., Inc.*, 2022 U.S. Dist. LEXIS 153799, *7-8 (W.D. Tex. Aug. 26, 2022); *Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*, 2017 U. S. Dist. LEXIS 111889, *7 (Dist. Del. Jul. 19, 2017); *InfoGation Corp. v. HTC Corp.*, 2017 U.S. Dist. LEXIS 103645, *6 (S.D. Cal. Jul. 5, 2017); ("merely filing an initial venue objection does not preclude subsequent waiver of the objection").

Here, Defendant Shapiro has been an active participant in this litigation. In addition to filing pleadings with the Court and participating in hearings and conferences, Defendant Shapiro was deposed on March 18, 2022. In a motion for summary judgment filed on May 12, 2022, Defendant Shapiro asserted that Plaintiffs lacked sufficient evidence to prove the essential elements of the claims against him, but made no mention of venue. Defendant Shapiro has waived the affirmative defense of improper venue.

### 12.    Personal Jurisdiction

Defendant Shapiro asserts as an affirmative defense that Plaintiffs' claims against him fail because this Court does not have personal jurisdiction over him.

The burden of personal jurisdiction is on the party asserting it and may be forfeited by failing to timely raise the defense. *Atwal v. Ifinex Inc.*, 2022 U.S. Dist. LEXIS 192015, *10 (W.D. N.Y. Oct. 19, 2022). Failing to make a motion to dismiss for an extended period of time after asserting lack of personal jurisdiction as an affirmative defense forfeits the defense. *Hamilton v. Atlas Turner, Inc.*, 197 F. 3d 58, 60 (2d Cir. 1999). After filing his Answer containing his affirmative defenses on April 23, 2021, Defendant Shapiro made no attempts to have the complaint against him dismissed.  In the motion for summary judgment filed on May 12, 2022, Defendant made no mention of the Court's ability to assert personal jurisdiction over him. Defendant Shapiro has forfeited the affirmative defense of lack of personal jurisdiction.

Dated May 8, 2023                    Respectfully submitted,

**FOR THE STATE OF ARKANSAS:**

TIM GRIFFIN
Attorney General for the State of Arkansas


/s/ Amanda J. Wentz_____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Amanda.Wentz@ArkansasAG.gov
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178

*Counsel for Plaintiff*
*STATE OF ARKANSAS*

**FOR THE STATE OF INDIANA:**

TODD ROKITA
Attorney General for the State of Indiana


/s/ Douglas S. Swetnam_____
DOUGLAS S. SWETNAM
Indiana Bar No. 15860-49
douglas.swetnam@atg.in.gov
JOSEPH D. YEOMAN
Indiana Bar No. 35668-29
Joseph.Yeoman@atg.in.gov
Deputy Attorneys General
302 West Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
(317) 232-6294 (Swetnam)
(317) 234-1912 (Yeoman)
(317) 232-7979 (Fax)

*Counsel for Plaintiff*

*STATE OF INDIANA*

**FOR THE STATE OF MICHIGAN:**

DANA NESSEL
Attorney General for the State of Michigan


/s/ Kathy P. Fitzgerald
KATHY P. FITZGERALD
Michigan Bar No. P31454
fitzgeraldk@michigan.gov
SCOTT MERTENS
Michigan Bar No. 60069
mertenss@michigan.gov
MICHAEL S. HILL
Michigan Bar No. P73084
Hillm19@michigan.gov
Assistant Attorneys General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Facsimile: (517) 335-6755

*Counsel for Plaintiff*
*STATE OF MICHIGAN*

**FOR THE STATE OF MISSOURI:**

ANDREW BAILEY
Attorney General for the State of Missouri


/s/ Michelle L. Hinkl
MICHELLE L. HINKL
Missouri State Bar No. 64494
Michelle.Hinkl@ago.mo.gov
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Telephone: (314) 340-7961

Fax: (314) 340-7981

*Counsel for Plaintiff*
*STATE OF MISSOURI*

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North Carolina

/s/ Tracy Nayer
TRACY NAYER
North Carolina State Bar No. 36964
tnayer@ncdoj.gov
Special Deputy Assistant Attorney General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, N.C. 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050

*Counsel for Plaintiff*
*STATE OF NORTH CAROLINA*

**FOR THE STATE OF NORTH DAKOTA:**

DREW H. WRIGLEY
Attorney General for the State of North Dakota

/s/ Parrell D. Grossman
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
Office of Attorney General of North Dakota
Consumer Protection & Antitrust Division
1720 Burlington Drive, Ste. C
Bismarck, ND 58504
Telephone: (701) 328-5570

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio


/s/ Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAGO.gov
Travis.Garrison@OhioAGO.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas


/s/ Wade A. Johnson
WADE A. JOHNSON
Fed. Bar No: 105556
Texas Bar No. 24062197
Wade.johnson@oag.texas.gov
C. BRAD SCHUELKE
Texas Bar No. 24008000
Brad.schuelke@oag.texas.gov
DAVID SHATTO

Fed. Bar No: 3725697
Texas Bar No: 24104114
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 5(a), I hereby certify that, on May 8, 2023, I electronically filed the foregoing **PLAINTIFFS' MEMORANDUM OF LAW** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Joseph D. Yeoman
Joseph D. Yeoman