UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>RISING EAGLE CAPITAL GROUP LLC et al.,<br><br>    Defendants. | CASE NO. 4:20-cv-02021 |

**PLAINTIFF STATES' RESPONSE IN OPPOSITION TO (1) DEFENDANT HEALTH ADVISORS OF AMERICA, INC. AND MICHAEL T. SMITH'S MOTION *IN LIMINE* TO BAR PLAINTIFFS' SUPPLEMENTAL EXPERT REPORT DATED APRIL 19, 2023 AND TESTIMONY REGARDING THE ULTIMATE QUESTIONS IN THIS CASE AND (2) DEFENDANT SCOTT SHAPIRO'S MOTION TO JOIN AND ADOPT HEALTH ADVISORS OF AMERICA, INC. AND MICHAEL T. SMITH'S MOTION *IN LIMINE* TO BAR PLAINTIFFS' SUPPLEMENTAL EXPERT REPORT DATED APRIL 19, 2023 AND TESTIMONY REGARDING THE ULTIMATE QUESTIONS IN THIS CASE**

Plaintiffs, the States of Arkansas, Indiana, Michigan, North Carolina, North Dakota, Ohio, and Texas ("Plaintiffs" or "the States") respectfully submit this Response in Opposition to (1) Defendant Health Advisors of America, Inc. and Michael T. Smith's Motion *in Limine* to Bar Plaintiffs' Supplemental Expert Report Dated April 19, 2023 and Testimony Regarding the Ultimate Questions in this Case

(ECF Nos. 231-10 and 231-11)[1], and (2) Defendant Scott Shapiro's Motion to Join and Adopt Health Advisors of America, Inc. and Michael T. Smith's Motion *in Limine* to Bar Plaintiffs' Supplemental Expert Report Dated April 19, 2023 and Testimony Regarding the Ultimate Questions in this Case (ECF No. 232) (hereinafter, collectively "Defendants' Motions *In Limine* Regarding Expert Michael Shores"), and in support thereof, respectfully show the Court as follows:

## I.   STATEMENT OF THE ISSUES

1. Whether the Court should deny Defendants HAA and Smith's Motion *in Limine* seeking to exclude Plaintiffs' Supplemental Expert Report, and whether the Court should deny Defendant Shapiro's motion to join and adopt Defendants HAA and Smith's Motion *in Limine* concerning the same.

2. Whether the Court should deny Defendants HAA and Smith's Motion *in Limine* seeking to exclude certain testimony from Plaintiffs' expert Michael Shores, who prepared the Primary Expert Report and Supplemental Expert Report, which testimony Defendants HAA and Smith contend determines "an ultimate question for the jury" in this case, ECF No. 231-11 at 5, and whether the Court should deny Defendant Shapiro's motion

---

[1] Instead of filings their motions *in limine* separately as directed by the CM/ECF system portal, Defendants HAA and Smith provided Plaintiffs with the motions *in limine* at issue in this response to file as exhibits to the Joint Pretrial Order, ECF No. 231. However, counsel for Defendants provided two seemingly indistinguishable files, each identified as Defendant HAA and Smith's motion *in limine* seeking to exclude Michael Shores' Supplemental Expert Report and certain testimony about both the Expert Report and the Supplemental Expert Report. Because Plaintiffs did not receive clarification about which of the seemingly duplicate files was the motion that counsel sought to file on these issues, out of an abundance of caution, Plaintiffs filed both substantially similar documents as separate copies of the same Exhibit K to the Joint Pretrial Order. ECF Nos. 231-10 and 231-11. For simplicity, all references to Defendants HAA and Smith's Motion *in Limine* that is the subject of Plaintiffs' Response will cite to ECF No. 231-11 only.

to join and adopt Defendants HAA and Smith's Motion *in Limine* concerning the same. ECF No. 232 at 2.

## II.   INTRODUCTION

The Court should deny Defendants' Motions *In Limine* Regarding Expert Michael Shores (ECF Nos. 231-10, 231-11, 232) because Plaintiffs complied with Rule 26 and Mr. Shores does opine on ultimate issues of law.

Plaintiffs properly met their duties and responsibilities pursuant to Fed. R. Civ. P. 26(e)(2) when they provided Defendants with the Supplemental Expert Report. If the Court determines differently, the Court should conclude that any such error or violation was harmless and does not merit the exclusion of the Supplemental Expert Report at trial. All of the factors listed in *Tex. A&M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)) weigh in favor of Plaintiffs.

Further, the use of the word "violative" or "violation" is not expert testimony on an ultimate question of law and fact. However, if the Court is concerned that this might cause jury confusion, Plaintiffs believe this can be cured with a jury instruction or the use of another term, compared to barring testimony from Mr. Shores about the calls that were the subject of his analyses.

As such, the Court should deny Defendants' Motions *In Limine* Regarding Expert Michael Shores.

### III.     LEGAL STANDARD

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  District courts have considerable discretion to manage the submission of evidence, including granting motions *in limine*. *Id.* at 41–42.

This Court has taken the position that few issues are truly appropriate for a motion *in limine*:

> Although it is common in civil cases for each party to file a motion in limine prior to trial, I am not a fan of the practice.  In my humble opinion, and in the view of a growing number of federal judges, very few issues are truly appropriate subjects for a motion in limine.

*Ugarte v. Mid-Am. Metal Roofing & Siding Installed, LLC*, No. 3:20-CV-00080, 2021 WL 6327683, at *1 (S.D. Tex. Oct. 19, 2021) (citing *D'Alton v. City of Billings*, No. CV 03-159-BLG-RWA, 2006 WL 8431820, at *1 (D. Mont. Oct. 17, 2006) (internal quotation marks omitted)).

The Western District of Texas has a similar view:

> Motions in limine are not favored in this Court.  Virtually any objection to the admissibility of evidence can and should be handled in the old-fashioned way, to wit:  counsel objecting at the time the evidence is offered, thereby allowing the Court to rule on the objection in the context of the trial.  In limine relief is warranted only in unusual situations, such as a matter so explosive or so incendiary that sustaining an objection in the routine way may not be sufficient to overcome the risk of undue prejudice.

*Louis Vuitton Malletier v. Eisenhauer Rd. Flea Mkt., Inc.*, No. SA-11-CA-124, 2012 WL 13034079, at *1 (W.D. Tex. Jan. 4, 2012); *see also EEOC v. First Metro. Fin. Serv., Inc.*, 515 F. Supp. 3d 573, 575 (N.D. Miss. 2021) ("[T]he purpose of motions *in limine* is not to

re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." (quoting *Maggette v. BL Dev. Corp.,* 2011 WL 2134578, *4 (N.D. Miss. May 27, 2011))).

Moreover, the Fifth Circuit stated that "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), superseded by statute on other grounds as noted in *Mathis v. Exxon Corp.*, 302 F.3d 448, 458 n.16 (5th Cir. 2002). In this case and for these reasons, Plaintiffs contend Defendants' Motions *in Limine* are not warranted and should be denied.

## IV.     ARGUMENT

**A.     Plaintiffs' Supplemental Expert Report was made for good cause and complies with Fed. R. Civ. P. 26.**

On January 7, 2022, Plaintiffs timely produced Michael Shores' Expert Report ("the Expert Report") in accordance with the deadlines of the then-applicable Docket Control Order in this matter. ECF No. 148. Fourteen months later, on March 6, 2023, the Court entered separate Stipulated Orders for Permanent Injunction and Monetary Judgments against Defendants John C. Spiller, II and Jakob A. Mears, ECF Nos. 220 and 221, which resolved all matters in dispute in this action between Plaintiffs and Defendants Spiller

and Mears.[2] In anticipation of Defendants Spiller's and Mears' respective departures from the case, and pursuant to Fed. R. Civ. P. 26(e)(1) and (2), Plaintiffs requested that their expert Mr. Shores prepare a supplement to the Expert Report previously produced in an effort to assist the trier of fact by narrowing the focus of the 92-page, more than 32-table Expert Report to highlight subsets of the previously analyzed data that were particularly relevant to the remaining parties and issues at trial.

### 1. Plaintiffs' Supplemental Expert Report was timely under Rule 26.

Plaintiffs' Supplemental Expert Report complies with Fed. R. Civ. P. 26. Rule 26(e)(1) provides that:

> A party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Defendants Spiller and Mears initiated illegal robocalls prior to and after the remaining Defendants were operational. Thus, when Defendants Spiller and Mears were dismissed from the case, this necessitated the Supplemental Expert Report to narrow the analysis to the time period that robocalls were initiated while the remaining Defendants were operational. In other words, the Supplemental Expert Report is simply a narrowed subset of the original report.

---

[2] On May 8, 2023, Plaintiffs filed a Partial Motion to Dismiss, ECF No. 228, requesting, in part, the dismissal of all claims in Plaintiffs' Second Amended Complaint against Defendants Rising Eagle Capital Group LLC, Rising Eagle Capital Group–Cayman, and JSquared Telecom LLC without prejudice to refile the same. This motion is pending before the Court.

Plaintiffs timely provided the Supplemental Expert Report after the Spiller and Mears Stipulated Judgments were entered and over two weeks before the Joint Pretrial Order was filed with the Court. Accordingly, Plaintiffs complied with their obligation under Rule 26.

### 2. Alternatively, no harm is caused.

If this Court determines that Plaintiffs improperly relied on, or misconstrued its duties and responsibilities pursuant to, Fed. R. Civ. P. 26(e)(1) and (2) when it provided Defendants with the Supplemental Expert Report, any such error or violation is harmless and does not merit the exclusion of the Supplemental Expert Report at trial.

Federal Rule of Civil Procedure 26 requires that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case[.]" Fed. R. Civ. P. 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders[,]" Fed. R. Civ. P. 26(a)(2)(D), and "must supplement these disclosures when required under Rule 26(e)." Fed. R. Civ. P. 26(e). "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

"In evaluating whether a violation of [R]ule 26 is harmless," the Court must look to: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). "The Court considers each factor in turn." *DCA Design v. Bella Vida Custom Homes LLC*, No. H-17-3314, 2019 WL 3006680, at *12 (S.D. Tex. Jan. 15, 2019). A review of each factor weighs in favor of Plaintiffs and shows that Defendants' requests to exclude Plaintiffs' Supplemental Expert Report on the basis of untimeliness are meritless because such a violation of Rule 26, in these circumstances, was harmless.

### a. Factor 1 – The evidence is important because it narrows the data presented.

With respect to the first factor concerning the importance of the evidence, Defendants seek to exclude the Supplemental Expert Report, which Plaintiffs assert is important evidence because it simplifies—as much as that is possible with the significant and complex data sets involved and relevant to this case—Mr. Shores' analyses that were included in the Expert Report. The Expert Report included analyses of calls made to phone numbers that implicated all Defendants identified in the Second Amended Complaint. ECF No. 56. However, in an effort to more plainly assist the trier of fact in navigating the fairly voluminous Expert Report, the Supplemental Expert Report highlights a smaller subset of

the previously analyzed data that is particularly relevant to the remaining parties and issues[3] at trial.

This is important evidence because it aims to distill for the jury only that information that will be needed in order to consider the remaining issues in this technologically complex case.

Defendants maintain that the data in the Supplemental Expert Report could not have been part of the Expert Report because "Plaintiffs would not need a supplemental report to clarify date ranges for calls made during HAA's operation." ECF No. 231-11 at 3–4. It is true that Plaintiffs did not "need" "to clarify date ranges" with the Supplemental Expert Report. However, Defendants continue to maintain a defense that they should not be responsible for calls made after HAA's dissolution on June 14, 2019, despite records showing HAA continued to operate as a defunct business. To respond to this defense, Plaintiffs sought to attribute a more specific set of calls to Defendants HAA, Smith, and Shapiro. Again, this was despite evidence of Defendant Smith and HAA's continued payments to Rising Eagle Capital Group between June 14, 2019 and September 19, 2019. These bank records, along with text messages, show that Defendants HAA, Smith, and Shapiro continued to work in coordination and cooperation with the Rising Eagle Defendants after Defendant HAA's "voluntary dissolution." Plaintiffs thought it important

---

[3] On May 8, 2023, Plaintiffs filed a Partial Motion to Dismiss, ECF No. 228, requesting, in part, dismissal of Counts IX, X, XX, XXI, XXX, and XXXI in Plaintiffs' Second Amended Complaint against Defendants HAA, Smith, and Shapiro without prejudice to refile the same. Because the State of Missouri did not join in seeking relief from Defendants HAA, Shapiro, or Smith, the Supplemental Expert Report also excludes references to call counts and analyses involving the Missouri Do Not Call List, which data is not relevant to the remaining Defendants and issues in this case.

and helpful to streamline the presentation of evidence to clarify the total number of violations Defendants committed before dissolving HAA.

Before leaving this factor, we address Defendants HAA and Smith's conjecture that the Supplemental Expert Report was only important because "Plaintiffs realized that there was no expert opinion related to [Defendants] HAA or Smith for the time frame that [Defendant] HAA was in operation." ECF 231-11 at 3. However, their claim is belied by even a cursory glance at the content in the Expert Report.

In his Expert Report, Mr. Shores does not define the term "Defendants"; only the subtitle of the report itself includes as the party designation for the Defendants "Rising Eagle Capital Group LLC **et al.**," (emphasis added), which, of course, includes Defendants Shapiro, Smith, and HAA. Mr. Shores further references in the Expert Report that his work and compensation are for "this case," and not for a subset of the Defendants in the case.

Further, in Item (II)(6) of the Expert Report, Mr. Shores identifies the various datasets provided to him for analysis by the Plaintiffs, which include the following: (1) "Call Records" described in Item II(6)(a) of the Expert Report as "data sets **to represent calls placed by Defendants** as recorded by several telecom providers," (emphasis added); (2) "Consumer Sentinel Data" described in Item II(6)(b) of the Expert Report as "data **to represent complaints** that consumers filed with the [Federal Trade Commission] **in regards to calls placed by Defendants**[,]" (emphases added); and (3) "Shapiro and O Health Lead Lists" described in Item II(6)(g) of the Expert Report as follows: "I was told by Plaintiffs that **these lists represent phone numbers that appeared on lead lists that were used by the Defendants**." (Emphasis added)

In fact, except for the subtitle of the report that names "Rising Eagle Capital Group LLC," the only Defendant who is actually named in the Expert Report is Defendant Shapiro, whose name is the short name descriptor identified as a source of the lead lists data analyzed therein. Expert Report, at 2. The only other party identified in the Expert Report is another source of the lead lists data analyzed therein, which is the entity that took Defendant HAA's place in this robocalling operation. This entity was not named in this action, and references to them are removed from the supplemental report.

It is clear that the initial expert report was related to Defendants HAA, Smith, and Shapiro and encompasses a timeframe they were in operation. Consequently, the first factor weighs in favor of Plaintiffs and against Defendants HAA, Smith, and Shapiro.

### b. Second Factor – There is no prejudice.

With respect to the second factor, as to prejudice to the opposing party of including the evidence, Defendants HAA and Smith incorrectly assert that the prejudice they would suffer as a result of the inclusion of this evidence "cannot be overstated." ECF No. 231-11 at 4. Defendants HAA, Smith, and Shapiro made a collective litigation strategy to refrain from deposing Plaintiffs' expert, Mr. Shores, ECF No. 23-11 at 4—or any of Plaintiffs' witnesses—during the pendency of the litigation. Defendants HAA and Smith cannot be prejudiced by their decision to disregard the content of the Expert Report and to make no attempt to depose Mr. Shores. Further, it should have been clear to Defendants HAA, Smith, and Shapiro that the Expert Report was important when it did repeatedly mention Defendant Shapiro by name and all of the Defendants, collectively.

This Expert Report analyzed calls and phone numbers that concerned call traffic for which Defendants HAA, Smith, and Shapiro provided the numbers to be called, provided the scripts and campaigns to be pushed to the call recipients, provided the instructions about how many and when to direct the Rising Eagle Group to initiate calls on their behalf, and provided the call center and its fronters and agents to take those unwanted and illegal calls that connected to consumers. Defendants had this report for fourteen months before receiving the Supplemental Expert Report and none chose to act further on the information therein. Defendants cannot be prejudiced by their own inaction. Accordingly, the second factor weighs in favor of Plaintiffs and against Defendants HAA, Smith, and Shapiro.

### c. Third Factor – Any prejudice could be cured.

With respect to the third factor concerning the possibility of curing any prejudice by granting a continuance, if this Court determines there is any prejudice that Defendants would suffer as a result of the inclusion of the Supplemental Expert Report, it can be cured by reopening discovery for Defendants. The Court has the authority to delay the trial date to allow more time for Defendants to conduct additional discovery on the basis of Defendants' specific objections.

Defendants HAA and Smith assert that "Plaintiffs steadfastly maintained that the current deadlines in the Docket Control Order should not be changed, in their Objection to [Defendant Shapiro's counsel's] Motion to Withdraw," ECF No. 227, paras. 6–8, which motion is still pending before this Court. Defendants mischaracterize Plaintiffs' response to that motion. Defendant Shapiro's counsel moved to withdraw in the midst of the parties' negotiated schedule to exchange pretrial information, made no mention of counsel's

intention to withdraw during the parties' negotiation of that schedule, and expressly stated in the motion: "At this time, a successor attorney for [Shapiro] is not known[.]" ECF No. 226, at 3. Because of the timing—whether purposeful or not—of counsel's request to withdraw from representation so close to the trial month designated on the DCO, without more, Plaintiffs were compelled to object to any insufficiently justified request for an open-ended continuance. If this Court determines that there is merit to Defendants' concern about prejudice by the admission of the Supplemental Expert Report, Plaintiffs defer to the Court's authority to delay the trial date to allow more time for Defendants to conduct additional discovery on the basis of their specific objections. Thus, the third factor weighs in favor of Plaintiffs and against Defendants HAA, Smith, and Shapiro.

### d. Fourth Factor – Plaintiffs disclosed all relevant information in the original Expert Report.

As to the fourth and final factor, Plaintiffs have disclosed all relevant information to Defendants. In fact, the production of the Supplemental Expert Report actually minimizes the focus from Mr. Shores' analysis in the Expert Report that showed, for instance: (1) over 1.3 billion calls of the more than 2.24 billion calls in the data set were made to numbers on lead lists provided by Defendants, Expert Report, at 6–7 (Tables 1 and 2); and (2) over 468.6 million calls of the more than 750 million calls made to phone number registered on the National and/or State Do Not Call Lists were calls made from phone numbers on lead lists provided by Defendants, Expert Report, at 9–10 (Item 12, Table 9). For this reason, the final factor weighs in favor of the Plaintiffs.

*State of Texas, et al. v. Rising Eagle Capital Group, LLC, et al.*  
Plaintiffs' Response to Defendants' Motions *in Limine*

Page 13 of 20

Accordingly, all of the factors weigh in opposition to any exclusion of the Supplemental Expert Report.

**B.      Plaintiffs' Expert Report does not render an improper conclusion of law.**

The final issue raised by in Defendants' Motions *In Limine* Regarding Expert Michael Shores concerns references in both the Expert Report and the Supplemental Expert Report to certain calls as "violations" or "violative calls." ECF No. 231-11, at 4; ECF No. 232, at 2.

Pursuant to Fed. R. Evid. 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." By way of example, in *Sterk v. Path, Inc.*, a case involving the TCPA, the court allowed expert testimony about what the expert believed the TCPA prohibited, how FCC rulings should be interpreted, and whether certain legal standards have been met in the case. 46 F. Supp. 3d 813, 817 (N.D. Ill. 2014). Nevertheless, Mr. Shores does not embrace an ultimate issue or make legal conclusions.

The Expert Report was produced to Defendants on January 7, 2022, setting out Mr. Shores' assumptions to form the bases for his analyses for the Expert Report and the later Supplemental Report. Among those assumptions, Mr. Shores was asked to assume the word "violation" means a call matching the following criteria:

> i.      A call to a phone number on the Federal DNC list should be considered a violation if that phone number was called at least 31 days after its registration date.
>
> ii.     A call to a phone number on Missouri's DNC List should be considered a violation of Missouri's DNC Law if that phone number was called any day after the date provided in Missouri's DNC file for this report.

      iii.      A call to a phone number on Indiana's DNC List should be considered a violation of Indiana's DNC Law if that phone number was called starting the quarter after its publication in Indiana's registry. Details about these cutoff dates are detailed in Appendix Table B.

      iv.      A call to a phone number on Texas's DNC List should be considered a violation of Texas's DNC Law if the call was placed at least 60 days after the phone number was published on the Texas DNC list. Quarters start on March 1, June 1, September 1 and December 1.

*See* Expert Report, III.7. From this assumption, Mr. Shores was tasked to perform a factual analysis to determine the number of "violative" calls meeting these criteria. This type of analysis is common and proper expert testimony.

If this Court is concerned that there would be confusion by testimony from Mr. Shores describing a subset of calls as "violative" or a "violation," Plaintiffs argue that the best solution to cure any confusion would be a jury instruction. The Court could clarify that a "violation" or "violative call," for purposes of his analysis, was based on an assumption given to him of what would constitute a violation, and that it should not be interpreted to usurp the jury's or the Court's respective roles to determine issues of fact and law. Alternatively, instead of referencing "violation" or "violative calls," Mr. Shores could refer to such calls or call groupings during his testimony as "calls made to residential telephone numbers registered on the Federal Do Not Call List or to certain State Do Not Call Lists"—which is the definition for that short-hand designation—in order to mitigate any possible confusion by the jury that Mr. Shores was offering his opinion about an issue in the case. Accordingly, Plaintiffs request the Court fashion a comparable solution that would help to maintain the fairness and integrity of the proceedings.

## V. CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions *In Limine* Regarding Expert Michael Shores.

Date filed: May 12, 2023                                          Respectfully submitted,

| FOR THE STATE OF ARKANSAS: | FOR THE STATE OF INDIANA: |
|---|---|
| TIM GRIFFIN<br>Attorney General for the State of Arkansas | TODD ROKITA<br>Attorney General for the State of Indiana |
| | /s/ Douglas S. Swetnam |
| /s/ Amanda J. Wentz | DOUGLAS S. SWETNAM |
| AMANDA J. WENTZ | Indiana Bar No. 15860-49 |
| Ark. Bar No. 2021066 | douglas.swetnam@atg.in.gov |
| Amanda.Wentz@ArkansasAG.gov | JOSEPH D. YEOMAN |
| Assistant Attorney General | Indiana Bar No. 35668-29 |
| Office of the Arkansas Attorney General | Joseph.Yeoman@atg.in.gov |
| 323 Center Street, Suite 200 | Deputy Attorneys General |
| Little Rock, AR 72201 | 302 West Washington Street |
| (501) 682-1178 | IGCS – 5th Floor |
| | Indianapolis, IN 46204 |
| *Counsel for Plaintiff* | (317) 232-6294 (Swetnam) |
| *STATE OF ARKANSAS* | (317) 234-1912 (Yeoman) |
| | (317) 232-7979 (Fax) |
| | |
| | *Counsel for Plaintiff* |
| | *STATE OF INDIANA* |

| | |
|---|---|
| **FOR THE STATE OF MICHIGAN:** | **FOR THE STATE OF NORTH CAROLINA:** |
| DANA NESSEL<br>Attorney General for the State of Michigan | JOSHUA H. STEIN<br>Attorney General for the State of North Carolina |
| /s/ Kathy P. Fitzgerald<br>KATHY P. FITZGERALD<br>Michigan Bar No. P31454<br>fitzgeraldk@michigan.gov<br>SCOTT MERTENS<br>Michigan Bar No. 60069<br>mertenss@michigan.gov<br>MICHAEL S. HILL<br>Michigan Bar No. P73084<br>Hillm19@michigan.gov<br>Assistant Attorneys General<br>Corporate Oversight Division<br>Michigan Department of Attorney General<br>P.O. Box 30736<br>Lansing, MI 48909<br>Telephone: (517) 335-7632<br>Facsimile: (517) 335-6755<br><br>*Counsel for Plaintiff*<br>*STATE OF MICHIGAN* | /s/ Tracy Nayer<br>TRACY NAYER<br>North Carolina State Bar No. 36964<br>tnayer@ncdoj.gov<br>Special Deputy Assistant Attorney General<br>North Carolina Department of Justice<br>Consumer Protection Division<br>P.O. Box 629<br>Raleigh, N.C. 27602<br>Telephone: (919) 716-6000<br>Facsimile: (919) 716-6050<br><br>*Counsel for Plaintiff*<br>*STATE OF NORTH CAROLINA* |

**FOR THE STATE OF NORTH DAKOTA:**

DREW H. WRIGLEY
Attorney General for the State of North Dakota


/s/ Parrell D. Grossman
PARRELL D. GROSSMAN
North Dakota State Bar No. 04684
pgrossman@nd.gov
Office of Attorney General of North Dakota
Consumer Protection & Antitrust Division
1720 Burlington Drive, Ste. C
Bismarck, ND 58504
Telephone: (701) 328-5570

*Counsel for Plaintiff*
*STATE OF NORTH DAKOTA*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio


/s/ Erin B. Leahy
ERIN B. LEAHY
Ohio Bar No. 69509
W. TRAVIS GARRISON
Ohio Bar No. 76757
Assistant Attorneys General
Ohio Attorney General's Office
Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
(614) 752-4730 (Leahy)
(614) 728-1172 (Garrison)
Erin.Leahy@OhioAGO.gov
Travis.Garrison@OhioAGO.gov

*Counsel for Plaintiff*
*STATE OF OHIO*

**FOR THE STATE OF TEXAS:**

KEN PAXTON
Attorney General for the State of Texas


/s/ Wade A. Johnson
WADE A. JOHNSON
Fed. Bar No: 105556
Texas Bar No. 24062197
Wade.johnson@oag.texas.gov
C. BRAD SCHUELKE
Texas Bar No. 24008000
Brad.schuelke@oag.texas.gov
DAVID SHATTO
Fed. Bar No: 3725697
Texas Bar No: 24104114
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Telephone: (512) 463-2100
Facsimile: (512) 473-8301

*Counsel for Plaintiff*
*STATE OF TEXAS*

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that, on May 12, 2023, I electronically filed the foregoing **PLAINTIFF STATES' RESPONSE IN OPPOSITION TO (1) DEFENDANT HEALTH ADVISORS OF AMERICA, INC. AND MICHAEL T. SMITH'S MOTION *IN LIMINE* TO BAR PLAINTIFFS' SUPPLEMENTAL EXPERT REPORT DATED APRIL 19, 2023 AND TESTIMONY REGARDING THE ULTIMATE QUESTIONS IN THIS CASE AND (2) DEFENDANT SCOTT SHAPIRO'S MOTION TO JOIN AND ADOPT HEALTH ADVISORS OF AMERICA, INC. AND MICHAEL T. SMITH'S MOTION *IN LIMINE* TO BAR PLAINTIFFS' SUPPLEMENTAL EXPERT REPORT DATED APRIL 19, 2023 AND TESTIMONY REGARDING THE ULTIMATE QUESTIONS IN THIS CASE** with the Clerk using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Joseph D. Yeoman
Joseph D. Yeoman